**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN 224018)
bhur@willkie.com
SIMONA A. AGNOLUCCI (SBN 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN 281668)
esantacana@willkie.com
DAVID D. DOAK (SBN 301319)
ddoak@willkie.com
ISABELLA MCKINLEY CORBO (SBN 346226)
icorbo@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

Attorneys for Defendant
**GOOGLE LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| M.D., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>GOOGLE LLC and META PLATFORMS, INC.,<br><br>Defendants. | Case No. 3:24-cv-06369-AMO<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**<br><br>Hearing Date: July 10, 2025<br>Time: 2:00 p.m.<br>Courtroom: 10, 19th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102<br>Before: Hon. Araceli Martínez-Olguín<br><br>*[Filed concurrently with [Proposed] Order; Request for Judicial Notice; Declaration of Isabella McKinley Corbo and [Proposed] Order]*<br><br>**<u>CLASS ACTION</u>**<br>Trial Date: Not set<br>Current Action Filed: September 10, 2024 |

Pursuant to Federal Rule of Civil Procedure 7.1, Defendant Google LLC discloses the following:

PLEASE TAKE NOTICE that the following Motion will be heard on July 10, 2025, at 2:00 p.m., in Courtroom 10, 19th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, with the Honorable Araceli Martinez-Olguin presiding. Defendant Google LLC ("Google" or "Defendant") will, and hereby does, move to dismiss with prejudice the putative Class Action Complaint (ECF No. 1 ("Complaint")) of the Plaintiff, M.D. ("Plaintiff"), individually and on behalf of all others similarly situated. This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Proposed Order, Google's concurrently filed Request for Judicial Notice in Support of the Motion (the "RJN") and exhibits attached thereto, the Declaration of Isabella McKinley Corbo in Support of the RJN, the proposed order submitted with the RJN, and all pleadings, arguments, and matters before the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Plaintiff's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and whether such dismissal should be with prejudice because amendment would be futile.

Dated: December 16, 2024

WILLKIE FARR & GALLAGHER LLP

Benedict Y. Hur
Simona A. Agnolucci
Eduardo E. Santacana
David D. Doak
Isabella McKinley Corbo

By: *<u>/s/ Benedict Y. Hur</u>*
BENEDICT Y. HUR

Attorneys for Defendant
GOOGLE LLC

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES ..... 2

III. BACKGROUND ..... 2

A. Plaintiff alleges that BlueChew used Google Analytics. ..... 2

B. Google lawfully provided BlueChew with analytics services. ..... 3

C. The contract between Google and BlueChew forbade BlueChew from sending Google PHI or PII. ..... 4

D. Procedural History ..... 5

IV. LEGAL STANDARD ..... 5

V. ARGUMENT ..... 6

A. Plaintiff cannot state claims under CIPA Section 631 and 632. ..... 6

1. Plaintiff consented to BlueChew's use of Google Analytics. ..... 7

2. Plaintiff fails to allege that Google intended to receive Plaintiff's PII and PHI. ..... 9

3. Plaintiff's Section 631 claim fails because there is no allegation that Google did anything but act as a mere vendor, and because there is no allegation that data transmitted to Google constituted the "content" of a communication. ..... 11

4. Plaintiff's CIPA section 632 claim fails because he does not plausibly allege a reasonable expectation of confidentiality. ..... 14

B. Plaintiff fails to state a claim for invasion of privacy under the California Constitution. ..... 15

1. Plaintiff lacked a reasonable expectation of privacy. ..... 15

2. There was no egregious breach of social norms. ..... 17

VI. CONCLUSION ..... 18

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ......................6, 13

*Am. Hosp. Ass'n v. Becerra*,
No. 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)..................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................5

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .........................................................................16

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ............................................................................14

*Carrico v. City & Cnty. of S.F.*,
656 F.3d 1002 (9th Cir. 2011) .........................................................................................5

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) .........................................................................14

*Cousin v. Sharp Healthcare*,
No. 22-CV-2040-MMA (DDL), 2023 WL 4484441 (S.D. Cal. July 12, 2023)......................16

*Doe I v. Google LLC*,
__ F. Supp. 3d __, No. 23-cv-02431-VC, 2024 WL 3490744 (N.D. Cal. July 22, 2024) ........................................................................................................9, 10, 17

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ..........................................................................................................11, 12, 13, 17

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ...........................................................................14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .........................................................................................15

*Flanagan v. Flanagan*,
27 Cal. 4th 766, 41 P.3d 575 (2002)..............................................................................14

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .............................................................................8

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ....................5

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) ....................5

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................11, 12, 13

*Hernandez v. Hillsides, Inc.*,
47 Cal.4th 272 (2009) ....................6, 15, 17

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................17

*Javier v. Assurance IQ, LLC*,
No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021)....................8, 14, 15

*Leocal v. Ashcroft*,
543 U.S. 1 (2004)....................10

*Matera v. Google Inc.*,
No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016)....................8

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ....................5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................15, 16

*Miller v. Rykoff-Sexton, Inc.*,
845 F.2d 209 (9th Cir. 1988) ....................5

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ....................5

*Rodriguez v. Google*,
No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021)....................14

