LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| M.D., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC and META PLATFORMS, INC.,<br><br>Defendants | Case No. 3:24-cv-06369-AMO<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing: July 10, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 10—19th Floor<br>Judge: Hon. Araceli Martínez-Olguín |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on July 10, 2025 at 2:00 p.m., before the Honorable Araceli Martínez-Olguín, United States District Court, Courtroom 10, 19th Floor, 450 Golden Gate Ave., San Francisco, California, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move for an order dismissing Plaintiff M.D.'s Class Action Complaint (Dkt. 1) for failure to state a claim under Rule 12(b)(6). This motion is based on this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument; and any other matters properly before the Court.

## STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should dismiss the Class Action Complaint for failure to state any claim upon which relief can be granted under Rule 12(b)(6).

Dated: December 16, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ Melanie M. Blunschi
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. The Meta Pixel ..... 3

B. Meta's Business Tools Terms ..... 4

C. BlueChew's Terms And Privacy Policy ..... 5

D. Plaintiff's Complaint ..... 6

III. LEGAL STANDARD ..... 7

IV. ARGUMENT ..... 7

A. All Of Plaintiff's Claims Against Meta Fail Because Plaintiff Consented To Meta's Receipt Of His Data ..... 8

B. All Of Plaintiff's Claims Against Meta Fail Because He Fails To Allege That Meta Intended To Intercept Sensitive Data ..... 11

C. Each Of Plaintiff's Claims Fails For Additional Reasons ..... 13

1. Plaintiff's CIPA Claims Are Barred By The Statute Of Limitations ..... 14

2. Plaintiff's CIPA Section 631 Claim Fails Under The Party Exception ..... 15

3. Plaintiff's Claim Under Clause One Of Section 631(a) Fails Because Plaintiff Does Not Allege Telephonic Communications ..... 17

4. Plaintiff's CIPA Section 632 Claim Fails Because The Meta Pixel Is Not A Device ..... 18

5. Plaintiff's Invasion Of Privacy Claim Fails Because Plaintiff Does Not Plead Highly Offensive Conduct ..... 19

V. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .......... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7, 12

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 3, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Belluomini v. Citigroup Inc.*,
2013 WL 5645168 (N.D. Cal. Oct. 16, 2013) .......... 19

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 14

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) .......... 13

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 15, 16, 17, 18

*Davis v. Fresno Unified Sch. Dist.*,
14 Cal. 5th 671 (2023) .......... 19

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. Jul. 22, 2024) .......... passim

*Doe, et al. v. GoodRx Holdings, Inc., et al.*,
No. 3:23-cv-00501-AMO .......... 1

*Eisenberg v. Citibank, NA*,
787 F. App'x 929 (9th Cir. 2019) .......... 15

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......... 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 19, 20

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 8

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (N.D. Cal. 2023) ........ 17

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........ 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........ 19

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 19

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 19, 20

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 15

*Kent v. Microsoft Corp.*,
2013 WL 3353875 (C.D. Cal. July 1, 2013) ........ 10

*Lloyd v. Facebook, Inc.*,
2023 WL 1802415 (N.D. Cal. Feb. 7, 2023) ........ 10

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) ........ 8, 10, 12

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ........ 20

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ........ 18

*New Mexico ex rel. Balderas v. Google, LLC*,
489 F. Supp. 3d 1254 (D.N.M. 2020) ........ 8

*People v. Braden*,
14 Cal. 5th 791 (2023) ........ 18

*People v. Gray*,
58 Cal. 4th 901 (2014) ........ 18

*Plumlee v. Pfizer, Inc.*,
2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ........ 14

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........ 15

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015) ........ 7

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 8

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ........ 10

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 9, 10

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........ 9

*Starzinksi, et al. v. Meta Platforms, Inc.*,
No. 3:24-cv-04501-AMO ........ 1

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 16

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ........ 11, 12

*Vartanian v. VW Credit, Inc.*,
2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) ........ 12

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 15, 17

## STATUTES

Cal. Civ. Code § 3515 ........ 8

Cal. Penal Code § 631(a) ........ passim

Cal. Penal Code § 632 ........ passim

## RULES

Rule 12(b)(6) ........ 7

## OTHER AUTHORITIES

Device, Merriam-Webster Online (https://www.merriam-webster.com/dictionary/device) (2017) ........ 21

Google Dictionary, www.google.com/search?q=Dictionary (2017) ........ 21

## I. INTRODUCTION

This case is one of a spate of cases where plaintiffs are testing the limits of California's half-century-old wiretap laws to see if they can extract payments from large, California-based companies like Meta—this is at least the third such case pending before this Court.[1] As is common in these cases, Plaintiff here wrongly seeks to blame Meta for alleged wiretapping, eavesdropping, and invasion of privacy based on a third-party website's (here, BlueChew's) use of source code (the "Meta Pixel") that Meta makes publicly available to web developers to help them better understand and reach users of their websites. But Plaintiff's allegations about *BlueChew*'s alleged wrongdoing fail to state a claim against Meta—especially because Meta, through its Business Tools Terms, forbade BlueChew from sending "health" information, "sensitive" information, or any other information without proper consent to do so.

Websites, like BlueChew, can use the Meta Pixel to collect certain data, such as data reflecting the actions a user takes on the website, and can transmit that data to Meta. Developers of those websites, not Meta, choose whether to use this tool, where to place it on their websites, and how to configure it, including choosing what information they want to track and send to Meta. There is "nothing inherently unlawful" about the Meta Pixel, or about Meta offering its source code to the public. *Doe I v. Google LLC*, 2024 WL 3490744, at *1, 4 (N.D. Cal. Jul. 22, 2024) ("*Google Pixel*") (dismissing wiretapping and other claims against Google based on healthcare providers' use of similar tool). To the contrary, pixels are ubiquitous and helpful internet tools offered by numerous companies and used on thousands of websites to help web developers analyze and improve the user experience.

