LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| M.D., O.F., and J.P., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC and META PLATFORMS, INC.,<br><br>Defendants | Case No. 3:24-cv-06369-AMO<br><br>**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing: July 10, 2025<br>Time: 2:00 p.m.<br>Location: Courtroom 10—19th Floor<br>Judge: Hon. Araceli Martínez-Olguín |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on July 10, 2025 at 2:00 p.m., before the Honorable Araceli Martínez-Olguín, United States District Court, Courtroom 10, 19th Floor, 450 Golden Gate Ave., San Francisco, California, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move for an order dismissing Plaintiffs M.D., O.F, and J.P.'s (collectively, "Plaintiffs") First Amended Class Action Complaint (Dkt. 34) for failure to state a claim under Rule 12(b)(6). This motion is based on this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the request for judicial notice and accompanying declaration; the pleadings, records, and papers on file in this action; oral argument; and any other matters properly before the Court.

## STATEMENT OF ISSUE TO BE DECIDED

Whether the Court should dismiss the First Amended Class Action Complaint for failure to state any claim upon which relief can be granted under Rule 12(b)(6).

Dated: February 20, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Melanie M. Blunschi*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 4
A. The Meta Pixel ..... 4
B. Meta's Business Tools Terms ..... 5
C. BlueChew's Terms And Privacy Policy ..... 5
D. This Lawsuit ..... 7
III. LEGAL STANDARD ..... 8
IV. ARGUMENT ..... 9
A. All Of Plaintiffs' Claims Against Meta Still Fail Because Plaintiffs Fail To Allege That Meta Intended To Intercept Sensitive Data ..... 9
B. All Of Plaintiffs' Claims Against Meta Still Fail Because Plaintiffs Consented To Meta's Receipt Of Their Data ..... 13
C. Plaintiffs' California and Pennsylvania Claims Fail For Additional Reasons ..... 16
1. Plaintiffs' CIPA and WESCA Claims Are Barred By The Statutes Of Limitations ..... 17
2. Plaintiffs' CIPA Section 632 And WESCA Claims Fail Because The Meta Pixel Is Not A Device ..... 19
3. Plaintiff M.D.'s CIPA Section 631 Claim Fails Under The Party Exception ..... 20
4. Plaintiff M.D.'s Claim Under Clause One Of Section 631(a) Fails Because He Does Not Allege Telephonic Communications ..... 23
5. Plaintiff M.D.'s Invasion Of Privacy Claim Fails Because He Does Not Plead Highly Offensive Conduct ..... 23
V. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .............................................. 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................. 8, 11

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024).............................................. 3, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................. 8

*Belluomini v. Citigroup Inc.*,
2013 WL 5645168 (N.D. Cal. Oct. 16, 2013).............................................. 23

*Bristow v. Clevenger*,
80 F. Supp. 2d 421 (M.D. Pa. 2000) .............................................. 17

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) .............................................. 12

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .............................................. 21, 22, 23

*Cody v. Ring LLC*,
2025 WL 240763 (N.D. Cal. Jan. 16, 2025) .............................................. 21, 22

*Commonwealth v. Byrd*,
235 A.3d 311 (Pa. 2020) .............................................. 14

*Coyne v. Porter-Hayden Co.*,
428 A.2d 208 (Pa. 1981) .............................................. 18

*Davis v. Fresno Unified Sch. Dist.*,
14 Cal. 5th 671 (2023) .............................................. 20

*Deibler v. State*,
776 A.2d 657 (Md. 2001) .............................................. 10

*Doe et al. v. GoodRx Holdings, Inc., et al.*,
No. 3:23-cv-00501-AMO .............................................. 1

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .............................................. passim

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 12

*Eisenberg v. Citibank, NA*,
787 F. App'x 929 (9th Cir. 2019) .......... 19

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......... 17, 18

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 23, 24

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 13

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (N.D. Cal. 2023) .......... 22

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 10

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 23

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 24

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 23, 24

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 18, 19

*Kent v. Microsoft Corp.*,
2013 WL 3353875 (C.D. Cal. July 1, 2013) .......... 16

*Kline v. Security Guards, Inc.*,
159 F. Supp. 2d 848 (E.D. Pa. 2001) .......... 10

*Lau v. Gen Digital, Inc.*,
2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) .......... 17

*Lloyd v. Facebook, Inc.*,
2023 WL 1802415 (N.D. Cal. Feb. 7, 2023) .......... 16

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) .......... 11, 13, 16

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ........ 24

*McCulligan v. Pennsylvania State Police*,
123 A.3d 1136 (Pa. Commw. 2015), *aff'd*, 135 A.3d 580 (Pa. 2016) ........ 17

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ........ 19

*Mountain Vill. v. Bd. of Supervisors*,
828 A.2d 411 (Pa. Commw. 2003) ........ 20

*New Mexico ex rel. Balderas v. Google, LLC*,
489 F. Supp. 3d 1254 (D.N.M. 2020) ........ 14

*People v. Braden*,
14 Cal. 5th 791 (2023) ........ 20

*People v. Gray*,
58 Cal. 4th 901 (2014) ........ 20

*Plumlee v. Pfizer, Inc.*,
2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ........ 18

*Rice v. Diocese of Altoona-Johnstown*,
255 A.3d 237 (Pa. 2021) ........ 18, 19

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ........ 21

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015) ........ 9

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........ 13

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ........ 16

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........ 14, 16

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........ 14

*Starzinksi et al. v. Meta Platforms, Inc.*,
No. 3:24-cv-04501-AMO ........ 1

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 21

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 10, 11

*Vartanian v. VW Credit, Inc.*,
2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) .......... 11

*Wilson v. El-Daief*,
964 A.2d 354 (Pa. 2009) .......... 17

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 21, 23

## STATUTES

18 Pa. Cons. Stat. § 5702 .......... 19, 20

18 Pa. Cons. Stat. § 5703 .......... 10

18 Pa. Cons. Stat. § 5704(4) .......... 13

18 U.S.C. § 3127(4) .......... 20

Cal. Civ. Code § 3515 .......... 13

Cal. Penal Code § 631(a) .......... 9, 13, 23

Cal. Penal Code § 632 .......... 20

Cal. Penal Code § 632(a) .......... 9, 13, 19

Md. Code Ann., Cts. & Jud. Proc. § 10-401(8) .......... 20

Md. Code Ann., Cts. & Jud. Proc. § 10-402(a)(1) .......... 10

Md. Code Ann., Cts. & Jud. Proc. § 10-402(c)(3) .......... 13

## OTHER AUTHORITIES

Device, Merriam-Webster Online (https://www.merriam-webster.com/dictionary/device) (2017) .......... 19

Google Dictionary, www.google.com/search?q=Dictionary (2017) .......... 19

## I. INTRODUCTION

Plaintiffs' First Amended Complaint cures none of the problems that Meta identified in its motion to dismiss the prior complaint. Instead, Plaintiffs compound the defects by adding two new claims that fail for the same reasons as the earlier ones. To borrow Judge Chhabria's words, "[t]his is another pixel case," one of a spate of cases where plaintiffs are testing the limits of half-century-old wiretap laws to see if they can extract windfall statutory damages. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 836 (N.D. Cal. 2024) ("*Google Pixel*") (dismissing wiretapping and other claims against Google based on healthcare providers' use of similar tool). In fact, this is at least the third such case pending before *this* Court.[1]

As is common in these cases, Plaintiffs here wrongly seek to blame Meta for alleged wiretapping, eavesdropping, and invasion of privacy based on a third-party website's (here, BlueChew's) use of source code (the "Meta Pixel") that Meta makes publicly available to web developers to help them better understand and reach users of their websites. But Plaintiffs' allegations about *BlueChew*'s alleged wrongdoing fail to state a claim against *Meta* under any of the state laws Plaintiffs invoke—especially because Meta's Business Tools Terms, which BlueChew agreed to as a condition of using the Meta Pixel, forbade BlueChew from sending "health" information, "sensitive" information, or any other information that BlueChew did not have proper user consent to send.

