LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

M.D., O.F., and J.P., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC and META PLATFORMS, INC.,

Defendants.

Case No. 3:24-cv-06369-AMO

**DEFENDANT META PLATFORMS, INC.'S REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Hearing: July 10, 2025
Time: 2:00 p.m.
Location: Courtroom 10—19th Floor
Judge: Hon. Araceli Martínez-Olguín

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 10, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom 10, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Meta Platforms, Inc., through its undersigned counsel, will, and hereby does, respectfully request that in connection with its motion to dismiss the First Amended Class Action Complaint, the Court consider the documents attached as Exhibits 1-21 to the accompanying Declaration of Melanie M. Blunschi in Support of Meta's Motion to Dismiss First Amended Class Action Complaint, filed concurrently herewith. The documents are properly considered by the Court on Meta's motion because they are subject to judicial notice under Federal Rule of Evidence 201 and/or incorporated by reference into the Class Action Complaint.

Dated: February 20, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ Melanie M. Blunschi
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**MEMORANDUM OF POINTS & AUTHORITIES**

Defendant Meta Platforms, Inc. ("Meta") respectfully requests that the Court consider certain documents submitted in connection with Meta's motion to dismiss the First Amended Class Action Complaint ("FAC"), as described below and attached to the concurrently filed Declaration of Melanie M. Blunschi ("Blunschi Declaration"). The documents include (1) four publicly available, informational webpages from Meta's website regarding the Meta Pixel (Exhibits 1-4); (2) BlueChew's publicly available account registration page during Plaintiffs' alleged use of BlueChew and currently (Exhibits 5-9); (3) BlueChew's publicly available Terms & Conditions and Privacy Policy during Plaintiffs' alleged use of BlueChew (Exhibits 10-19); and (4) Meta's publicly available Business Tools Terms currently and during Plaintiffs' alleged use of BlueChew (Exhibits 20-21). These documents are properly considered because they are incorporated by reference into and integral to the complaint, and/or subject to judicial notice under Federal Rule of Evidence 201.

## I. LEGAL STANDARD

In deciding a motion to dismiss, a court may consider "materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

The doctrine of incorporation by reference "treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). When a document is incorporated by reference, the Court may consider the contents of the document, and unlike judicial notice, a court "may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citation omitted). A document is incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citation omitted). The purpose of the doctrine is to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* For that reason, the doctrine may apply even where a complaint does not explicitly mention a document by name or references only a portion of it. *See*

*Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that incorporation by reference may apply even where the plaintiff "does not explicitly allege the contents of th[e] document in the complaint" (citation omitted)); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (incorporating employee health plan where claims were premised upon plaintiff's coverage under the plan), *superseded by statute on other grounds*. The doctrine "applies with equal force to internet pages as it does to printed material." *Knievel*, 393 F.3d at 1076.

Additionally, courts may take judicial notice of matters that are "not subject to reasonable dispute" because they are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

## II. ARGUMENT

### A. Exhibits 1-21 Are Incorporated By Reference Into The Complaint

Plaintiffs rely throughout the complaint on various webpages on Meta's website to describe how the Meta Pixel allegedly works and what Meta allegedly represents to third-party businesses. Similarly, Plaintiffs rely throughout the complaint on screenshots of BlueChew's website and checkout process to allege the types of information BlueChew obtained from its users. But Plaintiffs omit critical context that appears in those same documents and others incorporated within them. The incorporation-by-reference doctrine exists precisely to prevent such "artful pleading" and ensure courts can assess claims at the motion-to-dismiss stage based on a full and fair understanding of the documents that undergird a plaintiff's claims. *Khoja*, 899 F.3d at 1003; *see id.* at 1002 (recognizing that "the policy concern underlying the rule" is "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based" (citation omitted)). Consistent with those considerations, Exhibits 1-21, which form the basis of Plaintiffs' claims, should be deemed incorporated by reference.

First, Plaintiffs "explicitly refer[] to excerpts" of informational webpages on Meta's website that describe how the Meta Pixel works (Exs. 1-4) "to support [their] claims." *Jaszczyszyn v. SunPower Corp.*, 2024 WL 3463348, at *3 (N.D. Cal. July 17, 2024) (Martínez-Olguín, J.); *see* First Amended Class Action Complaint ("FAC"), Dkt. 34 ¶¶ 28 n.9, 33 n.21, 38 n.25 (citing Ex.

