**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN 224018)
  bhur@willkie.com
SIMONA A. AGNOLUCCI (SBN 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN 281668)
  esantacana@willkie.com
DAVID D. DOAK (SBN 301319)
  ddoak@willkie.com
ISABELLA MCKINLEY CORBO (SBN 346226)
  icorbo@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA  94104
Telephone: (415) 858-7400

Attorneys for Defendant
**GOOGLE LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| M.D., O.F., and J.P., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>GOOGLE LLC and META PLATFORMS, INC.,<br><br>Defendants. | Case No. 3:24-cv-06369-AMO<br><br>**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: July 10, 2025<br>Time: 2:00 p.m.<br>Ctrm: 10, 19th Floor<br>450 Golden Gate Ave., SF, CA 94102<br>Before: Hon. Araceli Martínez-Olguín<br><br><u>CLASS ACTION</u><br>Trial Date: Not set<br>Current Action Filed:  September 10, 2024 |

1
2

## NOTICE OF MOTION AND MOTION TO DISMISS
## FIRST AMENDED CLASS ACTION COMPLAINT

3

PLEASE TAKE NOTICE that the following Motion will be heard on July 10, at 2:00 p.m., in

4 Courtroom 10, 19th Floor, of the United States District Court for the Northern District of California,

5 located at 450 Golden Gate Avenue, San Francisco, California 94102, with the Honorable Araceli

6 Martínez-Olguín presiding. Defendant Google LLC ("Google" or "Defendant") will, and hereby does,

7 move to dismiss with prejudice the First Amended Class Action Complaint (ECF No. 34 ("FAC")) of

8 Plaintiffs M.D., O.F., and J.P., (collectively, "Plaintiffs"), individually and on behalf of all others

9 similarly situated. This Motion is based on this Notice of Motion and Motion, the supporting

10 Memorandum of Points and Authorities, Google's concurrently filed Request for Judicial Notice in

11 Support of the Motion (the "RJN"), the Declaration of Isabella McKinley Corbo in Support of the RJN,

12 Exhibits 1–8 thereto, the proposed orders submitted with the Motion and RJN, and all pleadings,

13 arguments, and matters before the Court.

## STATEMENT OF ISSUES TO BE DECIDED

14

15 Whether Plaintiffs' First Amended Class Action Complaint should be dismissed under Federal

16 Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and

17 whether such dismissal should be with prejudice because amendment would be futile.

18

19 Dated:  February 20, 2025          WILLKIE FARR & GALLAGHER LLP

20                                    Benedict Y. Hur
                                      Simona A. Agnolucci
21                                    Eduardo E. Santacana
                                      David D. Doak
22                                    Isabella McKinley Corbo

23
                                      By:    */s/ Benedict Y. Hur*
24                                            BENEDICT Y. HUR

25
                                      Attorneys for Defendant
26                                    GOOGLE LLC

27
28

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:24-cv-06369-AMO

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF ISSUES ............................................................................... 2

III. BACKGROUND ............................................................................................... 2

    A.   Plaintiffs allege that BlueChew used Google Analytics. ................................. 2

    B.   Google lawfully provided BlueChew with analytics services. ....................... 3

    C.   The contract between Google and BlueChew forbade BlueChew from sending Google PHI or PII. ........................................................................................... 4

    D.   Procedural History ....................................................................................... 5

IV. LEGAL STANDARD ........................................................................................ 6

V.  ARGUMENT .................................................................................................... 7

    A.   Plaintiffs cannot state claims under CIPA, WESCA, or MWESA. ................ 7

         1.   Plaintiffs consented to BlueChew's use of Google Analytics. ........... 8

             a.   CIPA sections 631 and 632 .................................................. 8

             b.   WESCA .............................................................................. 10

             c.   MWESA ............................................................................ 11

         2.   Plaintiffs fail to plausibly allege that Google intended to receive Plaintiffs' PII and PHI. ..................................................................... 11

             a.   CIPA Sections 631 and 632 .............................................. 12

             b.   WESCA .............................................................................. 14

             c.   MWESA ............................................................................ 15

         3.   Plaintiffs' claims under CIPA section 632, WESCA, and MWESA fail because none of the at-issue communications were confidential. ..................... 15

             a.   CIPA sections 631 and 632 ................................................ 16

             b.   WESCA .............................................................................. 17

             c.   MWESA ............................................................................ 17

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-06369-AMO

4.    There is no allegation that data transmitted to Google constituted the "content" of a communication, which defeats Plaintiff M.D.'s claim under CIPA section 631 and Plaintiff O.F.'s claim under WESCA. ................. 18

    b.    CIPA section 631 ................................................................................... 18

5.    Plaintiff M.D.'s Section 631 claim fails because there is no allegation that Google did anything but act as a mere vendor ........................................... 19

B.    Plaintiff M.D. fails to state a claim for invasion of privacy under the California Constitution. ............................................................................................................... 21

1.    Plaintiff M.D. lacked a reasonable expectation of privacy. .............................. 22

2.    There was no egregious breach of social norms. ............................................... 23

VI.    CONCLUSION ................................................................................................................... 24

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-06369-AMO

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
    No. 3:23-CV-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024)........................15

*Adler v. Community.com, Inc.*,
    No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ...........................8, 18

*Agnew v. Dupler*,
    553 Pa. 33, 717 A.2d 519 (Pa. 1998) ...........................................................................17

*Agnew v. State*,
    197 A.3d 27 (Md. Ct. App. 2018)...........................................................................11, 17

*Am. Hosp. Ass'n v. Becerra*,
    738 F. Supp. 3d 780 (N.D. Tex. 2024) .........................................................................23

*Arndt v. Gov't Emps. Ins. Co.*,
    No. CV MJM-23-2842, 2024 WL 4335644 (D. Md. Sept. 26, 2024) ...........................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................6

*B.K. v. Eisenhower Med. Ctr.*,
    721 F. Supp. 3d 1056 (C.D. Cal. 2024) .........................................................................23

*Braun v. Phila. Inquirer, LLC*,
    No. 22-CV-4185-JMY, 2023 WL 7544160 (E.D. Pa. Nov. 13, 2023).........................................14

*Campbell v. Facebook Inc.*,
    77 F. Supp. 3d 836 (N.D. Cal. 2014) ...........................................................................16

*Carrico v. City & Cnty. of S.F.*,
    656 F.3d 1002 (9th Cir. 2011) ....................................................................................6

*Cline v. Reetz-Laiolo*,
    329 F. Supp. 3d 1000 (N.D. Cal. 2018) .........................................................................16

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-06369-AMO

*Commonwealth v. Blystone*,
    519 Pa. 450 (1988)..........................................................................................................7

*Commonwealth v. Byrd*,
    235 A.3d 311 (Pa. 2020).............................................................................................10

*Commonwealth v. Mason*,
    665 Pa. 230, 247 A.3d 1070 (2021)...........................................................................17

*Cousin v. Sharp Healthcare*,
    681 F. Supp. 3d 1117 (S.D. Cal. 2023)......................................................................22

*Davis v. State*,
    43 A.3d 1044 (M.D. Ct. App. 2012)............................................................................7

*Deibler v. State*,
    776 A.2d 657 (Md. Ct. Spec. App. 2001)..................................................................15

*Doe I v. Google LLC*,
    741 F. Supp. 3d 828 (N.D. Cal. 2024)......................................................12, 13, 14, 23

*Doe v. Kaiser Found. Health Plan, Inc.*,
    No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)
    ......................................................................................................19, 20, 21, 24

*In re Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015).......................................................................19

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020).....................................................................................22

*Fearnow v. Chesapeake & Potomac Tel. Co. of Md.*,
    676 A.2d 65 (1996)....................................................................................................17

*Flanagan v. Flanagan*,
    27 Cal.4th 766 (2002)................................................................................................16

*Garcia v. Enter. Holdings, Inc.*,
    78 F. Supp. 3d 1125 (N.D. Cal. 2015).......................................................................10

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-06369-AMO

*In re Gilead Scis. Secs. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...................................................................................6

