LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

M.D., O.F., and J.P., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC and META PLATFORMS, INC.,

Defendants.

Case No. 3:24-cv-06369-AMO

**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Hearing: July 10, 2025
Time: 2:00 p.m.
Location: Courtroom 10—19th Floor
Judge: Hon. Araceli Martínez-Olguín

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiffs' Claims Fail Because Plaintiffs Do Not Allege That Meta Intended To Obtain Sensitive Data .......... 2

1. Plaintiffs' Proposed Intent Standard Conflicts With *Christensen* And The Statutory Text .......... 2

2. Invasion Of Privacy Requires An Intentional Intrusion .......... 4

B. Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of Their Data .......... 5

C. Plaintiffs' California and Pennsylvania Claims Fail For Additional Reasons .......... 9

1. Plaintiffs' CIPA and WESCA Claims Are Time-Barred .......... 9

2. Plaintiffs' CIPA Section 632 And WESCA Claims Fail Because The Meta Pixel Is Not A Device .......... 10

3. Plaintiff M.D.'s CIPA Section 631 Claim Fails Under The Party Exception .......... 13

4. Plaintiff M.D.'s Claim Under Clause One Of Section 631(a) Fails Because He Does Not Allege Telephonic Communications .......... 14

5. Plaintiff M.D.'s Invasion Of Privacy Claim Fails Because He Does Not Plead Highly Offensive Conduct .......... 14

III. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 11

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .......... 7

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 6

*Cody v. Ring LLC*,
2025 WL 240763 (N.D. Cal. Jan. 16, 2025) .......... 13, 14

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 13, 14

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 1, 3, 4, 5

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 5

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 3, 5, 11

*Doe v. San Diego Unified Sch. Dist.*,
22 F.4th 1099 (9th Cir. 2022) .......... 7

*Eisenberg v. Citibank, NA*,
787 F. App'x 929 (9th Cir. 2019) .......... 10

*Erickson v. Neb. Mach. Co.*,
2015 WL 4089849 (N.D. Cal. July 6, 2015) .......... 6

*Facebook, Inc. v. BrandTotal Ltd.*,
2021 WL 662168 (N.D. Cal. Feb. 19, 2021) .......... 6

*Franklin v. Ocwen Loan Servicing*,
2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) .......... 10

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .......... 5

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024)........................................................................ 11

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024).......................................................................... 8

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ...................................................................................................... 4

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)..................................................................... 14

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .............................................................................. 11

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ................................................................................ 5

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................................ 15

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .............................................................................. 15

*Jackson v. LinkedIn Corp.*,
744 F. Supp. 3d 986 (N.D. Cal. 2024) .............................................................................. 14

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .............................................................................. 10

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024)....................................................................... 14

*Keller v. Chegg, Inc.*,
2023 WL 5279649 (N.D. Cal. Aug. 15, 2023) ..................................................................... 7

*Lakes v. Ubisoft, Inc.*,
2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) ............................................................... 6, 8, 9

*Lau v. Gen Digital Inc.*,
2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) .............................................................. 9, 10

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) .................................................................... 11

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024)................................................................... 3, 6, 9

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ............................................................................................ 11

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) (Martínez-Olguín, J.) .................................. 15

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .................................................................... 14

*Maxwell v. Dolezal*,
231 Cal. App. 4th 93 (2014) ................................................................................................ 5

*Moreno v. San Francisco Bay Area Rapid Transit*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ..................................................................... 12

*People v. Hyatt*,
109 Cal. App. 5th 735 (2025) .............................................................................................. 12

*Plumlee v. Pfizer, Inc.*,
2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ......................................................................... 9

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019) .................................................................................. 11

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) ................................................................................................. 11

*Pope v. Superior Ct.*,
136 Cal. App. 4th 871 (2006), *as modified* (Feb. 9, 2006) ................................................. 12

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......................................................................................................... 12

*Rice v. Diocese of Altoona-Johnstown*,
255 A.3d 237 (Pa. 2021) ........................................................................................................ 9

*Ryan v. Microsoft Corp.*,
147 F. Supp. 3d 868 (N.D. Cal. 2015) ................................................................................. 10

*Shaw v. Regents of Univ. of California*,
58 Cal. App. 4th 44 (1997) .................................................................................................... 7

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........................................................................ 5

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ............................................................................................... 9

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.), *amended by* 275 F.3d 1187 (9th Cir. 2001) ...................................... 6

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ............................................................................................. 1, 2

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) ........ 11

*Vonbergen v. Liberty Mut. Ins. Co.*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) ........ 11

*Weston v. Lefiti*,
2024 WL 4579237 (9th Cir. Oct. 25, 2024) ........ 6

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ........ 11

**STATUTES**

Cal. Civ. Code 1798.83(e)(2) ........ 8

Cal. Penal Code § 631(a) ........ 2, 5, 14

Cal. Penal Code § 632(a) ........ 5

**RULES**

Fed. R. Civ. P. 9(b) ........ 4, 10

## I. INTRODUCTION

Plaintiffs' opposition confirms they have not stated any claim against Meta, even after amending their complaint in response to Meta's first motion to dismiss. Plaintiffs seek to lower the pleading bar, ignoring Ninth Circuit precedent and this Court's cases. The claims against Meta should be dismissed in their entirety.

