**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN 224018)
  bhur@willkie.com
SIMONA A. AGNOLUCCI (SBN 246943)
  sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN 281668)
  esantacana@willkie.com
DAVID D. DOAK (SBN 301319)
  ddoak@willkie.com
ISABELLA MCKINLEY CORBO (SBN 346226)
  icorbo@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone: (415) 858-7400

Attorneys for Defendant
**GOOGLE LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| M.D., O.F., and J.P., individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br>  v.<br><br>GOOGLE LLC and META PLATFORMS, INC.,<br><br>           Defendants. | Case No. 3:24-cv-06369-AMO<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: July 10, 2025<br>Time: 2:00 p.m.<br>Ctrm: 10, 19th Floor<br>450 Golden Gate Ave., SF, CA 94102<br>Before: Hon. Araceli Martínez-Olguín<br><br>**CLASS ACTION**<br>Trial Date: Not set<br>Current Action Filed: September 10, 2024 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 1

    A. Google's request for judicial notice is unopposed. ............................................... 1

    B. Plaintiffs consented to BlueChew's use of Google Analytics. .............................. 1

    C. Plaintiffs fail to plausibly allege that Google intended to receive Plaintiffs' PII and PHI. .................................................................................................................. 4

    D. Plaintiffs fail to plausibly allege that the at-issue communications were confidential. ........................................................................................................... 6

    E. Plaintiffs fail to plausibly allege that Google intercepted the "contents" of their communication. ..................................................................................................... 10

    F. Plaintiffs' allegations show that Google acted as the vendor of a tool, not as an eavesdropper. ........................................................................................................ 11

    G. Plaintiff M.D.'s constitutional claim fails because he lacked a reasonable expectation of privacy in the allegedly intercepted information. ......................... 13

    H. Plaintiff M.D.'s constitutional claim fails because his allegations do not show that Google's conduct was highly offensive. ....................................................... 13

III. CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agnew v. State*,
   197 A.3d 27 (Md. Ct. App. 2018)...................................................................................3

*Arndt v. Gov't Emps. Ins. Co.*,
   750 F. Supp. 3d 518 (D. Md. 2024).................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................6, 9, 14

*Bally v. State Farm Life Ins. Co.*,
   536 F. Supp. 3d 495 (N.D. Cal. 2021).............................................................................2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................6, 10

*Brown v. Google LLC*,
   2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ................................................................10

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015)............................................................................10

*Commonwealth v. Byrd*,
   661 Pa. 85 (2020)............................................................................................................3

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) .........................................................................................2

*Deibler v. State*,
   365 Md. 185 (2001) .......................................................................................................5

*Doe I v. Google LLC*,
   741 F. Supp. 3d 828 (N.D. Cal. 2024) ...................................................................1, 5, 6

*Doe I v. Google*,
   No. 5:23-cv-02431-BLF, ECF No. 16 ............................................................................5

*Esparza v. Kohl's, Inc.*,
   723 F. Supp. 3d 934 (S.D. Cal. 2024)............................................................................12

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. 2015) ..........................................................................11

*In re Facebook, Inc. Internet Tracking Litig.*,
   956, F.3d 589, 605 (9th Cir. 2020) ...............................................................................10

*Flanagan v. Flanagan*,
    27 Cal. 4th 766 (2002) ................................................................................................... 3, 8

*Graham v. Noom*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................................... 11, 12, 13

*Holmes v. State*,
    236 Md. App. 636 (2018) .................................................................................................. 5

*In re Hulu Privacy Litigation*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) .............................................................................. 10

*Ingrao v. AddShoppers, Inc.*,
    2024 WL 4892541 (E.D. Pa. Nov. 25, 2024) .................................................................... 11

*Javier v. Assurance IQ, LLC*,
    No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ............................. 7

*Kauffman v. Papa John's Int'l*,
    No. 22-CV-1492-L-MSB, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ........................... 12

*Libman v. Apple, Inc.*,
    No. 22-CV-07069-EJD, 2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) .......................... 11

*Lieberman v. KCOP Television, Inc.*,
    110 Cal.App.4th 156 (2003) ..................................................................................... 7, 8, 12

*Lozano v. City of Los Angeles*,
    73 Cal.App.5th 711 (2022) ............................................................................................ 4, 6

*People v. Superior Ct. of Los Angeles Cnty.*,
    70 Cal.2d 123 (1969) ........................................................................................................ 4

*In re Pharmatrak, Inc.*,
    329 F.3d 9 (1st Cir. 2003) ................................................................................................. 4

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015) .............................................................................. 10

*Rodriguez v. Google LLC*,
    No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ........................... 2, 4

*Rojas v. HSBC Card Servs. Inc.*,
    93 Cal.App.5th 860 (2023), *review denied* (Nov. 21, 2023) ............................................ 4

*State v. Maddox*,
    517 A.2d 370 (Md. App. 1986) ......................................................................................... 3