*Rojas v. HSBC Card Servs. Inc.*,
93 Cal. App. 5th 860 (2023), *review denied* (Nov. 21, 2023) ....................9

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021)....................7

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ....................10

*United States v. Thompson/Ctr. Arms Co.*,
504 U.S. 505 (1992) (plurality opinion) ....................................................................10

*Weiner v. ARS Nat'l. Servs., Inc.*,
887 F. Supp. 2d 1029 (S.D. Cal. 2012)........................................................................6

*Williams v. What If Holdings, LLC*,
No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ..........................11, 12

**Statutes**

Cal. Penal Code § 631 ............................................................................................ *passim*

Cal. Penal Code § 631(a) .........................................................................................7, 8, 9, 13

Cal. Penal Code § 632...........................................................................................5, 6, 14, 15

Cal. Penal Code § 632(a) .........................................................................................7, 8. 9, 14

**Other Authorities**

Cal. Const. Art. 1 § 1 .......................................................................................................15

Fed. R. Civ. P. 8 ..................................................................................................................10

Fed. R. Civ. P. 9(b) ............................................................................................................10

Fed. R. Civ. P. 12(b)(6).....................................................................................................2, 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Google Analytics is a free and lawfully available tool that websites and software-application developers can use to gain insight into how users interact with their platforms. Courts in this District have repeatedly recognized that websites have the right to employ tools like Google Analytics that enable them, whether they are a sophisticated corporation or the mom-and-pop shop down the street or a major retailer, to understand and improve their users' experiences.

Plaintiff's claims are predicated on the alleged collection and transmission of data created during his interactions with BlueChew.com ("BlueChew" or the "Website"), a telehealth purveyor of erectile-dysfunction medication. Plaintiff claims that sensitive information was intentionally "intercepted" by Google Analytics without his consent, and that this interception violated his privacy rights under the California Penal Code, sections 631 and 632, and under the California Constitution.

But Plaintiff does not plausibly allege any violation of law. His claims fail for at least three reasons. *First*, the Google Analytics Terms of Service require websites that use Google Analytics to disclose and obtain user consent for its use. BlueChew complied with this requirement. Plaintiff was informed and required to agree that using the Website would entail the collection and processing of data by Google Analytics, he consented to the Website's use of Google Analytics, and he proceeded to use the Website. *Second*, Plaintiff cannot establish the intent requirement that underlies his claims because the Google Analytics Terms of Service expressly prohibit websites, including BlueChew, from transmitting sensitive information, such as personal health information ("PHI") and personally identifiable information ("PII"), to Google. To the extent BlueChew violated those terms, unbeknownst to Google, Google cannot be held liable. *Third*, BlueChew at all times controlled what data were collected and sent (if any) to Google. This is inherent in the functionality of Google Analytics, with respect to which Google serves, as courts have recognized, as a third-party vendor of services that websites and software-application developers choose whether and how to use, and which they control. Google offers, in effect, a water hose equipped with an adjustable nozzle. Websites decide whether to

hook it up, how high to turn on the water, which spray pattern to use, and where the water goes. They control the flow of data—and must disclose and obtain consent for the use of the tool.

Plaintiff's allegations relating to Google boil down to nothing more than that BlueChew used a lawfully available analytics service, that he interacted with BlueChew, and that he disagrees with certain customizations he speculates BlueChew made to the tool. For these reasons, and on the basis of the arguments set forth herein, this Court should dismiss Plaintiff's Complaint. Whatever complaints he may have, they are not with Google.

## II. STATEMENT OF ISSUES

Whether Plaintiff's Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and whether such dismissal should be with prejudice because amendment would be futile.

## III. BACKGROUND

### A. Plaintiff alleges that BlueChew used Google Analytics.

Plaintiff, a resident of California, brought this lawsuit against Google relating to his interactions with BlueChew.com (the "Website"). Compl. ¶ 7.[1] Plaintiff alleges that he used BlueChew.com, and that BlueChew used Google Analytics to analyze his data without his consent. *Id*. ¶¶ 6, 9, 54, 72, 86, 89, 90, 102, 104. Plaintiff concedes that Google Analytics must be "incorporated" onto a website in order to perform any functions on data that users input into that website. *Id*. ¶¶ 10, 63. He further concedes that websites that run Google Analytics control how the technology is implemented, and can customize how data are processed as well as what those data are used for. *Id*. at ¶¶ 62–63, 67, 73. He alleges that the data transferred by BlueChew to Google consisted of his name, birthday, email address, and a pseudonymous identifier created and assigned to him by BlueChew itself. *Id*. ¶¶ 40, 64–65. Plaintiff does not allege that Google instructed BlueChew to transmit this or any other type of data or information to Google, or that Google had any way of knowing the meaning of any "unique" pseudonymous identifier used by BlueChew. Compl. ¶¶ 40, 66.

[1] Plaintiff also named Meta Platforms, Inc. ("Meta") as a defendant, based on his alleged interaction with Meta's analytics technology, which is separate and distinct from Google's. Compl. ¶ 11.