Plaintiff's complaint nevertheless turns on BlueChew's alleged collection and transmission of his data through the Meta Pixel. But Plaintiff ignores that BlueChew users must consent to BlueChew's Privacy Policy, which discloses that BlueChew "automatically collect[s]" information about users' use of the website through "cookies, web beacons, and other technologies" and that BlueChew may share personally identifiable information, including health

---

[1] *See Doe, et al. v. GoodRx Holdings, Inc., et al.*, No. 3:23-cv-00501-AMO; *Starzinksi, et al. v. Meta Platforms, Inc.*, No. 3:24-cv-04501-AMO.

information, with service providers to support the BlueChew website. Ex. 10 at 2.[2] And Plaintiff likewise ignores that, regardless of BlueChew's disclosures, Meta's Business Tools Terms *forbid* websites from sending sensitive information to Meta. In particular, those terms require web developers to "represent and warrant that [they] will not share" with Meta data through the Pixel "that [they] know or reasonably should know . . . includes health . . . information" or any "sensitive" information. Ex. 12 at 1. Plaintiff cannot hold Meta liable for conduct to which he consented, much less for the alleged wrongdoing of a third-party developer that allegedly used the Meta Pixel improperly and in violation of Meta's terms with that developer. All of Plaintiff's claims—under Sections 631 and 632 of the California Invasion of Privacy Act ("CIPA"), and for constitutional invasion of privacy—fail and should be dismissed with prejudice.

*First*, Plaintiff consented to Meta's receipt of his data. Through its Privacy Policy, which all BlueChew customers must agree to, BlueChew expressly put Plaintiff on notice that it collects information about users' use of the website through a variety of technologies and may share personally identifiable information, including health information, with third-party service providers. Plaintiff, who alleges he ordered prescription medication through BlueChew, was therefore on notice of, and agreed to, BlueChew's sharing of data, including through technologies like the Meta Pixel. Plaintiff thus fails to allege—and cannot allege—lack of consent to Meta's receipt of his data.

*Second*, Plaintiff fails to allege that Meta acted with the requisite intent to intercept sensitive health information. Plaintiff's allegations that *BlueChew* configured the Meta Pixel to improperly collect and disclose his "confidential [prescription] information," Compl. ¶¶ 7, 26-27, fail to show that *Meta* had the necessary *intent to intercept* that allegedly sensitive health information about Plaintiff. Plaintiff's complaint lacks any factual allegations that create a plausible inference regarding Meta's intent, and Meta's Business Tools Terms prohibiting websites from sending any "sensitive" or "health" information demonstrate that Meta "purposefully acted so as *not* to receive any personal health information." *Google Pixel*, 2024 WL

---

[2] All "Ex." references are to the exhibits attached to the concurrently filed Declaration of Melanie M. Blunschi.

3490744, at *4; *see also B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) (dismissing aiding-and-abetting CIPA claim against healthcare provider for failure to allege Meta's intent to receive "health data"). This too defeats all of Plaintiff's claims against Meta.

*Finally*, Plaintiff's claims also fail for a host of additional, claim-specific reasons. Both of Plaintiff's CIPA claims are squarely barred by the one-year statute of limitations, because they are based on website visits that occurred well over a year ago. Plaintiff's Section 631(a) claim is barred by the party exception, because, as to the allegedly sensitive data at issue, Plaintiff does not allege that Meta did anything at all beyond making the Meta Pixel available as a tool for BlueChew, a party to the communications at issue. And Plaintiff's Section 631(a) claim also fails to the extent it is based on clause one, because that clause applies only to information transmitted over telephone wires. Plaintiff's Section 632 claim fails because the Meta Pixel is not a "device" within the meaning of that section. And Plaintiff's invasion of privacy claim fails because Meta's receipt of information is not the kind of highly offensive conduct this claim requires.

Plaintiff's claims against Meta should be dismissed in their entirety.

## II. BACKGROUND[3]

### A. The Meta Pixel

The Meta Pixel is a piece of code that many businesses choose to integrate into their websites. Class Action Complaint, Dkt. 1 ("Compl.") ¶ 28. The Meta Pixel allows businesses to "measure the effectiveness of their advertising" and "understand[] actions people take on [their] websites."[4] *See id.* Website developers, rather than Meta, decide whether to "integrate" the Meta Pixel on their websites, *id.* ¶ 26, and "advertisers can choose" which actions to track through the Meta Pixel, *id.* ¶ 27.[5] These actions are referred to as "events." *Id.* Although Meta provides

[3] Unless otherwise indicated, the facts recited herein are based on the allegations of the complaint and are accepted as true only for purposes of this motion.

[4] "About Meta Pixel," Ex. 1 at 1 (cited at Compl. ¶¶ 24 n.9, 29 n.21, 34 n.25).

[5] *See* "Best practices for Meta Pixel setup," Ex. 2 at 1-2 (cited at Compl. ¶ 27 n.17).

certain "standard events," *id.*, like adding a product to a shopping cart,[6] Meta does not require any particular events to be used—to the contrary, web developers choose which events to use, and Meta explains how to configure the Pixel so that it does *not* capture certain data.[7] For example, Meta explains that the Meta Pixel "only" captures events "on the pages you've added them to,"[8] and provides instructions for developers to configure the Meta Pixel "not to send [certain] additional information" or to "restrict the data sent to one of the Pixels on your website."[9]

For the events that web developers do configure the Meta Pixel to collect, web developers may view that information on an "Events Manager" page. *See id.* ¶ 30. Through that data, the Meta Pixel helps businesses to "understand and measure their products and services" and to "better reach and serve people who might be interested in their products and services." *Id.* ¶ 26. Businesses can use this data about how their users interact with their websites to understand the effectiveness of their advertising.[10] Businesses can also reach users of Meta's services—like Facebook or Instagram users—who have already engaged with their products by showing them targeted ads on Meta's services. *See id.* ¶¶ 25-26, 30.