Websites like BlueChew can use the Meta Pixel to collect certain data, such as data reflecting the actions a user takes on the website, and transmit that data to Meta. Developers of those websites—*not Meta*—choose whether to use this tool, where to place it on their websites, and how to configure it, and they choose what information they want to track and send to Meta. There is "nothing inherently unlawful" about the Meta Pixel, or about Meta offering its source code to the public. *Google Pixel*, 741 F. Supp. 3d at 841. To the contrary, pixels are common and helpful internet tools offered by numerous companies and used on thousands of websites to help web developers analyze and improve the user experience.

[1] *See Doe et al. v. GoodRx Holdings, Inc., et al.*, No. 3:23-cv-00501-AMO; *Starzinksi et al. v. Meta Platforms, Inc.*, No. 3:24-cv-04501-AMO.

Meta explained the multiple, independently dispositive flaws in Plaintiffs' claims in its motion to dismiss the first complaint. Instead of opposing that motion, Plaintiff M.D. enlisted two more plaintiffs and filed the First Amended Class Action Complaint ("FAC"), Dkt. 34, which doubles down on Plaintiff's original flawed theory. The FAC continues to turn on BlueChew's alleged collection and transmission of Plaintiffs' data through the Meta Pixel. But Plaintiffs still ignore that Meta's Business Tools Terms *forbid* websites, like BlueChew, from sending sensitive information to Meta. In particular, those terms require web developers to "represent and warrant that [they] will not share" with Meta data through the Pixel "that [they] know or reasonably should know . . . includes health . . . information" or any "sensitive" information. Ex. 20 at 1.[2] And Plaintiffs likewise continue to ignore that BlueChew users must consent to BlueChew's Privacy Policy, which discloses that BlueChew "automatically collect[s]" information about users' use of the website through "cookies, web beacons, and other technologies" and that BlueChew may share personally identifiable information, including health information, with service providers to support the BlueChew website. Ex. 17 at 2. Plaintiffs cannot hold Meta liable for conduct to which they consented, much less for the alleged wrongdoing of a third-party developer that allegedly used the Meta Pixel improperly and in violation of Meta's terms with that developer. All of Plaintiffs' claims—under Sections 631 and 632 of the California Invasion of Privacy Act ("CIPA"), Section 5701 of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), Section 10-401 of the Maryland Wiretapping and Electronic Surveillance Act ("MWESA"), and for invasion of privacy under the California constitution—fail and should be dismissed with prejudice.

*First*, Plaintiffs still fail to allege that Meta acted with the requisite intent to intercept sensitive health information. Plaintiffs' allegations that *BlueChew* configured the Meta Pixel to improperly collect and disclose their "confidential [prescription] information," FAC ¶¶ 7, 26-27, fail to show that *Meta* had the necessary *intent to intercept* that allegedly sensitive health information about Plaintiffs. Even though Meta identified this deficiency in its first motion to

---

[2] All "Ex." references are to the exhibits attached to the concurrently filed Declaration of Melanie M. Blunschi.

dismiss, Plaintiffs add *no* new allegations about intent. The FAC thus lacks any factual allegations that create a plausible inference of Meta's intent, and Meta's Business Tools Terms contractually prohibiting websites from sending any "sensitive" or "health" information demonstrate that Meta "purposefully acted so as *not* to receive any personal health information." *Google Pixel*, 741 F. Supp. 3d at 840; *see also B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) (dismissing aiding-and-abetting CIPA claim for failure to allege Meta's intent to receive "health data"). This defeats all of Plaintiffs' claims against Meta.

*Second*, as demonstrated in Meta's prior motion to dismiss, Plaintiffs consented to Meta's receipt of their data. Through its Privacy Policy, which all BlueChew customers must agree to, BlueChew expressly put Plaintiffs on notice that it collects information about users' use of the website through a variety of technologies and may share personally identifiable information, including health information, with third-party service providers. Plaintiffs, who allege they ordered prescription medication through BlueChew, were therefore on notice of, and agreed to, BlueChew's sharing of data, including through technologies like the Meta Pixel. Plaintiffs thus fail to allege—and cannot allege—lack of consent to Meta's receipt of their data. The FAC does nothing to rebut this cross-cutting failure, which dooms all of Plaintiffs' claims.

*Finally*, Plaintiffs' claims also fail for a host of additional, claim-specific reasons. Both the CIPA claims and the WESCA claim are squarely barred by their respective statutes of limitations, because they are based on website visits that occurred well over a year ago (for CIPA) and two years ago (for WESCA). The CIPA Section 632 claim and the WESCA claim fail because the Meta Pixel is not a "device" within the meaning of those provisions. The CIPA Section 631(a) claim is barred by the party exception, because, as to the allegedly sensitive data at issue, Plaintiff M.D. does not allege that Meta did anything beyond making the Meta Pixel available as a tool for BlueChew, a *party* to the communications at issue. This claim also fails to the extent it is based on clause one, because that clause applies only to information transmitted over telephone wires. And the constitutional invasion of privacy claim fails because Meta's receipt of information is not the kind of highly offensive conduct this claim requires.

Plaintiffs' claims against Meta should be dismissed in their entirety. And these deficiencies

are not new, as Meta raised them in its first motion to dismiss, so Plaintiffs' amended complaint confirms they cannot cure them. Accordingly, dismissal should be with prejudice.

## II. BACKGROUND[3]

### A. The Meta Pixel

The Meta Pixel is a publicly available piece of code that many businesses choose to integrate into their websites. FAC ¶ 32. The Meta Pixel allows businesses to "measure the effectiveness of their advertising" and "understand[] actions people take on [their] websites." "About Meta Pixel," Ex. 1 at 1; *see* FAC ¶ 32. Website developers, rather than Meta, decide whether to "integrate" the Meta Pixel on their websites, and "advertisers can choose" which actions to track through the Meta Pixel. FAC ¶¶ 30-31; *see* "Best practices for Meta Pixel setup," Ex. 2 at 1-2. These actions are referred to as "events." FAC ¶ 31. Although Meta provides certain "standard events," *id.*, like adding a product to a shopping cart, *see* "About standard and custom website events," Ex. 3 at 2, Meta does not require any particular events to be used—to the contrary, web developers choose which events to use, and Meta explains how to configure the Pixel so that it does *not* capture certain data. *See* "Advanced – Meta Pixel," Ex. 4 at 8-9. For example, Meta explains that the Meta Pixel "only" captures events "on the pages you added them to," Ex. 2 at 2, and provides instructions for developers to configure the Meta Pixel "to not send [certain] additional information" or to "restrict the data sent to one of the Pixels on your website," Ex. 4 at 8-9.