1); *id.* ¶ 31 n.17 (citing Ex. 2); *id.* ¶¶ 31 n.19, 37 n.23 (citing Ex. 3); *id.* ¶ 31 n.17 (citing Ex. 4). These webpages are integral to Plaintiffs' claims, because the complaint relies on representations about the Meta Pixel made on these webpages to allege that Meta received Plaintiffs' purchase information from BlueChew. *See, e.g.*, FAC ¶¶ 28-33, 35; *Gershfeld v. TeamViewer US, Inc.*, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) (affirming incorporation by reference of documents that were "integral to" plaintiff's claims (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

And incorporation by reference is particularly appropriate here because Plaintiffs selectively quote from these documents, curating the language to omit portions that doom their claims. *Khoja*, 899 F.3d at 1002. For example, Plaintiffs allege that "[t]he Business Tools are automatically configured to capture certain data," FAC ¶ 31 (citing Ex. 4), to support their claim that Meta intentionally received their personal health information, *id.* ¶¶ 96, 115, 138. But Plaintiffs fail to mention that the very same webpage explains how "[t]o configure the Meta Pixel to not send" such information, confirming that third-party websites like BlueChew—not Meta—are responsible for choosing whether to use the Meta Pixel and how to configure it. Ex. 4 at 10. Similarly, Plaintiffs quote only the first few lines from Exhibit 3 regarding how "Meta uses event data to show ads to people who are likely to be interested in them." FAC ¶ 37 (citing Ex. 3). But the rest of that same webpage explains that developers—not Meta—"[s]et up custom events" and must "ensure" that each custom event "complies with Meta Business Tools Terms," because a developer's use of the Meta Pixel for "[s]haring [sensitive] information violates the Meta Business Tool Terms." Ex. 3 at 1-3 (linking to the Meta Business Tools Terms). In short, because Plaintiffs rely on selective portions of these webpages to allege that Meta intentionally received sensitive information through the Meta Pixel, the incorporation-by-reference doctrine applies, and the entirety of the documents should be considered and treated as part of the complaint. *Khoja*, 899 F.3d at 1002; *see also e.g.*, *Loomis v. Slendertone Distrib., Inc.*, 420 F. Supp. 3d 1046, 1062-64 (S.D. Cal. 2019) (incorporating by reference screenshots of website and Amazon page where plaintiff selectively quoted advertising).

Second, the BlueChew registration page (Exs. 5-9) is incorporated by reference for similar

reasons.[1] Plaintiffs refer extensively to BlueChew's website, and specifically the screens that appear when a user purchases medication, by incorporating screenshots into the complaint. *See* FAC ¶¶ 20-24. Plaintiffs also allege that "[a]t no point during the checkout process are patients alerted that information related to their prescription medication is being intercepted by third parties." *Id.* ¶ 25. However, Plaintiffs omit a critical screenshot from the checkout flow which shows that in order to make a purchase, users must first sign up for an account, and in doing so, affirmatively agree to BlueChew's Terms & Conditions, which incorporate its Privacy Policy. *See* Exs. 5-9; *see also* Ex. 12. A user who went through BlueChew's purchase flow to buy medication—as Plaintiffs allegedly did—would therefore have notice of, and have to agree to, its Privacy Policy, which discloses that BlueChew would "share information about you, including health information and other information that personally identifies you . . . with service providers that [it] use[s] to support the Websites or otherwise in connection with administering and providing [its] Services." Ex. 17 at 2.[2] And BlueChew's June 2024 Privacy Policy further discloses that BlueChew used the Meta Pixel in particular, and explicitly discloses that "[t]he data from Meta Pixel is also saved and processed by Facebook and Instagram." Ex. 19 at 3.