*Gonzalez v. Planned Parenthood of L.A.*,
  759 F.3d 1112 (9th Cir. 2014) ..................................................................................6

*Graham v. Noom*,
  533 F.Supp 3d 823 (N.D. Cal. 2021) .......................................................................19

*Hernandez v. Hillsides, Inc.*,
  47 Cal.4th 272 (2009) ...............................................................................7, 22, 24

*Holmes v. State*,
  182 A.3d 341 (Md. Ct. Spec. App. 2018), *cert. denied*, 188 A.3d 924 (Md. Ct. App.
  2018) ........................................................................................................................15

*India Price v. Carnival Corp.*,
  712 F. Supp. 3d 1347 (S.D. Cal. 2024)...........................................................7, 14, 15

*Ingrao v. AddShoppers, Inc.*,
  No. CV 24-1022, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024).................................19

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................................................................24

*Javier v. Assurance IQ, LLC*,
  No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021)............10, 16, 22

*Leocal v. Ashcroft*,
  543 U.S. 1 (2004).......................................................................................................13

*Libman v. Apple, Inc.*,
  No. 22-CV-07069-EJD, 2024 WL 4314791 (N.D. Cal. Sept. 26, 2024)................14, 19

*Matera v. Google Inc.*,
  No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016)....................10

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ...................................................................................6

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-06369-AMO

*In re Meta Pixel Healthcare Litig.*,
　　647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................................................................22, 23

*Miller v. Kruzik*,
　　No. 3:CV-06-0463, 2009 WL 10718510 (M.D. Pa. Feb. 23, 2009) .............................17

*Miller v. Rykoff-Sexton, Inc.*,
　　845 F.2d 209 (9th Cir. 1988) ........................................................................................6

*Navarro v. Block*,
　　250 F.3d 729 (9th Cir. 2001) ........................................................................................6

*Pena v. Gamestop, Inc.*,
　　670 F. Supp. 3d 1112 (S.D. Cal. 2023)...........................................................................7

*Popa v. Harriet Carter Gifts, Inc.*,
　　52 F.4th 121 (3d Cir. 2022) .........................................................................................10

*Rodriguez v. Google*,
　　No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021).........................16

*Rojas v. HSBC Card Servs. Inc.*,
　　93 Cal. App. 5th 860 (2023), *review denied* (Nov. 21, 2023) .......................................12

*Sharifi v. Am. Red Cross*,
　　No. CV 21-2873, 2022 WL 125930 (E.D. Pa. Jan. 12, 2022) ......................................17

*Silver v. Stripe Inc.*,
　　No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021).....................9

*State v. Maddox*,
　　69 517 A.2d 370 (Md. Ct. App. 1986).........................................................................11

*Trainor v. Overmyer*,
　　No. 1:20-CV-00260-RAL, 2021 WL 5770215 (W.D. Pa. Dec. 6, 2021) ......................17

*United States v. Christensen*,
　　828 F.3d 763 (9th Cir. 2015) .......................................................................................13

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-06369-AMO

*United States v. Thompson/Ctr. Arms Co.*,
   504 U.S. 505 (1992) (plurality opinion) ........................................................13

*Vonbergen v. Liberty Mut. Ins. Co.*,
   705 F. Supp. 3d 440 (E.D. Pa. 2023) ...........................................................10

*Walsh v. Krantz*,
   No. 1:07-CV-0616, 2008 WL 3981492 (M.D. Pa. Aug. 22, 2008), *aff'd*, 386 F.
   App'x 334 (3d Cir. 2010) .............................................................................14

*Weiner v. ARS Nat'l. Servs., Inc.*,
   887 F. Supp. 2d 1029 (S.D. Cal. 2012)..........................................................8

*Williams v. What If Holdings, LLC*,
   No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ...............19, 20

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) .....................................................................19

**Statutes**

18 Pa. Cons. Stat. § 5704(4) ...........................................................................10

Cal. Penal Code § 631............................................................................. *passim*

Cal. Penal Code § 631(a) ......................................................................8, 10, 12, 21

Cal. Penal Code § 632 .........................................................................5, 8, 15, 16

Cal. Penal Code § 632(a) ......................................................................8, 10, 12, 16

Cal. Penal Code §§ 631(a) and 632(a) .............................................................8

California Invasion of Privacy Act (CIPA) ........................................................ *passim*

Maryland Wiretapping and Electronic Surveillance Act (MWESA) ......................... *passim*

Maryland Wiretapping and Electronic Surveillance Act, Md. Cts. & Jud. Proc. Code
   Sec. 10-401 et seq. ...................................................................................6

Md. Code Ann., Cts. & Jud. Proc. § 10-402 .................................................11, 15

Pennsylvania Wiretapping and Electronic Surveillance Control Act (WESCA) ....... *passim*

**Other Authorities**

Cal. Const. Art. 1 § 1 ..................................................................................22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Civ. P. 8 .................................................................................................................13

Fed. R. Civ. P. 9(b) .............................................................................................................13

Fed. R. Civ. P. 12(b)(6).................................................................................................2, 5, 6

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-06369-AMO

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3

Google Analytics is a free and lawful tool that websites and software-application developers use

4 to gain insight into how users interact with their platforms. Courts in this District have repeatedly

5 recognized that websites have the right to employ such tools, like Google Analytics, which enable mom-

6 and-pop shops and major retailers alike to understand and improve their users' experiences. Plaintiffs'

7 claims are predicated on the alleged collection and transmission of data created during their interactions

8 with BlueChew.com ("BlueChew" or the "Website"), a telehealth purveyor of erectile-dysfunction

9 medication. Plaintiffs allege that sensitive information was intentionally "intercepted" by Google

10 Analytics without their consent. Plaintiff M.D., on behalf of a putative California class, claims that this

11 interception violated his privacy rights under the California Penal Code ("CIPA"), sections 631 and 632,

12 and under the California Constitution. Plaintiffs O.F. and J.P. assert substantially similar claims on

13 behalf of putative Pennsylvania and Maryland classes, respectively, with Plaintiff O.F. suing under the

14 Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA") and Plaintiff J.P suing

15 under the Maryland Wiretapping and Electronic Surveillance Act ("MWESA").

16

But Plaintiffs do not plausibly allege any violation of law. Their claims fail for at least three

17 reasons. *First*, all three Plaintiffs were informed and required to agree that using the Website would

18 entail the collection and processing of data by Google Analytics. This is because the Google Analytics

19 Terms of Service ("GA TOS") require websites that use Google Analytics to disclose and obtain user

20 consent for its use, and BlueChew complied with this requirement. Plaintiffs thus consented to the

21 Website's use of Google Analytics and proceeded to use the Website. *Second*, Plaintiffs cannot establish

22 the intent requirement for their claims because the GA TOS expressly prohibits websites, including

23 BlueChew, from transmitting sensitive information, such as personal health information ("PHI") and

24 personally identifiable information ("PII"), to Google. To the extent BlueChew violated the GA TOS,

25 unbeknownst to Google, Google cannot be held liable for the consequences of that breach. *Third*,

26 BlueChew at all times controlled the types of data collected and sent (if any) to Google. This is inherent

27 in the functionality of Google Analytics: as courts have recognized, unless certain configurations are

28

made, Google only serves as a third-party vendor of services that websites and software-application developers choose whether and how to use, and which they control. Google offers, in effect, a water hose equipped with an adjustable nozzle. Websites decide whether to hook it up, how high to turn on the water, which spray pattern to use, and where the water goes. They control the flow of data—and must disclose and obtain consent for the use of the tool.

Plaintiffs' allegations relating to Google boil down to nothing more than that BlueChew used a lawfully available analytics service, that Plaintiffs interacted with BlueChew, and that they object to certain customizations they speculate *BlueChew* made to the tool. For these reasons, and on the basis of the arguments set forth herein, this Court should dismiss Plaintiffs' First Amended Class Action Complaint. Whatever complaints they may have, these complaints are not with Google.

## II.    STATEMENT OF ISSUES

Whether Plaintiffs' First Amended Class Action Complaint ("FAC") should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and whether such dismissal should be with prejudice because amendment would be futile.