First, Plaintiffs' claims fail across the board because Plaintiffs do not allege facts indicating that Meta acted "purposefully and deliberately" to obtain the allegedly sensitive data at issue here. *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015). Plaintiffs do not even bother to argue they satisfy that standard; nor could they, given that, on their own allegations, Meta received the information at issue only because *BlueChew* installed and configured the Meta Pixel on its website and allegedly transmitted sensitive information in violation of Meta's Business Tools Terms. Instead, Plaintiffs ignore *Christensen*'s controlling standard and urge this Court to follow nonprecedential cases applying a lower "awareness" standard. This Court should reject that approach, just as Judge Chhabria did in *Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) ("*Google Pixel*").

Second, Plaintiffs' claims also fail across the board on consent grounds, because BlueChew's Privacy Policy discloses the conduct alleged here—namely, that BlueChew "automatically collect[s]" information about users' use of the website through "cookies, web beacons, and other technologies" and that BlueChew may share personally identifiable information, including health information, with service providers to support its website. Dkt. 38-17 at 2. Plaintiffs quibble with the dates of the policy versions and contend that the sign-up screen was not sufficient to secure assent, but they never argue or allege that they used BlueChew's services *without* first creating an account, thereby agreeing to BlueChew's Terms and Privacy Policy. On the substance of the BlueChew Privacy Policy, Plaintiffs point to red herrings while ignoring the straightforward disclosures that foreclose their claims. And while Plaintiffs continue to dodge the question whether they are Facebook or Instagram users, if they are, Meta's terms would bar their claims too.

Finally, Plaintiffs' responses to the additional claim-specific deficiencies fare no better.

Plaintiffs do not dispute that their CIPA and WESCA claims are facially time-barred, and they allege no facts to support their tolling theories. Plaintiffs also fail to show that the Pixel—which is a piece of code—is a "device" within the plain statutory meaning of CIPA Section 632 or WESCA. As to the party exception, Plaintiffs ignore this Court's prior decisions, which make clear that Plaintiffs must specifically allege that Meta was capable of using *Plaintiff M.D.*'s personally identifiable health information for its own purposes—something Plaintiffs do not do because they do not allege M.D. was a Facebook user. As to the CIPA Section 631(a) claim under clause one, Plaintiffs cannot show their allegations about internet usage somehow constitute "telegraph or telephone" usage. And finally, Plaintiffs fail to allege a highly offensive intrusion from Meta's alleged *receipt* of information that Meta prohibited BlueChew from sending.

Because Plaintiffs failed to cure these deficiencies even after amendment, the Court should dismiss with prejudice.

## II. ARGUMENT

### A. Plaintiffs' Claims Fail Because Plaintiffs Do Not Allege That Meta Intended To Obtain Sensitive Data

All of Plaintiffs' claims fail because Plaintiffs do not (and cannot) allege that Meta intended to obtain the allegedly sensitive data at issue. While Plaintiffs repeatedly argue that intent is a question of fact, Opp. 5, that does not absolve Plaintiffs of their pleading burden to *allege* facts that plausibly show Meta's intent. *See Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009) ("conclusory" allegation of discriminatory intent insufficient); Mot. 11. This cross-cutting deficiency requires dismissal of all of Plaintiffs' claims against Meta.

#### 1. Plaintiffs' Proposed Intent Standard Conflicts With *Christensen* And The Statutory Text

Plaintiffs concede that the Court should interpret the intent requirements under CIPA, MWESA, and WESCA in parallel with the federal Wiretap Act. *See* Opp. 4-5. But Plaintiffs flatly ignore Ninth Circuit precedent, which requires Plaintiffs to allege that Meta acquired the alleged data "*purposefully and deliberately* and not as a result of accident or mistake." *Christensen*, 828 F.3d at 790 (citation omitted) (emphasis added); *see* Mot. 10.

Plaintiffs do not even try to argue they meet that controlling standard. Plaintiffs instead

attempt to lower the bar, arguing that Meta acted "intentionally" or "willfully" within the meaning of the statutes if Meta was merely "aware that the information it is intercepting may be confidential."[1] Opp. 4. That "awareness" standard is entirely untethered from the statutory text, and, as Judge Chhabria explained in *Google Pixel*, "set[s] the legal bar too low" under *Christensen*. 741 F. Supp. 3d at 840. Plaintiffs ask this Court to depart from *Google Pixel*, yet they do not contest its analysis of binding Ninth Circuit precedent. Opp. 7-8. Instead, they point to cases decided before *Google Pixel*, which primarily rely on the notion that intent may be inferred where a defendant is aware of, and fails to remedy, a *defect* in its own product, over which it has sole control. *See* Opp. 4-6. Those cases are inapposite here, where Plaintiffs allege BlueChew *misused* the Meta Pixel in a way that allegedly transmitted sensitive data to Meta (in violation of Meta's terms). Such allegations do not show *Meta*'s intent to obtain the information. Mot. 12; *Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *1 (9th Cir. July 8, 2024) ("conclusory assertion" of intent based on third-party misconduct insufficient). And decisions extending the "defect" cases to the third-party misuse context have done so without adequately grappling with *Christensen* or the statutory text. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023).