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ............................................................................................ 4

*Vonbergen v. Liberty Mut. Ins. Co.*,
     705 F. Supp. 3d 440 (E.D. Pa. 2023)...................................................................................5

*Williams v. What If Holdings, LLC*,
     No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......................13

*Yoon v. Lululemon USA, Inc.*,
     549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..............................................................................12

*In re Zynga Priv. Litig.*,
     750 F.3d 1098 (9th Cir. 2014) ..............................................................................................11

**Statutes**

Cal. Penal Code § 631........................................................................................1, 10, 11, 12

Cal. Penal Code § 632..................................................................................................2, 6, 7

**Other Authorities**

Fed. R. Civ. P. 8.............................................................................................................5

Fed. R. Civ. P. 9(b)........................................................................................................5

Fed. R. Civ. P. 11....................................................................................................6, 10

Fed. R. Civ. P. 12..................................................................................................6, 9, 14

## I. INTRODUCTION

Plaintiffs' response (ECF No. 43; hereinafter the "Opposition" or "Opp.") to Google's motion to dismiss (ECF No. 40; hereinafter the "Motion" or "Mot.") crystallizes the flaws in their First Amended Class Action Complaint (ECF No. 34; hereinafter the "Complaint" or FAC"). The Opposition does not dispute that Plaintiffs consented to the use of Google Analytics by BlueChew. Instead, it quibbles with the scope of Plaintiffs' consent. This suggests that Plaintiffs' quarrel should be with BlueChew, not Google. The Opposition also fails to rebut Google's argument that judicially noticeable materials negate the element of Google's intent, which is common to all of Plaintiffs' claims. On this element, the Opposition ignores binding authority and fails to distinguish *Doe I v. Google*, which dismissed substantially similar claims. The Opposition also confirms that the information Google allegedly intercepted was not confidential. Rather than point to well-pleaded allegations showing the intercepted information's confidentiality, the Opposition attempts to supplement the Complaint with new allegations, betraying the pleading's weakness. The Opposition also fails to rebut Google's arguments that the allegedly intercepted information was not the "content" of a communication under CIPA section 631 and WESCA, that Google falls within the party exception under CIPA section 631, and that Google's alleged conduct is not highly offensive as required for Plaintiffs' privacy claim under the California Constitution.

## II. ARGUMENT

### A.  Google's request for judicial notice is unopposed.

Plaintiffs have not opposed Google's request for judicial notice (ECF No. 41; hereinafter the "RJN"). Even in their Opposition to the Motion, the only hint of any objection comes in a throwaway line stating, without explanation or citation to authority, that Google "improperly relies on documents extraneous to the pleadings." Opp. 5. To the extent Plaintiffs intended this statement to convey an objection to Google's request for judicial notice, the Opposition's own extensive reliance on the noticeable materials would undercut it. Plaintiffs all but concede that judicial notice is appropriate here, and in any event, they have waived any opposition to Google's request, which should be granted.

### B.  Plaintiffs consented to BlueChew's use of Google Analytics.

In their Opposition, Plaintiffs also do not dispute that they consented to BlueChew's Privacy Policy, which discussed its use of Google Analytics. Specifically, the Privacy Policy advised users,

including Plaintiffs: "We may also use automated devices and applications, such as Google Analytics, to evaluate usage of our Websites and Services and to help us personalize content on our Websites and Services." RJN Ex. 5-A, at 4; Ex. 5-B, at 4; Ex. 5-C, at 4; Ex. 5-D, at 4; Ex. 5-E, at 3; *accord* RJN Ex. 5-F, at 2–3; Ex. 5-G, at 2–3. The crux of Plaintiffs' argument on the issue of consent—that they "did not consent to Defendant's interception of their confidential health information" (Opp. 5)—is that BlueChew did not deploy Google Analytics in the way Plaintiffs expected it would. Their grievance lies with BlueChew, not Google.

Plaintiffs' incorrectly argue that the Court cannot determine at this stage "what a reasonable consumer would believe" when presented with the Privacy Policy. Opp. 5. But like any agreement, the Privacy Policy's meaning is a question of law for the Court, and, absent ambiguity, the parties' intent is discerned from the agreement's text alone. *See Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495, 504 (N.D. Cal. 2021). The BlueChew Privacy Policy is unambiguous in its disclosure of Google Analytics, and Plaintiffs cannot rely on their naked allegation to the contrary to overcome their plain consent. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (courts need not accept allegations that contradict judicially noticeable documents).

Plaintiffs argue that Google is not among the parties they understood would be permitted to receive their information because BlueChew states in the section of the Privacy Policy regarding the use of cookies and other technologies "such as Google Analytics" that "[w]e do not share your personal information with these third parties." This argument is misplaced. Even if BlueChew's Privacy Policy caused Plaintiffs to believe "that their communications with third-party apps would not be 'recorded' by Google," this would "not reasonably give rise to the expectation that *nobody* (including the apps' developers) would record the communications." *See Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (dismissing claim under CIPA section 632). BlueChew's Privacy Policy plainly put Plaintiffs on notice that their personal information would be collected and shared with third parties, and Plaintiffs consented to such collection and sharing. They cannot reasonably claim they were unaware of, or never consented to, this arrangement.