Plaintiff makes a number of general allegations about the functioning of Google Analytics, including that "data intercepted by [Analytics]" ***can be*** "linked with Google Ads" and "utilized for targeted advertising purposes," but does not allege that it was, or that if it was, that Google is the entity performing this utilization. *Id.* ¶ 70. Additionally, Plaintiff alleges that Google "uses the data collected through Google Analytics to improve its ad targeting capabilities and data points on users," but does not allege that any user data points from BlueChew.com are used in this manner. *Id.* ¶ 69. Plaintiff makes no allegations that any data points from BlueChew.com were ever used inconsistently with the Google Terms of Service or with BlueChew's Privacy Policy.

**B. Google lawfully provided BlueChew with analytics services.**

Google Analytics is one of many available analytics tools that websites and applications may use to gain insight into how users interact with their platforms. Compl. ¶¶ 27–28, 59, 62–63, 67–71. Websites like BlueChew that use Google Analytics choose which data are collected and how those data are used. *See id.* ¶¶ 62–63 (websites incorporate Google Analytics "by adding a small piece of JavaScript measurement code to each page on the site," and can then "utilize it" to gain various types of information about their users); *see also* Request for Judicial Notice ("RJN") Ex. 1 ("Organizations use Google Analytics because they choose to do so. They, not Google, control what data is collected and how it is used.").

Websites that run Google Analytics "retain ownership of the data they collect using Google Analytics, and Google only stores and processes this data per their instructions—for example, to provide them with reports about how visitors use their sites and apps." RJN Ex. 1. Additionally, websites determine what data will be shared with Google—including whether *any* data will be shared at all—subject to contractual limitations prohibiting websites from sharing certain types of data, including personally identifiable information. *See* RJN Ex. 1[2]; RJN Ex. 2. Google Analytics "does not serve ads at all." RJN Ex. 1

[2] *See* RJN Ex. 1 ("We never allow sensitive information to be used for personalized advertising. It's simply off limits.").

### C. The contract between Google and BlueChew forbade BlueChew from sending Google PHI or PII.

Plaintiff alleges that Google's relationship with BlueChew allowed certain user data, including PHI and PII, to be shared with Google. He further alleges that "Google knew that the incorporation of its software onto [BlueChew.com] would result in the interception" of certain sensitive data. Compl. ¶ 10.

However, Plaintiff overlooks two critical points: First, he fails to address the contracts between Google and the websites, including BlueChew.com, that use Google Analytics. These contracts explicitly prohibit BlueChew.com—and any website that installs Google's code—from transmitting PII to Google. Second, Plaintiff disregards BlueChew's privacy policy, which informs all users at the time of account creation about these contractual obligations regarding data sharing, and to which all BlueChew users must consent when creating an account to use BlueChew.

Websites that use Google Analytics must consent to and abide by the Google Analytics Terms of Service. The Terms of Service clearly state that any websites using Google Analytics "will not … pass information to Google that Google could use or recognize as [PII]." RJN Ex. 2. Further, "HIPAA-regulated entities using Google Analytics must refrain from exposing to Google any data that may be considered Protected Health Information (PHI), even if not expressly described as PII in Google's contracts and policies." RJN Ex. 3. Google also provides various "best practices" for websites to "avoid sending [] PII," including, among other things, "remov[ing] PII from user-entered information before it is sent to Analytics." RJN Ex. 4. In order to comply with Google's Terms of Service, websites that use Analytics "must disclose" the technology's use, as well as how that particular website "collects and processes data." *Id*.

As required, BlueChew explicitly discloses its use of Google Analytics. The website's Privacy Policy—which users must accept when creating an account—informs users that BlueChew may use Google Analytics and other analytics tools to "evaluate usage of our Websites and Services and to help us personalize content on our Websites and Services," and "to help us improve our Services, performance and user experiences." RJN Exs. 5-A, 5-B, and 5-C. The Privacy Policy further states that

such analytics tools "may use cookies and other tracking technologies," and that BlueChew "do[es] not share [users'] personal information" with the third-party vendors of these tools. *Id.*

### D. Procedural History

Plaintiff filed his Complaint on September 10, 2024. *See generally* Compl. The Complaint asserts the following claims against Google: (1) violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code section 631 (Claim I); (2) violation of CIPA, California Penal Code section 632 (Claim II); and (3) invasion of privacy under the California Constitution (Claim III).

## IV. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive such a motion, a plaintiff must plead factual allegations that "plausibly (not merely conceivably) entitle plaintiff to relief." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring more than a "sheer possibility," "naked assertion," or "formulaic recitation" of the elements of a cause of action).

A court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted); *see also Iqbal*, 556 U.S. at 678–79 (pleadings that are "no more than conclusions, are not entitled to the assumption of truth"). Nor must a court "'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citations omitted). Dismissal without leave to amend is appropriate if "amendment would be futile." *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011). Amendment would be futile when "no set of facts can be proved . . . that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## V. ARGUMENT

Each of Plaintiff's three claims against Google should be dismissed without leave to amend. Plaintiff's claims under the California Invasion of Privacy Act (CIPA) sections 631 and 632 each fail because (1) BlueChew and/or Plaintiff consented to BlueChew's use of Google Analytics, (2) Plaintiff fails to allege that Google had the requisite knowledge or intent, and (3) for the additional, independent reasons for each claim explained below. Further, Plaintiff's claim for invasion of privacy under the California Constitution fails because (4) he cannot plausibly allege the existence of a reasonable expectation of privacy or (5) that any intrusion was "an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal.4th 272, 287 (2009) (citation omitted).