**B. Meta's Business Tools Terms**

Meta sets forth restrictions on how the Meta Pixel may be used through its Business Tools Terms, which bind the third-party web developers and businesses that choose to use the Meta Pixel. *See* 2023 Business Tools Terms, Ex. 12 at 1 (explaining that the "Business Tools Terms govern the use of" the data web developers collect through the Meta Pixel); 2020 Business Tools Terms, Ex. 13 at 1 (same). Meta's Business Tools Terms require businesses using the Meta Pixel to "represent and warrant that [they] have provided robust and sufficiently prominent notice" "on each web page where [Meta's] pixels are used." Ex. 12 at 2; Ex. 13 at 2 (same). The Business Tools Terms also require businesses to represent that they "have all of the necessary rights and

---

[6] "About standard and custom website events," Ex. 3 at 2 (cited at Compl. ¶ 27 n.19); *see* "Best practices for Meta Pixel setup," Ex. 2 (cited at Compl. ¶ 27 n.17).

[7] "Advanced – Meta Pixel," Ex. 4 at 8-9 (cited at Compl. ¶ 27 n.17).

[8] "Best practices for Meta Pixel setup," Ex. 2 at 3 (cited at Compl. ¶ 27 n.17).

[9] "Advanced – Meta Pixel," Ex. 4 at 8 (cited at Compl. ¶ 27 n.17).

[10] "About Meta Pixel," Ex. 1 at 1 (cited at Compl. ¶¶ 24 n.9, 29 n.21, 34 n.25); *see also* Compl. ¶¶ 29-30.

permissions and a lawful basis (in compliance with all applicable laws, regulations and industry guidelines) for the disclosure and use" of data they send through the Meta Pixel. Ex. 12 at 1; Ex. 13 at 1 (same). And the Business Tools Terms also specifically prohibit websites from sending sensitive data to Meta. In particular, the terms require Meta Pixel users to "represent and warrant that [the business] will not share Business Tool Data with us that [it] know[s] or reasonably should know . . . includes health . . . information" or "sensitive" information. Ex. 12 at 1; *see also* Ex. 13 at 1 (requiring Meta Pixel users to "agree" to same restriction).

**C. BlueChew's Terms And Privacy Policy**

Plaintiff alleges that BlueChew is "a telemedicine platform" that offers prescription erectile dysfunction medications. Compl. ¶ 15. BlueChew's website allows users to purchase medication after completing a "medical profile" and questionnaire. *Id.* ¶¶ 18-20. Before a user completes that medical profile or otherwise enters personal information or purchases a product, he must create a BlueChew account and agree to BlueChew's Terms & Conditions. *See* Exs. 5-7 (account registration pages); *see also* Ex. 8 at 2 (BlueChew Terms) ("[I]f you register for an account, you are accepting our Privacy Policy."); Ex. 10 at 1 (BlueChew Privacy Policy) (explaining that "registration is required to use" BlueChew's services).

BlueChew's Terms link to the Privacy Policy, which is "incorporated into" the Terms & Conditions and which "explains how [BlueChew] may collect, use, share and disclose your information." Ex. 8 at 2. As to collection and use of information, BlueChew's Privacy Policy discloses that BlueChew "may automatically collect information about your use of our Websites and Services through cookies, web beacons, and other technologies," including "web pages you view," "links you click," and "pages visited." Ex. 10 at 2. And it further discloses that BlueChew "may combine this information [collected through technologies] with other information [it has] collected," including "name" and "other personal information." *Id.* The Policy explains that BlueChew may use the information for a range of purposes, including to "display advertising on [its] Websites" and "analyze usage of and improve" its website and services. *Id.*

The Privacy Policy also discloses that BlueChew shares certain information with third parties. In particular, under a section entitled "Personally Identifiable Information," BlueChew

discloses that it may "share information about you, including health information and other information that personally identifies you . . . with service providers that [it] use[s] to support the Websites or otherwise in connection with administering and providing [its] Services." *Id.*[11]

**D. Plaintiff's Complaint**

Plaintiff alleges that he "was prescribed and ordered" erectile dysfunction medication through the BlueChew website on December 6, 2022 and January 4, 2023—nearly two years ago. Compl. ¶ 7. Plaintiff further alleges that "advertisers, like BlueChew," can "integrate" the Meta Pixel "into their website[s]," *id.* ¶ 28, and that BlueChew "disclosed" purportedly "confidential information related to his medical prescription" to Google and Meta through their "proprietary software codes," *i.e.*, their pixels. *Id.* ¶ 7. Specifically, Plaintiff alleges that BlueChew transmits to Meta through the Meta Pixel, without user consent, limited basic information like name and date of birth, *see id.* ¶¶ 36, 38; the fact that a user has registered for an account on the BlueChew website, *id.* ¶¶ 36-37; and the "content ID" of the medication being purchased, which appears as a number, *see id.* ¶¶ 36-40. Plaintiff alleges that Meta "can [] match" these pieces of information to one another, *id.* ¶ 52, and that Meta can use the numerical content ID to determine the medication purchased, *id.* ¶ 40. Plaintiff makes similar allegations with respect to Google Analytics. *Id.* ¶¶ 55-72.

Plaintiff also includes a variety of allegations specific to Facebook users, but he omits any allegation that he was a Facebook user. For example, Plaintiff alleges that BlueChew "disclosed," through cookies, Facebook IDs that Meta could use to match data sent through the Meta Pixel to Facebook users, *see id.* ¶¶ 41-51, but Plaintiff alleges that BlueChew transmitted a "smaller set of cookies" "[i]f a visitor had never created a[] [Facebook] account," *id.* ¶ 45. Plaintiff nowhere alleges what was smaller about that cookie set (presumably it did not contain Facebook IDs) or how (and whether) Meta used non-user cookies. Plaintiff also alleges that Meta touted its "ability to target [its] *users*" with advertising, *id.* ¶¶ 24, 34 (emphasis added), through its Core Audiences and Custom Audiences services, *id.* ¶¶ 24-25, 32, 34, 53. Plaintiff includes no factual allegations as to whether or how Meta targeted *non*-Meta users based on the allegedly sensitive data that was

---

[11] The 2023 version of the Privacy Policy contains substantially similar language. *See* Ex. 11.

allegedly transmitted through the Meta Pixel.