For the events that web developers do configure the Meta Pixel to collect, web developers may view that information on an "Events Manager" page. *See* FAC ¶ 34. Through that data, the Meta Pixel helps businesses to "understand and measure their products and services" and to "better reach and serve people who might be interested in their products and services." *Id.* ¶ 30. Businesses can use this data about how their users interact with their websites to understand the effectiveness of their advertising. *See* Ex. 1 at 1; *see also* FAC ¶¶ 33-34. Businesses can also reach users of Meta's services—like those with Facebook or Instagram accounts—who have

---

[3] Unless otherwise indicated, the facts recited herein are based on the allegations of the FAC and are accepted as true only for purposes of this motion.

already engaged with their products by showing them targeted ads on Meta's services. *See* FAC ¶¶ 29-30, 34.

**B. Meta's Business Tools Terms**

Meta sets forth restrictions on how the Meta Pixel may be used through its Business Tools Terms, which bind the third-party web developers and businesses that choose to use the Meta Pixel. *See* 2023 Business Tools Terms, Ex. 20 at 1 (explaining that the "Business Tools Terms govern the use of" the data web developers collect through the Meta Pixel); 2020 Business Tools Terms, Ex. 21 at 1 (same). Meta's Business Tools Terms require businesses using the Meta Pixel to "represent and warrant that [they] have provided robust and sufficiently prominent notice" "on each web page where [Meta's] pixels are used." Ex. 20 at 2; Ex. 21 at 2 (same). The Business Tools Terms also require businesses to represent that they "have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations and industry guidelines) for the disclosure and use" of data they send through the Meta Pixel. Ex. 20 at 1; Ex. 21 at 1 (same). And the Business Tools Terms also specifically prohibit websites from sending sensitive data to Meta. In particular, the terms require Meta Pixel users to "represent and warrant that [the business] will not share Business Tool Data with us that [it] know[s] or reasonably should know . . . includes health . . . information" or "sensitive" information. Ex. 20 at 1; *see also* Ex. 21 at 1 (requiring Meta Pixel users to "agree" to same restriction).

**C. BlueChew's Terms And Privacy Policy**

Plaintiffs allege that BlueChew is "a telemedicine platform" that offers prescription erectile dysfunction medications. FAC ¶ 19. BlueChew's website allows users to purchase medication after completing a "medical profile" and questionnaire. *Id.* ¶¶ 22-24. Before a user completes that medical profile or otherwise enters personal information or purchases a product, he must create a BlueChew account and agree to BlueChew's Terms & Conditions. *See* Exs. 5-9 (account registration pages); *see also* Ex. 12 at 2 (BlueChew Terms) ("[I]f you register for an account, you are accepting our Privacy Policy."); Ex. 17 at 1 (BlueChew Privacy Policy) (explaining that

"registration is required to use" BlueChew's services).[4]

BlueChew's Terms link to the Privacy Policy, which is "incorporated into" the Terms & Conditions and which "explains how [BlueChew] may collect, use, share and disclose your information." Ex. 12 at 3. Throughout the time period alleged in the FAC, from 2022 to 2024, BlueChew's Privacy Policy included disclosures regarding the data sharing alleged in this case. As to collection and use of information, BlueChew's Privacy Policy discloses that BlueChew "may automatically collect information about your use of our Websites and Services through cookies, web beacons, and other technologies," including "web pages you view," "links you click," and "pages visited." *Id.* And it further discloses that BlueChew "may combine this information [collected through technologies] with other information [it has] collected," including "name" and "other personal information." *Id.* The Policy explains that BlueChew may use the information for a range of purposes, including to "display advertising on [its] Websites" and "analyze usage of and improve" its website and services. *Id.*

The Privacy Policy also discloses that BlueChew shares certain information with third parties. In particular, under a section entitled "Personally Identifiable Information," BlueChew discloses that it may "share information about you, including health information and other information that personally identifies you . . . with service providers that [it] use[s] to support the Websites or otherwise in connection with administering and providing [its] Services." *Id.*

BlueChew's June 2024 Privacy Policy provides additional detail regarding BlueChew's use of pixel technology in particular. Among other things, that Policy states that BlueChew uses tracking technologies, including the Meta Pixel specifically, to "provide [it] with valuable data and statistics about the usage" of the website and to "help with [its] marketing efforts." Ex. 19 at 3. It explicitly discloses that "[t]he data from Meta Pixel is also saved and processed by Facebook and Instagram." *Id.*

---

[4] Unless otherwise noted, references to the "Privacy Policy" denote the October 2022 Policy at Ex. 17, which exemplifies the terms in effect when Plaintiffs M.D. and O.F. used BlueChew. The other cited versions of the Privacy Policy contain substantially similar language. *See* Exs. 15-16, 18-19.

**D. This Lawsuit**

Plaintiff M.D. filed his initial complaint on September 10, 2024, alleging California wiretapping and invasion of privacy claims against Meta and Google. *See* Compl., Dkt. 1. Meta moved to dismiss that complaint on December 16, 2024, arguing (among other things) that all of Plaintiff M.D.'s claims failed because M.D. failed to allege facts showing that Meta intended to receive sensitive data and because M.D. consented to BlueChew's Privacy Policy, which disclosed the data collection at issue. *See* Dkt. 28. Rather than opposing Meta's motion, Plaintiffs filed the FAC, adding two new plaintiffs from different states (Pennsylvania and Maryland), who bring claims under their states' wiretapping statutes—that are nearly identical to M.D.'s original California wiretapping claims—without curing any of the deficiencies that Meta identified in its motion. The FAC adds *no* new allegations regarding any Plaintiff's consent to data collection, or regarding Meta's intent—in fact, it *removes* one of the prior allegations about intent. *Compare* Compl. ¶ 11 (alleging that Meta purportedly lacked control over how its systems use data), *with* FAC ¶ 15 (removing that allegation).

Plaintiffs all allege that they were "prescribed and ordered" erectile dysfunction medication through the BlueChew website. FAC ¶¶ 7, 9, 11. Plaintiff M.D., the original Plaintiff in this suit, alleges that he is a California citizen and that he ordered medication from BlueChew on December 6, 2022 and January 4, 2023—more than two years ago. *Id.* ¶ 7. Plaintiff O.F., a new plaintiff, alleges that he is a Pennsylvania citizen and ordered medication from BlueChew in January 2022—more than three years ago. *Id.* ¶ 9. Plaintiff J.P. alleges he is a Maryland citizen and ordered medication from BlueChew around August 3, 2024. *Id.* ¶¶ 11, 80.

Plaintiffs again allege that "advertisers, like BlueChew," can "integrate" the Meta Pixel "into their website[s]," *id.* ¶ 32, and that BlueChew "disclosed" purportedly "confidential information related to [Plaintiffs'] medical prescription[s]" to Google and Meta through their "proprietary software codes," *i.e.*, their pixels. *Id.* ¶¶ 7, 9, 11. Specifically, Plaintiffs allege that BlueChew transmits to Meta through the Meta Pixel limited basic information like name and date of birth, *see id.* ¶¶ 40, 42; the fact that a user has registered for an account on the BlueChew website, *id.* ¶¶ 40-41; and the "content ID" of the medication being purchased, which appears as a

number, *see id.* ¶¶ 40-44. Plaintiffs allege that Meta "can [] match" these pieces of information to one another, *id.* ¶ 56, and that Meta can use the numerical content ID to determine the medication purchased, *id.* ¶ 44. Plaintiffs make similar allegations with respect to Google Analytics, a pixel tool that Google offers to third-party web developers. *Id.* ¶¶ 59-76.