By presenting several screenshots from the checkout flow but omitting this critical step, Plaintiffs attempt to "select[] only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja*, 899 F.3d at 1002. This is the exact type of "artful pleading" that the incorporation by reference doctrine was intended to prevent. *Id.* BlueChew's website is "the source of many of Plaintiffs' allegations" which "underpin[] Plaintiffs' theory," and Exhibits 5-9 from that website should be deemed incorporated by reference. *Bounthon v. Proctor & Gamble Co.*, 2024 WL 4495501, at *6 (Oct. 15, 2024) (Martínez-Olguín, J.).

---

[1] The exhibits attached to the Declaration of Melanie M. Blunschi ("Blunschi Declaration") include versions of the registration page from before and after each Plaintiff allegedly purchased medication. Exs. 5-9. The pages are substantially similar to one another, and all versions of the registration page require a user to agree to BlueChew's Terms & Conditions, which expressly incorporate the Privacy Policy. *See* Exs. 5-9; Exs. 10-12 at 3; Ex. 13-14 at 2.

[2] The other submitted versions of the Privacy Policy (Ex. 16-19) contain materially similar language.

Third, the contents of BlueChew's Terms & Conditions and Privacy Policy (Exs. 10-19) are also incorporated by reference into Plaintiffs' complaint.[3] BlueChew's Terms & Conditions state that the Privacy Policy is "incorporated into the[] Terms and Conditions" and "explain[s] how [BlueChew] may collect, use, share, and disclose" users' information. Ex. 12 at 2. The Privacy Policy, in turn, discloses that BlueChew "may automatically collect information" about users' use of its website, including "web pages you view," "links you click," and "pages visited," and that it may do so through "cookies, web beacons, and other technologies." Ex. 17 at 2. It further discloses that BlueChew may "share information" about users, "including health information and other information that personally identifies you" with third-party service providers to "support" its website and provide its services. *Id.* And the June 2024 Privacy Policy further discloses that BlueChew would use the Meta Pixel to "keep track of what users do," and that "[t]he data from Meta Pixel is also saved and processed by Facebook." Ex. 19 at 3.

These and other similar disclosures "form[] the basis" of Plaintiffs' claims, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), because Plaintiffs' claims depend on lack of consent to Meta's receipt of information about their activity on BlueChew's website. *Silver v. Stripe*, 2021 WL 3191752, at *2-3 (N.D. Cal. July 28, 2021) (explaining that "lack of consent" is an element of CIPA claims); 18 Pa. Cons. Stat. § 5704(4) (no liability for communications recorded with consent); Md. Code Ann., Cts. & Jud. Proc. § 10-402(c)(3) (same); *see also* FAC ¶¶ 13, 58, 92-93, 96-97, 114, 125, 137. Indeed, the Ninth Circuit recently reaffirmed that where a plaintiff's claims are "dependent upon the extent and sufficiency of [certain] disclosures," the "disclosures form the basis of the claims themselves" and a court may incorporate by reference the terms that contain such disclosures. *Gershfeld*, 2023 WL 334015, at *1.

That is the case here. Plaintiffs cannot adequately allege lack of consent or a reasonable expectation of privacy if policies disclose the data collection they challenge. *See, e.g.*, *Silver*, 2021 WL 3191752, at *2-3; *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5,

---

[3] The exhibits attached to the Blunschi Declaration include versions of the Terms & Conditions and Privacy Policy available through the Wayback Machine from both before and after Plaintiffs allegedly used BlueChew's website. The language is substantially similar, except as specifically noted. *See* Mot. to Dismiss.

2024). Plaintiffs' claims thus "necessarily depend[] on the application of [BlueChew's] policies—which relate directly to the issue of consent." *Garcia v. Enters. Holdings*, 78 F. Supp. 3d 1125, 1136-37 (N.D. Cal. 2015). And, although Plaintiffs assert that BlueChew users are not "alerted that information related to their prescription medication is being intercepted by third parties," FAC ¶ 25, they cannot avoid BlueChew's disclosures, which address the very conduct they challenge, simply by omitting the key language from their complaint. *See, e.g.*, *A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *4 (S.D. Cal. Aug. 19, 2024) (incorporating by reference "a website's privacy policy when [other portions of] the website [were] referenced in the complaint," in assessing CIPA claim); *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1258 (D.N.M. 2020) (taking judicial notice of Google's policies and disclosures "as part and parcel of the web-based . . . service that is central to the complaint"). Accordingly, "these documents may appropriately be considered on a motion to dismiss." *Garcia*, 78 F. Supp. 3d at 1136-37; *see also Libman v. Apple, Inc.*, 2024 WL 4314791, at *5 (N.D. Cal. Sept. 26, 2024) (holding that setting screens "form[ed] the basis of Plaintiffs' claims" because they "reflect[ed] the settings Plaintiffs contend they adjusted to protect their privacy").