## III.    BACKGROUND

### A.    Plaintiffs allege that BlueChew used Google Analytics.

Plaintiffs M.D., O.F., and J.P., residents of California, Pennsylvania, and Maryland, respectively, brought this lawsuit against Google relating to their interactions with BlueChew.com. FAC ¶¶ 7–12.[1] Plaintiffs allege that they used BlueChew.com, and that BlueChew used Google Analytics to analyze their data without their consent. *Id*. ¶¶ 6, 13, 58, 76–77, 93, 96–97, 109, 125, 137. Plaintiffs concede that Google Analytics must be "incorporated" onto a website in order to perform any functions on data that users input into that website. *Id*. 14, 67. They further concede that websites that run Google Analytics control how the technology is implemented, and can customize how data are processed as well as what those data are used for. *Id*. at ¶¶ 66–67, 71. They allege that the data transferred by BlueChew to Google consisted of their name, birthday, email address, and a pseudonymous identifier created and

---

[1] Plaintiff also named Meta Platforms, Inc. ("Meta") as a defendant, based on his alleged interaction with Meta's analytics technology, which is separate and distinct from Google's. FAC ¶ 15.

assigned to them by BlueChew itself. *Id*. ¶¶ 44, 68–69. Plaintiffs do not allege that Google instructed BlueChew to transmit this or any other type of data or information to Google, or that Google had any way of knowing the meaning of any "unique" pseudonymous identifier used by BlueChew. FAC ¶¶ 44, 70.

Plaintiffs make a number of general allegations about the functioning of Google Analytics, including that "Google Analytics links with Google Ads, allowing the data intercepted by Google Analytics to be utilized for targeted advertising purposes," but do not allege that Google is the entity performing this utilization. *Id*. ¶ 74. Plaintiffs make no allegations that any data points from BlueChew.com were ever used inconsistent with the Google Terms of Service or with BlueChew's Privacy Policy.

### B.    Google lawfully provided BlueChew with analytics services.

Google Analytics is one of many available analytics tools that websites and applications may use to gain insight into how users interact with their platforms. FAC ¶¶ 31–32, 63, 66–67, 71–73. Websites like BlueChew that use Google Analytics choose which data are collected and how those data are used. *See id*. ¶¶ 66–67 (websites incorporate Google Analytics "by adding a small piece of JavaScript measurement code to each page on the site," and can then "utilize it" to gain various types of information about their users); *see also* Request for Judicial Notice ("RJN") Ex. 1 ("Organizations use Google Analytics because they choose to do so. They, not Google, control what data is collected and how it is used.").

Websites that run Google Analytics "retain ownership of the data they collect using Google Analytics, and Google only stores and processes this data per their instructions—for example, to provide them with reports about how visitors use their sites and apps." RJN Ex. 1. Additionally, websites determine what data will be shared with Google—including whether *any* data will be shared at all— subject to contractual limitations prohibiting websites from sharing certain types of data, including

personally identifiable information. *See* RJN Exs. 1[2], 2-A, 2-B. Google Analytics "does not serve ads at all." RJN Ex. 1

### C.     The contract between Google and BlueChew forbade BlueChew from sending Google PHI or PII.

Plaintiffs allege that Google's relationship with BlueChew allowed certain user data, including PHI and PII, to be shared with Google. They further allege, as did the original complaint, that "Google knew that the incorporation of its software onto [BlueChew.com] would result in the interception" of certain sensitive data. FAC ¶ 14. This allegation was conclusory in the original complaint, and it is conclusory again here; Plaintiffs plead zero facts to support it. Nor do Plaintiffs set forth any facts to support their new conclusory allegation that Google "encourage[d] companies, like Blue Chew, to embed" Google Analytics, and that Google "intends to intercept" PHI and PII. *Id.*

Moreover, Plaintiffs ignore two critical points that, even putting aside the conclusory nature of the FAC's allegations on the issue of intent, render their allegations facially implausible: First, Plaintiffs ignore the contracts between Google and the websites, including BlueChew.com, that use Google Analytics. These contracts explicitly prohibit BlueChew.com—and any website that installs Google's code—from transmitting PII to Google.[3] Second, Plaintiffs disregard BlueChew's privacy policy, which informs all users at the time of account creation about these contractual obligations regarding data sharing, and to which all BlueChew users—including Plaintiffs—must consent when creating an account to use BlueChew.

Websites that use Google Analytics must consent to and abide by the GA TOS. The GA TOS states that any website using Google Analytics "will not … pass information [] to Google that Google could use or recognize as [PII]." RJN Exs. 2-A, 2-B. Further, "HIPAA-regulated entities using Google Analytics must refrain from exposing to Google any data that may be considered Protected Health Information (PHI), even if not expressly described as PII in Google's contracts and policies." RJN Ex.

---

[2] *See* RJN Ex. 1 ("We never allow sensitive information to be used for personalized advertising. It's simply off limits.").

[3] Plaintiffs ignore these judicially noticeable facts despite their counsel's actual knowledge of them when the FAC was filed.

3. Google also provides various "best practices" for websites to "avoid sending [] PII," including, among other things, "remov[ing] PII from user-entered information before it is sent to Analytics." RJN Ex. 4. In order to comply with the GA TOS, websites like Bluechew that use Analytics "must disclose" the technology's use, as well as how that particular website "collects and processes data." RJN Exs. 2-A, 2-B.

As required, BlueChew explicitly discloses its use of Google Analytics, and has done so at all times relevant to this litigation. The Website's Privacy Policy in effect when Plaintiffs M.D. and O.F. allegedly accessed the Website—which users must accept before creating an account—informs users that BlueChew may use Google Analytics and other analytics tools to "evaluate usage of our Websites and Services and to help us personalize content on our Websites and Services," and "to help us improve our Services, performance and user experiences." RJN Exs. 5-A–5-E; FAC ¶¶ 7, 9. Those Privacy Policies further state that such analytics tools "may use cookies and other tracking technologies," and that BlueChew "do[es] not share [users'] personal information" with the third-party vendors of these tools. *Id.* The BlueChew Privacy Policy in effect when Plaintiff J.P. allegedly accessed the Website discloses that BlueChew uses GA and other analytics tools to "measure and report how users interact with our Website, emails, and advertisements to analyze the traffic to our Website," and that any such use of Google Analytics "is restricted by Google's Terms of Service and Privacy Policy." RJN Exs. 5-F, 5-G. Again, at all times relevant to this litigation, users of the Website have been required to agree to the BlueChew Privacy Policy, which discloses BlueChew's use of Google Analytics, in order to create an account. *See* RJN Exs. 6-A–6-E, 7-A–7-C.

### D.   Procedural History

Plaintiff M.D. filed his original Class Action Complaint ("CAC") on September 10, 2024. *See generally* ECF No. 1. The CAC asserted the following claims against Google: (1) violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code section 631 (Claim I); (2) violation of CIPA, California Penal Code section 632 (Claim II); and (3) invasion of privacy under the California Constitution (Claim III). On December 16, 2024, Google moved to dismiss the CAC under Federal Rule

1    of Civil Procedure 12(b)(6). ECF No. 26. That same day, Google also filed a related Request for Judicial

2    Notice. *See* ECF No. 27.

3        On January 6, 2025, Plaintiffs filed the FAC, now the operative pleading in this case. ECF No.

4    34. The FAC added two new claims: (1) Plaintiff O.F.'s claim for a violation of the Pennsylvania

5    Wiretapping Act, 18 Pa. Cons. Stat. § 5701 et seq., on behalf of a putative Pennsylvania class (ECF No.

6    34 ¶¶ 120–128); and (2) Plaintiff J.P.'s claim for a violation of the Maryland Wiretapping and Electronic

7    Surveillance Act ("MWESA"), Md. Cts. & Jud. Proc. Code Sec. 10-401 et seq. on behalf of a putative

8    Maryland class (ECF No. 34 ¶¶ 129–140). Additionally, the FAC added a putative California class, on

9    whose behalf Plaintiff M.D.'s claims are now pleaded. *Id*. ¶ 78.