Plaintiffs also try to distinguish *Google Pixel* by claiming that the plaintiffs there did not allege Google intended to use the collected information for profit. Opp. 8. That is wrong. The *Google Pixel* plaintiffs included an entire section in their complaint on "[h]ow Google [m]onetizes the [] [i]nformation" by using it "for personalized advertising in its advertising systems." *See* Am. Compl., *Doe I v. Google LLC*, No. 3:23-cv-02431-VC, Dkt. 86 ¶¶ 123-154. But, as Judge Chhabria explained, allegations that Google used "the private health information" "in its own advertising systems to make money," 741 F. Supp. 3d at 837-38, still failed to "plausibly allege" Google intentionally *intercepted* private health communications. *Id.* at 844. The same is true here.

Accordingly, Plaintiffs cannot show intent by arguing that Meta "designed" the Pixel for "analyzing communications" and that it is "aware" that its tools "may" be used improperly *by*

---

[1] To be clear, Meta was not "intercepting" data at all. If the case proceeds past the pleading stage, discovery will confirm that any data Meta received was a separate communication between BlueChew and Meta, affirmatively sent at BlueChew's direction. Meta did not "eavesdrop" on users' communications with BlueChew or read or learn the contents of such communications while "in transit," defeating Plaintiffs' claims under CIPA.

*developers* to send "sensitive" data. Opp. 5-6. Plaintiffs point to "other litigations" and Meta's Business Tools Terms to claim Meta "knew the [] Pixel may intercept 'sensitive' data." Opp. 6. But again, as Judge Chhabria explained, "mere awareness that an interception might occur due to the failure of the health providers to follow instructions" does not show intent. *Google Pixel*, 741 F. Supp. 3d at 840. Indeed, the Business Tools Terms belie Plaintiffs' conclusory intent allegations, because they show Meta "purposefully acted so as *not* to receive any personal health information." *Id.*[2] And Plaintiffs' argument that Meta "failed to take remedial action" (Opp. 6) to address third-party misconduct likewise fails to demonstrate *purposeful and deliberate interception* on Meta's part. *Google Pixel*, 741 F. Supp. 3d at 840 (rejecting argument that Google's "failure" to "prevent[] the inadvertent transmission of private information from health care provider websites" reflected "intent to obtain the information"). Plaintiffs also point to Meta's "fail[ure] to destroy" data, Opp. 6, but again, retention of information after the fact does not show intent to *obtain* the information in the first instance.

In short, Plaintiffs' arguments are fundamentally inconsistent with *Christensen*. They would also impermissibly expand the scope of the criminal wiretapping statutes to cover even the inadvertent receipt of expressly unwanted information. Plaintiffs cannot transform Meta's general provision of a common internet tool into an indication that Meta intended to collect the specific data at issue here, which Meta expressly said it did *not* want. This dooms all of Plaintiffs' claims.

### 2. Invasion Of Privacy Requires An Intentional Intrusion

Plaintiffs separately argue "there is no intent element" for an invasion of privacy claim, Opp. 8-9, but that is simply wrong: invasion of privacy claims require an *intentional* intrusion. *See, e.g.*, *Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 285 (2009) (explaining that for common-law tort of intrusion, a "defendant must *intentionally* intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" (emphasis added)); *see also id.* at 287 (constitutional invasion of privacy claims also require "intrusion" and "largely parallel" the

[2] Plaintiffs contend the Court cannot resolve disputed facts based on the Business Tools Terms. *See* Opp. 7. But there is no dispute about the existence or contents of the Terms. And Plaintiffs include *no* allegations suggesting those Terms were somehow a sham—a contention that would be subject to Rule 9(b). *Google Pixel,* 741 F. Supp. 3d at 841-42.

common-law tort); *Google Pixel*, 741 F. Supp. 3d at 844 (dismissing common law and California constitutional privacy claims for failure to allege intent). Plaintiffs fail to allege any such conduct.

**B. Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of Their Data**

Plaintiffs' claims also fail because Plaintiffs consented to BlueChew's transmission of information about their activity on its website to service providers like Meta. Neither Plaintiffs' attempts to preclude the Court from considering BlueChew's Privacy Policy nor their arguments on the substance of that Policy have any merit.