Further, even if BlueChew's Privacy Policy promised not to share "personal information" with Google through Google Analytics, it explicitly disclosed that *some* category of information would be

shared. The Privacy Policy stated that information that "does not personally identify you" could be shared "without restriction," including "with third parties for marketing, advertising, research or other purposes." RJN Ex. 5-A, at 3; Ex. 5-B, at 3; Ex. 5-C, at 3; Ex. 5-D, at 3; Ex. 5-E, at 3; Ex. 5-F, at 5; Ex. 5-G, at 5. This is dispositive because, in ascertaining the existence of consent under CIPA, MWSA, and WESCA, courts look to the "conversation" as a whole, not to any particular content therein. *See, e.g.*, *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002) (interpreting CIPA to protect nonconsensual recording of conversations regardless of the content of the conversation); *State v. Maddox*, 517 A.2d 370, 372 (Md. App. 1986) (analyzing consent under MWESA with reference to a conversation); *Agnew v. State*, 197 A.3d 27, 33 (Md. Ct. App. 2018) (same); *Commonwealth v. Byrd*, 661 Pa. 85, 98 (2020) (citation omitted) ("[P]rior consent can be demonstrated when the person being recorded knew or should have known, that the conversation was being recorded.").

Here, Plaintiffs consented to the collection, by Google, of at least some portion of their conversations with BlueChew—at a minimum, any information that did not personally identify them. But the notion of consent conditioned on a conversation's content, as Plaintiffs suggest their consent was here, is at odds with the authorities above, which indicate that consent is properly determined at the level of the conversation as a whole. Conditioning consent on the specific content of a conversation would be unworkable as a practical matter because it would require the third party to affirmatively learn the content of a communication in order to even make the threshold determination of whether such content fell within the scope of consent. Specifically, for Google to determine whether it had consent to obtain information about Plaintiffs from BlueChew, Google would have to consider each shred of information to determine whether it was identifying or not. If it discovered that certain information was identifying, it would have already violated the statutes (particularly if Plaintiffs are correct that the sole required intent is the intent to listen). Such a reading cannot stand—particularly since BlueChew's Privacy Policy explicitly warned that, despite measures BlueChew implements, BlueChew could neither warrant nor ensure that Plaintiffs' personal information would not be disclosed to third parties. *See* RJN Ex. 5-A, at 3–4; Ex. 5-B, at 4; Ex. 5-C, at 4; Ex. 5-D, at 4; Ex. 5-E, at 3–4; Ex. 5-F, at 5–6; Ex. 5-G, at 5–6.

In sum, Plaintiffs do not dispute that they agreed to BlueChew's Privacy Policy, which belies their naked assertion that they never consented to the use of Google Analytics. The Privacy Policy also

explicitly disclosed that Plaintiffs' information could be collected and shared with a variety of third parties, negating any contention that Plaintiffs were unaware that their communications were being recorded. *See Rodriguez*, 2021 WL 2026726, at *7. Plaintiffs cannot dispute that they consented to the collection of, at a minimum, non-identifying information through Google Analytics, and that the Privacy Policy expressly warned Plaintiffs that personally identifying information could also be shared. Such consent is a complete defense to the wiretapping claims; the law does not impose upon Google the unreasonable burden of determining whether, contrary to Google's policies, BlueChew sent personally identifiable information among the non-identifiable information that may lawfully be disclosed.

Holding Plaintiffs to their freely given consent here would not leave them without a remedy for any disclosure of their information in excess of what BlueChew promised. They simply must seek it under the correct theory (breach of contract) against the correct party (BlueChew).

### C. Plaintiffs fail to plausibly allege that Google intended to receive Plaintiffs' PII and PHI.

Plaintiffs concede that the "intent" analysis is the same under CIPA, WESCA, and MWESA as under the federal Wiretap Act. Opp. 7–8. Yet they ignore what binding authority requires: facts showing that the defendant acted "purposefully and deliberately and not as a result of accident or mistake" in receiving the confidential communication. *See United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015); *accord In re Pharmatrak, Inc.*, 329 F.3d 9, 23 (1st Cir. 2003) (holding that "inadvertent interceptions are not a basis for criminal or civil liability under the ECPA"). Plaintiffs ignore this authority in their Opposition and rely exclusively on non-binding authority instead.