### A. Plaintiff cannot state claims under CIPA Section 631 and 632.

To state a claim under California Penal Code section 631, Plaintiff must allege facts showing that Google: (1) by means of a machine, instrument, or contrivance; (2) intentionally and without the consent of all parties; (3) read, attempted to read, or attempted to learn the contents or meaning of a communication; (4) while the communication was in transit; (5) from or to a place within California. *See Adler v. Community.com, Inc.*, No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021). Plaintiff cannot do so because: (1) he consented to BlueChew's use of Google Analytics; (2) he fails to plausibly allege that Google "intentionally" intercepted his PII or PHI; (3) Google acted merely as a third-party vendor for BlueChew; and (4) because any data allegedly transmitted to Google do not constitute the "content" of a communication. Plaintiff's CIPA § 631 claim thus must fail.

Nor does Plaintiff plausibly state a claim under CIPA section 632. A claim under section 632 requires showing that Google (1) "intentionally and without [] consent," (2) recorded a "confidential communication," (3) by means of an electronic device. *See* Cal. Penal Code § 632; *Weiner v. ARS Nat'l. Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012). Plaintiff's section 632 claim fails because (1) he consented to BlueChew's use of Google Analytics and (2) fails to plausibly allege that Google "intentionally" intercepted his PII or PHI, as well as because (3) he does not plausibly allege that any data allegedly intercepted were "confidential communication[s]."

Plaintiff's allegations meet neither statute's requirements, and thus warrant dismissal.

**1. Plaintiff consented to BlueChew's use of Google Analytics.**

To state claims under CIPA sections 631 and 632, Plaintiff must plausibly allege that he did not consent to the alleged interception or recording. *See* Cal. Penal Code §§ 631(a) and 632(a). He cannot.

Plaintiff alleges that Bluechew's use of Google Analytics was unlawful. *See*, *e.g.*, Compl. ¶¶ 7 ("Google . . . intercepted protected health information . . . related to his prescription medication"; interceptions were of a "surreptitious nature"), 9 ("Google committed the interceptions . . . without Plaintiff's knowledge" or "consent" and perpetrated "egregious" "violations of Plaintiff's right to privacy"), 82–105 (alleging CIPA violations). But Plaintiffs consented to Bluechew's use of Google Analytics by consenting to Bluechew's Privacy Policy.

BlueChew users must consent to the website's Privacy Policy as a gating requirement to account creation. *See* RJN Exs. 6-A, 6-B, 7-A, and 7-B. The BlueChew registration page, as archived by the Wayback Machine both before and after Plaintiff alleges he used the website, requires users to agree to BlueChew's Terms and Conditions—into which BlueChew's Privacy Policy is incorporated—before creating an account. RJN Exs. 6-A and 6-B (requiring consent to Terms and Conditions as a condition of account creation); *id.*, Exs. 7-A and 7-B (incorporating the Privacy Policy); and *id.*, Exs. 5-A, 5-B, 5-C. In the Ninth Circuit, "[a] binding contract is created if a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink," and it is "sufficient to require a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button as long as the user has access to the terms of service." *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021) (citation omitted) (finding that plaintiffs consented to website's privacy policy presented in a similar manner). These features of a mechanism "sufficient" to "create[]" a "binding contract" are present here. *See id.* A link to BlueChew's privacy policy is conspicuously presented in the form of a blue hyperlink at account creation, and new users must check a box to proceed with sign-up. *Id.* at *4 (plaintiffs consented to hyperlinked privacy policy when, like here, "[t]hey were required to take an affirmative step . . . to acknowledge that they were agreeing to the terms").

Indeed, Google requires that websites that install and run the Google Analytics software expressly disclose their use of Google Analytics to users of the website, as BlueChew did. RJN Ex. 2 at 4; *see also id.* at Exs. 5-A, 5-B, and 5-C. In compliance with Google's requirements, BlueChew clearly disclosed its use of vended analytics technologies, including Google Analytics, to collect and analyze user data. *See* RJN Exs. 5-A, 5-B, and 5-C. ("We may also use automated devices and applications, such as Google Analytics . . . . We use these tools to help us improve our Services, performance and user experience. These entities may use cookies and other tracking technologies to perform their services."; "As you browse our Websites, advertising cookies may be placed on your computer so that we can understand what you are interested in. We may work with display advertising partners . . . that enable us to present you with retargeted advertising on other sites based on your previous interaction with BLUECHEW.").

Plaintiff's consent to BlueChew's conspicuously disclosed use of Google Analytics dooms his claims under both CIPA section 631 and 632, at least to the extent that they are based on Bluechew's general use of Google Analytics. Compl. ¶¶ 6, 9, 54, 72, 86, 89, 90, 102, 104; *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016) ("Under CIPA, a consent defense is established when both parties—the sender and the recipient of the communication—consent to the alleged interception."); Cal. Penal Code § 631(a) (requiring lack of consent); Cal. Penal Code § 632(a) (same).