Plaintiff alleges that, at some point after his purchase on BlueChew's website, Plaintiff received targeted advertisements (on unspecified websites) "relating to erectile dysfunction medications," but does not allege whether those ads were served by Meta, Google, or another entity. *Id.* ¶ 8.

Plaintiff brings claims against Meta for its alleged receipt of information under Sections 631 and 632 of CIPA and for invasion of privacy under the California Constitution.

## III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (cleaned up); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). A claim also may be dismissed based on a dispositive issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

## IV. ARGUMENT

Plaintiff's complaint alleges that *BlueChew* used Meta's free, publicly available Pixel on its website and that *BlueChew* configured the Meta Pixel to send certain information to Meta, supposedly without proper disclosures or consent. Those allegations fail to state any claim *against Meta*. First, BlueChew disclosed to its users, including Plaintiff, that it used various technologies to collect information about usage of the BlueChew website and that it could connect that information to personal information and share it with third-party service providers. Plaintiff was therefore on notice of, and consented to, Meta's receipt of information about his usage of BlueChew through the Meta Pixel. Second, each of Plaintiff's claims fails because Plaintiff cannot allege that Meta *intended* to intercept any "health" or "sensitive" data—to the contrary, it was BlueChew that chose to install and configured the Meta Pixel on its own website, including

deciding what data to transmit. Plaintiff has not alleged that Meta made those decisions, much less that Meta determined what specific information BlueChew collected or sent through the Meta Pixel. In fact, Meta offered its Pixel subject to terms *prohibiting* websites from transmitting any sensitive data. That is the antithesis of the intent that Plaintiff's claims require. And even aside from these failures, Plaintiff's claims suffer from additional defects that also compel dismissal.

### A. All Of Plaintiff's Claims Against Meta Fail Because Plaintiff Consented To Meta's Receipt Of His Data

All of Plaintiff's claims fail out of the gate because Plaintiff consented to Meta's receipt of information about his activity on BlueChew through the Meta Pixel. An individual who is on notice of and agrees to data collection cannot claim to have been wronged by it. *See, e.g.*, Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it."). And because "lack of consent is an element" of Plaintiff's CIPA claims, it is Plaintiff's burden to allege facts showing lack of consent. *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2, 4-5 (N.D. Cal. July 28, 2021) (dismissing CIPA claims where "terms plainly disclose[d]" data collection); *see also* Cal. Penal Code §§ 631(a), 632(a) (imposing liability for wiretapping and eavesdropping "without the consent of all parties"). Similarly, Plaintiff cannot allege a "reasonable expectation of privacy," as required to state his invasion of privacy claim, if he was on notice of the data collection about which he complains. *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (affirming dismissal of invasion of privacy claim because Google "expressly disclosed" tracking on third-party apps); *see also, e.g., Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024) (similar). Plaintiff's allegations do not establish lack of consent to Meta's alleged receipt of information, foreclosing Plaintiff's claims against Meta.

Indeed, Plaintiff's allegations in this regard are wholly conclusory: he alleges that his communications were intercepted "without [his] consent," Compl. ¶ 72; *see id.* ¶¶ 9, 54, 102, 107, and that he had a "reasonable expectation of privacy" in his information, *id.* ¶¶ 98, 109. Such conclusory allegations are insufficient on their face. *See, e.g.*, *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1263 (D.N.M. 2020) (holding that plaintiffs' "conclusory" allegation of "inadequate notice" was insufficient to state privacy-related claim). Instead, Plaintiff

must allege *facts* demonstrating his lack of consent—*i.e.*, facts showing that "the circumstances, considered as a whole" would not have permitted a "reasonable person" to understand "that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018).

Here, Plaintiff fails to plausibly allege *any* facts demonstrating that he did not consent to Meta's receipt of his information from BlueChew through Meta's Pixel. Nor could he. Plaintiff makes the conclusory allegation that "[a]t no point during the [BlueChew] checkout process are patients alerted that information related to their prescription medication is being intercepted by third parties." Compl. ¶ 21. But that allegation is belied by BlueChew's website itself, which Plaintiff incorporates into the complaint by reference. *See id.* ¶¶ 16-20; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) (explaining that courts need not accept as true "conclusory allegations which are contradicted by documents referred to in the complaint" or "matters properly subject to judicial notice" (citation omitted)). After a visitor navigates to BlueChew's website and clicks "choose plan," *see* Compl. ¶ 17 (Fig. 2), the visitor is asked to sign up for an account. Ex. 5 at 1; Ex. 6 at 1. To sign up, a visitor must affirmatively "agree to [the] Terms & Conditions," which are hyperlinked and which incorporate the Privacy Policy. *Id*. The visitor cannot proceed to enter personal information or order medication without logging into a preexisting account or signing up for a new one. *Id.* Because Plaintiff alleges he "was prescribed and ordered" medication through BlueChew's website, Compl. ¶ 7, he necessarily signed up for an account and agreed to BlueChew's Privacy Policy in doing so.