Plaintiffs also include a variety of allegations specific to Facebook users, but no Plaintiff alleges that he was a Facebook user. For example, Plaintiffs allege that BlueChew "disclosed," through cookies, Facebook IDs that Meta could use to match data sent through the Meta Pixel to Facebook users, *see id.* ¶¶ 45-55, but they allege that BlueChew transmitted a "smaller set of cookies" "[i]f a visitor had never created a[] [Facebook] account," *id.* ¶ 49. Plaintiffs nowhere allege what was smaller about that cookie set (presumably it did not contain Facebook IDs) or how (or whether) Meta used non-user cookies. Plaintiffs also allege that Meta touted its "ability to target [its] *users*" with advertising, *id.* ¶¶ 28, 38 (emphasis added), through its Core Audiences and Custom Audiences services, *id.* ¶¶ 28-29, 36, 38, 57. Plaintiffs include no factual allegations as to whether or how Meta targeted *non*-Meta users based on the allegedly sensitive data that Plaintiffs allege BlueChew sent through the Meta Pixel.

Plaintiffs each allege that, at some point after their respective purchases on BlueChew's website, they received targeted advertisements (on unspecified websites) "relating to erectile dysfunction medications," but they do not allege whether those ads were served by Meta, Google, or another entity. *Id.* ¶¶ 8, 10, 12.

Plaintiffs bring claims against Meta for its alleged receipt of information under each Plaintiff's respective state statute prohibiting wiretapping—specifically, Sections 631 and 632 of CIPA; Section 5703 of WESCA; and Section 10-402 of MWESA. Plaintiff M.D. also brings a claim for invasion of privacy under the California constitution.

## III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id.* at 555 (cleaned up); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). A claim also may be dismissed based on a dispositive issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

## IV. ARGUMENT

Like the original complaint, Plaintiffs' FAC alleges that *BlueChew* used Meta's free, publicly available Pixel on its website and that *BlueChew* configured the Meta Pixel to send certain information to Meta, supposedly without proper disclosures or consent. Those allegations fail to state any claim *against Meta*. First, each of Plaintiffs' claims fails because Plaintiffs cannot allege that Meta *intended* to intercept any "health" or "sensitive" data—to the contrary, it was BlueChew that chose to install and configured the Meta Pixel on its own website, including deciding what data to transmit. Plaintiffs do not allege that Meta made those decisions, much less that Meta determined what specific information BlueChew collected or sent through the Meta Pixel. In fact, Meta offered its Pixel subject to terms *prohibiting* websites from transmitting any sensitive data. That is the antithesis of the intent that Plaintiffs' claims require. Second, BlueChew disclosed to its users, including Plaintiffs, that it used various technologies to collect information about usage of the BlueChew website and that it could connect that information to personal information and share it with third-party service providers. Plaintiffs were therefore on notice of, and consented to, Meta's receipt of information about their usage of BlueChew through the Meta Pixel. That too dooms all of their claims. And even aside from these failures, Plaintiffs' claims suffer from additional defects that also compel dismissal. Plaintiffs were well aware of these deficiencies when they filed their amended complaint, and their failure to cure them demonstrates they cannot do so. Dismissal should therefore be with prejudice.

### A. All Of Plaintiffs' Claims Against Meta Still Fail Because Plaintiffs Fail To Allege That Meta Intended To Intercept Sensitive Data

All of Plaintiffs' claims fail out of the gate because Plaintiffs fail to allege that Meta *intentionally* or *willfully* intercepted their allegedly sensitive information—as each claim requires.

*See* Cal. Penal Code § 631(a) (imposing liability on one who "intentionally" taps a line or "willfully" reads or learns contents of communications in transit without consent); *id.* § 632(a) (imposing liability on one who "intentionally" uses a device to "eavesdrop upon" or "record [a] confidential communication"); 18 Pa. Cons. Stat. § 5703 (imposing liability on one who "intentionally intercepts" a communication); Md. Code Ann., Cts. & Jud. Proc. § 10-402(a)(1) (imposing liability on one who "willfully" intercepts or attempts to intercept a communication); *Google Pixel*, 741 F. Supp. 3d at 844 (explaining that intent "is a necessary element of an invasion of privacy claim"); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286, 295 (2009) (requiring an "intentional[] intru[sion]" for invasion of privacy).

Plaintiffs' allegations that BlueChew disclosed allegedly sensitive information do not plausibly show *Meta*'s intent, for two independently sufficient reasons. First, Plaintiffs offer only conclusory allegations regarding Meta's intent without alleging any facts to support those conclusions. Second, Meta's Business Tools Terms, which *prohibit* businesses from sharing such information, demonstrate that Meta "purposefully acted so as *not* to receive any personal health information"—just as Judge Chhabria concluded in dismissing a similar complaint against Google. *Google Pixel*, 741 F. Supp. 3d at 840.

To establish intent, Plaintiffs must allege that Meta acquired the alleged data "purposefully and deliberately and not as a result of accident or mistake." *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015) (citation omitted); *see also Google Pixel*, 741 F. Supp. 3d at 840, 844 (applying *Christensen* standard to CIPA claims); *Deibler v. State*, 776 A.2d 657, 665 (Md. 2001) (explaining that under MWESA, "an interception . . . is done willfully if it is done intentionally-purposely"); *Kline v. Security Guards, Inc.*, 159 F. Supp. 2d 848, 853 (E.D. Pa. 2001) (holding that "the enumerated acts must be intentional to be unlawful" for civil liability under WESCA). That is, Plaintiffs must allege facts showing that Meta "acted consciously and deliberately with the *goal* of intercepting" their health information. *Christensen*, 828 F.3d at 791 (emphasis added).

Plaintiffs' allegations here fall far short. Plaintiffs make conclusory assertions that Meta "intentionally tapped" internet lines and "willfully" read or learned the contents of communications in transit. FAC ¶¶ 96-97. But Plaintiffs admit that it was *BlueChew*, not Meta,

that chose to install the Meta Pixel on its website and configured it to transmit particular data. *See id.* ¶ 30 (alleging that "advertisers can integrate" the Pixel onto their websites); *id.* ¶ 31 ("advertisers can choose" what to track via the Pixel). Plaintiffs' allegation that the Meta Pixel is "automatically" configured to send certain information, *id.*, is irrelevant for that same reason—whether or not the Pixel is offered by default in a certain way, *web developers* are responsible for choosing whether and how to integrate the Pixel onto their own websites.[5] Plaintiffs do not allege any facts suggesting *Meta* chose whether, where, or how BlueChew would install and configure the Pixel. Plaintiffs' conclusory allegations are therefore insufficient to establish intent. *See, e.g.*, *Iqbal*, 556 U.S. at 686-87 ("conclusory" allegation of discriminatory intent insufficient); *Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *1 (9th Cir. July 8, 2024) ("conclusory assertion" of intent based on third-party misconduct insufficient); *Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (intent allegations insufficient where they did not describe "factual circumstances" that made defendant's intent "plausible").