Finally, for similar reasons, Meta's Business Tools Terms (Exs. 20-21) are also incorporated by reference into Plaintiffs' FAC. Plaintiffs cite various Meta webpages that specifically refer and link to the Business Tools Terms, including webpages that reiterate that sharing certain types of information violates those Terms, *see* Ex. 3 at 3 (cited at FAC ¶¶ 31 n.19, 37 n.23), and that "remind" businesses that use of the Meta Pixel is subject to those Terms, *see* Ex. 1 at 3 (cited at FAC ¶¶ 28 n.9, 33 n.21, 38 n.25). But Plaintiffs selectively omit direct reference to the Business Tools Terms, while cherry-picking quotes from *other* webpages to purportedly show what "Facebook instructs [its] business customers," FAC ¶ 34; *see id.* ¶¶ 30-31, 33, 36-37, and alleging in conclusory fashion that Meta "willfully" received their health information, *id.* ¶ 97. To meaningfully assess those allegations, this Court should have the benefit of the Terms that *govern* use of the Meta Pixel, which specifically require businesses to have "all of the necessary rights and permissions and a lawful basis" to collect and use the data they send and to "represent and warrant that [they] will not share Business Tool Data with [Meta] that [they] know or

reasonably should know includes . . . health . . . information" or any "sensitive" information. Ex. 20 at 1; *see also* Ex. 21 (similar). Evaluating Plaintiffs' claims based on their hand-picked selection of Meta webpages, without the context provided by the Business Tools Terms linked on those very pages, would permit the type of "artful pleading" the incorporation-by-reference doctrine is "designed to prevent." *Khoja*, 899 F.3d at 1003; *see also Jaszczyszyn*, 2024 WL 3463348, at *3 (explaining that incorporation-by-reference doctrine is designed to ensure that a plaintiff does not improperly "surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based" (quoting *Khoja*, 899 F.3d at 1002)).

**B. Exhibits 1-21 Are Also Subject To Judicial Notice**

Exhibits 1 through 21 are also judicially noticeable as publicly available documents that are "not subject to reasonable dispute" and whose contents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

"In general, websites and their contents may be judicially noticed," and "[c]ourts routinely take judicial notice of terms of service." *Hirlinger v. WP Co. LLC*, 2024 WL 2941630, at *2 (N.D. Cal. June 10, 2024) (Martínez-Olguín, J.) (alteration in original) (citations omitted); *see, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1084 n.8 (N.D. Cal. 2023) (taking judicial notice of Meta's "[Terms of Service], Business Tools Terms, Commercial Terms, Privacy Policy and Cookies Policy"); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (taking judicial notice of publicly available websites). And courts frequently take judicial notice of previous versions of websites archived by the Wayback Machine. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (taking judicial notice of prior versions of policies accessed via the Wayback Machine); *United States ex rel. Hong v. Newport Sensors, Inc.*, 2016 WL 8929246, at *3 (C.D. Cal. May 19, 2016) ("[D]istrict courts in this circuit have routinely taken judicial notice of content from the Internet Archive's Wayback Machine pursuant to [Fed. R. Evid. 201(c)(1)] . . . ."); *Erickson v. Neb. Mach. Co.*, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) (citing cases).

The Court should do the same here. Exhibits 1 through 21 are publicly available webpages,

many of which are cited in Plaintiffs' complaint or directly referenced in the webpages Plaintiffs cite. They are not subject to reasonable dispute and their contents can be accurately and readily determined. They are thus appropriately subject to judicial notice.

## III. CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court consider the exhibits attached to the Blunschi Declaration submitted in connection with Meta's motion to dismiss.

Dated: February 20, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Melanie M. Blunschi*

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*