10   **IV.    LEGAL STANDARD**

11       Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of a cause of action that

12   fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the

13   legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive such

14   a motion, a plaintiff must plead factual allegations that "plausibly (not merely conceivably) entitle

15   plaintiff to relief." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011). A claim is plausible

16   only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

17   that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

18   (requiring more than a "sheer possibility," "naked assertion," or "formulaic recitation" of the elements

19   of a cause of action).

20       A court need not accept as true "allegations that are merely conclusory, unwarranted deductions

21   of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

22   (citation omitted); *see also Iqbal*, 556 U.S. at 678–79 (pleadings that are "no more than conclusions, are

23   not entitled to the assumption of truth"). Nor must a court "'accept as true allegations that contradict

24   matters properly subject to judicial notice or by exhibit.'" *Gonzalez v. Planned Parenthood of L.A.*, 759

25   F.3d 1112, 1115 (9th Cir. 2014) (citations omitted). Dismissal without leave to amend is appropriate if

26   "amendment would be futile." *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011).

27

28

1    Amendment would be futile when "no set of facts can be proved . . . that would constitute a valid and

2    sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

3    **V.    ARGUMENT**

4         Plaintiffs' claims against Google should be dismissed without leave to amend. In general, the

5    California Invasion of Privacy Act (CIPA), the Pennsylvania Wiretapping and Electronic Surveillance

6    Control Act (WESCA), and Maryland's Wiretapping and Electronic Surveillance Act (MWESA) "are

7    treated as largely analogous." *India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1354 n.4 (S.D. Cal.

8    2024); *see also Pena v. Gamestop, Inc.*, 670 F. Supp. 3d 1112, 1117 (S.D. Cal. 2023) ("The analysis for

9    a violation of CIPA is the same as that under the federal Wiretap Act.") (internal citation omitted);

10   *Commonwealth v. Blystone*, 519 Pa. 450, 464–65 (1988) (noting that "the Pennsylvania wiretapping

11   statute is based on its federal counterpart"); *Davis v. State*, 43 A.3d 1044, 1051 (M.D. Ct. App. 2012)

12   ("[I]t is clear through both legislative history and case precedent that the federal wiretap statute . . .

13   served as the guiding light for the Maryland Act; therefore, we read the acts in pari materia."). Plaintiffs'

14   claims under these statutes share at least three flaws in common: (1) BlueChew and/or Plaintiffs

15   consented to BlueChew's use of Google Analytics, (2) Google lacked the requisite knowledge or intent

16   for liability, and (3) none of the at-issue communications was confidential. Each of these flaws, on its

17   own, is dispositive of Plaintiffs' claims.

18        Plaintiff M.D.'s claim under CIPA, and O.F.'s claim under WESCA, also fail for additional

19   reasons, as explained below. Further, Plaintiff M.D.'s claim for invasion of privacy under the California

20   Constitution fails because he cannot plausibly allege the existence of a reasonable expectation of privacy

21   and that any intrusion was "an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47

22   Cal.4th 272, 287 (2009) (citation omitted).

23        **A.    Plaintiffs cannot state claims under CIPA, WESCA, or MWESA.**

24        Plaintiffs' allegations fail to meet the requirements under CIPA, WESCA, and MWESA that the

25   plaintiff must not have consented to the interception, that the defendant must have intended to make the

26   interception, and that the communication must have been confidential. Each of these requirements

27   presents an insurmountable hurdle for Plaintiffs here.

28

1

### 1.    Plaintiffs consented to BlueChew's use of Google Analytics.

2

Under CIPA, WESCA, and MWESA, a plaintiff must plausibly allege that the complained-of

3

interception occurred without consent. Plaintiffs here cannot do so because they consented to

4

BlueChew's Privacy Policy, which disclosed the Website's use of Google Analytics, in order to create

5

an account on BlueChew.com. Consent to BlueChew's Privacy Policy, and to BlueChew's use of

6

Google Analytics, was a precondition of Plaintiffs' relationship with BlueChew.

7

### a.    CIPA sections 631 and 632

8

To state claims under CIPA sections 631[4] and 632[5], Plaintiff M.D. must plausibly allege, inter

9

alia, that he did not consent to the alleged interception or recording. *See* Cal. Penal Code §§ 631(a) and

10

632(a). He cannot.

11

Plaintiff M.D. alleges that Bluechew's use of Google Analytics was unlawful. *See*, *e.g.*, FAC ¶¶

12

7 ("Google . . . intercepted protected health information . . . related to his prescription medication";

13

interceptions were of a "surreptitious nature"), 13 ("Google committed the interceptions . . . without

14

Plaintiffs' knowledge" or "consent" and perpetrated "egregious" "violations of Plaintiffs' right to

15

privacy"), 89–112 (alleging CIPA violations). But Plaintiff M.D. consented to Bluechew's use of

16

Google Analytics by consenting to Bluechew's Privacy Policy.

17

Plaintiff M.D. alleges that he "was prescribed and ordered Sildenafil erectile dysfunction

18

medication through the Website." FAC ¶ 7. BlueChew users must consent to the Website's Privacy

19

Policy as a gating requirement to account creation.[6] *See* RJN Exs. 6-A–6-E, 7-A–7-C. In the Ninth

20

---

21    [4] To state a claim under section 631, Plaintiff must allege facts showing that Google: (1) by means of a
22    machine, instrument, or contrivance; (2) intentionally and without the consent of all parties; (3) read,
      attempted to read, or attempted to learn the contents or meaning of a communication; (4) while the
23    communication was in transit; (5) from or to a place within California. *See Adler v. Community.com,
      Inc.*, No. 2:21-CV-02416-SB-JPR, 2021 WL 4805435, at *3 (C.D. Cal. Aug. 2, 2021).
24    [5] To state a claim under section 632, Plaintiff must allege facts showing that Google (1) "intentionally
      and without [] consent," (2) recorded a "confidential communication," (3) by means of an electronic
25    device. *See* Cal. Penal Code § 632; *Weiner v. ARS Nat'l. Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D.
      Cal. 2012).
26    [6] The BlueChew registration page as archived by the Wayback Machine both before and after Plaintiff
27    M.D. alleges he used the website required users to agree to BlueChew's Terms and Conditions—into
      which BlueChew's Privacy Policy is incorporated—before creating an account. RJN Exs. 6-B and 6-C

28

---

8

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-06369-AMO

Circuit, "[a] binding contract is created if a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink," and it is "sufficient to require a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button as long as the user has access to the terms of service." *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021) (citation omitted) (finding that plaintiffs consented to website's privacy policy presented in a similar manner). These features of a mechanism "sufficient" to "create[]" a "binding contract" are present here. *See id.* A link to BlueChew's privacy policy is conspicuously presented in the form of a blue hyperlink at account creation, and new users must check a box to proceed with sign-up. *Id.* at *4 (plaintiffs consented to hyperlinked privacy policy when, like here, "[t]hey were required to take an affirmative step . . . to acknowledge that they were agreeing to the terms").

Indeed, Google requires that websites that install and run the Google Analytics software expressly disclose their use of Google Analytics to users of the website, as BlueChew did. RJN Ex. 2-A at 4; *see also id.* at Exs. 5-C, 5-D, and 5-E. In compliance with Google's requirements, BlueChew clearly disclosed its use of vended analytics technologies, including Google Analytics, to collect and analyze user data. *See* RJN Exs. 5-C, 5-D, and 5-E. ("We may also use automated devices and applications, such as Google Analytics . . . . We use these tools to help us improve our Services, performance and user experiences. These entities may use cookies and other tracking technologies to perform their services."; "As you browse our Websites, advertising cookies may be placed on your computer so that we can understand what you are interested in. We may work with display advertising partners . . . that enable us to present you with retargeted advertising on other sites based on your previous interaction with BLUECHEW.").

Plaintiff M.D.'s consent to BlueChew's conspicuously disclosed use of Google Analytics dooms his claims under both CIPA section 631 and 632, at least to the extent that they are based on Bluechew's general use of Google Analytics. FAC ¶¶ 6, 13, 58, 76–77, 93, 96–97, 109, 114, 125, 137.; *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016) ("Under

---

(requiring consent to Terms and Conditions as a condition of account creation); *id.*, Exs. 7-C and 7-D (incorporating the Privacy Policy); and *id.*, Exs. 5-C, 5-D, 5-E.