As an initial matter, Plaintiffs again attempt to lower the legal bar by arguing that *Meta* must show lack of consent. But they do not dispute that "lack of consent is an element" of their CIPA claims. *Silver v. Stripe Inc.*, 2021 WL 3191752, at *2, 4-5 (N.D. Cal. July 28, 2021). Nor could they—since CIPA integrates lack of consent into its core description of the wrongful conduct, prohibiting reading the contents of a message in transit "willfully and *without the consent* of all parties to the communication." Cal. Penal Code § 631(a) (emphasis added); *see also, e.g.*, Cal. Penal Code § 632(a) (same structure); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135-36 (N.D. Cal. 2015) (holding that lack of consent is an element of a Section 637.6 claim, which prohibits disclosure "without the prior written consent of the individual"); *Maxwell v. Dolezal*, 231 Cal. App. 4th 93, 97 (2014) (similar for statute prohibiting use of name or likeness "without such person's prior consent").

Plaintiffs' cases are not persuasive. Two addressed only claims under the federal Wiretap Act, where consent is identified as a statutory exemption. *See Doe v. Meta*, 690 F. Supp. 3d at 1077-78; *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022). And the other simply followed those cases in the CIPA context without considering differences in the statute. *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024). Whatever the correct answer as to the federal Wiretap Act, it is clear from CIPA's statutory structure that consent is an *element*, as *Silver* held. It is therefore *Plaintiffs*' burden to allege *facts* showing lack of consent. The conclusory allegations Plaintiffs cite (Opp. 9) do not suffice. And even for those claims for which consent may be an affirmative defense, it is still grounds for dismissal if consent

is "obvious on the face of a complaint" and from judicially noticeable materials. *See Weston v. Lefiti*, 2024 WL 4579237, at *2 (9th Cir. Oct. 25, 2024) (affirming dismissal); *Lloyd*, 2024 WL 3325389, at *2 (same); *Facebook, Inc. v. BrandTotal Ltd.*, 2021 WL 662168, at *8 (N.D. Cal. Feb. 19, 2021) (same). Either way, consent dooms Plaintiffs' claims because the BlueChew Privacy Policy disclosed the conduct at issue.

Plaintiffs advance four arguments to the contrary, none of which holds water. *First*, Plaintiffs contend this Court should not consider the BlueChew privacy policies or sign-up pages because the FAC does not cite them and instead alleges that customers are not provided notice. Opp. 9. But Plaintiffs cannot selectively rely on screenshots of BlueChew's website while ignoring the parts that hurt their claims. *See Lakes v. Ubisoft, Inc.*, 2025 WL 1036639, at *3 (N.D. Cal. Apr. 2, 2025) (taking judicial notice of website policies and pages submitted by defendant where "Plaintiffs' complaint relies on highly selective portions of the Website"). And this Court need not take as true allegations belied by such judicially noticeable material. *See Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir.), *amended by* 275 F.3d 1187 (9th Cir. 2001).

*Second*, Plaintiffs contend the Court should not consider these materials because the publicly available archived versions do not correspond to the exact dates of use alleged in the FAC. *See* Opp. 10-11. But, tellingly, Plaintiffs do not actually contest that they *did* have to sign up for an account to use BlueChew and *were* presented with BlueChew's Terms and incorporated Privacy Policy. Nor could they. BlueChew's website, on which *Plaintiffs themselves* rely to allege that Meta intercepted their information, *see* FAC ¶¶ 20-24, clearly requires agreement to BlueChew's Terms and Privacy Policy. If Plaintiffs' screen shots are properly considered, this Court should also consider the sign-up page, *see* Dkt. 38-9, which Plaintiffs strategically omit. And judicially noticeable web pages spanning from February 2021 through August 2024 confirm that BlueChew has consistently (and unsurprisingly) required account creation and agreement to its Terms and Privacy Policy before users can use its services. Plaintiffs' objection (Opp. 11) to relying on these publicly available WayBack Machine pages disregards the extensive case law from this District taking judicial notice of such material. *See, e.g.*, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021); *Erickson v. Neb. Mach. Co.*, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July

6, 2015); *cf. Doe v. San Diego Unified Sch. Dist.*, 22 F.4th 1099, 1111 n.5 (9th Cir. 2022) (Mem.) (Berzon and Bennett, J.J., concurring) (citing Wayback Machine to show that certain language did not appear on relevant webpage "at different points in time in 2021 and 2022"). At bottom, Plaintiffs' complaints are pure gamesmanship, as they never allege—as they must to carry their burden—that BlueChew's website or sign-in page were materially different when Plaintiffs encountered them. *Cf. Keller v. Chegg, Inc.*, 2023 WL 5279649, at *2 n.2 (N.D. Cal. Aug. 15, 2023) (judicially noticing web pages, including from Wayback Machine, where plaintiff "offer[ed] no reason to think these documents are inaccurate").