Like the Ninth Circuit, California's courts have held that CIPA requires a specific "intent to record a confidential communication," such that a defendant is not liable if it merely "understood it was deploying recording devices that *might* happen to record a confidential communication." *Lozano v. City of Los Angeles*, 73 Cal.App.5th 711, 728 (2022); *see also Rojas v. HSBC Card Servs. Inc.*, 93 Cal.App.5th 860, 876 (2023), *review denied* (Nov. 21, 2023) (requiring at least "knowledge to a substantial certainty that [] use of the equipment will result in" interception of confidential communications); *People v. Superior Ct. of Los Angeles Cnty.*, 70 Cal.2d 123, 133 (1969) ("We reject [the] contention that the mere intent to activate a tape recorder which subsequently 'by chance' records a confidential communication

is sufficient to constitute an offense under the section."). Pennsylvania and Maryland courts applying WESCA and MWESA, respectively, have imposed the same requirement. *See Holmes v. State*, 236 Md. App. 636, 649 (2018) (requiring "intentional" rather than "inadvertent or negligent" interception of confidential communication); *Deibler v. State*, 365 Md. 185, 199 (2001) (same); *Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 450 (E.D. Pa. 2023) (describing alleged violation of WESCA as "an intentional tort").

Plaintiffs also fail to offer a persuasive reason for the Court to not follow *Doe I v. Google*—easily the most factually analogous case—on the issue of intent. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024). In that case, which presented virtually the same allegations as those here, Judge Chhabria granted Google's motion to dismiss in light of the judicially noticeable materials, reasoning that the fact "that Google repeatedly told developers not to send personally identifiable information through use of its [Google Analytics] source code" negated the element of intent. *Id.* at 840–42. The court correctly determined that Google's directive to developers that they not send Google personally identifiable information meant that Plaintiffs' allegations that Google nonetheless secretly intended to receive such information were subject to Rule 9(b)'s heightened pleading standard for claims sounding in fraud. *Id.*

Trying to distinguish *Doe I*, Plaintiffs represent that "numerous other cases in this District have correctly departed from this reasoning." Opp. 11. How many cases? Plaintiffs cite two—neither of which "departed" from *Doe I* because neither considered it. Both cases that Plaintiffs cite were decided earlier. In fact, in *Doe I*, Judge Chhabria considered one of these cases and rejected its view of the proper pleading standard while adding that, "given the allegations stemming from the complaint and the documents incorporated by reference, the plaintiffs do not even satisfy the basic Rule 8 standard." *Id.* at 842. This Court should reach the same conclusion here.

Plaintiffs further try to distinguish *Doe I* by arguing that it involved "no allegation that 'Google intends to feed the information into its own advertising machinery,' [as Plaintiffs allege] here." Opp. 11. This too is incorrect. The complaint in *Doe I* contained almost exactly the same allegation: "Upon receipt of [the plaintiffs'] unlawfully obtained Health Information, Google uses the information in its advertising systems," intentionally. *Doe I v. Google*, No. 5:23-cv-02431-BLF, ECF No. 16, at ¶¶ 6, 433. And the

1  court concluded that this allegation in particular was not "adequately allege[d]." *Doe I*, 741 F. Supp. 3d
2  at 836.
3        Plaintiffs' objection that intent is inherently an "issue of fact" just underscores the problem for
4  them. Opp. 8. It is the "issues of fact"—not legal assertions—that *Twombly* requires to be supported by
5  "enough factual matter" to make Plaintiffs' claims plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S.
6  544, 556–57, 564–65 (2007). Under Rule 12(b)(6), the question is whether the well-pleaded allegations
7  of fact are sufficient to state a claim, not whether liability on a claim that has been adequately pleaded
8  will be decided by the Court or the jury. *Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009) (requiring plaintiff
9  to "plead factual matter that, if taken as true, states a claim"). Plaintiffs must supply an adequate set of
10 allegations in the first instance—supported by the investigation Rule 11 requires—before they may
11 impose on the community to hear their claims.
12       Plaintiffs also attempt to buttress their Complaint with new, unpleaded assertions. The
13 Opposition is rife with unpleaded statements offered for the purpose of—in Plaintiffs' words—
14 "evidencing intent." Opp. 9. For example, citing to allegations made by different plaintiffs in a different
15 case, Plaintiffs offer attorney argument that Google "failed to take remedial action to prevent sensitive
16 health information from being transmitted to it via its tracking technologies, including in this case," and
17 "also failed to destroy the protected health information it received from Plaintiffs." Opp. 9. But such
18 argument—that Google failed to prevent an eventuality from happening—still falls short of
19 demonstrating that Google *intended* the interception in the first instance. *Lozano*, 73 Cal.App.5th at 728
20 (2022) (intent not demonstrated despite claim that defendant knew it *might* capture confidential
21 communications). Plaintiffs' resort to attorney argument betrays the inadequacy of their pleading.