"Consent generally defeats privacy claims," as it does Plaintiff's here. *See Javier v. Assurance IQ, LLC*, No. 4:20-CV-02860-JSW, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021). Since Google's TOS and BlueChew's own Privacy Policy both establish that Plaintiff was informed of and consented to BlueChew's use of Google Analytics, he cannot plausibly allege lack of consent to its use. *See*, *e.g.*, *id.* at *2–3 (dismissing claims because plaintiffs consented to data collection described in privacy policy); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137–38 (N.D. Cal. 2015) (dismissing claim because the express provisions of the judicially noticeable Privacy Policy and Terms of Service "ostensibly contradict [Plaintiff's] bare allegation that he did not consent").

**2. Plaintiff fails to allege that Google intended to receive Plaintiff's PII and PHI.**

While there is no question that Plaintiff consented to the general use of Google Analytics, Plaintiff further alleges that Google received personal health information and personally identifiable information as well. But Plaintiff cannot plausibly allege that Google intended to receive PII or PHI because Google explicitly prohibits Websites from sending that type of information.

California Penal Code sections 631 and 632 are criminal statutes that require intentional conduct. *See* Cal. Penal Code § 631(a) (prohibiting "intentional[] tap[ping]"); Cal. Penal Code § 632(a) (prohibiting "intentional[] . . . recording . . . [of a] confidential communication"). The mens rea element cannot be met here, since Plaintiff does not plausibly allege that Google intentionally intercepted sensitive data.

"Intentional[ity]" for purposes of CIPA requires that whoever is recording a confidential communication "does so with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that [] use of the equipment will result in" such recording. *Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 876 (2023), *review denied* (Nov. 21, 2023). The "operative question" is "whether the defendant acted consciously and deliberately with the goal of intercepting wire communications." *Doe I v. Google LLC*, __ F. Supp. 3d __, No. 23-cv-02431-VC, 2024 WL 3490744, at *4 (N.D. Cal. July 22, 2024) (citation omitted). Here, in addition to the absence of *any* allegations suggesting that Google intended to receive PII and PHI, judicially noticeable materials show that such allegations could not be plausibly made, even in an amended pleading: Google's Terms of Service require that any website running Google Analytics not transmit any data "that Google could use or recognize as personally identifiable information." *See supra* at 11-13. Recognizing this in dismissing claims brought against Google under sections 631 and 632 in *Doe I v. Google LLC*, the court there reasoned that the fact "that Google repeatedly told developers not to send personally identifiable information through use of its [Google Analytics] source code" negated the element of intent. *Id.* at *3–5. The court further observed that Google's admonitions against providing

it with sensitive information via Google Analytics showed that "Google purposefully acted so as *not* to receive any personal health information." *Id.* at *4 (emphasis in original).

All Plaintiff actually alleges is that BlueChew shared data with Google via a widely used, publicly available analytics tool—a practice that BlueChew's Privacy Policy explicitly disclosed, and to which Plaintiff consented. *See* RJN Exs. 5-A, 5-B, and 5-C. Plaintiff does not allege that Google instructed BlueChew to send any data to Google, let alone sensitive data. Rather, Plaintiff alleges that "Google knew that the incorporation of its software onto [BlueChew.com] would result in its interception" of sensitive data. Compl. ¶ 10. This conclusory allegation is not enough. "CIPA liability only extends to willful or intentional conduct, so even if some [sensitive] information is inadvertently sent to Google—and subsequently gets [analyzed by Google]—the plaintiff[] fail[s] to plausibly allege Google is intentionally reading or learning the contents of the plaintiff['s] private . . . communications." *Doe I,* __ F. Supp. 3d __, 2024 WL 3490744, at *6; *accord United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015) (explaining that the word "intentionally," as used in federal wiretapping statute, means "purposefully and deliberately and not as a result of accident or mistake"). Further, to the extent Plaintiff's allegation that Google knew BlueChew's use of Google Analytics would inevitably disclose sensitive data is an allegation of constructive fraud—in effect, a "plot to steal private health information"—it should be subject "to the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Doe I*, __ F. Supp. 3d __, 2024 WL 3490744, at *5.

But Plaintiff's allegations regarding intent do not even satisfy the basic Rule 8 pleading standard. The mens rea requirement for this claim in particular should be strictly enforced given that CIPA is a penal statute that imposes criminal liability. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517–18 (1992) (plurality opinion) (applying rule of lenity to tax statute in civil context because statute had criminal applications and thus had to be interpreted consistently across contexts, in favor of defendant).

In any event, as explained above, Plaintiff's intent allegations contradict the judicially noticeable Google Terms of Service, which form a contract between Google and BlueChew. The Complaint contains screenshots that Plaintiff describes as showing how Google "is intercepting patients' PII, including first and last name, date of birth, and email address when they are completing the BlueChew medical profile," as well as "information related to patients' prescription medications." Compl. ¶¶ 63–65. Plaintiff's description of the screenshots is conclusory and vague, and they appear to have been made for litigation. They should be disregarded, but in any case, Plaintiff offers no reason to believe Google was aware or had knowledge of them.