In agreeing to BlueChew's Privacy Policy, Plaintiff consented to the data sharing of which he now complains. BlueChew's Privacy Policy discloses both that BlueChew may collect and use information about users' use of its website and that it may *share* that information. First, the Privacy Policy states that BlueChew "may automatically collect information" about users' use of its website, including "web pages you view," "links you click," and "pages visited," and that it may do so through "cookies, web beacons, and other technologies." Ex. 10 at 2. The Policy further explains that BlueChew "may combine this information [collected through technologies] with other information [it has] collected," including "name" and "other personal information." *Id*. The

Policy explains that BlueChew may use this information for a range of purposes, including to "analyze usage of and improve" its website and services. *Id.* Second, the Privacy Policy also expressly discloses BlueChew's sharing of such information. Specifically, under a section entitled "Personally Identifiable Information," BlueChew discloses that it may "share information about you, including health information and other information that personally identifies you" with third-party service providers to "support" its website or "otherwise in connection with administering and providing [its] Services." *Id.*[12] Through these disclosures, BlueChew secured users', including Plaintiff's, consent to the conduct Plaintiff complains about here: Plaintiff alleges that BlueChew used Meta's Pixel to track users' usage of its website, *see* Compl. ¶¶ 28-30, and shared that information with Meta, including to better "understand and measure [BlueChew's] products and services," *id.* ¶ 26. Given BlueChew's disclosures, Plaintiff cannot allege lack of consent or any reasonable expectation of privacy as to Meta's receipt of his purchase data from BlueChew.[13]

Plaintiff's CIPA and invasion of privacy claims thus fail because Plaintiff cannot allege lack of consent or a reasonable expectation of privacy. And because "[n]o further allegations could allow Plaintiff[] to bring claims 'arising out of conduct which [he] consented to," amendment "would be futile." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 956 (N.D. Cal. 2017) (quoting *Kent v. Microsoft Corp.*, 2013 WL 3353875, at *6 (C.D. Cal. July 1, 2013)), *aff'd*, 745 F. App'x 8

---

[12] The Privacy Policy includes a separate section discussing BlueChew's use of cookies, as well as the potential for network advertisers and certain third-party analytics services to use tracking mechanisms on its website. *See* Ex. 10 at 4. Those disclosures confirm that BlueChew users' usage of the website may be tracked. And, while certain of those disclosures note that BlueChew "do[es] not share personal information" with the third parties that provide those services, *id.*, that language does not displace BlueChew's broader reservation that it "may share" health information and other personally identifiable information with "service providers that [it] use[s] to support the Websites." *Id.* at 2.

[13] If Plaintiff is in fact a Facebook user, then he also consented to Meta's receipt of data by agreeing to Meta's terms and policies. Like "all users," Plaintiff would have been required to "agree" to Meta's Terms (and incorporated policies) "to create a Facebook account." *Lloyd v. Facebook, Inc.*, 2023 WL 1802415, at *1 (N.D. Cal. Feb. 7, 2023). And the Ninth Circuit has repeatedly held that Meta's policies disclose the conduct alleged here: "(a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes." *Smith*, 745 F. App'x at 8-9. Facebook users therefore consent to such conduct. *Id.* (dismissing CIPA and privacy claims based on consent); *see Lloyd*, 2024 WL 3325389, at *2 ("Facebook's data policy gives clear notice that third party partners may share data with Facebook."). Plaintiff studiously avoids saying whether he is a Facebook user in the complaint, but if he is, Meta's policies would provide an independent basis for establishing consent.

(9th Cir. 2018). Plaintiff's claims should therefore be dismissed with prejudice.

**B. All Of Plaintiff's Claims Against Meta Fail Because He Fails To Allege That Meta Intended To Intercept Sensitive Data**

While Plaintiff's consent alone defeats his claims, those claims also fail for a second reason: Each requires Plaintiff to allege that Meta *intentionally* or *willfully* intercepted his allegedly sensitive information. *See* Cal. Penal Code § 631(a) (imposing liability on anyone who "intentionally" taps a line or "willfully" reads or learns contents of communications in transit without consent); *id.* § 632(a) (imposing liability on a person who "intentionally" uses a device to "eavesdrop upon" or "record [a] confidential communication"); *Google Pixel*, 2024 WL 3490744, at *7 (explaining that intent "is a necessary element of an invasion of privacy claim"); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286, 295 (2009) (requiring an "intentional[] intru[sion]" for invasion of privacy). But Plaintiff's allegations that BlueChew disclosed the content ID of the medication he purchased do not plausibly show that Meta *intentionally* or *willfully* intercepted his information, for two independently sufficient reasons. First, Plaintiff offers only conclusory allegations regarding Meta's intent without alleging any facts to support those conclusions. Second, Meta's Business Tools Terms, which *prohibit* businesses from sharing such information, demonstrate that Meta "purposefully acted so as *not* to receive any personal health information." *Google Pixel*, 2024 WL 3490744, at *4.

To establish intent, Plaintiff must allege that Meta acquired the alleged data "purposefully and deliberately and not as a result of accident or mistake." *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015) (citation omitted); *see also Google Pixel*, 2024 WL 3490744, at *4 (applying *Christensen* standard to CIPA claims). That is, Plaintiff must allege facts showing that Meta "acted consciously and deliberately with the *goal* of intercepting" his health information. *Christensen*, 828 F.3d at 791 (emphasis added).

Plaintiff's allegations here fall far short. Plaintiff makes conclusory assertions that Meta "intentionally tapped" internet lines and "willfully" read or learned the contents of communications in transit. Compl. ¶¶ 89-90. But Plaintiff admits that it was *BlueChew*, not Meta, that chose to install the Meta Pixel on its website and selected particular data to transmit. *See id.*

¶ 26 (alleging that "advertisers can integrate" the Pixel into their websites); *id.* ¶ 27 ("advertisers can choose" what to track via the Pixel). Plaintiff's allegation that the Meta Pixel is "automatically" configured to send certain information, *id.* ¶ 27, is irrelevant for that same reason—whether or not the Pixel is initially configured in a certain way, *web developers* are responsible for choosing whether and how to integrate the Pixel onto their websites.[14] Plaintiff does not allege any facts suggesting *Meta* chose whether, where, and how BlueChew installed and configured the Pixel. Plaintiff's conclusory allegations are therefore insufficient to establish intent. *See, e.g.*, *Iqbal*, 556 U.S. at 686-87 ("conclusory" allegation of discriminatory intent insufficient); *Lloyd*, 2024 WL 3325389, at *1 ("conclusory assertion" of intent based on misconduct of third parties insufficient); *Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (intent allegations insufficient where they did not describe "factual circumstances" that made defendant's intent "plausible").