Plaintiffs also fault Meta for allegedly failing to "prevent" the transmission of sensitive data through the Meta Pixel and for the "continued incorporation of" the Meta Pixel on BlueChew's website. FAC ¶ 15. But that is *all* they allege regarding intent—indeed, Plaintiffs *removed* an allegation from their prior complaint alleging that Meta lacked adequate "control" over "how [its] systems *use* data." Compl. ¶ 11 (emphasis added); *compare id.*, *with* FAC ¶ 15. Plaintiffs thus rest their intent allegations entirely on the theory that Meta is liable because BlueChew continued to use the Meta Pixel. But these allegations do not establish "purposeful[] and deliberate[]" action on Meta's part. *Google Pixel*, 741 F. Supp. 3d at 840 (quoting *Christensen*, 828 F.3d at 790). As Judge Chhabria explained in *Google Pixel*, the failure to "*prevent*" healthcare providers from using source code does not "somehow reveal[] an *intent* to receive private health information"; nor does the "inadvertent[]" receipt or use of such data

---

[5] As Plaintiffs' own cited sources make clear, a web developer can avoid sending particular information by, among other things, simply not integrating the Meta Pixel on a particular web page or by changing its configuration. *See* "Best practices for Meta Pixel setup," Ex. 2 at 2 (cited at FAC ¶ 31 n.17) (explaining that standard events are included "only on the pages you added them to"); "Advanced – Meta Pixel," Ex. 4 at 9 (cited at FAC ¶ 31 n.17) (describing how to implement additional code to prevent transmission of certain data).

constitute "willful or intentional conduct." *Id.* at 840-41, 844 (emphases added). Plaintiffs thus allege no facts regarding Meta's supposed intent to obtain the data at issue.

Plaintiffs' allegations also demonstrate why the lower—and incorrect—standard for intent that some courts have applied is inappropriate. Those cases hold that "interceptions may be considered intentional where a defendant is aware of the defect causing [the] interception and takes no remedial action." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023). As Judge Chhabria explained, that standard "set[s] the legal bar too low" in light of *Christensen*'s requirement of "purposeful[] and deliberate[]" action. *Google Pixel*, 741 F. Supp. 3d at 840. But, at minimum, the "awareness" reasoning should be limited only to cases involving a *defect* in a defendant's own product, where it may be possible to *infer* intent from a defendant's failure to remedy a known issue. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 815 (accidental triggering of Google assistant). That reasoning does not apply here, where Plaintiffs allege *third-party* misuse of a common tool.

Nor could Plaintiffs allege facts showing Meta's intent. Meta's Business Tools Terms expressly require websites to have "all of the necessary rights and permissions and a lawful basis" to collect and use the data they share. Ex. 20 at 1. And Meta also goes further and prohibits the sharing of certain information, requiring businesses that use the Meta Pixel to "represent and warrant that [they] will not share Business Tool Data with [Meta] that [they] know or reasonably should know . . . includes health . . . information" or "sensitive" information. *Id.* Accordingly, to the extent BlueChew integrated the Meta Pixel on its website in a way that transmitted health or otherwise sensitive information, *see* FAC ¶¶ 15, 105, 110, 112, BlueChew violated Meta's Business Tools Terms. But *BlueChew's* alleged failure to comply with Meta's terms cannot demonstrate *Meta*'s intent. Indeed, by placing those restrictions on BlueChew, Meta "purposefully acted so as *not* to receive any personal health information." *Google Pixel*, 741 F. Supp. 3d at 840. As another court recently concluded in a case involving the alleged transmission of health data through the Meta Pixel, the Business Tools Terms show that "Meta either had no intention of receiving the data at issue or had some alternative mens rea not rising to the level of intentionality."

*B.K.*, 2024 WL 1343305, at *7 (dismissing aiding-and-abetting CIPA claim for failure to allege predicate violation by Meta); *cf. Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016) (holding that plaintiff's allegation that Facebook failed to remove offensive content did not plausibly allege intentional conduct by Facebook).

Each of Plaintiffs' claims should accordingly be dismissed.

**B. All Of Plaintiffs' Claims Against Meta Still Fail Because Plaintiffs Consented To Meta's Receipt Of Their Data**

While Plaintiffs' failure to allege intent alone defeats their claims, those claims also fail for a second reason: Plaintiffs consented to BlueChew's transmission of information about their activity on its website to service providers like Meta. Although Meta detailed this issue in its prior motion to dismiss, the FAC contains no new allegations to plead lack of consent.

An individual who is on notice of and agrees to data collection cannot claim to have been wronged by it. *See, e.g.*, Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it."). And because "lack of consent is an element" of their CIPA claims, it is Plaintiffs' burden to allege facts showing lack of consent. *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2, 4-5 (N.D. Cal. July 28, 2021) (dismissing CIPA claims where "terms plainly disclose[d]" data collection); *see also* Cal. Penal Code §§ 631(a), 632(a) (imposing liability for wiretapping and eavesdropping "without the consent of all parties"). Similarly, MWESA and WESCA both impose liability only for communications recorded without consent. *See* 18 Pa. Cons. Stat. § 5704(4); Md. Code Ann., Cts. & Jud. Proc. § 10-402(c)(3). And Plaintiff M.D. likewise cannot allege a "reasonable expectation of privacy," as required to state his invasion of privacy claim, if he was on notice of the data collection about which he complains. *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (affirming dismissal of invasion of privacy claim because Google "expressly disclosed" tracking on third-party apps); *see also, e.g., Lloyd*, 2024 WL 3325389, at *2 (similar).

Plaintiffs' allegations do not establish lack of consent to Meta's alleged receipt of information, foreclosing Plaintiffs' claims against Meta. Indeed, Plaintiffs' allegations in this regard are wholly conclusory: Plaintiffs assert that their communications were intercepted

"without [their] consent," FAC ¶ 76; *see id.* ¶¶ 13, 58, 109, 114, and that they had a "reasonable expectation of privacy" in their information, *id.* ¶¶ 105, 116. Such conclusory allegations are insufficient on their face. *See, e.g.*, *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1263 (D.N.M. 2020) (holding that plaintiffs' "conclusory" allegation of "inadequate notice" was insufficient to state privacy-related claim). Instead, Plaintiffs must allege *facts* demonstrating their lack of consent—*i.e.*, facts showing that "the circumstances, considered as a whole" would not have permitted a "reasonable person" to understand "that an action would be carried out so that their acquiescence demonstrates knowing authorization." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018); *see also Commonwealth v. Byrd*, 235 A.3d 311, 313, 319-20 (Pa. 2020) (explaining that consent under WESCA turns on a "reasonable person" standard, *i.e.*, "whether an individual knew or should have known they were being recorded").

But Plaintiffs fail to plausibly allege *any* facts demonstrating that they did not consent to Meta's receipt of their information from BlueChew through Meta's Pixel. Nor could they. Plaintiffs make the conclusory allegation that "[a]t no point during the [BlueChew] checkout process are patients alerted that information related to their prescription medication is being intercepted by third parties." FAC ¶ 25. But that allegation is belied by BlueChew's website itself, which Plaintiffs incorporate into the complaint by reference. *See id.* ¶¶ 20-24; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) (explaining that courts need not accept as true "conclusory allegations which are contradicted by documents referred to in the complaint" or "matters properly subject to judicial notice" (citation omitted)). After a visitor navigates to BlueChew's website and clicks "choose plan," *see* FAC ¶ 21 (Fig. 2), the visitor is asked to sign up for an account. Exs. 5-9 at 1. To sign up, a visitor must affirmatively "agree to [the] Terms & Conditions," which are hyperlinked and which incorporate the Privacy Policy. *Id.* The visitor cannot proceed to enter personal information or order medication without logging into a preexisting account or signing up for a new one. *Id.* Because Plaintiffs allege they were "prescribed and ordered" medication through BlueChew's website, FAC ¶¶ 7, 9, 11, they necessarily signed up for accounts and agreed to BlueChew's Privacy Policy in doing so.