1    CIPA, a consent defense is established when both parties—the sender and the recipient of the

2    communication—consent to the alleged interception."); Cal. Penal Code § 631(a) (requiring lack of

3    consent); Cal. Penal Code § 632(a) (same).

4    "Consent generally defeats privacy claims," as it does Plaintiff M.D.'s here. *See Javier v.*

5    *Assurance IQ, LLC*, No. 4:20-CV-02860-JSW, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021). Since

6    Google's TOS and BlueChew's own Privacy Policy both establish that Plaintiff M.D. was informed of

7    and consented to BlueChew's use of Google Analytics, he cannot plausibly allege lack of consent to its

8    use. *See*, *e.g.*, *id*. at *2–3 (dismissing claims because plaintiffs consented to data collection described in

9    privacy policy); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137–38 (N.D. Cal. 2015)

10   (dismissing claim because the express provisions of the judicially noticeable Privacy Policy and Terms

11   of Service "ostensibly contradict [Plaintiff's] bare allegation that he did not consent").

12                                **b.    WESCA**

13   Plaintiff O.F.'s claim under WESCA suffers the same defect. Like CIPA, WESCA requires a

14   plaintiff to plausibly allege a lack of consent: it "contains an exception to its prohibition on the

15   interception of electronic communications 'where all parties to the communication have given prior

16   consent to such interception.'" *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 458 (E.D. Pa.

17   2023) (quoting and citing 18 Pa. Cons. Stat. § 5704(4)). Consent under WESCA does not require "actual

18   knowledge"; the "standard is one of a reasonable person, and [does] not [require] proof of the subjective

19   knowledge of the person being recorded." *Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020); *accord*

20   *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 132 (3d Cir. 2022). Moreover, lack of consent must be

21   affirmatively pleaded. *See Vonbergen*, 705 F. Supp. 3d 440 at 459 (holding that a website user

22   sufficiently pleaded her lack of consent where, "[s]ignificantly, [she] [] pled that she 'was not presented

23   with any type of pop-up disclosure or consent form alerting [her] that her visit to the website was being

24   recorded by [Defendant] through a third party'").

25

26

27

28

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-06369-AMO

Like Plaintiff M.D., Plaintiff O.F. was required to consent to BlueChew's Privacy Policy in order to create an account with BlueChew.[7] RJN Exs. 6-A, 6-B, 7-A, 7-B. His consent to BlueChew's conspicuously disclosed use of Google Analytics dooms his WESCA claim.

### c.     MWESA

MWESA likewise protects only "those who do not consent to the interception of their private conversations." *Agnew v. State*, 197 A.3d 27, 33 (Md. Ct. App. 2018); *see also State v. Maddox*, 69 517 A.2d 370, 372 (Md. Ct. App. 1986) (the "protective umbrella" of MWESA applies to those "who do not consent to the interception of their conversations"); Md. Code Ann., Cts. & Jud. Proc. § 10-402 ("It is lawful" under MWESA to intercept an "electronic communication where the person is a party to the communication and where all of the parties to the communication have given prior consent to the interception"). Like Plaintiffs M.D. and O.F., in order to create an account on BlueChew.com and purchase a product, Plaintiff J.P. had to check a box confirming that he agreed to BlueChew's Privacy Policy, which expressly disclosed the Website's use of Google Analytics.[8] RJN Ex. 6-D, 6-E, 5-F, 5-G. His claim too fails on account of consent.

### 2.     Plaintiffs fail to plausibly allege that Google intended to receive Plaintiffs' PII and PHI.

While there is no question that Plaintiffs consented to the general use of Google Analytics, Plaintiffs further allege that Google received personal health information and personally identifiable information. But Plaintiffs cannot plausibly allege that Google *intended* to receive PII or PHI, because

---

[7] As with Plaintiff M.D., the BlueChew registration page as archived by the Wayback Machine both before and after Plaintiff O.F. alleges he used the website required users to agree to BlueChew's Terms and Conditions—into which BlueChew's Privacy Policy is incorporated—before creating an account. RJN Exs. 6-A, 6-B (requiring consent to Terms and Conditions as a condition of account creation); *id.*, Exs. 7-A, 7-B (incorporating the Privacy Policy); and *id.*, Exs. 5-A, 5-B (Privacy Policy disclosing usage of Google Analytics).

[8] The BlueChew registration page as archived by the Wayback Machine both before and after Plaintiff J.P. alleges he used the website requires users to affirmatively check a box confirming their assent to the website's Privacy Policy, which is conspicuously hyperlinked in blue text next to the checkbox, before creating an account. *See* RJN Ex. 6-D, 6-E, 5-F, 5-G.

---

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  Google explicitly prohibits websites, including BlueChew, from sending that type of information. This
2  judicially noticeable fact defeats Plaintiffs' claims under all three state wiretap statutes.

3              **a.     CIPA Sections 631 and 632**

4          California Penal Code sections 631 and 632 are criminal statutes that require intentional conduct.
5  *See* Cal. Penal Code § 631(a) (prohibiting "intentional[] tap[ping]"); Cal. Penal Code § 632(a)
6  (prohibiting "intentional[] . . . recording . . . [of a] confidential communication"). The mens rea element
7  cannot be met here, since Plaintiff M.D. does not plausibly allege that Google intentionally intercepted
8  sensitive data.

9          "Intentional[ity]" for purposes of CIPA requires that whoever is recording a confidential
10 communication "does so with the purpose or desire of recording a confidential conversation, or with the
11 knowledge to a substantial certainty that [] use of the equipment will result in" such recording. *Rojas v.*
12 *HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 876 (2023), *review denied* (Nov. 21, 2023). The "operative
13 question" is "whether the defendant acted consciously and deliberately with the goal of intercepting wire
14 communications." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) (citation omitted).
15 Here, judicially noticeable materials show that such allegations could not be plausibly made, even in a
16 second amended pleading: Google's Terms of Service require that any website running Google
17 Analytics not transmit any data "that Google could use or recognize as personally identifiable
18 information." *See supra* at III.C. Recognizing this in dismissing claims brought against Google under
19 sections 631 and 632 in *Doe I v. Google LLC*, the court there reasoned that the fact "that Google
20 repeatedly told developers not to send personally identifiable information through use of its [Google
21 Analytics] source code" negated the element of intent. *Doe I*, 741 F. Supp. 3d at 840–42. The court
22 further observed that Google's admonitions against providing it with sensitive information via Google
23 Analytics showed that "Google purposefully acted so as *not* to receive any personal health information."
24 *Id.* at 840 (emphasis in original).

25         All Plaintiff M.D. actually alleges is that BlueChew shared data with Google via a widely used,
26 publicly available analytics tool—a practice that BlueChew's Privacy Policy explicitly disclosed, and
27 to which Plaintiff M.D. consented. *See* RJN Exs. 5-C, 5-D, 5-E. Plaintiff M.D. does not allege that

28

Google instructed BlueChew to send any data to Google, let alone sensitive data. Rather, he alleges that "Google knew that the incorporation of its software onto [BlueChew.com] would result in its interception" of sensitive data, and that "Google intends to intercept this protected and sensitive health data due to the value it holds for targeted advertising." FAC ¶ 14. This conclusory allegation is not enough. "CIPA liability only extends to willful or intentional conduct, so even if some [sensitive] information is inadvertently sent to Google—and subsequently gets [analyzed by Google]—the plaintiff[] fail[s] to plausibly allege Google is intentionally reading or learning the contents of the plaintiff['s] private . . . communications." *Doe I*, 741 F. Supp. 3d at 844; *accord United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015) (explaining that the word "intentionally," as used in federal wiretapping statute, means "purposefully and deliberately and not as a result of accident or mistake"). Further, Plaintiff M.D.'s allegation that Google intended that BlueChew's use of Google Analytics would disclose sensitive data is an allegation of constructive fraud—in effect, a "plot to steal private health information"—and therefore should be subject "to the heightened pleading standard of Federal Rule of Civil Procedure 9(b)." *Doe I*, 741 F. Supp. 3d at 841–42. But M.D.'s allegations regarding intent do not even satisfy the basic Rule 8 pleading standard. The mens rea requirement for this claim in particular should be strictly enforced given that CIPA is a penal statute that imposes criminal liability. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies."); *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517–18 (1992) (plurality opinion) (applying rule of lenity to tax statute in civil context because statute had criminal applications and thus had to be interpreted consistently across contexts, in favor of defendant).