*Third*, Plaintiffs contend that BlueChew's sign-up page was insufficient to establish assent to BlueChew's Terms and Conditions, which incorporated its Privacy Policy. Opp. 11. That is wrong. Each of the publicly available, archived BlueChew pages "provide[d] reasonably conspicuous notice" of the Terms when the page is considered as a whole, including by denoting the Terms in dark font on a light background with a visible hyperlink. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 858 (9th Cir. 2022); *see* Opp. 11. The sign-in pages also "explicitly notif[ied] a user of the legal significance of the action [he] must take to enter into a contractual agreement." *Id.* In *Berman*, by contrast, the website at issue identified terms alongside a "Continue" button, but "did not indicate to the user what action would constitute assent to those terms." *Id.* As the Ninth Circuit explained, the "notice defect could easily have been remedied by including language such as, "By clicking the Continue >> button, you agree to the Terms & Conditions." *Id.* That type of language *does* appear here. *See* Dkts. 38-6, 38-7 ("By submitting this form, you agree to our Terms & Conditions"); Dkt. 38-8 ("By signing in, you agree to our Terms & Conditions"); *see also* Dkt. 38-9 (requiring user to check a box next to text that says "I agree to the Terms & Conditions, Privacy Policy, and Telehealth Consent"). And Plaintiffs' argument that the sign-in pages do not "hyperlink the Privacy Policy" is irrelevant, because as Meta explained, BlueChew's Terms and Conditions expressly incorporate its Privacy Policy. Mot. 14; *see Shaw v. Regents of Univ. of California*, 58 Cal. App. 4th 44, 54 (1997). So, by agreeing to the Terms, Plaintiffs necessarily agreed to BlueChew's Privacy Policy as well.

*Finally*, as to the actual content of BlueChew's Privacy Policy, Plaintiffs object that

BlueChew "did not 'explicitly notify' [them] of the practice at issue." Opp. 11-12 (citation omitted). But BlueChew's Policy did just that—it stated that BlueChew would "collect information" about users' use of its website; "may combine this information . . . with other information," including "personal information"; and that it may "share information about you, *including health information* and other information that personally identifies you," with third-party service providers to "support" its website or "otherwise in connection with administering and providing [its] Services." Dkt. 38-17 at 2 (emphasis added); *see* Mot. 15. Plaintiffs complain that the Privacy Policy references "third party payment processors" and "billing and collections" in addition to "service providers." Opp. 13. But those terms appear in a different, conjunctive clause: BlueChew stated that it would share "personally identifiable information" "with service providers that we use *to support the Websites* or otherwise in connection with administering and providing our Services, *and* billing and collections, including *without limitation* any third party payment processor." Dkt. 38-17 at 2 (emphases added). The "billing and collections" language thus does not limit the term "service provider." Nor does the reference to sharing information for third parties' "own direct marketing purposes" have any bearing here, Opp. 13, because Plaintiffs do not allege Meta used their information for its "own direct marketing purposes"—a term that is specifically defined in the California law under which that particular disclosure is made. *See* Cal. Civ. Code 1798.83(e)(2) (marketing via "mail, telephone, or electronic mail"); Dkt. 38-17 at 6.

BlueChew's 2024 Policy was even more clear, stating that BlueChew would use the "Meta Pixel" to "keep track of what users d[id]" on BlueChew's website. Dkt. 38-19 at 3. The Policy explained that such user data would be "processed by Facebook and Instagram." *Id.* The Policy also disclosed that BlueChew collects "Personal Information consisting of health information," *id.*, and that it shares "Personal Information" "with third parties," including for advertising and data analysis, *id.* at 4—contrary to Plaintiffs' protest that there was no "explicit notification by BlueChew that it will share health information with Meta." Opp. 13. The Policy thus makes clear that BlueChew *would* share data about users' activity on BlueChew's site with Meta. No "more granular" disclosure is required. *Lakes*, 2025 WL 1036639, at *6; *see also Hammerling v. Google, LLC*, 2024 WL 937247, at *1-2 (9th Cir. Mar. 5, 2024) (declining to narrowly construe broad

disclosures in Google privacy policy).

As for Meta's policies, Plaintiffs hide behind their own decision not to allege whether they are Facebook users—something clearly within their knowledge. Opp. 13. But they are similarly wrong to suggest that Meta's policies do not notify Facebook users that Meta will receive their data. As the Ninth Circuit has repeatedly held, Meta's policies disclose that Meta will "collect[] its users' data from third party sites and [] later us[e] the data for advertising purposes." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018); *see Lloyd*, 2024 WL 3325389, at *2.

Because Plaintiffs consented to the conduct they challenge and cannot cure that defect by amendment, their claims should be dismissed with prejudice. *Lakes*, 2025 WL 1036639, at *10.

### C. Plaintiffs' California and Pennsylvania Claims Fail For Additional Reasons

In addition to the cross-cutting failures identified above, Plaintiffs fail to adequately address the many additional deficiencies in their claims.

#### 1. Plaintiffs' CIPA and WESCA Claims Are Time-Barred

Plaintiff M.D.'s CIPA claims and Plaintiff O.F.'s WESCA claim are "facially time-barred" under their own allegations. *Lau v. Gen Digital Inc.*, 2023 WL 10553772, at *2 (N.D. Cal. Sept. 13, 2023); Mot. 17. Plaintiffs vaguely suggest that *Meta* bears the burden on this issue. Opp. 14. But "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of [a tolling rule] must specifically plead facts" to show he is entitled to tolling. *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014). And Plaintiffs ultimately concede they must "plead" "the time and manner of discovery" and facts showing due diligence and an inability to discover their claims. Opp. 14. Plaintiffs have not done so.