22     **D.  Plaintiffs fail to plausibly allege that the at-issue communications were confidential.**

23       Plaintiffs' Opposition does not dispute that, if Plaintiffs' well-pleaded allegations of fact do not
24 show that their communications with BlueChew were confidential, then Plaintiffs claims under CIPA
25 section 632, WESCA, MWESA, and the California Constitution should be dismissed. Opp. 12–13. The
26 Complaint and the judicially noticeable materials show that Plaintiffs' communications were not
27 confidential. BlueChew's use of Google Analytics was expressly disclosed and consented to, Plaintiffs
28

1  agreed with BlueChew that much of the information they now complain was intercepted would not be
2  protected, and Plaintiffs had no reasonable expectation of privacy as a matter of law.

3  Although Plaintiffs deride Google's confidentiality argument as a "recycled" version of its
4  argument on consent, the caselaw makes clear that consent and confidentiality are two sides of the same
5  coin in the sense that consent to a third party's involvement in a conversation destroys any reasonable
6  expectation of confidentiality. *See Javier v. Assurance IQ, LLC*, No. 4:20-CV-02860-JSW, 2021 WL
7  940319 (N.D. Cal. Mar. 9, 2021) (dismissing claim under CIPA section 632 in part because "a party that
8  consents to having information collected has no reasonable expectation of privacy"). As explained above,
9  Plaintiffs consented to BlueChew's use of Google Analytics as a general matter. Plaintiffs also consented
10 to Plaintiffs' sharing of their PII and PHI with service providers that BlueChew used to support the
11 website. And Plaintiffs gave BlueChew wide latitude to share their PII and PHI with unspecified third
12 parties for unspecified reasons. *See* RJN Ex. 5-A, at 2; Ex. 5-B, at 2–3, Ex. 5-C, at 2–3; Ex. 5-D, at 2–3;
13 Ex. 5-E, at 2; Ex. 5-F, at 4; Ex. 5-G, at 4. No reasonable expectation of confidentiality can exist under
14 these circumstances.

15 The Opposition quotes *Lieberman v. KCOP Television, Inc.* (at Opp. 12) for the proposition that
16 "[i]t is for the jury to decide whether under the circumstances presented [plaintiff] could have *reasonably*
17 expected that the communications were private." 110 Cal.App.4th 156, 169 (2003). But the Opposition's
18 substitution of the generic term "[plaintiff]" for the actual text "Lieberman" in the quoted statement
19 obscures that the court there was speaking specifically to the facts presented—facts that were far different
20 from those alleged here. In *Lieberman*, a physician sued a news company after it broadcast secretly
21 recorded consultations that he had with people who were pretending to be patients but were actually news
22 reporters. *Id.* at 161. The news company challenged the suit with an anti-SLAPP motion, arguing that
23 the physician lacked a reasonable expectation of privacy during the consultations because each "patient"
24 had been accompanied by a "companion" who was not introduced to the physician, but whom the
25 physician knew to be present. *Id.* at 161–63. In response to the anti-SLAPP motion, the physician
26 submitted a declaration stating that, based on the behavior of the companions who accompanied the fake
27 patients to the consultations, in each instance he had understood the companion to be the "significant
28 other" of the person he was consulting with. *Id.* Noting that it could "not resolve issues of credibility in

1  connection with a SLAPP motion," the court concluded that the reasonableness of the physician's
2  expectation of privacy was a jury question. *Id.*

3  Here, by contrast, there is no credibility issue. Plaintiffs have not opposed Google's request for
4  judicial notice and do not deny that they were informed and agreed that BlueChew could use Google
5  Analytics. It is difficult to see how Plaintiffs could have possessed a reasonable expectation of privacy
6  where they were informed of and consented to the collection and sharing of their information with a
7  variety of third parties who were described in only the most general terms and not specifically identified,
8  where Plaintiffs consented to the use of Google Analytics, where no restrictions were placed on the use
9  or disclosure of Plaintiffs' information by third parties whose receipt of PII and PHI Plaintiffs consented
10 to (for example, "service providers"), and where BlueChew explicitly disclaimed assurances against
11 sharing Plaintiffs' personal information. *See id.* at 168 (explaining that someone "who listens with the
12 speaker's knowledge and intent is . . . not an eavesdropper" but rather a "party" to the conversation).
13 That Google was a party rather than an eavesdropper is clear because confidentiality, like intent, is
14 determined at the level of the "conversation." *See Flanagan*, 27 Cal.4th at 777 (plaintiff must have an
15 "objectively reasonable expectation that the conversation is not being overheard or recorded");
16 *Lieberman*, 110 Cal.App.4th at 168 ("A communication is confidential where a party to the conversation
17 has an objectively reasonable expectation that the conversation is not being overheard *or* recorded.").