Even taking the screenshots at face value, the point is that Plaintiff has not plausibly alleged that *Google* intended for *BlueChew* to send this information via Google Analytics, much less that *Google* did anything with it. At most, Plaintiff has alleged that BlueChew sent data to a Google server that Google did not know about, never read, and never used. Absent an allegation that *Google* did something wrong, BlueChew's violation of the Google Analytics terms is an issue to take up with BlueChew, not Google.

**3. Plaintiff's Section 631 claim fails because there is no allegation that Google did anything but act as a mere vendor, and because there is no allegation that data transmitted to Google constituted the "content" of a communication.**

Courts in this District have held that a vendor—including Google Analytics specifically—providing a service by which websites can record user interactions and use that data to perform certain functions is not "intercepting" a communication and thus cannot be liable under CIPA section 631. *E.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) (dismissing CIPA section 631 claim); *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (same); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *17 (N.D. Cal. Apr. 11, 2024) (same).

*Noom* is directly on point here. In that case, the defendant Noom used FullStory's software to capture certain user interactions, which allegedly led to "medical information" being disclosed to

FullStory without user consent. *Noom*, 533 F. Supp. 3d at 829. The court held that this behavior could not violate CIPA Section 631, since FullStory functioned as a "service provider" that was "an extension of Noom," and because the plaintiff did not plausibly allege that FullStory "aggregate[ed] [the] data for resale . . . [or that it] used the data itself." *Id.* at 832. A third-party vendor of analytics services cannot violate Section 631 when the vendor merely "provides a software service that captures its clients' data, hosts it on the [vendor's] servers, and allows the clients to analyze their data." *Noom*, 533 F. Supp. 3d at 832. That is precisely what is alleged here. *See, e.g.*, Compl. ¶ 62 (Google Analytics "allows companies and advertisers that utilize it" to perform various analytical functions); *id.* ¶ 67 ("Google Analytics also allows the company or advertiser to customize the processing of the data, such as applying filters."). Like the software vendor in *Noom*, Google simply provides a "tool" that allows websites like BlueChew.com to "record and analyze its own data in aid of [that website's] business," and thus cannot be liable under CIPA section 631. *Noom*, 533 F. Supp. 3d at 832-33; *see also Williams*, 2022 WL 17869275, at *3 (that the vendor stores and processes data on its own servers "is part of how the software tool functions" and does not by itself subject the vendor to liability).

Judge Chen's reasoning in *Kaiser* also applies here. In *Kaiser*, the court held that a third-party vendor's liability under CIPA depends on the degree of control exercised by the website in quesion—if the vendor operates as a mere extension of a website "subject to the [website's] control," the vendor cannot be held liable under the statute. *Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 at *17 (dismissing CIPA claim). Plaintiff's allegations make clear that any "usage" of allegedly collected data occurred at the direction of BlueChew. *See, e.g.*, Compl. ¶¶ 10, 62–63, 67–70. Websites have the ability to "customize the processing of the data" collected, meaning that whether and how Google processed any data from BlueChew.com is "subject to [BlueChew.com's] control and ability to limit the use of dissemination of the [sensitive] data." *Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *18. When Google's only action is to "collect and/or use information for [BlueChew's] benefit only," and not for Google's own benefit—not, "*e.g.*, to sell to others"—Google cannot be liable under Section 631. *Id.*

Plaintiff alleges that "data intercepted by Google Analytics" can be "linked with Google Ads" and "utilized for targeted advertising purposes," but he stops short of alleging that Google would ever be the entity performing this utilization, or that Google Analytics was so utilized by BlueChew here. Compl. ¶ 70. His allegation that "Google Analytics can . . . be linked with Google Ads" is a statement of possibility, not an allegation that such a link actually existed, much less because of any action by Google. *Id.* Plaintiff also cites a Google Analytics support page with information about how websites can link their Google Analytics and Google Ads accounts, which indicates that establishing a link requires affirmative steps by the website. *See id.* n.41; *see also* RJN Ex. 8. Other allegations likewise indicate that the websites, not Google, control when and what data are collected and sent to Google. *See, e.g.*, *id.*; *see also id.* at ¶ 67. Further, while Plaintiff alleges that Google "uses" analytics data for "ad targeting capabilities and data points on users," he offers no facts to support his assumption that a high-level description of how Google Analytics *generally* operates is applicable to the special case of data received by Google from health-related websites. *See* Compl. ¶ 69. Google's judicially noticeable policies and terms specifically show that Plaintiff's assumption on this point is unwarranted, and that data from certain types of websites, such as the websites of HIPAA-regulated entities, are handled differently—and not used for targeted advertising. *See* RJN Ex. 3 ("to protect user privacy, Google Analytics policies and terms mandate that no data be passed to Google that Google could recognize as personally identifiable information (PII)," and "HIPAA-regulated entities using Google Analytics must refrain from exposing to Google any data that may be considered Protected Health Information (PHI), even if not expressly described as PII in Google's contracts and policies").