Plaintiff also faults Meta for allegedly failing to "prevent" the transmission of sensitive data through the Meta Pixel and for the "continued incorporation of" the Meta Pixel on BlueChew's website. Compl. ¶ 11. But these allegations do not establish "purposeful[] and deliberate[]" action on Meta's part. *Google Pixel*, 2024 WL 3490744, at *4 (quoting *Christensen*, 828 F.3d at 790). As Judge Chhabria explained in *Google Pixel*, the failure to "*prevent*" healthcare providers from using source code does not "somehow reveal[] an *intent* to receive private health information"; nor does the "inadvertent[]" receipt or use of such data constitute "willful or intentional conduct." *Id.* at *4, *6 (emphases added). Similarly, Plaintiff's allegation that a Meta employee purportedly believed Meta lacked adequate "control" over "how [its] systems *use* data," see Compl. ¶ 11 (emphasis added), fails to allege purposeful and deliberate action, much less an intent to *intercept*—*i.e.,* read or learn in transit—any sensitive data. Plaintiff thus alleges no facts regarding Meta's supposed intent to obtain the data at issue here.

---

[14] As Plaintiff's own cited sources make clear, a web developer can avoid sending particular information by, among other things, simply not integrating the Meta Pixel on a particular web page or changing its configuration. *See* "Best practices for Meta Pixel setup," Ex. 2 at 2 (cited at Compl. ¶ 27 n.17) (explaining that standard events are included "only on the pages you added them to"); "Advanced – Meta Pixel," Ex. 4 at 9 (cited at Compl. ¶ 27 n.17) (describing how to implement additional code to prevent transmission of certain data).

Nor could he. Meta's Business Tools Terms expressly instruct websites that they must have "all of the necessary rights and permissions and a lawful basis" to collect and use the data they share. Ex. 12 at 1. And Meta also goes further and prohibits the sharing of certain information, requiring businesses that use the Meta Pixel to "represent and warrant that [they] will not share Business Tool Data with [Meta] that [they] know or reasonably should know . . . includes health . . . information" or "sensitive" information. *Id.* Accordingly, to the extent BlueChew integrated the Meta Pixel on its website in a way that transmitted health or otherwise sensitive information, *see* Compl. ¶¶ 11, 98, 103, 105, BlueChew violated Meta's Business Tools Terms. But BlueChew's alleged failure to comply with Meta's terms cannot demonstrate *Meta*'s intent. Indeed, by placing those restrictions on BlueChew, Meta "purposefully acted so as *not* to receive any personal health information." *Google Pixel*, 2024 WL 3490744, at *4. As another court recently concluded, the Business Tools Terms show that "Meta either had no intention of receiving the data at issue or had some alternative mens rea not rising to the level of intentionality." *B.K.*, 2024 WL 1343305, at *7 (dismissing aiding-and-abetting CIPA claim for failure to allege predicate violation by Meta); *cf. Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016) (holding that plaintiff's allegation that Facebook failed to remove offensive content did not plausibly allege intentional conduct by Facebook).

Each of Plaintiff's claims should accordingly be dismissed.

### C. Each Of Plaintiff's Claims Fails For Additional Reasons

As explained above, all of Plaintiff's claims fail because he consented to Meta's receipt of his data and has not plausibly alleged that Meta intended to intercept any sensitive data. But each of Plaintiff's claims suffer from additional defects as well. Both of Plaintiff's CIPA claims are barred by the statute of limitations. Plaintiff's CIPA Section 631(a) claim also fails because, with respect to the allegedly sensitive data at issue, the Meta Pixel was merely a tool used by BlueChew, a party to the communication. And that claim also fails to the extent it is based on tapping "any telephone or telegraph wire" because Plaintiff alleges only interception of internet communications, not telephone or telegraph communications. Plaintiff's Section 632(a) claim should be dismissed because the Meta Pixel is not a "device" within the meaning of the statute.

And Plaintiff's privacy claim should be dismissed because he fails to allege the type of highly offensive conduct required to state such a claim.

**1. Plaintiff's CIPA Claims Are Barred By The Statute Of Limitations**

Even aside from the cross-cutting failures discussed above, Plaintiff's CIPA claims should be dismissed because they are both time-barred under CIPA's one-year statute of limitations. *See Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020). Plaintiff alleges that he "was prescribed and ordered" medication from BlueChew's website on December 6, 2022 and January 4, 2023. Compl. ¶ 7. But Plaintiff did not file his complaint until September 10, 2024, well over a year after his alleged visits to BlueChew's website. Plaintiff's CIPA claims are therefore barred by the statute of limitations.

Plaintiff does not allege any facts that could establish his entitlement to tolling of the statute of limitations. Plaintiff includes only a single, conclusory allegation that "[d]ue to the surreptitious nature of the interceptions at issue, Plaintiff did not realize confidential information related to his medical prescription was disclosed to third parties until September 2024." *Id.* To the extent that allegation is an attempt to invoke the discovery rule, it falls far short. Tolling under the discovery rule "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (citation omitted). The rule requires that a plaintiff "specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Id.* at 808 (citation omitted); *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) (emphasizing that the "burden is on the plaintiff" to plead sufficient facts).