In agreeing to BlueChew's Privacy Policy, Plaintiffs consented to the data sharing of which

they now complain. BlueChew's Privacy Policy disclosed throughout the relevant time period (2022 to 2024, when Plaintiffs allege they used the BlueChew website, *see* FAC ¶¶ 7-11) both that BlueChew may collect and use information about users' use of its website and that it may *share* that information.

First, with respect to collection, the Privacy Policy states that BlueChew "may automatically collect information" about users' use of its website, including "web pages you view," "links you click," and "pages visited," and that it may do so through "cookies, web beacons, and other technologies." Ex. 17 at 2. The Policy further explains that BlueChew "may combine this information [collected through technologies] with other information [it has] collected," including "name" and "other personal information." *Id*. The Policy explains that BlueChew may use this information for a range of purposes, including to "analyze usage of and improve" its website and services. *Id.*

Second, the Privacy Policy also expressly discloses BlueChew's *sharing* of such information. Specifically, under a section entitled "Personally Identifiable Information," BlueChew discloses that it may "share information about you, including health information and other information that personally identifies you," with third-party service providers to "support" its website or "otherwise in connection with administering and providing [its] Services." *Id.*[6] Through these disclosures, BlueChew secured users', including Plaintiffs', consent to the conduct Plaintiffs complain about here: BlueChew's use of the Meta Pixel to track users' use of its website, *see* FAC ¶¶ 32-34, and its sharing of that information with Meta, including to better "understand and measure [BlueChew's] products and services," *id.* ¶ 30. Given BlueChew's disclosures, Plaintiffs cannot allege lack of consent or any reasonable expectation of privacy as to Meta's receipt of their purchase data from BlueChew.

---

[6] The Privacy Policy includes a separate section discussing BlueChew's use of cookies, as well as the potential for network advertisers and certain third-party analytics services to use tracking mechanisms on its website. *See* Ex. 17 at 4. Those disclosures confirm that BlueChew users' usage of the website may be tracked. And, while certain of those disclosures note that BlueChew "do[es] not share personal information" with the third parties that provide those services, *id.*, that language does not displace BlueChew's disclosure that it "may share" health information and other personally identifiable information with "service providers that [it] use[s] to support the Websites." *Id.* at 2.

For Plaintiff J.P., who agreed to BlueChew's updated Privacy Policy in 2024, the allegation that he did not consent is particularly implausible. Ex. 19 at 3. That Policy included not only the above language, but also additional language, informing him that BlueChew used the "Meta Pixel" specifically to "keep track of what users d[id]" on the site and that such data would be "processed by Facebook and Instagram." *Id.* at 2-3. This additional language puts a finer point on the existing disclosures, which were already sufficient to establish consent: *all* of the applicable BlueChew Policies disclosed that BlueChew would share personally identifiable information about usage of its site with third parties. By consenting to those policies, Plaintiffs consented to that conduct.[7]

Plaintiffs' wiretapping and invasion of privacy claims thus fail because Plaintiffs cannot allege lack of consent or a reasonable expectation of privacy. And because "[n]o further allegations could allow Plaintiffs to bring claims 'arising out of conduct which they consented to,'" amendment "would be futile." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 956 (N.D. Cal. 2017) (quoting *Kent v. Microsoft Corp.*, 2013 WL 3353875, at *6 (C.D. Cal. July 1, 2013)), *aff'd*, 745 F. App'x 8 (9th Cir. 2018). Indeed, Plaintiffs failed to add *any* allegations regarding lack of consent in their FAC. Plaintiffs' claims should therefore be dismissed with prejudice.

### C. Plaintiffs' California and Pennsylvania Claims Fail For Additional Reasons

As explained above, all of Plaintiffs' claims fail because Plaintiffs have not plausibly alleged that Meta intended to intercept any sensitive data and because they consented to Meta's receipt of their data. But Plaintiff M.D. and O.F.'s claims suffer from additional defects as well. First, both the CIPA claims (Counts I and II) and the WESCA claim (Count IV) are barred by the statutes of limitations. Second, the Section 632(a) claim (Count II) and the WESCA claim (Count IV) should both be dismissed because the Meta Pixel is not a "device" within the meaning of either

[7] If Plaintiffs are Facebook users, then they also consented to Meta's receipt of data by agreeing to Meta's terms and policies. Like "all users," Plaintiffs would have been required to "agree" to Meta's Terms (and incorporated policies) "to create a Facebook account." *Lloyd v. Facebook, Inc.*, 2023 WL 1802415, at *1 (N.D. Cal. Feb. 7, 2023). And the Ninth Circuit has repeatedly held that Meta's policies disclose the conduct alleged here: "(a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes." *Smith*, 745 F. App'x at 8-9. Facebook users therefore consent to such conduct. *Id.* (dismissing CIPA and privacy claims based on consent); *see Lloyd*, 2024 WL 3325389, at *2 ("Facebook's data policy gives clear notice that third party partners may share data with Facebook."). Plaintiffs studiously avoid saying whether they are Facebook users—even after Meta raised this omission in its first motion to dismiss. *See* Dkt. 28 at 6. If they are, Meta's policies provide an independent basis for consent.

statute. Third, the Section 631(a) claim (Count I) suffers from multiple additional defects: (1) with respect to the allegedly sensitive data at issue, the Meta Pixel was merely a tool used by BlueChew, a party to the communication; and (2) the claim fails to the extent it is based on tapping "any telephone or telegraph wire" because Plaintiff M.D. alleges only interception of *internet* communications. Finally, the California invasion of privacy claim (Count III) should be dismissed because Plaintiff M.D. fails to allege the type of highly offensive conduct required to state such a claim.

### 1. Plaintiffs' CIPA and WESCA Claims Are Barred By The Statutes Of Limitations

Even aside from the cross-cutting failures discussed above, the CIPA and WESCA claims should be dismissed because they are time-barred. Plaintiff M.D.'s claims are untimely under CIPA's one-year statute of limitations. *See Lau v. Gen Digital Inc.*, 2023 WL 10553772, at *2 (N.D. Cal. Sept. 13, 2023). Plaintiff M.D. alleges that he "was prescribed and ordered" medication from BlueChew's website on December 6, 2022 and January 4, 2023. FAC ¶ 7. But M.D. did not file his complaint until September 10, 2024, well over a year after his alleged visits to BlueChew's website. Similarly, Plaintiff O.F.'s claim is untimely under WESCA's two-year statute of limitations. *See Bristow v. Clevenger*, 80 F. Supp. 2d 421, 428-29 (M.D. Pa. 2000); *McCulligan v. Pennsylvania State Police*, 123 A.3d 1136, 1140 (Pa. Commw. 2015), *aff'd*, 135 A.3d 580 (Pa. 2016). O.F. alleges that he "was prescribed and ordered" medication from BlueChew in January 2022—more than two years before this complaint was filed. FAC ¶ 9.