In any event, as explained above, Plaintiff M.D.'s intent allegations contradict the judicially noticeable Google Terms of Service, which form a contract between Google and BlueChew. The FAC contains screenshots that Plaintiffs describe as showing how Google "is intercepting patients' PII, including first and last name, date of birth, and email address when they are completing the BlueChew medical profile," as well as "information related to patients' prescription medications." FAC ¶¶ 67–69. Plaintiffs' description of the screenshots is conclusory and vague, and they appear to have been made

1    for litigation. The screenshots should be disregarded, but in any case, Plaintiffs offer no reason to believe

2    Google was aware or had knowledge of them.

3        Even taking the screenshots at face value, the point is that Plaintiff M.D. has not plausibly alleged

4    that *Google* intended for *BlueChew* to send this information via Google Analytics (nor have any of the

5    Plaintiffs), much less that *Google* did anything with it. At most, Plaintiffs have alleged that BlueChew

6    sent data to a Google server that Google did not know about, never read, and never used. Absent a

7    plausible allegation that *Google* did something wrong, BlueChew's alleged violation of the Google

8    Analytics terms is an issue to take up with BlueChew, not Google.

9            **b.**    **WESCA**

10       WESCA too requires intentional conduct. *See* 18 Pa. Stat. and Cons. Stat. Ann. § 5703(1)

11   (prohibiting the "intentional[] intercept[ion of] … any wire, electronic or oral communication); *Braun*

12   *v. Phila. Inquirer, LLC*, No. 22-CV-4185-JMY, 2023 WL 7544160, at *4 (E.D. Pa. Nov. 13, 2023)

13   (stating that a WESCA plaintiff must allege that the "contents of an electronic communication were

14   intentionally intercepted through the use of a device"); *Walsh v. Krantz*, No. 1:07-CV-0616, 2008 WL

15   3981492, at *6 (M.D. Pa. Aug. 22, 2008), *aff'd,* 386 F. App'x 334 (3d Cir. 2010) ("[T]he Pennsylvania

16   Wiretap Act requires intentional conduct."). As explained above, the judicially noticeable Google

17   Analytics Terms of Service expressly forbid the interception of PHI and PII. *See supra* III.C; RJN Ex.

18   2-A. Accordingly, Plaintiff O.F. cannot plausibly plead the essential element of intent. *See Libman v.*

19   *Apple, Inc.,* No. 22-CV-07069-EJD, 2024 WL 4314791, at *3 (N.D. Cal. Sept. 26, 2024) (court may

20   "consider material subject to judicial notice" in deciding motion to dismiss); *Doe I,* 741 F. Supp. 3d at

21   840–42 (taking judicial notice of Google Analytics Terms of Service and holding that they negated the

22   element of intent under federal and California wiretap statutes); *India Price,* 712 F. Supp. 3d at 1354

23   n.4  (stating that "federal and state wiretap laws," specifically including CIPA, WESCA, and MWESA,

24   "are treated as largely analogous"). Plaintiff O.F.'s claim under WESCA thus falters on the intent

25   element as well.

26

27

28

1

### c.    MWESA

2    MWESA similarly prohibits the "willful[] intercept[ion of] … any wire, oral, or electronic

3    communication." Md. Code Ann., Cts. & Jud. Proc. § 10-402. Maryland courts have held that to

4    establish that a person "willfully intercepted" any covered communication, it is "sufficient to show that"

5    the interception was "intentional." *Holmes v. State*, 182 A.3d 341, 649 (Md. Ct. Spec. App. 2018), *cert.*

6    *denied*, 188 A.3d 924 (Md. Ct. App. 2018); *see also Deibler v. State*, 776 A.2d 657, 665 (Md. Ct. Spec.

7    App. 2001) ("For purposes of the wiretap law, an interception that is not otherwise specifically

8    authorized is done 'willfully' if it is done intentionally or purposely.").

9    While Maryland federal courts "have had limited opportunity to apply MWESA to internet

10    communications like the ones alleged here . . . it is clear from the statute's text that violations of MWESA

11    depend upon [] willful interception." *A.S. v. SelectQuote Ins. Servs.*, No. 3:23-CV-02258-RBM-MSB,

12    2024 WL 3881850, at *12 (S.D. Cal. Aug. 19, 2024). MWESA has been "treated as largely analogous"

13    to CIPA and WESCA. *India Price*, 712 F. Supp. 3d at 1354 n.4. Like Plaintiffs M.D. and O.F., Plaintiff

14    J.P. simply cannot plausibly allege that any interception of his information by Google was willful. The

15    judicially noticeable Google Analytics Terms of Service, which, again, prohibit websites running

16    Google Analytics from sending any "use[able] or recogniz[able]" PII to Google, govern Plaintiff J.P's

17    interactions with BlueChew to the same extent as they do Plaintiffs M.D.'s and O.F.'s. RJN Ex. 2-B.

18    **3.    Plaintiffs' claims under CIPA section 632, WESCA, and MWESA fail**

19    **because none of the at-issue communications were confidential.**

20    Because Plaintiffs expressly consented to BlueChew's use of Google Analytics, they cannot

21    plausibly plead that any of the at-issue communications were confidential. This defeats Plaintiff M.D.'s

22    CIPA section 632 claim, as that statute applies only to confidential communications. This also defeats

23    Plaintiff O.F.'s WESCA claim and Plaintiff J.P.'s MWESA claim, as those statutes require that a

24    plaintiff show a reasonable expectation of privacy in the communications that were allegedly unlawfully

25    intercepted. There is no reasonable expectation of privacy in a non-confidential communication,

26    especially where, as here, an individual is expressly informed of—and expressly consents to—an

27    interception.

28

#### a.     CIPA sections 631 and 632

CIPA section 632 applies only to interceptions of *confidential* communications, meaning that liability requires the party whose communication is intercepted to have an "objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal.4th 766, 777 (2002); *see also* Cal. Penal Code ¶ 632(a). Plaintiff M.D. cannot satisfy this requirement here for at least two reasons.

**First**, "a party that consents to having information collected has no reasonable expectation of privacy." *Javier*, 2021 WL 940319, at *2 (dismissing claim under CIPA section 632). As discussed *supra* at III.C, Google requires all websites that use Google Analytics to disclose their use of it, post a privacy policy, and obtain consent for such use where required by law. *See* RJN Ex. 2-A. Since BlueChew did this, Plaintiff (like all users of BlueChew) consented to the website's general use of Google Analytics as a condition of his account's creation.

**Second**, as courts in the Northern District have repeatedly recognized in similar circumstances, "California appeals courts have generally found that Internet-based communications," such as those at issue here, presumptively "are not 'confidential' within the meaning of section 632." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014); *see also Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052–53 (N.D. Cal. 2018) (plaintiffs "fail to offer any support for their theory that internet-based communications can be considered 'confidential' under CIPA"; dismissing § 632 claim). To "rebut[] California's presumption against online confidentiality," a plaintiff must "plead unique, definite, circumstances" that show an "objectively reasonable expectation that . . . nobody . . . would record the [online] communications." *Rodriguez v. Google*, No. 20-CV-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (dismissing CIPA section 632 claim) (quotations and citation omitted). Plaintiff M.D. does not—and cannot—even come close to meeting this standard, as BlueChew's use of Google Analytics was fully disclosed and consented to, and there is no well-pleaded allegation that anything became of the alleged PII that BlueChew supposedly sent to a Google server, unbeknownst to and unwanted by Google, a circumstance that does not invade the reasonable expectations of privacy of

a user who consented to give that information at least to BlueChew. Plaintiff M.D.'s CIPA Section 632 claim should therefore be dismissed.