Plaintiffs suggest they could not have discovered their claims earlier because Meta used "proprietary technology" and the conduct at issue was "surreptitious," such that the statute of limitations did not begin to run until someone "perform[ed] complex testing to inspect for tracking pixels." Opp. 15-16. Plaintiffs' attempt to—once again—warp legal standards in their favor fails. The law is clear that plaintiffs need not know exactly what technology or conduct injured them to trigger the limitations clock; they must know only of "at least some form of [alleged] harm and of a factual cause linked to another's conduct." *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d

237, 249 (Pa. 2021); *see also Eisenberg v. Citibank, NA*, 787 F. App'x 929, 930-31 (9th Cir. 2019). Here, multiple circumstances would have put Plaintiffs on notice that BlueChew shared their information: Plaintiffs allege that they received targeted advertisements for erectile dysfunction medications, FAC ¶¶ 8, 10, and BlueChew's Privacy Policy *disclosed* that BlueChew collected information about users' use of its website, and that it could share that information (including personally identifiable information and health information) with its service providers. Mot. 15.[3] That is clearly enough to put Plaintiffs "on inquiry notice of a possible third party" who caused their purported injury. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 902 (N.D. Cal. 2023) (dismissing claim for allegedly surreptitious recording). This case is therefore distinct from *Franklin v. Ocwen Loan Servicing*, *see* Opp. 16, where the plaintiff "received no recording disclosure at all" for some calls. 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018).

Plaintiffs also argue tolling due to fraudulent concealment. Opp. 16. But "a plaintiff 'must plead allegations of fraudulent concealment with particularity,'" and Plaintiffs fall far short of satisfying Rule 9(b). *Lau*, 2023 WL 10553772, at *3. Plaintiffs allege only that Meta "surreptitiously" collected Plaintiffs' information, which is not an "'affirmative act[] *to mislead*,'" as Plaintiffs concede is required. Opp. 17 (emphasis added); *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 885 (N.D. Cal. 2015). Plaintiffs also assert that Meta "published misleading Business Tools terms, which suggested that [Meta] would not use its technology to intercept sensitive health information." Opp. 17. But Meta's Business Tools Terms (to which Plaintiffs are not parties) define *developers'* obligations *to Meta*—they do not constitute affirmative promises by Meta to users of developers' websites. They thus cannot support any fraudulent concealment theory.

### 2. Plaintiffs' CIPA Section 632 And WESCA Claims Fail Because The Meta Pixel Is Not A Device

Plaintiffs' CIPA Section 632 and WESCA claims fail because those provisions apply only to "device[s]," and the Meta Pixel is not a "device" within the meaning of either statute. Mot. 19-

[3] Because Plaintiffs bear the burden on tolling, the fact that "they do not allege *when* they first began receiving targeted advertisements" hurts them. Opp. 15. Nothing in the complaint indicates they saw these advertisements so long after their purchases that they could not have brought their claims within the limitations period—even setting aside the implausible notion that any marketer would advertise to a person only years after they were in the market for a product.

20.[4] Rather than engage with the text and structure of the statutes, Plaintiffs point to other cases that they claim have held that software is a "device." Opp. 18-19. But their cases are not persuasive. Some do not squarely consider the question whether software is a "device" at all. *See, e.g.*, *Luis v. Zang*, 833 F.3d 619, 634 (6th Cir. 2016) (no analysis of meaning of term "device"). Indeed, Plaintiffs reference, but do not cite, the "Third Circuit's decision in *Popa*" (Opp. 19), which expressly *reserved* the question whether code was a "device" because the defendant had not raised the issue. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 131 n.8 (3d Cir. 2022).[5]

And *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015), which is the root of virtually all of Plaintiffs' other cases, also did not address this issue. In that case, the defendant did argue that its software was not a "device" for purposes of the federal Wiretap Act, but it did not do so based on any argument as to whether the statutory meaning of the term "device" includes software. Rather, it focused on a specific exception in the federal Wiretap Act for a "telephone or telegraph instrument, equipment or facility, or any component thereof." *Id.* The court rejected the argument that the software was a "component" (which has nothing to do with Meta's argument here) because the exemption applied only to "components" used by a "provider of electronic communications in the ordinary course of their business," a requirement the *Carrier IQ* defendant could not meet. *Id.* Based on *that* analysis, the court concluded that "Plaintiffs have sufficiently alleged that the Carrier IQ Software is a 'device' for purposes of the Wiretap Act." *Id.* Courts have mistakenly seized on that single inapposite sentence to hold that software is a "device," contrary to the plain meaning of the term. *See, e.g.*, *Doe v. Meta*, 690 F. Supp. 3d at 1080 (relying on *In re Carrier IQ*); *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (same); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 956 (N.D. Cal. 2024) (same); *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 856 (W.D. Wash. 2024) (same).[6] The current body of case

---

[4] Contrary to Plaintiffs' suggestion, Opp. 19, this Court need not take as true legal assertions as to what constitutes a "device." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[5] The district court in *Popa* concluded only that whether the precise "interplay" of the technologies at issue there qualified as a "device" warranted factual development. *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 117 (W.D. Pa. 2019).