18 Nor do any well-pleaded allegations show that Plaintiffs possessed a reasonable expectation of
19 privacy as to any particular piece of information they allege was shared with Google. Plaintiffs were
20 specifically informed and agreed: "Information you provide BLUECHEW in order to register and set up
21 an account, including name, username, email address, shipping address and phone number, are not
22 considered protected information." *See* RJN Ex. 5-A, at 1; Ex. 5-B, at 1; Ex. 5-C, at 1; Ex. 5-D, at 1; Ex.
23 5-E, at 1. Plaintiffs do not dispute this point. Moreover, the law recognizes that information like "name,"
24 "birthdate," and "email" are not "sufficiently intimate or personal to justify a legitimate expectation of
25 privacy." *Arndt v. Gov't Emps. Ins. Co.*, 750 F. Supp. 3d 518, 528 (D. Md. 2024). And although parties
26 may contractually agree to not disclose particular information that otherwise would not be protected from
27 disclosure, a third party who is a stranger to that agreement does not commit a privacy violation simply
28 by receiving such information. Again, Plaintiffs may pursue the correct theory against the correct party.

The only piece of information that Plaintiffs' Opposition attempts to defend as one in which Plaintiffs possessed a reasonable expectation of confidentiality is the character string "id1," which they allege to be a "unique" identifier that BlueChew "assigned" to mean "a 6-pack of BlueChew's 30 mg Sildenafil" tablets.  FAC ¶ 70; Opp. 12–13.  But as Google noted in its motion to dismiss, the Complaint does not allege that Google knew or was capable of knowing the meaning of "id1."  Mot. 18.  As alleged by Plaintiffs, this character string was "assigned" by BlueChew.  The character string "id1" does not have any intrinsic meaning, and the meaning Plaintiffs attribute to "id1" should not be presumed true for Rule 12 purposes, as the Complaint offers no factual basis for it (e.g., Plaintiffs offer no explanation of how *they* know the meaning of "id1," much less how Google or any other third party would).  *See Iqbal*, 556 U.S. at 680–81 (allegations that person was "principal architect" of challenged policy and "'instrumental' in adopting and executing it" were "bare assertions" "not entitled to be assumed true").  All that Plaintiffs offer to establish that "id1" means "a 6-pack BlueChew's 30 mg Sildenafil tablets" is their own word.  This conclusory allegation is not enough—and it is far from enough to establish that Google knew or was capable of knowing the meaning that Plaintiffs ascribe to this cypher—especially given that this allegation is the linchpin of their claims.

Rather than attempt to point to *something* in their pleading that could make their allegation about the meaning of "id1" plausible under Rule 12, Plaintiffs' Opposition asserts—inexplicably—that Google has "conceded" the truth of Plaintiffs' allegations about this cypher. Opp. 13  Google has not done so— and vigorously objects to this baseless assertion.  Plaintiffs also argue that "Defendant's assertion that a 'pseudonymous identifier,' 'is unintelligible, and is not fairly characterized as medical information,' contradicts . . . Plaintiffs' allegations."  *Id.*  But Plaintiffs then fail to identify any allegation in the Complaint that Google's argument "contradicts."  They have no answer to Google's point that they failed to allege that Google knew or was capable of knowing the significance of the "unique ID" that they say BlueChew assigned to its medication.  If Plaintiffs have a proper basis for alleging that Google knew or was capable of knowing the significance of this cypher, they should be required to identify it in an amended pleading.

The cases Plaintiffs cite in arguing that "[c]ourts across the country recognize that companies cannot evade liability in circumstances like this" only underscore the deficiency of Plaintiffs' pleading.

1  *Id.* The first case, *Robinson v. Disney Online*, involved a situation where "the information at issue," although encrypted, was disclosed "along with a code that enabled [the relevant third party] to decrypt" it. 152 F. Supp. 3d 176, 182–83 (S.D.N.Y. 2015). The second case, *In re Hulu Privacy Litigation*, similarly addressed a situation where the sender and the recipient "use a mutually intelligible code." 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015). Nothing of the sort has been alleged here—nor could it be, consistent with Rule 11.

### E. Plaintiffs fail to plausibly allege that Google intercepted the "contents" of their communication.

As explained in Google's Motion, the Complaint's failure to allege that Google intercepted the "contents" of any communication dooms Plaintiff M.D.'s claim under CIPA section 631 and Plaintiff O.F.'s claim under WESCA. Nothing in Plaintiffs' Opposition saves these claims.

The Opposition quotes cases stating that a communication's "content" may include information such as "the names of buttons clicked," along with "search queries" made and "the particular document" requested, by a website's user. Opp. 14 (quoting *Brown v. Google LLC*, 2023 WL 5029899, at *15 (N.D. Cal. Aug. 7, 2023)). It similarly quotes cases stating that a communication's content may include "full-string, detailed URLs" showing "the particular document within a website that a person views," Opp. 14 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956, F.3d 589, 605 (9th Cir. 2020)), or containing "a user's search terms," Opp. 14 (quoting *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015)). All of this is irrelevant, however, because Plaintiffs do not allege that Google intercepted such information. The closest Plaintiffs come is with their general allegation that "Defendants intended to learn some meaning of the content in the URLs and the content the visitors requested," FAC ¶ 94, but this conclusory statement (which is not even specific to Google, as the use of the plural term "Defendants" indicates) is unsupported by any specific allegation of fact, much less any fact showing that Google *did* learn some meaning from URLs, or that the URLs were even susceptible of such divination. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("formulaic recitation of the elements of a cause of action will not do"). Moreover, the heart of Plaintiffs' allegations about the nature of the information they say was intercepted—Figures 8 and 9—does not show any interception of the types of information addressed by the authorities Plaintiffs rely on.