Plaintiff's allegations thus show Google functioning as an extension of BlueChew and subject to BlueChew's control. *See Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 at *17 (dismissing CIPA claim where analytics vendor operated as extension of website and "subject to the [website's] control"). Because BlueChew authorized Google, as a vendor of analytics services, to analyze (and therefore to receive in the first place) Plaintiff's communications, Google could not have "intercepted" them within the meaning of CIPA as a matter of law. Cal. Penal Code § 631(a). This is another reason that the CIPA Section 631 claim should be dismissed.

Additionally, to state a claim under CIPA section 631, Plaintiff must also plausibly allege that Google intercepted the "contents" of a communication. *See Adler*, 2021 WL 4805435 at *3. He cannot. The data that Plaintiff alleges were transmitted to Google consist of his name, birthday, email address, and a pseudonymous identifier assigned by the website and indecipherable by Google. Compl. ¶¶ 64–65 ("each of BlueChew's medications are provided their own unique product ID"); *see also infra* at 21 (alias identifier unintelligible and not fairly characterized as medical information). This information is "record information," not the "contents of a communication under CIPA." *Noom*, 533 F.Supp 3d at 833 ("name, address and subscriber number or identity of a subscriber or customer" are not "contents"); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (user's identification information and record of browsing history were not "content"). This is yet another independent reason to dismiss Plaintiff's claim under Section 631.

**4. Plaintiff's CIPA section 632 claim fails because he does not plausibly allege a reasonable expectation of confidentiality.**

CIPA section 632 applies only to interceptions of *confidential* communications, meaning that liability requires the party whose communication is intercepted to have an "objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777, 41 P.3d 575, 582 (2002); *see also* Cal. Penal Code § 632(a). That requirement is not satisfied here for at least two reasons.

***First***, "a party that consents to having information collected has no reasonable expectation of privacy." *Javier*, 2021 WL 940319, at *2 (dismissing claim under CIPA section 632). As discussed *supra* at V.A.1, Google requires all websites that use Google Analytics to disclose their use of it, post a privacy policy, and obtain consent for such use where required by law. *See* RJN Ex. 2. Since BlueChew did this, Plaintiff (like all users of BlueChew) consented to the website's general use of Google Analytics as a condition of his account's creation.

***Second***, as courts in the Northern District have repeatedly recognized in similar circumstances, "California appeals courts have generally found that Internet-based communications," such as those at issue here, "are not 'confidential' within the meaning of section 632." *Campbell v. Facebook Inc.*, 77

F. Supp. 3d 836, 849 (N.D. Cal. 2014); *see also Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052–53 (N.D. Cal. 2018) (plaintiffs "fail to offer any support for their theory that internet-based communications can be considered 'confidential' under CIPA"; dismissing § 632 claim). To "rebut[] California's presumption against online confidentiality," a plaintiff must "plead unique, definite, circumstances" that show an "objectively reasonable expectation that … nobody … would record the [online] communications." *Rodriguez v. Google*, No. 20-CV-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (dismissing CIPA section 632 claim) (quotations and citation omitted). Plaintiff does not—and cannot—even come close to meeting this standard, as BlueChew's use of Google Analytics was fully disclosed and consented to, and there is no allegation that anything became of the alleged PII that BlueChew supposedly sent to a Google server, unbeknownst to and unwanted by Google, a circumstance that does not invade the reasonable expectations of privacy of a user who consented to give that information at least to BlueChew. Plaintiff's CIPA Section 632 claim should therefore be dismissed.

**B. Plaintiff fails to state a claim for invasion of privacy under the California Constitution.**

To state a claim for invasion of privacy under the California Constitution, a plaintiff must plausibly plead that "(1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (quoting *Hernandez*, 47 Cal. 4th at 287); *see also* Cal. Const. Art. 1 § 1. Plaintiff fails to make out the latter two elements.

**1. Plaintiff lacked a reasonable expectation of privacy.**

Plaintiff lacked a reasonable expectation of privacy. Again, "a party that consents to having information collected has no reasonable expectation of privacy." *Javier*, 2021 WL 940319 at *2. Because Plaintiff consented to the use of Google Analytics when he created his BlueChew account, he did not have a reasonable expectation of privacy vis-a-vis Google. *See id.* at *2 ("Consent generally defeats privacy claims").

Further, the standard Google Analytics information that Plaintiff alleges was transmitted to Google does not rise to the level of "medical-related communications" in which a "reasonable expectation" of privacy may exist. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). Plaintiff alleges that users of BlueChew may be "asked a range of health-related questions" while using the website, but there is no allegation that any answers that a user might provide to such questions constitute the data transmitted to Google. Compl. ¶ 19. And the communications that *are* allegedly sent to Google here are readily distinguishable from medical information for at least two reasons.