Here, Plaintiff alleges *nothing* about the manner of discovery. That alone is dispositive. And he also fails to allege facts suggesting he could not have made an earlier discovery, or that he acted with reasonable diligence. To the contrary, he alleges that he received "advertisements relating to erectile dysfunction medications" following his purchase, Compl. ¶ 8, which would have put him on inquiry notice of the conduct of which he now complains. Furthermore, although he refers to the "surreptitious nature of the interceptions," *id.* ¶ 7, Plaintiff ignores that the BlueChew Privacy Policy, to which he was required to agree before making his purchase,

specifically informed him of the data collection he challenges. As discussed above, that policy disclosed that BlueChew automatically collected information about users' use of its website through various technologies; that it could match such information to personal information; and that it could share personally identifiable information and health information with third-party service providers. *See supra* 9-10. Even assuming those disclosures were insufficient to establish consent (*but see supra* 9-10), they plainly put Plaintiff "on inquiry notice of a possible third party" that caused the "injury" he now claims. *See Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 902 (N.D. Cal. 2023) (rejecting application of discovery rule to CIPA claims where privacy policy stated defendant "'may use third party vendors to assist' it with the collection of visitors' personal information"). That is all that is required to start the clock for the statute of limitations. *See id.*; *see also Eisenberg v. Citibank, NA*, 787 F. App'x 929, 930-31 (9th Cir. 2019) (rejecting delayed discovery rule where loan documents gave plaintiff "constructive notice" of claim, even if she "did not read or understand" them). And Plaintiff alleges no other basis for tolling the statute of limitations. Accordingly, Plaintiff's CIPA claims should be dismissed because they are barred by the statute of limitations.

### 2. Plaintiff's CIPA Section 631 Claim Fails Under The Party Exception

Plaintiff's CIPA Section 631 claim also fails because, as to the allegedly sensitive information at issue, the Meta Pixel was merely a tool for BlueChew—a party to the communications. Under Section 631, a "person who is a 'party' to a communication is exempt from liability," and the party exception applies where third-party software can be used only to record conversations between a website and a customer. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002-03 (N.D. Cal. 2024) (Martínez-Olguín, J.). This rule stems from California's longstanding recognition that use of a tool like a tape recorder by a party to a conversation does *not* violate Section 631, even if the other party is unaware of the recorder. *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975). Accordingly, courts have recognized that a third party's software is not an "unannounced second auditor," in violation of Section 631, when the third party cannot use its record of an interaction for its own purposes, rather than the purposes of the party to the communication. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 970-71 (N.D. Cal. 2023) (citation

omitted) (discussing *Rogers*); *see also, e.g.*, *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 745-46 (N.D. Cal. 2023) (dismissing Section 631 claim where plaintiff alleged only that a third-party company's software "accesse[d] and analyze[d]" Home Depot's customer service chats in order "to understand what Home Depot customers want" and increase Home Depot sales). To avoid that obstacle, a plaintiff must "state sufficient factual allegations to support an inference that [the third party] is capable of using the intercepted information for another purpose"—*i.e.*, a purpose other than that of the party to the communication. *Cody*, 718 F. Supp. 3d at 1003 (dismissing Section 631 claim for failure to include such allegations).

Plaintiff fails to allege any such facts here with respect to his *own* information, as he must to state a claim. The complaint includes a conclusory assertion that "Defendants utilized Plaintiff's and Class Members' sensitive personal and health information for their own purposes"—specifically "for targeted advertising." Compl. ¶ 103. But Plaintiff's factual allegations in support of that assertion allege, at most, that Meta is capable of using information about its *users* for advertising purposes. *Id.* ¶¶ 24-25, 32, 34. That says nothing about whether Meta has the capability to use *Plaintiff's* personally identifiable information for Meta's own purposes, because Plaintiff does not allege he is a Facebook user.

Indeed, Plaintiff's complaint dedicates extensive space to allegations about Meta's interactions with and advertising to Facebook users, even though Plaintiff conspicuously omits any allegation that he is a Facebook user. Plaintiff begins by alleging that Facebook "users must provide their first and last name, along with their birthday and gender" to sign up for Facebook, *id.* ¶ 22, and then goes on to detail how Facebook allegedly "sells advertising space by highlighting its ability to target [those] *users*," *id.* ¶ 24 (emphasis added). Plaintiff alleges, for example, that Meta can "make inferences about *users*" based on data transmitted through the Meta Pixel and compile that information into datasets like Core Audiences and Custom Audiences. *Id.* ¶¶ 24-25 (emphasis added). Plaintiff also alleges that Meta uses data transmitted through the Pixel to assist "other *Facebook* advertisers" in reaching their preferred audiences. *Id.* ¶ 32 (emphasis altered). But, because Plaintiff does not allege he is a Facebook user, these allegations do not show whether

or how Meta could use *his* allegedly intercepted information for its own purposes.[15] And Plaintiff's general allegations that Meta used data it collects "for targeted advertising," *id.* ¶¶ 5, 103; *see also id.* ¶ 53, and that such data was not "deidentified," *id.* at ¶ 5, are not specific to Plaintiff's information, and by Plaintiff's own allegations, do not plausibly apply to *non*-user data at all.

In short, Plaintiff alleges no facts suggesting any mechanism by which Meta uses *non*-Facebook-user personally identifying data for targeted advertising. At a minimum, Plaintiff's allegations are too "generalized and vague" to show that Meta was "capable of using" Plaintiff's confidential prescription information for its own purposes. *Cody*, 718 F. Supp. 3d at 1002-03 (holding that allegations that owner of software sold "advertising space" and "harvest[ed] the [intercepted] chat transcripts for valuable data" were insufficient); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017 (N.D. Cal. 2023) (finding party exception applied where plaintiff failed to plead "non-conclusory factual allegations to support the use capabilities of the third-party software company" as to the intercepted information). Without such allegations, Plaintiff fails to allege that Meta was acting as an "unannounced second auditor," rather than simply providing a tool for a party to the communication—BlueChew. *Yockey*, 688 F. Supp. at 970-71. Plaintiff's Section 631 claim should therefore be dismissed.