Plaintiffs do not allege any facts that could establish their entitlement to tolling of the statutes of limitations. Plaintiffs include only the conclusory allegation that "[d]ue to the surreptitious nature of the interceptions at issue, [Plaintiffs] did not realize confidential information related to [their] medical prescription[s] was disclosed to third parties until September 2024." *Id.* ¶¶ 7, 9. To the extent that allegation is an attempt to invoke the discovery rule, it falls far short. Tolling under the discovery rule "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (citation omitted); *see also Wilson v. El-Daief*, 964 A.2d 354, 361-62 (Pa. 2009) ("[T]he discovery

rule may operate to toll the statute of limitations" only "until the plaintiff discovers, or reasonably should discover, that she has been injured"). The rule requires that a plaintiff "specifically plead facts to show (1) the time and manner of discovery *and* 2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808 (citation omitted); *see also Coyne v. Porter-Hayden Co.*, 428 A.2d 208, 210 (Pa. Super. 1981) (explaining that to "invok[e] the discovery rule," a plaintiff "must allege in his or her pleadings facts which show why the action could not have been brought earlier"); *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) (emphasizing that the "burden is on the plaintiff" to plead sufficient facts).

Here, Plaintiffs allege *nothing* about the manner of discovery. And they also fail to allege facts suggesting they could not have made an earlier discovery, or that they acted with reasonable diligence. To the contrary, they allege that they received "advertisements relating to erectile dysfunction medications" following their purchases, FAC ¶¶ 8, 10, which would have put them on inquiry notice of "at least some form of [alleged] harm and of a factual cause linked to another's conduct." *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 249 (Pa. 2021). Furthermore, although they refer to the "surreptitious nature of the interceptions," FAC ¶ 7, Plaintiffs ignore that the BlueChew Privacy Policy, to which they were required to agree before making their purchases, specifically informed them of the data collection they challenge. As discussed above, that Policy disclosed that BlueChew automatically collected information about users' use of its website through various technologies; that it could match such information to personal information; and that it could share personally identifiable information and health information with third-party service providers. *See supra* 15-16. Even assuming those disclosures were insufficient to establish consent (*but see supra* 13-16), they plainly put Plaintiffs "on inquiry notice of a possible third party" that caused the "injury" they now claim. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 902 (N.D. Cal. 2023) (rejecting application of discovery rule to CIPA claims where privacy policy stated defendant "'may use third party vendors to assist' it with the collection of visitors' personal information"). That is all that is required to start the clock for the statute of limitations. *See id.*; *see also Eisenberg v. Citibank, NA*, 787 F. App'x 929, 930-31 (9th Cir. 2019) (rejecting delayed discovery rule where loan documents gave plaintiff "constructive notice" of claim, even if she "did

not read or understand" them); *Rice*, 255 A.3d at 249. And Plaintiffs allege no other basis for tolling the statute of limitations. Accordingly, Plaintiffs' CIPA and WESCA claims should be dismissed because they are barred by the statutes of limitations.

**2. Plaintiffs' CIPA Section 632 And WESCA Claims Fail Because The Meta Pixel Is Not A Device**

Plaintiffs' CIPA Section 632 and WESCA claims suffer from an additional defect that warrants dismissal. Both provisions apply only to "device[s]"—CIPA Section 632 applies to "use[] [of] an electronic amplifying or recording *device* to eavesdrop upon or record [a] confidential communication," Cal. Penal Code § 632(a) (emphasis added), and WESCA applies to "intercept[ion]" of communications, defined as "acquisition of the contents of any wire, electronic or oral communication, through the use of any electronic, mechanical or other *device*." 18 Pa. Cons. Stat. § 5702 (emphasis added).

But the Meta Pixel is not a "device" within the meaning of either statute. The Meta Pixel is source code, which can be replicated on any website. *See* FAC ¶¶ 7, 30-31. And, as another court has previously held in interpreting a separate provision of CIPA, software code or a software application is not a "device" under the plain meaning of that term. *See Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017). Rather, dictionaries define "device" to mean a specialized piece of *physical* equipment. For example, "Merriam-Webster defines 'device' in relevant part as 'a piece of equipment or a mechanism designed to serve a special purpose or perform a special function,' for example, 'smartphones and other electronic devices' or a 'hidden recording device,'" *id.* at *5 (citing Device, Merriam-Webster Online, (https://www.merriam-webster.com/dictionary/device) (2017)), and Google Dictionary defines "device" as "a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment," *id.* (citing Google Dictionary, www.google.com/search?q=Dictionary (2017)). Those definitions reflect the standard meaning of the term.[8]

[8] By contrast, where legislatures wish to depart from the plain meaning of "device" as a tangible apparatus, they may do so expressly by defining the term more broadly. *See* Md. Code Cts. & Jud.

Statutory context also supports reading "device" to refer to something tangible. As an initial matter, California courts "generally presume the Legislature intended [a] word . . . to have the same meaning each time it is used" when "the same word . . . appears in different places within a statutory scheme." *People v. Braden*, 14 Cal. 5th 791, 806 (2023) (quoting *People v. Gray*, 58 Cal. 4th 901, 906 (2014)). That "well-established canon[]" applies here, where both Section 632 and Section 637.7 are part of the same legislative act and prohibit using a "device" to record or track information. *Id.* The term "device" in Section 632 should therefore be construed in the same way it was under Section 637.7 in *Moreno*.

Both CIPA and WESCA also include additional contextual indicators that confirm that the term "device" refers to tangible objects. In particular, under the canon of *noscitur a sociis*, "a specific item in a statutory list of items is qualified by the overall type or subject matter characterizing the list," and should be construed accordingly. *Davis v. Fresno Unified Sch. Dist.*, 14 Cal. 5th 671, 689 (2023). Both CIPA Section 632 and WESCA use the term "device" alongside *tangible* objects. Section 632, for example, uses the term "device" in providing that the improperly recorded conversations must take place "by means of a telegraph, telephone, or other device, except a radio." Cal. Penal Code § 632. Similarly, WESCA defines "device" with reference to tangible objects: an "electronic, mechanical, or other device" for purposes of interception is "[a]ny device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device . . . " other than a "telephone or telegraph instrument," "hearing aid," or certain other "equipment or devices." 18 Pa. Cons. Stat. § 5702. The term "device" in both statutes is thus properly limited to tangible objects based on the "company [it] keep[s]." *Mountain Vill. v. Bd. of Supervisors*, 828 A.2d 411, 414 (Pa. Commw. 2003). Plaintiffs' allegations about the Meta Pixel therefore fail to allege interception by a device, as required.

### 3. Plaintiff M.D.'s CIPA Section 631 Claim Fails Under The Party Exception

Plaintiff M.D.'s CIPA Section 631 claim also fails because, as to the allegedly sensitive

---

Proc. 10-401(8) ("'Electronic, mechanical, or other device' means any device *or electronic communication*" other than specified exceptions (emphasis added)); 18 U.S.C. § 3127(4) (defining "trap and trace device" as a "device *or process*" (emphasis added)).

information at issue, the Meta Pixel was merely a tool for BlueChew—a party to the communications. Under Section 631, a "person who is a 'party' to a communication is exempt from liability," and the party exception applies where third-party software can be used only to record conversations between a website and a customer. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002-03 (N.D. Cal. 2024) (Martínez-Olguín, J.). This rule stems from California's longstanding recognition that use of a tool like a tape recorder by a party to a conversation does *not* violate Section 631, even if the other party is unaware of the recorder. *See Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898-99 (1975). Accordingly, courts have recognized that a third party's software is not an "unannounced second auditor," in violation of Section 631, when the third party cannot use its record of an interaction for its own purposes, rather than the purposes of the party to the communication. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 970-73 (N.D. Cal. 2023) (citation omitted) (discussing *Rogers*); *see also, e.g.*, *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 745-46 (N.D. Cal. 2023) (dismissing Section 631 claim where plaintiff alleged only that a third-party company's software "accesse[d] and analyze[d]" Home Depot's customer service chats in order "to understand what Home Depot customers want" and increase Home Depot sales). To avoid that obstacle, a plaintiff must "state sufficient factual allegations to support an inference that [the third party] is capable of using the intercepted information for another purpose"—*i.e.*, a purpose other than that of the party to the communication. *Cody*, 718 F. Supp. 3d at 1003 (dismissing Section 631 claim for failure to include such allegations); *see also Cody v. Ring LLC*, 2025 WL 240763, at *3 (N.D. Cal. Jan. 16, 2025) (Martínez-Olguín, J.) (same, as to amended complaint).