### b. WESCA

Plaintiff O.F.'s interactions with BlueChew are also not plausibly characterized as "confidential." WESCA requires a plaintiff to have "possessed a reasonable expectation of privacy" in the communication at issue. *Sharifi v. Am. Red Cross*, No. CV 21-2873, 2022 WL 125930, at *10 (E.D. Pa. Jan. 12, 2022) (citing *Agnew v. Dupler*, 553 Pa. 33, 717 A.2d 519, 523 (Pa. 1998)). To meet this standard, a plaintiff must show that he "possessed an expectation that the communication would not be intercepted and that [his] expectation was justifiable under the circumstances." *Commonwealth v. Mason*, 665 Pa. 230, 247, 247 A.3d 1070, 1081 (2021).

Because Plaintiff O.F. consented to BlueChew's fully disclosed use of Google Analytics, he cannot meet this standard. *See supra* at V.A.1.b. When a plaintiff "consent[s]" to the interception or recording of a communication, "he cannot demonstrate that he had a reasonable expectation of privacy." *Trainor v. Overmyer*, No. 1:20-CV-00260-RAL, 2021 WL 5770215, at *5 (W.D. Pa. Dec. 6, 2021) (dismissing a claim under WESCA). Even when a person is "on notice" that their communications "*might* be intercepted," they have no reasonable expectation of privacy in those communications under WESCA. *Miller v. Kruzik*, No. 3:CV-06-0463, 2009 WL 10718510, at *9 (M.D. Pa. Feb. 23, 2009) (emphasis added). The judicially noticeable documents clearly establish that Plaintiff O.F. lacked a reasonable expectation of privacy.

### c. MWESA

MWESA likewise protects only those communications "in which the participants have a reasonable expectation of privacy." *Agnew*, 197 A.3d at 35 (citing *Fearnow v. Chesapeake & Potomac Tel. Co. of Md.*, 676 A.2d 65, 71 (1996)). And again, when an individual "consent[s]" to the recording of a communication, as Plaintiff J.P. did here, any "reasonable expectation of privacy" is forfeited. *Id.* at 33.

Further, although Plaintiff J.P. alleges that "Google is intercepting" PII "including first and last name, date of birth, and email address" while a user is *completing* the BlueChew medical profile," FAC ¶ 68 (emphasis added), Maryland law recognizes that an individual's "name; [] birthdate; … and [] email [address]" are not "sufficiently intimate or personal to justify a legitimate expectation of privacy." *Arndt v. Gov't Emps. Ins. Co.*, No. CV MJM-23-2842, 2024 WL 4335644, at *5 (D. Md. Sept. 26, 2024) (internal quotations omitted). Plaintiff J.P. also alleges that a pseudonymous identifier created by BlueChew to denote a particular medication and dosage was among the sensitive data collected, but he does not allege that Google was capable of determining that the pseudonymous identifier—"id1"— corresponded to the medication and dosage he was prescribed—"a 6-pack of BlueChew's 30 mg Sildenafil" tablets. FAC ¶ 70. This "unique" pseudonymous identifier, a string of characters that BlueChew "assigned," is unintelligible, and is not fairly characterized as medical information in which Plaintiff J.P. might otherwise have a reasonable expectation of privacy. For these reasons, Plaintiff J.P. cannot plausibly plead a reasonable expectation of privacy under MWESA, and his claim should be dismissed.

**4.     There is no allegation that data transmitted to Google constituted the "content" of a communication, which defeats Plaintiff M.D.'s claim under CIPA section 631 and Plaintiff O.F.'s claim under WESCA.**

CIPA section 631 and WESCA prohibit only interceptions of the "contents" of a communication. *See Adler*, 2021 WL 4805435 at *3. The data alleged to have been intercepted here does not qualify as the "contents" of a communication under either statute. Plaintiff M.D.'s claim under CIPA section 631, and Plaintiff O.F.'s claim under WESCA, should be dismissed for this additional reason

**b.     CIPA section 631**

To state a claim under CIPA section 631, Plaintiff M.D. must plausibly allege that Google intercepted the "contents" of a communication. *See Adler*, 2021 WL 4805435 at *3. He cannot. The data that Plaintiff alleges were transmitted to Google consist of his name, birthday, email address, and a pseudonymous identifier assigned by the website and indecipherable by Google. FAC ¶¶ 68–69 ("each of BlueChew's medications are provided their own unique product ID"); *see also infra* at V.5 (alias

identifier unintelligible and not fairly characterized as medical information). This information is anodyne "record information," not the "contents of a communication under CIPA." *Graham v. Noom*, 533 F.Supp 3d 823, 833 (N.D. Cal. 2021) ("name, address and subscriber number or identity of a subscriber or customer" are not "contents"); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015) (user's identification information and record of browsing history were not "content"). This is another independent basis for dismissing Plaintiff's claim under Section 631.

### b.     WESCA

The same analysis applies to O.F.'s claim under WESCA. "[R]ecord data," including "basic identification and address information," falls outside WESCA's definition of "content." *Libman*, 2024 WL 4314791, at *14 (dismissing WESCA claim for "fail[ing] to adequately allege the collection of 'content'"); *see also Ingrao v. AddShoppers, Inc.*, No. CV 24-1022, 2024 WL 4892514, at *14 (E.D. Pa. Nov. 25, 2024) (same); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("record" data like "identification" and "address" are not "content" under federal Wiretap Act). Plaintiff O.F.'s claim under WESCA should be dismissed for this reason as well.

### 5.     Plaintiff M.D.'s Section 631 claim fails because there is no allegation that Google did anything but act as a mere vendor.

Plaintiff M.D.'s CIPA Section 631 claim fails for yet another independent reason. Courts in this District have held that a vendor—including Google Analytics specifically—providing a service by which websites can record user interactions and use that data to perform certain functions is not "intercepting" a communication and thus cannot be liable under CIPA section 631. *E.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d at 832–33 (dismissing CIPA section 631 claim); *Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (same); *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982, at *17 (N.D. Cal. Apr. 11, 2024) (same).

*Noom* is directly on point here. In that case, the defendant Noom used FullStory's software to capture certain user interactions, which allegedly led to "medical information" being disclosed to

1   FullStory without user consent. *Noom*, 533 F. Supp. 3d at 829. The court held that this behavior could

2   not violate CIPA Section 631, since FullStory functioned as a "service provider" that was "an extension

3   of Noom," and because the plaintiff did not plausibly allege that FullStory "aggregate[ed] [the] data for

4   resale . . . [or that it] used the data itself." *Id.* at 832. A third-party vendor of analytics services cannot

5   violate Section 631 when the vendor merely "provides a software service that captures its clients' data,

6   hosts it on the [vendor's] servers, and allows the clients to analyze their data." *Id.* That is precisely what

7   is alleged here. *See, e.g.*, FAC ¶ 66 (Google Analytics "allows companies and advertisers that utilize it"

8   to perform various analytical functions); *id.* ¶ 71 ("Google Analytics enables the company or advertiser

9   to customize the processing of the data, such as applying filters."). Like the software vendor in *Noom*,

10  Google simply provides a "tool" that allows websites like BlueChew.com to "record and analyze its own

11  data in aid of [that website's] business," and thus cannot be liable under CIPA section 631. *Noom*, 533

12  F. Supp. 3d at 832–33; *see also Williams*, 2022 WL 17869275, at *3 (that the vendor stores and processes

13  data on its own servers "is part of how the software tool functions" and does not by itself subject the

14  vendor to liability).