[6] *See also Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) (following *Doe v. Meta* and *Yockey* without further analysis); *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 456 (E.D. Pa. 2023) (relying on *Hutchins*).

law thus says very little about how this Court should interpret the term "device" in this context.

Plaintiffs' other arguments against construing "device" according to its plain meaning fare no better. *First*, Plaintiffs invoke the privacy-protective purposes of CIPA, Opp. 21, but that general purpose does not override the statutory text. California courts "first look to" statutory text, and statutory "meaning . . . must be derived from [the statute's] clear and unambiguous words." *Pope v. Superior Ct.*, 136 Cal. App. 4th 871, 875 (2006), *as modified* (Feb. 9, 2006). Indeed, although the California Supreme Court has recognized the overarching purpose of CIPA, it has *also* acknowledged that individual provisions of CIPA are directed to different "aspect[s] of the privacy problem," and has analyzed those provisions based on "the operative language" of the relevant provision. *Ribas v. Clark*, 38 Cal. 3d 355, 359-60 (1985). CIPA Section 632's particular "device" requirement thus cannot be ignored in the name of achieving the statute's general aims. Moreover, both CIPA and WESCA are *criminal* statutes; they should therefore be read narrowly, not broadly, if there is any ambiguity. *See, e.g.*, *People v. Hyatt*, 109 Cal. App. 5th 735, 793-94 (2025) ("It is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit." (citation omitted)).

*Second*, Plaintiffs point to cases that suggest software must be a "device" because it cannot operate without some kind of hardware. Opp. 19-20. But concluding that software must *run on* a device to function is no reason to conclude that software *is* a "device" under CIPA and WESCA. Far from being "artificial," Opp. 20 (citation omitted), Meta's reading of "device" accounts for the plain language and context of the statutes.

*Finally*, Plaintiffs attempt to dismiss *Moreno v. San Francisco Bay Area Rapid Transit*. Opp. 20-21. Although that case considered a different provision of CIPA, it looked to the "plain meaning" of the term "device," including by consulting dictionaries. 2017 WL 6387764, at *4-5 (N.D. Cal. Dec. 14, 2017). That plain meaning is fully applicable to the term "device" as used here. And applying that plain meaning harmonizes the definition of "device" across different sections of the same statutory scheme and takes into account the neighboring language of the provisions, which further confirms that "device" is limited to tangible objects and does not encompass a piece of code like the Meta Pixel. *See* Mot. 20.

### 3. Plaintiff M.D.'s CIPA Section 631 Claim Fails Under The Party Exception

Plaintiff M.D.'s CIPA Section 631 claim also fails because, as to the allegedly sensitive information at issue, the Meta Pixel was merely a tool for BlueChew—a party to the communications. *See* Mot. 20-21. Plaintiffs' arguments to the contrary fail to engage with their own pleadings and this Court's prior decisions on the party exception.

Plaintiffs argue that whether Meta was a party cannot be resolved at this stage. Opp. 21. But Plaintiffs must *allege facts* that make Meta's non-party status plausible. As this Court has recognized, dismissal of CIPA Section 631 claims is warranted where a plaintiff "has not alleged that [a defendant] has the ability to use its record of the [communication] for another purpose." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (Martínez-Olguín, J.); *see also Cody v. Ring LLC*, 2025 WL 240763, at *3 (N.D. Cal. Jan. 16, 2025) (Martínez-Olguín, J.) (dismissing with prejudice). Plaintiffs must allege those facts "with sufficient specificity"—mere invocations of the term "advertising" do not suffice. 2025 WL 240763, at *3.

Plaintiffs do not meet their burden here. Plaintiff M.D.'s allegation that he received "targeted advertisements" on an unspecified website does not show that *Meta* (rather than any other digital ad company) served those ads. And Plaintiffs' opposition elides the key gap in their allegations: while they allege that Meta "intercepted Plaintiff M.D.'s personally identifiable information," and that Meta "can match [] prescription information" to specific BlueChew users, Opp. 22, Plaintiffs only allege facts suggesting that Meta can match and use data for advertising purposes as to its *own users*. Mot. 21. For example, Plaintiffs point to their allegation that Meta "processed, analyzed, and assimilated" information it collected "into datasets like Core Audiences and Custom Audiences." Opp. 22 (quoting FAC ¶ 57). But Plaintiffs' other allegations, along with the sources they cite in the FAC, make clear that these datasets relate to Meta *users*. *See* FAC ¶¶ 28-29 (alleging that Meta compiles "inferences about users" into "Core Audiences" dataset); *see also* Facebook, About Custom Audiences (cited at FAC ¶ 29 n.17) (Custom Audiences can be used "across *Meta* technologies" (emphasis added)). Plaintiffs fail to allege that Meta can use *non-users*' data for advertising purposes—and they steadfastly refuse to say whether M.D. is a

Facebook or Instagram user. Accordingly, Plaintiffs' allegations do not discuss "[Meta] using [non-Facebook-user] data for the purposes [M.D.] alleges, and are thus insufficient to support an inference that [Meta] is capable of using the intercepted information for another purpose." *Cody*, 2025 WL 240763, at *3. Plaintiff M.D.'s Section 631 claim should therefore be dismissed.