Next, the Opposition repeats Plaintiffs' allegations that Google intercepted Plaintiffs' "first and last name, email address, and date of birth." Opp. 4. This too is irrelevant. The Opposition does not even attempt to address the authorities cited by Google's Motion, which make clear that "name, address and subscriber number or identity of a subscriber or customer" are not "contents" under CIPA section 631 or WESCA. *See Graham v. Noom*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021); *Libman v. Apple, Inc.*, No. 22-CV-07069-EJD, 2024 WL 4314791, at *14 (N.D. Cal. Sept. 26, 2024) ("record data" includes "basic identification and address information," which fall outside of WESCA's definition of "content"); *Ingrao v. AddShoppers, Inc.*, 2024 WL 4892541, at *14 (E.D. Pa. Nov. 25, 2024) (same); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("record" data like "identification" and "address" are not "content under federal Wiretap Act); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015). Nor does the Opposition attempt to explain how liability could extend to Google for receiving information at BlueChew's direction that Plaintiffs agreed would not be considered protected. *See, e.g.*, RJN Ex. 5-C, at 3–5.

Finally, Plaintiffs argue that "such content was conveyed through an identifier recognizable by Google." Opp. 14. Neither this assertion (which is pure attorney argument), nor any fact supporting it, appears in the Complaint, which fails to supply any basis on which to conclude that Google intercepted any "content" of any conversation.

**F.   Plaintiffs' allegations show that Google acted as the vendor of a tool, not as an eavesdropper.**

As alleged by Plaintiffs, Google functioned as a vendor of analytics services to BlueChew, not as an interloping third party, such that Google falls within the party exception under CIPA section 631.

It is difficult to square the Complaint's allegations with the notion that Google is an "eavesdropper" within the meaning of CIPA section 631, rather than simply the vendor of a tool that BlueChew used. Plaintiffs allege in a nutshell: "The Website [www.bluechew.com] utilizes Google's pixel and SDK. As a result, Google intercepted patients' interactions on the Website, including their PII and PHI." FAC ¶ 75. In other words, Google's alleged receipt of data flowed from BlueChew's decision to "utilize" Google Analytics—a contention consistent across Plaintiffs' Complaint. *See, e.g.*, FAC ¶ 14 (BlueChew "embed[ded] [Google's] tracking technology on the Website"); ¶ 67 (Google Analytics is a

"code" that "is incorporated into . . . the Website"); 71 ("Google Analytics enables the company or advertiser to customize the processing of the data, such as applying filters."). These allegations—particularly in light of the fact that Plaintiffs specifically consented to the use of Google Analytics by BlueChew—support the conclusion that Google fell within section 631's party exception. *See Lieberman*, 110 Cal.App.4th at 168 (explaining that someone "who listens with the speaker's knowledge and intent is . . . not an eavesdropper" but rather a "party" to the conversation); *Graham*, 533 F. Supp. 3d at 832–33 ("The plaintiffs do not plausibly plead that FullStory eavesdropped on their communications with Noom and instead plead only that FullStory is Noom's vendor for software services.").

None of the Complaint's language shows that Google acted as more than an extension of BlueChew. Plaintiffs point, for example, to their allegations that data collected by Google Analytics is used "to generate reports to help analyze the data from the webpages." Opp. 15 (quoting FAC ¶ 72). But this allegation is consistent with BlueChew's use of Google Analytics as a tool (not to mention BlueChew's Privacy Policy). There is no correlative allegation that such analysis is not performed, or that such reports are not generated, simply as part of the tool's functionality, for the benefit of BlueChew. Opp. 15 (quoting FAC ¶ 72). Similarly, Plaintiffs point to their allegation that Google uses data collected by Google Analytics "to improve its ad targeting capabilities and data points on users," but this allegation likewise appears to describe an aspect of the tool's functionality—nothing more. Opp. 15 (quoting ¶ 73). This allegation also is conclusory and lacks any specific factual basis.

While Plaintiffs argue that Google's status as a vendor is a "question of fact," none of their cited authorities suggest that the issue cannot be resolved where, as here, no *actually alleged* fact suggests Google is anything but a vendor. Rather, those authorities declined to resolve the issue at the pleadings stage based on the specific allegations presented, which are meaningfully different from those here. *See Kauffman v. Papa John's Int'l*, No. 22-CV-1492-L-MSB, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024) (denying on multiple grounds motion to dismiss claims *against user*, not "vendor," of "session replay technology"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (same); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942 (S.D. Cal. 2024) (denying on multiple grounds motion to dismiss claims *against user*, not vendor, of "malware tools"). To the extent Plaintiffs suggest that the vendor issue is inherently inappropriate for resolution at the pleadings stage, they are wrong. *See*

*Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *4 (N.D. Cal. Dec. 22, 2022) ("In sum, the facts as pled show that TrustedForm functioned as a recorder, and not as an eavesdropper."); *Graham*, 533 F. Supp. 3d at 832–33 (resolving vendor issue in favor of defendant on motion to dismiss).