***First***, Plaintiff alleges that information such as name, birthday, and email address is "intercept[ed]" while a user is "*completing* the BlueChew medical profile." Compl. ¶ 64 (emphasis added). The results of this "medical profile" determine if a user is eligible for prescription medication in the first place. Visiting BlueChew and completing a profile does not indicate that Plaintiff, or any individual, has any medical condition at all. *See Cousin v. Sharp Healthcare*, No. 22-CV-2040-MMA (DDL), 2023 WL 4484441, at *3 (S.D. Cal. July 12, 2023) (data about plaintiffs' use of the "website to 'research . . . doctors,' 'look for providers,' and 'search for medical specialists'" was not PHI because "'nothing about [the] information relates specifically to plaintiffs' health'"). Without more, the fact that a user performs a query on a medical website is not PHI. *See Am. Hosp. Ass'n v. Becerra*, No. 4:23-CV-01110-P, 2024 WL 3075865, at *15 (N.D. Tex. June 20, 2024) ("metadata shared with third-party vendors can only reveal sensitive PHI if an unknown subjective intent is communicated"). Thus, while a user may have a reasonable expectation of privacy in their "patient-status," they are not a "patient" when they are completing a profile—and may never become one. Communications with BlueChew at that point thus cannot be categorically of the kind that a person could reasonably expect to remain confidential. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799.

***Second***, Plaintiff asserts that a pseudonymous identifier created by BlueChew to denote a particular medication and dosage was among the allegedly sensitive data collected, but he does not allege that Google was capable of determining that "id1" corresponds to "a 6-pack of BlueChew's 30 mg Sildenafil" tablets. Compl. ¶ 66. BlueChew's "unique" identifier, a string of characters that

BlueChew "assigned," is unintelligible, and Plaintiff makes no allegation that Google could derive any meaning from it. Certainly, it is not fairly characterized as medical information. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024), *on reconsideration in part,* No. EDCV 23-2092 JGB (DTBX), 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) (dismissing invasion-of-privacy claim where plaintiff "fail[ed] to plead that any medical information was disclosed" via analytics software); *see also* Compl. ¶ 40 ("Each of BlueChew's medications are assigned their own unique content ID."). Plaintiff has no reasonable expectation of privacy in a string of characters whose meaning, if any, he does not allege Google could decipher.

As for the vaguely described screenshots purporting to show PII sent via Google Analytics, apparently made for litigation, there is no explanation for how this violated plaintiff's reasonable expectation of privacy. Even if BlueChew chose to store such information on a Google server, that is not enough to plausibly indicate that Google made use of it, or even became aware it existed. It is this distinction that animated, for example, the court's decision in *Doe* dismissing all claims. *See Doe I*, __ F. Supp. 3d __, 2024 WL 3490744, at *6 ("plaintiffs fail to plausibly allege Google is intentionally reading or learning the contents of the plaintiffs' private health communications," "even if some private health information is inadvertently sent to Google").

**2. There was no egregious breach of social norms.**

Finally, Plaintiff cannot establish that any "intrusion" constituted "an egregious breach of the social norms." *See Hernandez* , 47 Cal.4th at 287. As discussed, Plaintiff alleges that Google collected his name, birthday, and email address. *See supra* at 18; Compl. ¶ 64. But courts in this District have found that the disclosure of such "personal data … does not constitute an egregious breach of social norms." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (neither does disclosure of device identifier or geolocation information). The pseudonymous identifier that Plaintiff alleges Google "intercept[ed]" does not convey sensitive information (particularly absent any allegation that Google was capable of deriving any meaning from it), so it likewise cannot form the basis for an egregious breach.

Further, an egregious breach cannot exist because Google required BlueChew to disclose BlueChew's use of Google Analytics, BlueChew did so, and Plaintiff consented to such use. Nor do Plaintiff's allegations suggest that Google collected or used any allegedly sensitive information for its own purposes, or "materially increase[d] the risk of dissemination of the collected information." *Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *19 (holding that the intrusion was not highly offensive where "Kaiser simply hired a third party to do work for Kaiser's own benefit"); *see also supra* at 15-17 (Google is merely a third party vendor).

## VI. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss the Complaint without leave to amend.

Dated: December 16, 2024

WILLKIE FARR & GALLAGHER LLP

Benedict Y. Hur
Simona A. Agnolucci
Eduardo E. Santacana
David D. Doak
Isabella McKinley Corbo

By: */s/ Benedict Y. Hur*
BENEDICT Y. HUR

Attorneys for Defendant
GOOGLE LLC

**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN 224018)
bhur@willkie.com
SIMONA A. AGNOLUCCI (SBN 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN 281668)
esantacana@willkie.com
DAVID D. DOAK (SBN 301319)
ddoak@willkie.com
ISABELLA MCKINLEY CORBO (SBN 346226)
icorbo@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

Attorneys for Defendant
**GOOGLE LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

M.D., individually and on behalf of all others similarly situated,

Plaintiff,

v.

GOOGLE LLC and META PLATFORMS, INC.,

Defendants.

Case No. 3:24-cv-06369-AMO

**[PROPOSED] ORDER GRANTING GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT**

The Motion to Dismiss Class Action Complaint (the "Motion"), filed by Defendant Google LLC on December 16, 2024, came on regularly for hearing on ______________________, 2025.

Having considered Defendant Google LLC's Motion, the Court hereby GRANTS it and dismisses the Class Action Complaint without leave to amend.

IT IS SO ORDERED.

DATED: __________

______________________________
Hon. Araceli Martínez-Olguín
U.S. District Judge