#### 3. Plaintiff's Claim Under Clause One Of Section 631(a) Fails Because Plaintiff Does Not Allege Telephonic Communications

Plaintiff's Section 631 claim should also be dismissed to the extent it rests on the first clause of Section 631(a). *See* Compl. ¶ 84. That clause penalizes anyone who "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with *any telegraph or telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system." Cal. Penal Code § 631(a) (emphasis added). As this Court has previously held, that clause "restricts liability to

---

[15] Plaintiff's vague allegation that he "received targeted advertisements relating to erectile dysfunction medications" on an unspecified website, Compl. ¶ 8, says nothing about which entity served those advertisements or whether they were based on personally identifiable information, much less information allegedly shared with *Meta*. In fact, BlueChew's Privacy Policy makes clear it engages in ad retargeting, which does not rely on personally identifiable information, but rather "advertising cookies" that "may be placed on your computer" as "you browse" the website. Ex. 10 at 4.

telephone and telegraph technology," and so "does not apply to the internet." *Cody*, 718 F. Supp. 3d at 999-1000. Here, Plaintiff alleges interception of communications made via his internet browser only, Compl. ¶¶ 86, 89, and does not allege any communications made by telephone. His Section 631 claim therefore fails to the extent it rests on clause one.

#### 4. Plaintiff's CIPA Section 632 Claim Fails Because The Meta Pixel Is Not A Device

Plaintiff's CIPA Section 632 claim likewise suffers from an additional defect that warrants dismissal. Section 632 applies to "use[] [of] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication." Cal. Penal Code § 632(a). But the Meta Pixel is not an "electronic amplifying or recording *device*" within the meaning of Section 632. The Meta Pixel is source code, which can be replicated on any website. *See* Compl. ¶¶ 7, 26, 27. And, as courts have previously held in interpreting a separate provision of CIPA, software code or a software application is not a "device" under the plain meaning of that term. *See Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017). Rather, dictionaries define "device" to mean a specialized piece of *physical* equipment. For example, "Merriam-Webster defines 'device' in relevant part as 'a piece of equipment or a mechanism designed to serve a special purpose or perform a special function,' for example, 'smartphones and other electronic devices' or a 'hidden recording device,'" *id.* at *5 (citing Device, Merriam-Webster Online, (https://www.merriam-webster.com/dictionary/device) (2017)), and Google Dictionary defines "device" as "a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment," *id.* (citing Google Dictionary, www.google.com/search?q=Dictionary (2017)).

California courts "generally presume the Legislature intended [a] word . . . to have the same meaning each time it is used" when "the same word . . . appears in different places within a statutory scheme." *People v. Braden*, 14 Cal. 5th 791, 806 (2023) (quoting *People v. Gray*, 58 Cal. 4th 901, 906 (2014)). That "well-established canon[]" applies here, where both Section 632 and Section 637.7 are part of the same legislative act and prohibit using a "device" to record or track information. *Id.* Construing "device" in Section 632 to refer only to tangible objects abides

by that canon, as well as the plain meaning of the term. And it is also consistent with the context surrounding the term. In addition to prohibiting "us[ing] an electronic amplifying or recording device to eavesdrop," Section 632 also uses the term "device" in providing that the improperly recorded conversations must take place "by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632. "Telegraph" and "telephone" are tangible objects, and under the canon of *noscitur a sociis*, which provides that "a specific item in a statutory list of items is qualified by the overall type or subject matter characterizing the list," *Davis v. Fresno Unified Sch. Dist.*, 14 Cal. 5th 671, 689 (2023), "device" should be construed in line with those terms to refer to tangible instruments—not "bits of code" like the Meta Pixel. Compl. ¶ 26. Plaintiff's Section 632 claim should therefore be dismissed.

**5. Plaintiff's Invasion Of Privacy Claim Fails Because Plaintiff Does Not Plead Highly Offensive Conduct**

Plaintiff's invasion of privacy claim also fails because Plaintiff's allegations that *BlueChew* sent sensitive data to Meta fail to show that *Meta* committed any highly offensive intrusion, as required by California law.

The "highly offensive" standard "set[s] a high bar." *Belluomini v. Citigroup Inc.*, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (emphasizing that invasion of privacy must be "sufficiently serious" that it constitutes an "*egregious breach* of [] social norms" (emphasis in original) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26, 37 (1994)). Accordingly, where "a defendant does not employ secrecy or deception or some other 'bad act' in connection with data collection . . . such behavior does not rise to the level of highly offensive." *Hubbard v. Google LLC*, 2024 WL 3302066, at *8 (N.D. Cal. July 1, 2024); *see also Hammerling v. Google LLC,* 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (collection of app usage information was not highly offensive where it was not "blatantly deceitful," even if plaintiffs might have had a reasonable expectation of privacy); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (holding on motion to dismiss that disclosure of "personal data" was not highly offensive). That is true even in cases allegedly involving "disclosure of highly personal information." *Hammerling*, 615 F.

Supp. 3d at 1090.

Here, Plaintiff's allegations with respect to Meta fall far short of alleging highly offensive conduct. At most, Plaintiff alleges that Meta (and Google) received his purchase data and that he subsequently saw related advertisements on unspecified websites. Plaintiff does not allege that Meta served him those advertisements; nor does he plausibly allege that Meta ever used his personally identified purchase information for *any* of its own purposes. Moreover, Plaintiff does not allege that Meta had any hand in BlueChew's choice to install the Meta Pixel, much less that Meta acted deceptively to obtain Plaintiff's information. Meta's unsolicited receipt of information is hardly an "egregious breach of [] social norms," even if that information is sensitive. *See In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (citation omitted); *see also Hammerling*, 615 F. Supp. 3d at 1090. And that is particularly true where Meta required web developers to provide prominent notice regarding pixels and specifically prohibited the sending of sensitive information. *See supra* 13.[16]

## V. CONCLUSION

Meta respectfully requests dismissal of the Class Action Complaint with prejudice.

Dated: December 16, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ Melanie M. Blunschi

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

[16] These circumstances stand in stark contrast to *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5-6 (N.D. Cal. Sept. 16, 2024) (Martínez-Olguín, J.), in which this Court found a potential "factual dispute" as to whether there was a highly offensive invasion where plaintiff alleged the defendant web developer had itself "embedded tracking technology code on its website" in such a way that it shared private medical information, *id.* at *5, and the defendant did not contest the plaintiff's allegations that the website's privacy policy failed to disclose the challenged data sharing, *see id.* at *1.

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*