Plaintiff M.D. fails to allege any such facts here with respect to his *own* information, as he must to state a claim. The complaint includes a conclusory assertion that "Defendants utilized Plaintiff M.D.'s and California Class Members' sensitive personal and health information for their own purposes"—specifically "for targeted advertising." FAC ¶ 110. But the factual allegations in support of that assertion allege, at most, that Meta is capable of using information about its *users* for advertising purposes. *Id.* ¶¶ 28-29, 36, 38. That says nothing about whether Meta has the capability to use *Plaintiff M.D.'s* personally identifiable information for Meta's own purposes,

because M.D. does not allege he is a Facebook user.

Indeed, the FAC dedicates extensive space to allegations about Meta's interactions with and advertising to Facebook users, even though Plaintiffs conspicuously omit any allegation that they are Facebook users. Plaintiffs begin by alleging that Facebook "users must provide their first and last name, along with their birthday and gender" to sign up for Facebook, *id.* ¶ 26, and then go on to detail how Facebook allegedly "sells advertising space by highlighting its ability to target [those] *users*," *id.* ¶ 28 (emphasis added). Plaintiffs allege, for example, that Meta can "make inferences about *users*" based on data transmitted through the Meta Pixel and compile that information into datasets like Core Audiences and Custom Audiences. *Id.* ¶¶ 28-29 (emphasis added). Plaintiffs also allege that Meta uses data transmitted through the Pixel to assist "other *Facebook* advertisers" in reaching their preferred audiences. *Id.* ¶ 36 (emphasis altered). But, because Plaintiffs do not allege they are Facebook users, these allegations do not show whether or how Meta could use *their* allegedly intercepted information for its own purposes. And Plaintiffs' general allegations that Meta used data it collects "for targeted advertising," *id.* ¶¶ 5, 110; *see also id.* ¶ 57, and that such data was not "deidentified," *id.* ¶ 5, are not specific to Plaintiff M.D.'s information, and by Plaintiffs' own allegations, do not plausibly apply to *non*-user data at all.

In short, Plaintiffs allege no facts suggesting any mechanism by which Meta is capable of using *non*-Facebook-user personally identifying data for targeted advertising—and provide no basis from which to conclude that "[Meta] use[s] [BlueChew] data for the purposes [Plaintiff] alleges." *Cody*, 2025 WL 240763, at *3. At a minimum, Plaintiffs' allegations are too "generalized and vague" to show that Meta was "capable of using" Plaintiff M.D.'s confidential prescription information for its own purposes. *Cody*, 718 F. Supp. 3d at 1002-03 (holding that allegations that owner of software sold "advertising space" and "harvest[ed] the [intercepted] chat transcripts for valuable data" were insufficient); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017 (N.D. Cal. 2023) (finding party exception applied where plaintiff failed to plead "non-conclusory factual allegations to support the use capabilities of the third-party software company" as to the intercepted information). Without such allegations, Plaintiffs fail to allege that Meta was acting as an "unannounced second auditor," rather than simply providing a tool for a

party to the communication—BlueChew. *Yockey*, 688 F. Supp. at 970-71. Plaintiff M.D.'s Section 631 claim should therefore be dismissed.

**4. Plaintiff M.D.'s Claim Under Clause One Of Section 631(a) Fails Because He Does Not Allege Telephonic Communications**

Plaintiff M.D.'s Section 631 claim should also be dismissed to the extent it rests on the first clause of Section 631(a). *See* FAC ¶ 91. That clause penalizes anyone who "intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with *any telegraph or telephone* wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system." Cal. Penal Code § 631(a) (emphasis added). As this Court has previously held, that clause "restricts liability to telephone and telegraph technology," and so "does not apply to the internet." *Cody*, 718 F. Supp. 3d at 999-1000. Here, Plaintiff M.D. alleges interception of communications made over the internet only, FAC ¶¶ 93, 96, and does not allege any communications made by telephone. His Section 631 claim therefore fails to the extent it rests on clause one.

**5. Plaintiff M.D.'s Invasion Of Privacy Claim Fails Because He Does Not Plead Highly Offensive Conduct**

Plaintiff M.D.'s California invasion of privacy claim also fails because Plaintiffs' allegations that *BlueChew* sent sensitive data to Meta fail to show that *Meta* committed any highly offensive intrusion, as required by California law.

The "highly offensive" standard "set[s] a high bar." *Belluomini v. Citigroup Inc.*, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013). The invasion of privacy must be "sufficiently serious" to constitute "an *egregious breach* of [] social norms." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26, 37 (1994)). The collection or "disclosure of highly personal information" does not suffice absent "blatantly deceitful" conduct or other particularly bad acts. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (collection of app usage information was not highly offensive where it was not "blatantly deceitful," even if plaintiffs might have had a

reasonable expectation of privacy); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (disclosure of "personal data" was not highly offensive); *Hubbard v. Google LLC*, 2024 WL 3302066, at *8 (N.D. Cal. July 1, 2024) (requiring a "plus factor" or "'bad act'" beyond alleged unlawfulness).

In *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) (Martínez-Olguín, J.), for example, this Court recognized that disclosure of "certain personal information, such as social security numbers," does not rise to the level of highly offensive conduct. *Id.* at *6. But it found a potential "factual dispute" as to whether there was a highly offensive invasion where the plaintiff alleged the defendant website, a mental-health platform, had *itself* "embedded tracking technology code on its website" that shared private medical information; had not enabled an available "anonymization feature"; and had not disclosed the challenged data sharing—something the defendant did not contest. *See id.* at *1, *5, *6.

The circumstances here are starkly different. At most, Plaintiffs allege that Meta (and Google) *received* their purchase data from BlueChew and that Plaintiffs subsequently saw related advertisements on unspecified websites. Plaintiffs do not allege that Meta had any hand in BlueChew's choice to install the Meta Pixel, much less that Meta acted deceptively to obtain Plaintiffs' information. Moreover, Plaintiffs do not allege that *Meta* served them targeted advertisements, nor do they plausibly allege that Meta ever used their personally identified purchase information for *any* of its own purposes. Meta's unsolicited receipt of information is hardly an "egregious breach of [] social norms," even if the information is sensitive. *See In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (citation omitted); *see also Hammerling*, 615 F. Supp. 3d at 1090. And that is particularly true where Meta required web developers to provide prominent notice regarding pixels and specifically prohibited the sending of sensitive information. *See supra* 12.

## V. CONCLUSION

Meta respectfully requests dismissal of the First Amended Class Action Complaint with prejudice.

Dated: February 20, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By <u>*/s/ Melanie M. Blunschi*</u>

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*