15      Judge Chen's reasoning in *Kaiser* also applies here. In *Kaiser*, the court held that a third-party

16  vendor's liability under CIPA depends on the degree of control exercised by the website in question—if

17  the vendor operates as a mere extension of a website "subject to the [website's] control," the vendor

18  cannot be held liable under the statute. *Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 at *17

19  (dismissing CIPA claim). Plaintiff M.D.'s allegations make clear that any "usage" of allegedly collected

20  data occurred at the direction of BlueChew. *See, e.g.*, FAC ¶¶ 14, 66–67, 71–74. Websites have the

21  ability to "customize the processing of the data" collected, meaning that whether and how Google

22  processed any data from BlueChew.com is "subject to [BlueChew.com's] control and ability to limit the

23  use of dissemination of the [sensitive] data." *Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at

24  *18. When Google's only action is to "collect and/or use information for [BlueChew's] benefit only,"

25  and not for Google's own benefit—not, "*e.g.*, to sell to others"—Google cannot be liable under Section

26  631. *Id.*

27

28

Plaintiff M.D. alleges that "data intercepted by Google Analytics" can be "link[ed] with Google Ads" and "utilized for targeted advertising purposes," but he stops short of alleging that Google performed this utilization here. FAC ¶ 74. His allegation that "Google Analytics links with Google Ads" is not an allegation that such a link existed because of any action by Google. *Id.* Plaintiff M.D. also cites a Google Analytics support page with information about how websites can link their Google Analytics and Google Ads accounts, which indicates that establishing a link requires affirmative steps by the website. *See id.* n.41; *see also* RJN Ex. 8. Other allegations likewise indicate that the websites, not Google, control when and what data are collected and sent to Google. *See, e.g.*, *id.*; *see also id.* at ¶ 71. However, contrary to the allegations in the FAC, Google's judicially noticeable policies and terms specifically show that data from certain types of websites, such as the websites of HIPAA-regulated entities, are handled differently—and not used for targeted advertising. *See* RJN Ex. 3 ("to protect user privacy, Google Analytics policies and terms mandate that no data be passed to Google that Google could recognize as personally identifiable information (PII)," and "HIPAA-regulated entities using Google Analytics must refrain from exposing to Google any data that may be considered Protected Health Information (PHI), even if not expressly described as PII in Google's contracts and policies").

Plaintiff M.D.'s allegations thus show Google functioning as an extension of BlueChew and subject to BlueChew's control. *See Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 at *17 (dismissing CIPA claim where analytics vendor operated as extension of website and "subject to the [website's] control"). Because BlueChew authorized Google, as a vendor of analytics services, to analyze (and therefore to receive in the first place) Plaintiff M.D.'s communications, Google could not have "intercepted" them within the meaning of CIPA as a matter of law. Cal. Penal Code § 631(a). This is another reason that Plaintiff M.D.'s claim under CIPA section 631 should be dismissed.

### B.    M.D. fails to state a claim for invasion of privacy under the California Constitution.

To state a claim for invasion of privacy under the California Constitution, a plaintiff must plausibly plead that "(1) they possess a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and (3) the intrusion is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *In re Facebook, Inc. Internet Tracking Litig.*,

956 F.3d 589, 601 (9th Cir. 2020) (quoting *Hernandez*, 47 Cal. 4th at 287); *see also* Cal. Const. Art. 1 § 1. Plaintiff M.D. fails to make out the latter two elements.

### 1. Plaintiff M.D. lacked a reasonable expectation of privacy.

Plaintiff M.D. lacked a reasonable expectation of privacy. Again, "a party that consents to having information collected has no reasonable expectation of privacy." *Javier*, 2021 WL 940319 at *2. Because Plaintiff M.D. consented to the use of Google Analytics when he created his BlueChew account, he did not have a reasonable expectation of privacy vis-a-vis Google. *See id.* ("Consent generally defeats privacy claims").

Further, the standard Google Analytics information that Plaintiff M.D. alleges was transmitted to Google does not rise to the level of "medical-related communications" in which a "reasonable expectation" of privacy may exist. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022). Plaintiff M.D. alleges that users of BlueChew may be "asked a range of health-related questions" while using the website, but there is no allegation that any answers that a user might provide to such questions constitute the data transmitted to Google. FAC ¶ 23. And the communications that *are* allegedly sent to Google here are readily distinguishable from medical information for at least two reasons.

***First***, Plaintiff M.D. alleges that information such as name, birthday, and email address is "intercept[ed]" while a user is "*completing* the BlueChew medical profile." FAC ¶ 68 (emphasis added). The results of this "medical profile" determine if a user is eligible for prescription medication in the first place. Visiting BlueChew and completing a profile does not indicate that Plaintiff M.D., or any individual, has any medical condition at all. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (data about plaintiffs' use of the "website to 'research . . . doctors,' 'look for providers,' and 'search for medical specialists'" was not PHI because "'nothing about [the] information relates specifically to plaintiffs' health'"). Without more, the fact that a user performs a query on a medical website is not PHI. *See Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, at 805 (N.D. Tex. 2024) ("metadata shared with third-party vendors can only reveal sensitive PHI if an unknown subjective intent is communicated"). Thus, while a user may have a reasonable expectation of privacy in their

"patient-status," they are not a "patient" when they are completing a profile—and may never become one. Communications with BlueChew at that point thus cannot be categorically of the kind that a person could reasonably expect to remain confidential. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799.

**Second**, Plaintiff M.D. lacks a reasonable expectation of privacy in the pseudonymous identifier created by BlueChew to denote a particular medication and dosage, which was among the allegedly sensitive data collected. *See supra* at V.A.3.C. Like Plaintiff J.P, Plaintiff M.D. fails to allege that Google was capable of determining that "id1" corresponds to "a 6-pack of BlueChew's 30 mg Sildenafil" tablets. FAC ¶ 70. Again, this "unique" identifier is unintelligible, is not alleged to have any meaning to Google, and is not fairly characterized as medical information. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024), *on reconsideration in part,* No. EDCV 23-2092 JGB (DTBX), 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024); *see also* FAC ¶ 44 ("Each of BlueChew's medications are assigned their own unique content ID."). Plaintiff M.D. has no reasonable expectation of privacy in a string of characters whose meaning, if any, he does not allege Google could decipher.

As for the vaguely described screenshots purporting to show PII sent via Google Analytics, apparently made for litigation, there is no explanation for how this violated Plaintiffs' reasonable expectation of privacy. Even if BlueChew chose to store such information on a Google server, that is not enough to plausibly indicate that Google made use of it, or even became aware it existed. It is this distinction that animated, for example, the court's decision in *Doe* dismissing all claims. *See Doe I*, 741 F. Supp. 3d at 844 ("plaintiffs fail to plausibly allege Google is intentionally reading or learning the contents of the plaintiffs' private health communications," "even if some private health information is inadvertently sent to Google").

### 2.    There was no egregious breach of social norms.

Finally, Plaintiff M.D. cannot establish that any "intrusion" constituted "an egregious breach of the social norms." *See Hernandez*, 47 Cal.4th at 287. As discussed, Plaintiff alleges that Google collected his name, birthday, and email address. *See supra* at V.A.3.C; FAC ¶ 68. But courts in this

District have found that the disclosure of such "personal data . . . does not constitute an egregious breach of social norms." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (neither does disclosure of device identifier or geolocation information). The pseudonymous identifier that Plaintiff M.D. alleges Google "intercept[ed]" does not convey sensitive information (particularly absent any allegation that Google was capable of deriving any meaning from it), so it likewise cannot form the basis for an egregious breach.

Further, an egregious breach cannot exist because Google required BlueChew to disclose BlueChew's use of Google Analytics, BlueChew did so, and Plaintiff M.D. consented to such use. Nor do Plaintiff M.D.'s allegations suggest that Google collected or used any allegedly sensitive information for its own purposes, or "materially increase[d] the risk of dissemination of the collected information." *Kaiser Found. Health Plan, Inc*., 2024 WL 1589982, at *19 (holding that the intrusion was not highly offensive where "Kaiser simply hired a third party to do work for Kaiser's own benefit"); *see supra* at V.A.5 (Google is merely a third-party vendor).

## VI.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss the First Amended Class Action Complaint with prejudice.

Dated:  February 20, 2025

**WILLKIE FARR & GALLAGHER LLP**

Benedict Y. Hur
Simona A. Agnolucci
Eduardo E. Santacana
David D. Doak
Isabella McKinley Corbo


By:    */s/ Benedict Y. Hur*
      BENEDICT Y. HUR

Attorneys for Defendant
GOOGLE LLC

GOOGLE LLC'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-06369-AMO