#### 4. Plaintiff M.D.'s Claim Under Clause One Of Section 631(a) Fails Because He Does Not Allege Telephonic Communications

Plaintiff M.D.'s Section 631 claim should also be dismissed to the extent it rests on the first clause of Section 631(a), because he does not allege that he communicated with BlueChew via telephone or telegraph wire. *See* Mot. 23. Plaintiffs argue that this Court should read clause one of Section 631 to apply to "new technologies," despite the fact that the language is explicitly limited to telephone and telegraph wires. Opp. 22-23. But this Court already rejected that argument in *Cody*, reasoning that "the Legislature has not updated clause one to include internet technologies" despite "multiple amendments" to CIPA. 718 F. Supp. 3d at 999. Rather, "the plain terms" of clause one "prohibit[] telephonic wiretapping, which does not apply to the internet, and so cannot support [Plaintiffs'] claims." *Id.* Plaintiffs' cases, two of which do not even consider clause one or its telephone-specific language, provide no basis to depart from this conclusion. *See Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 993 (N.D. Cal. 2024) (considering "Section 631" as a whole); *Matera v. Google Inc.*, 2016 WL 8200619, at *20 (N.D. Cal. Aug. 12, 2016) (concluding that "CIPA" can apply to email); *see also Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *8 (S.D. Cal. Jan. 12, 2024) (misconstruing *Matera*).

#### 5. Plaintiff M.D.'s Invasion Of Privacy Claim Fails Because He Does Not Plead Highly Offensive Conduct

Plaintiff M.D.'s California invasion of privacy claim fails because he fails to allege any intentional intrusion or any reasonable expectation of privacy given his consent. *Supra* at 4-9. It also fails because he does not allege any egregious, highly offensive intrusion.

Plaintiffs suggest that whether an intrusion is highly offensive cannot be resolved at the pleading stage. Opp. 24. But courts "do in fact[] decide the 'highly offensive' issue as a matter of law at the pleading stage when appropriate." *Hubbard v. Google LLC*, 2024 WL 3302066, at

*7 (N.D. Cal. July 1, 2024) (citation omitted). This is such a case. Plaintiffs allege only that Meta *received* purchase data from BlueChew, based on *BlueChew*'s choice to install and use the Meta Pixel. That is not the type of egregious intrusion required. Plaintiffs compare this case to *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *6 (N.D. Cal. Sept. 16, 2024) (Martínez-Olguín, J.), but as Meta explained, that case involved starkly different circumstances: plaintiffs there sued a mental health platform, which, unlike Meta here, had *itself* decided to embed tracking technology on its *own* website (and which did not contest that it failed to disclose that tracking). Mot. 24.

Nor does *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 800-01 (N.D. Cal. 2022), change the analysis. There, the court incorrectly relied on laws forbidding *disclosure* of health information to conclude that Meta's *receipt* of information was highly offensive—but that simply does not follow. And the court also suggested that Meta's policies *forbidding* transmission of health-related information supported its conclusion that the receipt of such information could be deemed offensive. *Id.* But the case on which *Meta Pixel Healthcare Litigation* relied involved *internal* documents recognizing an alleged privacy issue. By contrast, here, Meta "forbid[s] the transmission of health-related information using" the Meta Pixel in its Business Tools Terms, Opp. 25—which *undercuts* the egregiousness of its alleged conduct.

Plaintiffs also attempt to identify "egregious" behavior by claiming they "plausibly allege" that Meta specifically served Plaintiff M.D. targeted advertisements based on his purchase. Opp. 25. But, as discussed, Plaintiffs allege no facts demonstrating that Meta provided targeted advertising to *non*-Facebook users or that the targeted ads M.D. allegedly received came from Meta, as opposed to any other third-party analytics provider or a different form of advertising technology (such as device-based retargeting) altogether. *See, e.g.*, FAC ¶¶ 59-76 (detailing Google's alleged pixel technology). And Plaintiffs still refuse to say whether they saw any advertisement on a Meta service, such as Facebook or Instagram. Plaintiffs' assertions about advertising thus fail to show any "egregious breach of social norms." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

## III. CONCLUSION

Meta respectfully requests dismissal of the FAC with prejudice.

Dated: May 7, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By *<u>/s/ Melanie M. Blunschi</u>*

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*