### G.  Plaintiff M.D.'s constitutional claim fails because he lacked a reasonable expectation of privacy in the allegedly intercepted information.

Much of the Opposition's rebuttal on the issue of whether M.D. possessed a reasonable expectation of privacy is rhetorical and directed at straw-man arguments—for example, misconstruing Google's argument as being that M.D. lacked a reasonable expectation of privacy "in the seeking and purchase of erectile dysfunction medication." Opp. 17.  This is not Google's argument, nor does it need to be, because the Complaint does not plead facts showing that Google intercepted information that would have enabled it to infer that Plaintiff was purchasing or seeking to purchase erectile-dysfunction medication, much less that he experienced any medical condition warranting a prescription for such medication.

As Google has explained, the Complaint alleges that Google intercepted Plaintiffs' "first and last name, date of birth, and email address" *before* Plaintiffs completed the medical profile that would determine their eligibility for a prescription.  *See* Mot. 32–33.  The upshot is that, at the point when Plaintiffs allege this information was intercepted, it did not constitute PHI.  *See id.*  The Opposition does not address Google's authorities on this point, nor does it cite any countervailing authority.  The only information that Plaintiffs attempt to defend as supporting a reasonable expectation of privacy is the character string "sp1."  Opp. 17–18.  But again, while this alphanumeric string may have meant something to BlueChew, or even to Plaintiffs, the Complaint fails to allege that anyone else knew or had the ability to know its meaning, so it cannot have been the subject of any reasonable expectation of privacy.  *See* Mot. 32–33; *supra* at II.D.

### H.  Plaintiff M.D.'s constitutional claim fails because his allegations do not show that Google's conduct was highly offensive.

Plaintiffs argue that the Complaint shows the "highly offensive" element of the California Constitution invasion-of-privacy claim because it alleges that Google intercepts "the type of medication

being purchased by patients" in addition to "the quantity and dosage." Opp. 18.  But the Complaint does not actually allege this.  Instead, it alleges that "each of BlueChew's medications are provided their own unique product ID," and that "[t]hese unique IDs will indicate not only the type of medication being purchased by patients, but also the quantity and dosage." FAC ¶ 70.  The Complaint does not specify who assigns these IDs, but context indicates that it is BlueChew.  *See id.*  And there is no allegation, again, that these IDs are assigned by Google or known, or knowable to Google.

In their Opposition, Plaintiffs cite paragraph 69 of the Complaint, which states:  "As shown in Figure 9, Google is intercepting information *related to* patients' prescription medications." FAC ¶ 69 (emphasis added).  The term "related to" is broad, and it does a lot of semantic work here; plenty of information could be "related to" a person's prescription medications yet still be non-sensitive.  Figure 9, in turn, shows lines of text without any intrinsic or self-evident meaning, including the lines "_ee     1" and "epn.product_id     1." FAC 17.  Plaintiffs then allege in paragraph 70 of the Complaint—apparently in reference to Figure 9—that "[t]he product ID '1' indicates that a patient has selected a 6-pack of BlueChew's 30 mg Sildenafil prescription medication."  But nothing about Figure 9 supports Plaintiffs' allegation as to the meaning of "1."  Nor is the meaning that Plaintiffs attribute to "1" self-evident.  Plaintiffs also fail to state the basis of their allegation as to the meaning of "1" or to allege that Google knew or was capable of knowing the meaning of "1" that Plaintiffs attribute to it.  Their bare assertion as to the meaning of "1," without context that might render this assertion plausible, is not entitled to a presumption of truth under Rule 12.  *See Iqbal*, 556 U.S. at 680–81 ("bare assertions" "not entitled to be assumed true").  Accordingly, Plaintiffs' allegation that Google received the number "1" from BlueChew does not show, as the Opposition argues it does, that "Defendant intercepts . . . 'the type of medication being purchased by patients' in addition to 'the quantity and dosage.'" Opp. 18 (quoting FAC ¶¶ 69–70).

**III. CONCLUSION**

For the foregoing reasons, and those set forth in Google's Motion, Plaintiffs' Complaint should be dismissed with prejudice.

Dated: May 7, 2025

By:    */s/ Benedict Hur*
      **WILLKIE FARR & GALLAGHER LLP**
      Benedict Hur
      Simona Agnolucci
      Eduardo Santacana
      David Doak
      Isabella McKinley Corbo

      Attorneys for Defendant
      GOOGLE LLC