COOLEY LLP
BENEDICT Y. HUR (224018)
(bhur@cooley.com)
SIMONA A. AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO E. SANTACANA (281668)
(esantacana@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
ISABELLA MCKINLEY CORBO (346226)
(icorbo@cooley.com)
3 Embarcadero Center
20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| M.D., O.F., and J.P., individually and on behalf of all others similarly situated,,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC and META PLATFORMS,<br><br>Defendants. | Case No. 3:24-cv-06369-AMO<br><br>**DEFENDANT GOOGLE LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date: April 30, 2026<br>Time: 2:00 PM<br>Dept: 10, 19th Floor<br>Judge: Hon. Araceli Martínez-Olguín<br><br>Trial Date: Not Set<br>Date Action Filed: September 10, 2024 |

**NOTICE OF MOTION AND MOTION TO DISMISS
SECOND AMENDED CLASS ACTION COMPLAINT**

PLEASE TAKE NOTICE that the following Motion will be heard on April 30, 2026, at 2:00 p.m., in Courtroom 10, 19th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, with the Honorable Araceli Martinez-Olguin presiding. Defendant Google LLC ("Google" or "Defendant") will, and hereby does, move to dismiss with prejudice the putative Second Amended Class Action Complaint (Dkt. 58 ("SAC")) of Plaintiffs M.D. and O.F. (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated. This Motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, Google's concurrently filed Request for Judicial Notice in Support of the Motion (the "RJN") and exhibits attached thereto, the Declaration of Isabella McKinley Corbo in Support of the RJN, the proposed order submitted with the RJN, and all pleadings, arguments, and matters before the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Plaintiff's Second Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and whether such dismissal should be with prejudice because amendment would be futile.

Dated: December 8, 2025

COOLEY LLP

By: */s/ Benedict Y. Hur*
Benedict Y. Hur
Simona A. Agnolucci
Eduardo E. Santacana
Joshua Anderson
Isabella McKinley Corbo

Attorneys for Defendant
GOOGLE LLC

## TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 1
II. STATEMENT OF ISSUES ........ 2
III. BACKGROUND ........ 2
A. Plaintiff alleges that BlueChew used Google Analytics. ........ 2
B. Google lawfully provided BlueChew with analytics services. ........ 3
C. The contract between Google and BlueChew forbade BlueChew from sending Google PHI or PII. ........ 4
D. Procedural History ........ 5
IV. LEGAL STANDARD ........ 6
V. ARGUMENT ........ 7
A. Plaintiffs lack standing to assert their claims ........ 7
B. Plaintiffs' claims are untimely ........ 9
1. Plaintiffs have dropped their claims concerning use of the BlueChew website in 2024, but they still fail to demonstrate that the challenged practices were in place prior to 2024 ........ 9
2. Plaintiffs' claims are barred by the statutes of limitations ........ 10
C. Plaintiffs cannot state claims under CIPA or WESCA ........ 11
1. The earlier privacy policies furnished sufficient consent under CIPA and WESCA ........ 11
2. Plaintiffs fail to plausibly allege that Google intended to receive Plaintiffs' PII and PHI ........ 15
3. Plaintiffs' CIPA and WESCA claims fail because there is no allegation that the data transmitted to Google constitute the "content" of a communication that was read contemporaneously. ........ 16
4. Plaintiff M.D.'s CIPA Section 631 claim fails because there is no allegation that Google did anything but act as a mere vendor ........ 18
5. Plaintiffs' claims under CIPA section 632 and WESCA fail because none of the at-issue communications were confidential. ........ 20
D. Plaintiff M.D. fails to state a claim for invasion of privacy under the California Constitution. ........ 22
1. Plaintiff M.D. lacked a legally protected privacy interest ........ 22
2. There was no egregious breach of social norms ........ 23
VI. CONCLUSION ........ 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6, 7, 16, 18

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024), *on reconsideration*, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ........ 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 1, 18

*Borg-Warner Protective Servs. Corp. v. Superior Ct.*,
75 Cal. App. 4th 1203 (1999) ........ 19

*Bradshawv. Lowe's Companies, Inc.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ........ 8

*Carrico v. City & Cnty. of S.F.*,
656 F.3d 1002 (9th Cir. 2011) ........ 7

*In re Carrier IQ, Inc.*,
78 F.Supp.3d 1051 (N.D. Cal. 2015) ........ 18

*Cnty. of Los Angeles v. Superior Ct.*,
65 Cal. App. 5th 621 (2021) ........ 22

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ........ 12

*Com. v. Proetto*,
771 A.2d 823 (2001), *aff'd*, 575 Pa. 511, 837 A.2d 1163 (2003) ........ 18

*Delong v. PHE, Inc.*,
2025 WL 2447787 (E.D. Pa. Aug. 25, 2025) ........ 8

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 15, 16, 23

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 13, 18

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 19, 20, 23

*Donovan v. Idant Lab'ys*,
625 F. Supp. 2d 256 (E.D. Pa. 2009), *aff'd sub nom. D.D. v. Idant Lab'ys*, 374 F. App'x 319 (3d Cir. 2010) ........ 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 22

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ... 18

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
9 F.4th 1167 (9th Cir. 2021) ... 19

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (Cal. S. Ct. 2005) ... 10, 11

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ... 6

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018), *on reconsideration*, 2018 WL 3068248 (N.D. Cal. June 21, 2018) ... 17

*Gonzalez v. Planned Parenthood of L.A.*,
759 F.3d 1112 (9th Cir. 2014) ... 7

*Graham v. Noom, Inc.*,
533 F. Supp. 3d at 832–33 ... 18, 20

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ... 7, 23

*India Price v. Carnival Corp.*,
712 F. Supp. 3d 1347 (S.D. Cal. 2024) ... 12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ... 23

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ... 14

*Jones v. Bloomingdales.com, LLC*,
124 F.4th 535 (8th Cir. 2024) ... 9, 18

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ... 17

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) ... 16

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) ... 10

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) ... 18

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ... 14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ... 6

*McCulligan v. Pennsylvania State Police*,
123 A.3d 1136 (Pa. Commw. Ct. 2015), *aff'd*, 635 Pa. 266, 135 A.3d 580 (2016) ... 10

*Miller v. Rykoff-Sexton, Inc.*,
845 F.2d 209 (9th Cir. 1988) ... 7

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) ... 8

*Muha v. Experian Info. Sols., Inc.*,
106 Cal. App. 5th 199 (2024) ... 8

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ... 7, 8

*Perez v. Romantix Online Inc*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) ... 14

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ... 18

*Rodriguez v. Culligan Int'l Co.*,
2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ... 8

*See Axiall Corp. v. descote S.A.S.*,
2018 WL 621287 (W.D. Pa. Jan. 30, 2018) ... 19

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ... 14

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) ... 17

*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.*,
4 Cal. 5th 1082 (2018) ... 13

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ... 16

*United States v. Thompson/Ctr. Arms Co.*,
504 U.S. 505 (1992) ... 16

*Vonbergen v. Liberty Mut. Ins. Co.*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) ... 14

*Williams v. DDR Media, LLC*,
757 F. Supp. 3d 989 (N.D. Cal. 2024) ... 17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 18, 20

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 17

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 17

**Statutes**

18 Pa. Cons. Stat. § 5701 ........ *passim*

Cal. Civ. Code § 1798 ........ 13, 19, 20

Cal. Civ. Code § 2304 ........ 19

Cal. Civ. Code § 2305 ........ 19

Cal. Penal Code § 631 ........ *passim*

Cal. Penal Code § 632 ........ *passim*

Md. Code Ann., Cts. & Jud. Proc. § 10-401 ........ 6

**Other Authorities**

Cal. Const. Art. I § 1 ........ 1, 5, 7, 22

Fed. R. Civ. P. 8 ........ 16

Fed. R. Civ. P 9(b) ........ 16

Fed. R. Civ. P. 12(b)(6) ........ 2, 5, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Google Analytics is a free and lawfully available tool that websites and software-application developers can use to gain insight into how users interact with their platforms. Courts in this District have repeatedly recognized that websites have the right to employ tools like Google Analytics that enable them, whether they are a sophisticated corporation or the mom-and-pop shop down the street or a major retailer, to understand and improve their users' experiences.

Plaintiffs' claims are predicated on the alleged collection and transmission of data created during their interactions with BlueChew.com ("BlueChew" or the "Website"), a telehealth purveyor of erectile-dysfunction medication. Plaintiffs claim that sensitive information was intentionally "intercepted" by Google Analytics without their consent. Plaintiff M.D., on behalf of a putative California class, claims that this interception violated his privacy rights under the California Penal Code ("CIPA"), sections 631 and 632, and under the California Constitution. Plaintiff O.F. asserts similar claims on behalf of a putative Pennsylvania class under the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"). But Plaintiffs do not plausibly allege any violation of law. Their claims fail for at least four reasons.

***First***, Plaintiffs lack standing to pursue their claims under recent Ninth Circuit authority, which holds that alleged statutory violations untethered to downstream consequences cannot support standing.

***Second*,** Plaintiffs have failed to fix the fatal flaw the Court identified when granting Google's first motion to dismiss: They have not adequately alleged that the challenged practices were actually occurring prior to August 2024 as would be necessary to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). And even if they had, they do not adequately invoke the discovery rule to save their otherwise time-barred claims.

***Third,*** the Google Analytics Terms of Service require websites that use Google Analytics to disclose and obtain user consent for its use. BlueChew complied with this requirement. At every relevant point, Plaintiffs were informed and required to agree that using the Website would entail

the collection and processing of data by Google Analytics, they consented to that use, and they proceeded to use the Website. Such disclosures were sufficient for purposes of Plaintiffs' statutory claims. Further, given the paucity of allegations supporting intent, the Google Analytics Terms of Service undermines the notion that Google intended to violate Plaintiffs' privacy.

***Fourth***, Plaintiffs' statutory claims fail for a number of other reasons: (1) Plaintiffs do not adequately allege that Google contemporaneously read the contents of their communications while they were in transit; (2) Google is alleged to have acted as an alleged service provider to BlueChew and was therefore not a third-party eavesdropper; and (3) Plaintiffs' communications were not "confidential" within the meaning of the statutes.

***Finally***, Plaintiffs fall far short of alleging that Google collected deeply personal information in a way that constituted an egregious breach of social norms.

Plaintiffs' allegations relating to Google boil down to nothing more than that BlueChew used a lawfully available analytics service, that Plaintiffs interacted with BlueChew, and that they object to certain customizations they speculate BlueChew made to the tool. For these reasons, and on the basis of the arguments set forth herein, this Court should dismiss Plaintiffs' Second Amended Complaint. Whatever complaints they may have, they should not be with Google.

## II. STATEMENT OF ISSUES

Whether Plaintiff's Second Amended Class Action Complaint ("SAC") should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and whether such dismissal should be with prejudice because amendment would be futile.

## III. BACKGROUND

### A. Plaintiff alleges that BlueChew used Google Analytics.

Plaintiffs M.D. and O.F., residents of California and Pennsylvania, respectively, brought this lawsuit relating to their interactions with BlueChew.com (the "Website"). SAC ¶¶ 7–12.[1] Plaintiffs allege that they used BlueChew.com, and that BlueChew used Google Analytics to

[1] Plaintiffs also named Meta Platforms, Inc. ("Meta") as a defendant, based on their alleged interaction with Meta's analytics technology, which is separate and distinct from Google's. SAC ¶ 14.

analyze their data without their consent. *Id*. ¶¶ 6, 12, 58, 76–77, 98, 101-102, 114, 130. Plaintiffs concede that Google Analytics must be "incorporated" onto a website in order to perform any functions on data that users input into that website. *Id*. 13, 67. They further concede that websites that run Google Analytics control how the technology is implemented, and can customize what data are collected, how the data are processed, as well as what those data are used for. *Id*. at ¶¶ 66–67, 71. They allege that the data transferred by BlueChew to Google consisted of their name, birthday, email address, and a pseudonymous identifier created and assigned to them by BlueChew itself. *Id*. ¶¶ 43, 68–69. Plaintiffs do not allege that Google instructed BlueChew to transmit this or any other type of data or information to Google, or that Google had any way of knowing the meaning of any "unique" pseudonymous identifier used by BlueChew. *Id*. ¶¶ 43, 70.

Plaintiffs make a number of general allegations about the functioning of Google Analytics, including that "Google Analytics [links] with Google Ads, allowing the data intercepted by Google Analytics to be utilized for targeted advertising purposes," but stop short of alleging that Google is the entity actually performing this utilization with respect to data collected from BlueChew.com. *Id*. ¶ 74. Plaintiffs make no allegations that any data points from BlueChew.com were ever used inconsistently with the Google Terms of Service or with BlueChew's Privacy Policy.

**B. Google lawfully provided BlueChew with analytics services.**

Google Analytics is one of many available analytics tools that websites and applications may use to gain insight into how users interact with their platforms. SAC ¶¶ 30–31, 63, 66–67, 71–73. Websites like BlueChew that use Google Analytics choose which data are collected and how those data are used. *See id*. ¶¶ 66–67 (websites incorporate Google Analytics "by adding a small piece of JavaScript measurement code to each page on the site," and can then "utilize it" to gain various types of information about their users); *see also* Request for Judicial Notice ("RJN") Ex. 1 ("Organizations use Google Analytics because they choose to do so. They, not Google, control what data is collected and how it is used.").

Websites that run Google Analytics "retain ownership of the data they collect using Google Analytics, and Google only stores and processes this data per their instructions—for example, to provide them with reports about how visitors use their sites and apps." RJN Ex. 1. Additionally,

websites determine what data will be shared with Google—including whether *any* data will be shared at all—subject to contractual limitations prohibiting websites from sharing certain types of data, including personally identifiable information. *See* RJN Exs. 1[2]; 2-A, 2-B.

### C. The contract between Google and BlueChew forbade BlueChew from sending Google PHI or PII.

Plaintiffs allege that Google's relationship with BlueChew allowed certain user data, including PHI and PII, to be shared with Google. They further assert that "Google knew that the incorporation of its software onto [BlueChew.com] would result in the interception" of certain sensitive data. SAC ¶ 13. This claim was conclusory in the original complaint and is conclusory here; Plaintiffs plead zero facts to support it. Nor do Plaintiffs plead any facts to support their conclusory assertion that Google "encourage[d] companies, like Blue Chew, to embed" Google Analytics, and that Google "intends to intercept" PHI and PII. *Id*.

However, Plaintiffs ignore two critical points that, even putting aside the conclusory nature of the SAC's allegations on the issue of intent, render the allegations facially implausible. ***First,*** Plaintiffs ignore the contracts between Google and the websites, including BlueChew.com, that use Google Analytics. These contracts explicitly prohibit BlueChew.com—and any website that installs Google's code—from transmitting PII to Google. Plaintiffs ignore these judicially noticeable facts despite their counsel's actual knowledge of them when the SAC was filed. ***And second,*** Plaintiffs disregard BlueChew's privacy policy, which informs all users at the time of account creation about these contractual obligations regarding data sharing, and to which all BlueChew users—including Plaintiffs—must consent when creating an account to use BlueChew.

Websites that use Google Analytics must consent to and abide by the Google Analytics Terms of Service. The Terms of Service clearly state that any websites using Google Analytics "will not … pass information [] to Google that Google could use or recognize as [PII]." RJN Exs. 2-A, 2-B. Further, "HIPAA-regulated entities using Google Analytics must refrain from exposing to Google any data that may be considered Protected Health Information (PHI), even if not

---

[2] *See* RJN Ex. 1 ("We never allow sensitive information to be used for personalized advertising. It's simply off limits.").

expressly described as PII in Google's contracts and policies." RJN Ex. 3. Google also provides various "best practices" for websites to "avoid sending [] PII," including, among other things, "remov[ing] PII from user-entered information before it is sent to Analytics." RJN Ex. 4. In order to comply with Google's Terms of Service, websites that use Analytics "must disclose" the technology's use, as well as how that particular website "collects and processes data." RJN Exs. 2-A, 2-B.

As required, BlueChew explicitly discloses its use of Google Analytics, and has done so at all times relevant to this litigation. The Website's Privacy Policy in effect when Plaintiffs M.D. and O.F. allegedly accessed the Website—which users must accept before creating an account—informs users that BlueChew may use Google Analytics and other analytics tools to "evaluate usage of our Websites and Services and to help us personalize content on our Websites and Services," and "to help us improve our Services, performance and user experiences." RJN Exs. 5-A–5-E; SAC ¶¶ 7, 9. Those Privacy Policies further state that such analytics tools "may use cookies and other tracking technologies," and that BlueChew "do[es] not share [users'] personal information" with the third-party vendors of these tools. *Id.* Again, at all times relevant to this litigation, users of the Website have been required to agree to the BlueChew Privacy Policy, which discloses BlueChew's use of Google Analytics, in order to create an account. *See* RJN Exs. 5A-5E, 6-A–6-C, 7-A–7-D.

**D. Procedural History**

Plaintiff M.D. filed his original Class Action Complaint ("CAC") on September 10, 2024. *See generally* ECF No. 1 ("Compl."). The CAC asserted the following claims against Google: (1) violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code section 631 (Claim I); (2) violation of CIPA, California Penal Code section 632 (Claim II); and (3) invasion of privacy under the California Constitution (Claim III). On December 16, 2024, Google moved to dismiss the CAC under Federal Rule of Civil Procedure 12(b)(6). Dkt. 26. That same day, Google also filed a related Request for Judicial Notice concerning a number of documents cited in Dkt. 26. *See* Dkt. 27.

On January 6, 2025, Plaintiffs filed the FAC. Dkt. 34. The FAC added two new claims: (1) Plaintiff O.F.'s claim for a violation of the Pennsylvania Wiretapping Act, 18 Pa. Cons. Stat. §

5701, et seq., on behalf of a putative Pennsylvania class (FAC ¶¶ 120–128); and (2) Plaintiff J.P.'s claim for a violation of the Maryland Wiretapping and Electronic Surveillance Act ("MWESA"), Md. Cts. & Jud. Proc. Code Sec. 10-401 et seq. on behalf of a putative Maryland class (FAC ¶¶ 129–140). Additionally, the FAC added a putative California class, on whose behalf Plaintiff M.D.'s claims were pleaded. *Id.* ¶ 78. On February 20, 2025, Google moved to dismiss the FAC under FRCP 12(b)(6). Dkt. 40. That same day, Defendant Meta Platforms ("Meta") also moved to dismiss the FAC under FRCP 12(b)(6). Dkt. 37. On July 10, 2025 the Court heard argument on Google and Meta's Motions to Dismiss the FAC. Dkt. 51. On September 23, 2025, the Court granted Google and Meta's Motions to Dismiss the FAC. Dkt. 57. In that Order, the Court noted that "Plaintiffs' claims [] may only survive for the period prior to the adoption of the August 2024 [BlueChew] Privacy Policy," and that "Plaintiffs claims fail because they have not averred that the challenged data sharing practices were in place before" August 2024. *Id.* at 9. Plaintiffs were granted leave to amend. *Id.* at 10.

On October 24, 2025, Plaintiffs filed the SAC. Dkt. 58.[3] The SAC dropped Plaintiff J.P.'s claims, and with him the putative Maryland class and MWESA claim. *Id.* All other named Plaintiffs, classes, and causes of action remain the same as in the FAC. *Id.*

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a cause of action that fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a plaintiff must plead factual allegations that "plausibly (not merely conceivably) entitle plaintiff to relief." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067–68 (9th Cir. 2011). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring more than a "sheer possibility," "naked assertion," or "formulaic recitation" of the elements of a cause of action).

A court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055

[3] Hereafter, Dkt. 58 will be referred to simply as "SAC."

(9th Cir. 2008) (citation omitted); *see also Iqbal*, 556 U.S. at 678–79 (pleadings that are "no more than conclusions, are not entitled to the assumption of truth"). Nor must a court "'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.'" *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citations omitted). Dismissal without leave to amend is appropriate if "amendment would be futile." *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011). Amendment would be futile when "no set of facts can be proved . . . that would constitute a valid and sufficient claim." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## V. ARGUMENT

Each of Plaintiffs' claims against Google should be dismissed without leave to amend. ***First,*** Plaintiffs lack Article III standing to assert their claims. ***Second,*** Plaintiffs claims under CIPA and WESCA should be dismissed because (1) they are untimely and lack proper factual support, (2) BlueChew and/or Plaintiff consented to BlueChew's use of Google Analytics, (3) Plaintiffs fail to assert that the data transmitted constituted the "contents" of a communication that was read contemporaneously with transmission, (4) Plaintiffs fail to allege that Google had the requisite knowledge or intent, and (5) for the additional, independent reasons explained below. ***Third,*** Plaintiff M.D.'s claim for invasion of privacy under the California Constitution fails because he cannot plausibly allege the existence of a reasonable expectation of privacy or that any intrusion was "an egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009) (citation omitted).

### A. Plaintiffs lack standing to assert their claims

Plaintiffs do not have Article III standing to bring this case because they have not alleged a concrete injury that "actually exist[s]," that is "real, and not abstract." *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025) (*quoting Spokeo v. Robins*, 578 U.S. 330, 340 (2016)). This is especially clear in light of the Ninth Circuit's recent decision in *Popa*, which clarified the scope of standing in privacy cases. *See id* at 791.

A concrete injury is one that "has traditionally been actionable in our nation's legal system." *Id. Popa* is instructive here. In that case, the Ninth Circuit found that the tracking of the plaintiff's

web activity did not give rise to a concrete injury because she did not show "any kind of harm that is remotely similar to the "highly offensive" interferences or disclosures that were actionable at common law." *Id.* (finding no standing because online monitoring is more analogous to "a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales").

Since the Ninth Circuit decided *Popa*, California courts have consistently found that injuries such as those alleged here—*i.e.*, those without actual harm—are not enough to confer Article III standing. *See, e.g.*, *Bradshaw v. Lowe's Companies, Inc.*, 2025 WL 3171740, at *5–6 (S.D. Cal. Nov. 12, 2025) (finding lack of standing regarding claim that defendants collected plaintiffs' PII through web trackers); *Rodriguez v. Culligan Int'l Co.*, 2025 WL 3064113, at *3–5 (S.D. Cal. Nov. 3, 2025) (finding lack of standing when the collected data included*, inter alia*, plaintiff's IP address, geolocation data, and email address). Similarly, Pennsylvania courts have dismissed WESCA claims on the grounds that the collection of web-browsing activity is not a concrete injury. *See, e.g.*, *Delong v. PHE, Inc.*, 2025 WL 2447787, at *3–*6 (E.D. Pa. Aug. 25, 2025) (finding that Google Analytics's collection of browsing data on a sex toy website was not an injury-in-fact). This deficiency would not be remedied even if Plaintiffs filed suit in state court, as state courts have similarly held that a lack of actual harm is not enough to confer standing. *See, e.g.*, *Muha v. Experian Info. Sols., Inc.*, 106 Cal. App. 5th 199, 207–10 (2024) (rejecting argument that entitlement to a statutory remedy, untethered to actual harm, is adequate to support standing); *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538–39 (2022).

Plaintiffs fail to allege a concrete injury. Their bare allegations include only that Google collected their PII and information about what they purchased on the Google website. *See* SAC ¶¶ 68–70, 83. Under *Popa*, it is unequivocal that the collection of this type of information is not enough to be an injury-in-fact. Moreover, the mere fact that the Plaintiffs' BlueChew purchases were personal in nature and might have been embarrassing is not enough to make the disclosure of those purchases a concrete harm. *Cf. Delong*, 2025 WL 2447787, at *6–7 ("Without more, preference for certain products, including those sexual in nature, is not private information. . . . Product preferences are implicitly disclosed through commonplace shopping activity. And while a customer

might not like to have his online shopping activity tracked . . . as other courts have recognized, there is no meaningful privacy distinction between shopping online and shopping in retail stores.); *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 539 (8th Cir. 2024) (using a similar comparison to in-person shopping to hold that plaintiff did not allege a cognizable privacy violation). There is nothing in the SAC that demonstrates any injury beyond the collection of routine web-browsing information. Thus, Plaintiffs have not alleged a sufficiently concrete injury to confer Article III standing.

### B. Plaintiffs' claims are untimely

#### 1. Plaintiffs have dropped their claims concerning use of the BlueChew website in 2024, but they still fail to demonstrate that the challenged practices were in place prior to 2024

Because Plaintiffs have not remedied the defects that the Court found in their FAC, their claims should be dismissed with prejudice.

In granting Google's Motion to Dismiss the FAC, the Court found that "Plaintiffs' claims [] may only survive for the period prior to the adoption of the August 2024 Privacy Policy," and that the rest of "Plaintiffs[‘] claims fail because they have not averred that the challenged data sharing practices were in place before [Google] obtained Plaintiffs' consent to employ them." Dkt. 57 at 9-10 ("Plaintiffs ‘have not nudged their claims across the line from conceivable to plausible,' and their claims, which all rely on the absence of consent, all must face dismissal." (citing *Twombly*, 550 U.S. at 570)). By granting Plaintiffs leave to amend their complaint, the Court offered them a chance to "proffer factual allegations that support their claims" as to the period prior to August 2024. *Id*. at 10.

Plaintiffs have failed to do so. The SAC pleads only the single conclusory assertion that "on [BlueChew], including during the time of Plaintiffs' purchases, Google Analytics was linked with Google Ads," SAC ¶ 74, and that these practices "were in place on [BlueChew] before and during when Plaintiffs made their purchases," *id*. ¶ 77, but offers nothing further. Nothing in the SAC indicates that the data practices in place at the time of the August 2024 privacy policy were in place at any prior time, including when either Plaintiff used BlueChew in January 2022 nor on December 6, 2022, nor on January 4, 2023. SAC ¶¶ 7, 9. While Plaintiffs assert that their data was unlawfully

collected by Google Analytics and utilized for targeted advertising purposes, they also disclaim knowledge and even the ability to discover that this was occurring before contacting counsel. *Id.* ¶¶ 7-10. Plaintiffs cannot have it both ways. They cannot plead ignorance of this data collection in 2022 and 2023 while offering unsupported and conclusory allegations that their data was collected during this time.

Despite being given a *third* bite at the apple, Plaintiffs' SAC includes no new facts supporting the theory that the data practices in question were occurring before they were explicitly disclosed in the August 2024 BlueChew Privacy Policy. This is the textbook definition of conclusory, and warrants dismissal.

**2. Plaintiffs' claims are barred by the statutes of limitations**

Plaintiff M.D.'s and Plaintiff O.F.'s claims are untimely and barred by their respective statutes of limitations. This pleading defect is particularly stark given Plaintiffs' burden to offer non-conclusory allegations as to why they could not have discovered the challenged practices within the limitations period with reasonable diligence. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (Cal. S. Ct. 2005) ("In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.'" (quoting *McKelvey v. Boeing North American, Inc.*, 74 Cal. App. 4th 151, 160 (Cal. S. Ct. 1999)) Because Plaintiffs cannot meet this standard for any claim, the SAC must be dismissed.

CIPA and WESCA have one- and two-year limitations periods, respectively. *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1078 (C.D. Cal. 2023); *McCulligan v. Pennsylvania State Police*, 123 A.3d 1136, 1138 (Pa. Commw. Ct. 2015), *aff'd*, 635 Pa. 266, 135 A.3d 580 (2016). Plaintiff M.D., on behalf of the California class, alleges that he used BlueChew on December 6, 2022, and January 4, 2023, to purchase medication, making his claims untimely after either December 2023 or January 2024. SAC ¶ 7. On behalf of the Pennsylvania class, Plaintiff O.F. alleges that he used BlueChew in January 2022 to purchase medication, meaning that the latest date to bring suit for any of their claims would have also been in January 2024. SAC ¶ 9. Yet M.D. did

not file his original complaint until September 2024, and O.F. did not file suit until January 2025. Dkt. 1 (filed Sept. 10, 2024); Dkt. 34 (filed Jan. 6, 2025).

Plaintiffs fail to invoke the discovery rule to salvage timeliness. Under the discovery rule, plaintiffs whose claims are untimely on their face must plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery. *Fox*, 35 Cal. 4th at 808; *Donovan v. Idant Lab'ys*, 625 F. Supp. 2d 256, 266 (E.D. Pa. 2009), *aff'd sub nom. D.D. v. Idant Lab'ys*, 374 F. App'x 319 (3d Cir. 2010) Neither plaintiff makes this showing. To invoke the discovery rule, both Plaintiffs state that they did not realize their information had been collected until they contacted counsel in September 2024. SAC ¶¶ 7, 9. Yet they plead no facts to support his inability to have made a discovery sooner, which is their burden to bear. *See Fox*, 35 Cal. 4th at 808. This failure is particularly stark since, to make out a claim that Google conduct was "an egregious breach of social norms," they plead that Google used data about their erectile dysfunction medication from BlueChew to serve them targeted ads. SAC ¶¶ 5, 10, 103, 115. Those targeted ads—presumably for erectile dysfunction medication—would have given them reason to discover that third parties were aware of their activities on the BlueChew website. Absent non-conclusory facts to support their assertions that they could not have learned Google received information until they called counsel, Plaintiffs fail to discharge their burdens to invoke the discovery rule and toll the applicable statutes of limitations.

### C. Plaintiffs cannot state claims under CIPA or WESCA

#### 1. The earlier privacy policies furnished sufficient consent under CIPA and WESCA

In its prior ruling, the Court held that BlueChew's earlier privacy policies do not establish consent because they did not "explicitly notify" users of the "conduct at issue." Dkt. 57 at 8. For example, they did not include notice that user data could be used for advertising. *Id.* While Google does not challenge the Court's ruling as it relates to most of Plaintiffs' claims, Google respectfully submits that requisite consent under CIPA is distinct, and that the privacy policies did in fact disclose the "conduct at issue" for purposes of CIPA.

As relevant here, CIPA forbids just four things: (1) making an unauthorized connection to a telephone or telegraph wire system; (2) attempting to read the content of communications while they are in transit; (3) using ill-gotten information; and (4) making a record of a confidential communication.[4] *See* Cal. Penal Code §§ 631-632. To the extent the Plaintiff alleged such conduct took place, each version of BlueChew's privacy policy established adequate consent.

***First*****,** setting aside that clause 1 of section 631(a) is not applicable to the internet,[5] the BlueChew privacy policies foreclose Plaintiffs' claim that Google "made unauthorized connections with the lines of internet communications." *See* SAC ¶ 101. Even before August 2024, each privacy policy disclosed that others would be making connections, so to speak, with the means of communication between users and BlueChew. RJN Exs. 5-A–5-E.

***Second*****,** while the privacy policy does not explicitly state that third parties would "read" the "contents" of Plaintiffs' communications while they were in transit to BlueChew, that neither occurred, nor does Plaintiff allege it occurred. *See infra* Section V.B.5.

***Third*****,** while Plaintiffs claim that "Defendants used or attempted to use the communications and information they received through their tracking technology, including to supply advertising," this is precisely what the privacy policies said would occur. RJN Exs. 5-A–5-E ("As you browse our Websites, advertising cookies may be placed on your computer so that we can understand what you are interested in. We may work with display advertising partners . . . that enable us to present you with retargeted advertising on other sites based on your previous interaction with BLUECHEW."). And in any event, what must be "used" under CIPA is data acquired by violations of the first two clauses of section 631. Such violations are absent here, rendering consent irrelevant for purposes of clause 3.

---

[4] At the hearing on Google's Motion to Dismiss the FAC, Plaintiffs agreed that CIPA and WESCA are "largely the same" and should therefore be analyzed together. *See* Declaration of Isabella McKinley Corbo ("McKinley Corbo Decl.") Ex. 9 (MTD Hearing Transcript) at 4:22-24; *see also India Price v. Carnival Corp.*, 712 F. Supp. 3d 1347, 1354 n.4 (S.D. Cal. 2024) (stating that "federal and state wiretap laws," specifically including CIPA and WESCA, "are treated as largely analogous"). The two statutes are therefore analyzed together herein.

[5] This Court has held that "[c]lause one of Section 631(a) prohibits telephonic wiretapping, which does not apply to the internet." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) (and citing cases).

***Finally,*** the data uses disclosed in the privacy policy could not have been accomplished without creating a record of the communications. *See* Cal. Penal Code § 632. For example, BlueChew's privacy policies prior to 2024 disclosed the sharing of information with third parties, which necessarily implicates a record of communications. *See* RJN Exs. 5-A–5-E. As to Google in particular, the privacy policies made reference to "collect[ing]" data and subsequently "us[ing]" it and "combin[ing]" it, which likewise involves recording communications. It was apparent that BlueChew and others would record Plaintiffs' conversations and a person who is known to overhear a conversation is not liable under the statute, whether or not that person obtained affirmative consent. *See* Cal. Penal Code § 632(b). Here, BlueChew's practice of recording Plaintiffs' data was plainly disclosed, and Google in particular was a disclosed party. Plaintiffs were thus well apprised, at a minimum, that (1) third parties like Google would make "connections" to the means of communication; (2) that collected data would be subsequently used; and (3) that a record would be made of their communications.

Notably, while Plaintiffs may have desired a more fulsome disclosures about the extent of data collection or use, or the specific third parties involved, the California Consumer Privacy Act imposes no such obligation. This legislation—which unlike CIPA was specifically enacted to govern online privacy—allows websites like BlueChew to make categorical disclosure of the *types* of data to be collected and the *types* of third parties with whom data may be shared. *See* Cal. Civ. Code § 1798.100. These privacy policies were compliant with the CCPA, and CIPA should not be read to impose any greater obligations for two reasons. ***To start,*** to the extent CIPA is construed to govern online data privacy, it must be construed in harmony with the CCPA. *See United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.,* 4 Cal. 5th 1082, 1090 (2018) ("To the extent possible, statutes relating to the same class of things, and sharing the same purpose or object, should be harmonized and construed similarly."). ***Second,*** as a criminal statute, the rule of lenity applies and compels a strict construction. *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025). CIPA should not be read to criminalize the categorical disclosures the CCPA permits.

Plaintiffs unequivocally consented to these earlier privacy policies, since such consent is a gating requirement to account creation. In the Ninth Circuit, "[a] binding contract is created if a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink," and it is "sufficient to require a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button as long as the user has access to the terms of service." *Silver v. Stripe Inc.,* 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021) (citation omitted) (finding that plaintiffs consented to website's privacy policy presented in a similar manner). These features of a mechanism "sufficient" to "create[]" a "binding contract" are present here. *See id.* A link to BlueChew's privacy policy is conspicuously presented as a blue hyperlink at account creation, and new users must check a box to proceed with sign-up. *Id.* at *4 (plaintiffs consented to hyperlinked privacy policy when, like here, "[t]hey were required to take an affirmative step . . . to acknowledge that they were agreeing to the terms").

Plaintiffs' consent to BlueChew's conspicuously disclosed use of Google Analytics dooms their CIPA and WESCA claims. SAC ¶¶ 6, 12, 58, 76–77, 98, 101-102, 114, 130; *Matera v. Google Inc.*, 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016) ("Under CIPA, a consent defense is established when both parties—the sender and the recipient of the communication—consent to the alleged interception."); Cal. Penal Code § 631(a) (requiring lack of consent); Cal. Penal Code § 632(a) (same); *see also Vonbergen v. Liberty Mut. Ins. Co.,* 705 F. Supp. 3d 440, 458 (E.D. Pa. 2023). "Consent generally defeats privacy claims," as it does Plaintiffs' here. *See Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021). *Perez v. Romantix Online Inc.* is instructive. In that case, the court found that users' awareness of and assent to a website's Privacy Policy can establish consent as a matter of law, and dismissed the complaint. 2025 WL 3085786, at *3 (N.D. Cal. Oct. 27, 2025). The court made clear that "Plaintiffs must do more than merely assert that they did not consent," but must instead "provide additional information about what they knew of the policy, when they knew it, and whether that information had any effect on their decisions related to the site." *Id.* at 2-3. Plaintiffs M.D. and O.F. offer only the type of conclusory allegations regarding consent that were rejected in *Perez*, and their complaint should be dismissed. *See, e.g.*, SAC ¶¶ 6, 12, 76, 98, 102, 114, 119, 130.

### 2. Plaintiffs fail to plausibly allege that Google intended to receive Plaintiffs' PII and PHI

Plaintiffs allege that Google received personal health information and personally identifiable information. But they cannot plausibly allege that Google *intended* to receive PII or PHI, a required element of the CIPA and WESCA claims. *See* Cal. Penal Code § 631(a) (prohibiting "intentional[] tap[ping]"); Cal. Penal Code § 632(a) (prohibiting "intentional[] . . . recording . . . [of a] confidential communication"); 18 Pa. Stat. and Cons. Stat. § 5703(1) (prohibiting the "intentional[] intercept[ion of] ... any wire, electronic or oral communication). This is because Google explicitly prohibits websites, including BlueChew, from sending that type of information.

Here are the well-pleaded facts: Google offers an analytics tool that enables businesses to better understand their clientele and to leverage their knowledge for marketing. SAC ¶¶ 66–67. Websites can add GA functionality to their website by adding a "small piece of JavaScript" on their websites. *Id.* ¶ 67; *see also* RJN Ex. 1 (websites running GA, "not Google, control what data is collected and how it is used."). What's clear from these allegations is that it is the website operator, not Google, who must incorporate the code and configure GA to collect the data the website operator wants. While this says nothing of *Google's* intent, Plaintiffs vaguely assert that "Google knew that the incorporation of its software onto [BlueChew.com] would result in its interception" of sensitive data, and that "Google intends to intercept this protected and sensitive health data due to the value it holds for targeted advertising." SAC ¶ 13. Allegations of mere knowledge are insufficient to establish intent. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) (holding that mere awareness "set[s] the legal bar too low"). And, notably, nowhere do Plaintiffs allege that *Google* added that JavaScript to BlueChew's website, that Google instructed BlueChew to do so, or even that Google was aware that BlueChew had added its freely available tool into the website.

Moreover, the judicially noticeable materials show that such allegations of intent could not be plausibly made, even in a *third* amended pleading: Google's Terms of Service require that any website running Google Analytics not transmit any data "that Google could use or recognize as

personally identifiable information." RJN Exs. 2-A, 2-B.[6] Recognizing this in dismissing claims brought against Google under sections 631 and 632 in *Doe I v. Google LLC*, the court there reasoned that the fact "that Google repeatedly told developers not to send personally identifiable information through use of its [Google Analytics] source code" negated the element of intent. 741 F. Supp. 3d at 840–42. The court further observed that Google's admonitions against providing it with sensitive information via Google Analytics showed that "Google purposefully acted so as not to receive any personal health information." *Id*. at 840 (emphasis in original).

While intent may be alleged generally, "generally" does not "equate[] with a conclusory allegation." *Iqbal*, 556 U.S. 662 at 686 (Rule 8 does not permit a plaintiff "to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss."). Plaintiffs' vague assertions are not enough. At most, they establish that Google offers a freely available tool, which some websites may misconfigure in violation of Google's policies. But because liability "only extends to willful or intentional conduct, so even if some [sensitive] information is inadvertently sent to Google—and subsequently gets [analyzed by Google]—the plaintiff[] fail[s] to plausibly allege Google is intentionally" invading Plaintiffs' privacy. *Doe I*, 741 F. Supp. 3d at 844; *accord United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015) (explaining that the word "intentionally," as used in federal wiretapping statute, means "purposefully and deliberately and not as a result of accident or mistake").

#### 3. Plaintiffs' CIPA and WESCA claims fail because there is no allegation that the data transmitted to Google constitute the "content" of a communication that was read contemporaneously.

Plaintiff M.D. alleges that Google violated CIPA because it "read or attempted to read[] or learn the contents" of Plaintiff's communications while "the communications [were] in transit." SAC ¶ 102; *see* Cal. Penal Code § 631(a). Similarly, Plaintiff O.F. alleges that Google violated WESCA by collecting the content of his communications with BlueChew. SAC ¶ 130. But because

[6] Plaintiffs' allegation that Google intended BlueChew's use of Google Analytics to disclose sensitive data amounts to constructive fraud and must meet Rule 9(b)'s heightened standard. *Doe I*, 741 F. Supp. 3d 828 at 841–42. Yet these allegations do not even satisfy Rule 8. And because the state wiretapping statutes carry criminal penalties, the mens rea requirement must be strictly applied. *See Leocal v. Ashcroft*, 543 U.S. 1, 11-12 n.8 (2004); *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517–18 (1992) (plurality opinion).

neither Plaintiff actually alleges that Google attempted to "read" the "contents" of their communications while they were in transit, their claims should be dismissed.

***First***, the SAC does not allege that Google read the "contents" of Plaintiffs' communications; thus, Plaintiffs do not state a claim under CIPA or WESCA. To be considered part of the "contents" of a communication, the information in question must include "the intended message conveyed by the communication," as opposed to "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). In this district, "routine identifiers" such as a person's name, email address, and physical address—especially when collected in the manner at issue here—have been regularly deemed mere record information that is not considered to be the "contents" of a communication. *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021); s*ee, e.g.*, *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1037–38 (S.D. Cal. 2024); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1084–85 (N.D. Cal. 2018), *on reconsideration*, 2018 WL 3068248 (N.D. Cal. June 21, 2018); *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 728–29 (N.D. Cal. 2014). Importantly, merely entering information into a website does not alone implicate a cognizable privacy interest. *See id.* at 729 (finding that information entered into a form was still record information); *Jones*, 751 F. Supp. 3d at 1038 (finding entire chat transcript record information). Thus, Plaintiffs' allegations that Google received his contact and purchase information amount to no more than allegations that Google received record information—rather than the contents of any communication—from his time on the BlueChew website.

***Second***, the SAC does not allege that Google "read" Plaintiff M.D.'s communications *while they were in transit*, which dooms M.D.'s CIPA section 631 claim. To "read" communications under CIPA, there must be "some effort at understanding the substantive meaning of the message, report or communication." *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024). Plaintiffs do not allege this; in fact, they allege the opposite. Plaintiffs allege that Google's source code collects, packages, and sends the data for processing and storage. SAC at ¶ 71. According to the SAC, only *after* processing and storage does Google use this data in generating analytical reports. *Id.* at ¶ 72. Nothing in the SAC alleges that Google reads any data before these

reports are generated. And "once a [communication] has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible." *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1077–78 (N.D. Cal. 2015).

In other words, Plaintiffs merely allege that Google received this data; they do not allege that Google ever analyzed or read the data while it was in transit. And Plaintiffs' own pleadings undermine their "interception" claims. *See R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (finding allegations that "Google receives information as it is being transmitted," processes the information, and then, "[o]nce Google Analytics receives, views, reads, and processes the data, it aggregates and organizes the data based on particular criteria . . . do not support a plausible inference Google reads the information" while in transit (internal quotations omitted)); *see, e.g.*, *Jones*, 751 F. Supp. 35 at 1037 ("The Complaint contains averments that customer chats were 'intercepted in real time,' but these amount to conclusory statements below the *Twombly* and *Iqbal* plausibility threshold."); *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *5 (N.D. Cal. Oct. 17, 2025) ("A filtering process that simply sorts out certain data . . . can't fairly be characterized as an effort at understanding the meaning of the communication."); *see also Com. v. Proetto*, 771 A.2d 823, 829 (2001), *aff'd*, 575 Pa. 511, 837 A.2d 1163 (2003) (holding WESCA bars "contemporaneous" acquisition of the "contents" of the communication).[7]

**4. Plaintiff M.D.'s CIPA Section 631 claim fails because there is no allegation that Google did anything but act as a mere vendor**

Plaintiff M.D.'s CIPA Section 631 claim fails for yet another independent reason. Courts in this District have held that a vendor—including Google Analytics—acting as a service provider for a party to the communication is merely an extension of the party for purposes of CIPA liability. *See, e.g., Graham v. Noom, Inc.*, 533 F. Supp. 3d at 832–33 (dismissing CIPA section 631 claim); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (same); *Love v. Ladder Fin., Inc.,* 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (same).

---

[7] The lack of contemporaneity also dooms Plaintiffs' claim under CIPA section 632, which fails for additional reasons as discussed below. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002) (noting that section 632 concerns "simultaneous dissemination," not later repetition).

Judge Chen's reasoning in *Kaiser* applies here. *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *17 (N.D. Cal. Apr. 11, 2024). In *Kaiser*, the court held that a third-party vendor's CIPA liability depends on the degree of control exercised by the website in question—if the vendor operates as a mere extension of a website "subject to the [website's] control," the vendor cannot be held liable under the statute. *Id.* (dismissing CIPA claim). Plaintiff M.D.'s allegations make clear that any "usage" of allegedly collected data occurred at the direction of BlueChew. See, e.g., SAC ¶¶ 13, 66–67, 71–74. Websites have the ability to "customize the processing of the data" collected, meaning that whether and how Google processed any data from BlueChew.com is "subject to [BlueChew.com's] control and ability to limit the use of dissemination of the [sensitive] data." *Id.* at *18. When Google's only action is to "collect and/or use information for [BlueChew's] benefit only," and not for Google's own benefit—not, "e.g., to sell to others"—Google cannot be liable under Section 631. *Id.*

This flows directly from the proposition that CIPA must be construed in light of ordinary common law agency principles. *Borg-Warner Protective Servs. Corp. v. Superior Ct.,* 75 Cal. App. 4th 1203, 1207–08 (1999) (California statutes must be "construed in light of common law principles unless it contains clear and unequivocal language that discloses an intent to depart from, alter, or abrogate the common-law rule concerning a particular subject matter."); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 9 F.4th 1167, 1176 (9th Cir. 2021) (applying *Borg-Warner*). Under those principles, BlueChew can empower an agent—like Google—to do anything BlueChew is authorized to do. *See* Cal. Civ. Code §§ 2304, 2305 ("Every act which, according to this Code, may be done by or to any person, may be done by or to the agent of such person for that purpose, unless a contrary intention clearly appears."); *See Axiall Corp. v. descote S.A.S.*, 2018 WL 621287, at *17 (W.D. Pa. Jan. 30, 2018) (holding that agent's actions were "attributable to its principal"). Nothing in CIPA suggests legislative intent to limit a principal's ability to delegate authority to an agent; indeed, that is why no one would question whether a BlueChew employee could lawfully access Plaintiff M.D.'s data to facilitate his purchase.[8]

---

[8] Notably, the CCPA provides that service providers that collect user data on behalf of a website, and subject to a contract with that website, are not "third-parties" that must be disclosed to end users. Cal. Civ. Code §§ 1798.140(j)(1), (ag), (ai) (CCPA).

Here, Google simply provides a "tool" that allows websites like BlueChew.com to "record and analyze its own data in aid of [that website's] business," and thus cannot be liable under CIPA. *See Noom*, 533 F. Supp. 3d at 832–33; *see also Williams*, 2022 WL 17869275, at *3 (that the vendor stores and processes data on its own servers "is part of how the software tool functions" and does not by itself subject the vendor to liability).

And Plaintiff M.D.'s allegations make clear that any "usage" of allegedly collected data occurred at the direction of BlueChew. *See, e.g.,* SAC ¶¶ 13, 66–67, 71–74. For instance, Plaintiffs allege that websites have the ability to "customize the processing of the data" collected, and that they have the option to use that data for marketing purposes—or not. SAC ¶ 74.[9] This means that whether and how Google processed any data from BlueChew.com is "subject to [BlueChew.com's] control and ability to limit the use of dissemination of the [sensitive] data." *Kaiser Found. Health Plan, Inc.,* 2024 WL 1589982, at *18. Plaintiff M.D.'s allegations thus show Google functioning as an extension of BlueChew and subject to BlueChew's control. *See Id*. at *17 (dismissing CIPA claim where analytics vendor operated as extension of website and "subject to the [website's] control"); *see also* Cal. Civ. Code §§ 1798.140(j)(1), (ag), (ai) (CCPA). Because BlueChew authorized Google, as a vendor of analytics services, to analyze (and therefore to receive in the first place) Plaintiff M.D.'s communications, Google could not have been an unauthorized party within the meaning of CIPA as a matter of law. Cal. Penal Code § 631(a). This is another reason that Plaintiff M.D.'s claim under CIPA section 631 should be dismissed.

**5. Plaintiffs' claims under CIPA section 632 and WESCA fail because none of the at-issue communications were confidential.**

Plaintiffs cannot plausibly plead that any of the at-issue communications were confidential because Plaintiffs knew their communications with BlueChew would be "overheard." This defeats Plaintiff M.D.'s CIPA section 632 claim and Plaintiff O.F.'s WESCA claim, as both apply only to confidential communications.

[9] While Plaintiffs strategically use passive voice in the SAC to obscure the control websites have, Plaintiff M.D. cites a Google Analytics support page with information about how websites can link their Google Analytics and Google Ads accounts, demonstrating that it is websites that control this data use. *See* SAC n.41; *see also* RJN Ex. 8.

CIPA section 632 concerns only "confidential communications." A communication is not "confidential," however, if it is carried on in "circumstances[] in which the parties to the communication may reasonably expect that the communication *may be overheard or recorded*." Cal. Penal Code § 632(c) (emphasis added). Further, parties to a communication cannot pursue a claim against a person known to the parties to be overhearing—whether or not the person obtained consent. *Id.* § 632(b). The clear upshot of these provisions is: (1) that "confidentiality" is determined objectively by looking at the circumstances surrounding the communication; and (2) the burden of taking steps to preserve confidentiality is on the parties to the communication; it is not incumbent on third parties to make themselves scarce when individuals broach confidential topics. Here, the Plaintiffs didn't just have reason to expect their communications *may* be overheard or recorded, they knew with certainty that it would occur, because each iteration of the privacy policy notified Plaintiffs of a host of third parties that may receive or record the communication (not least BlueChew itself). RJN Exs. 5-A–5-E. It therefore is not a "confidential communication."

Plaintiffs cannot rescue their claim with the argument that they consented to *some* communications being recorded and not others. This is because "confidentiality" considers the circumstances surrounding the communication *as a whole*, not the content of any communication. This is evident in the statute itself. Section 632 refers to the circumstances in which the communication is being "carried on"—a continuous act, not a single instance. Additionally, section 631 distinguishes between "communications" and their "contents." Cal. Penal Code § 631(a). This makes sense as a practical matter. An authorized listener would not necessarily know when a conversation veers into topics the parties did not intend her to hear. The parties are best placed to make those calls and take steps to safeguard their communications. Users would have known Google, among others, might have been "recording" their communications with Bluechew and therefore those communications cannot be "confidential" within the meaning of section 632. Plaintiffs claims premised on this recording should be dismissed.

**D. Plaintiff M.D. fails to state a claim for invasion of privacy under the California Constitution.**

To state a claim for invasion of privacy under the California Constitution, a plaintiff must plausibly plead that "they possess a legally protected privacy interest" in the information or circumstance at issue, and that "the intrusion is 'so serious . . . as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (quoting *Hernandez*, 47 Cal. 4th at 287); see also Cal. Const. Art. I § 1. Plaintiff M.D. fails to make out either of these elements.

**1. Plaintiff M.D. lacked a legally protected privacy interest**

While an individual may have a "legally protected privacy interest" in their medical information, the standard Google Analytics information that Plaintiff M.D. alleges was transmitted to Google does not rise to this standard. *See, e.g., Cnty. of Los Angeles v. Superior Ct.*, 65 Cal. App. 5th 621, 641 (2021) ("Patients have a right to privacy with respect to information contained in ... medical records"). M.D. alleges that BlueChew users may be "asked a range of health-related questions" while using the website, but there is no allegation that any answers that a user might provide to such questions constitute the data transmitted to Google. SAC ¶ 22.

Plaintiff M.D. alleges that among the allegedly sensitive data sent to Google is a pseudonymous identifier created by BlueChew to denote a particular medication and dosage. *See supra* at 3. But because this pseudonymous identifier is distinguishable from medical information, M.D. does not have a protected privacy interest. Plaintiff M.D. fails to allege that Google was capable of determining that "id1" corresponds to "a 6-pack of BlueChew's 30 mg Sildenafil" tablets. SAC ¶ 70. This "unique" identifier is unintelligible, is not alleged to have any meaning to Google, and it is not fairly characterized as protected medical information. *See B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064-1067 (C.D. Cal. 2024), *on reconsideration in part*, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) (dismissing vague allegations lacking "facts showing anyone improperly viewed or accessed any medical information"; *see also* SAC ¶ 43 ("Each of BlueChew's medications are assigned their own unique content ID."). As the allegedly transmitted

information is nothing more than a string of characters whose meaning, if any, M.D. does not even allege Google could decipher, he cannot meet this element.

**2. There was no egregious breach of social norms**

Finally, Plaintiff M.D. cannot establish that any "intrusion" constituted "an egregious breach of the social norms." See *Hernandez*, 47 Cal.4th at 287.

Plaintiff alleges that Google collected his name, birthday, and email address. *See supra* at 3; SAC ¶ 68. But courts in this District have found that the disclosure of such "personal data . . . does not constitute an egregious breach of social norms." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (neither does disclosure of device identifier or geolocation information). Further, the pseudonymous medication identifier that Plaintiff M.D. alleges Google "intercept[ed]" does not convey sensitive information (particularly absent any allegation that Google was capable of deriving any meaning from it), so it likewise cannot form the basis for an egregious breach. As for the vaguely described screenshots purporting to show PII sent via Google Analytics, apparently made for litigation, there is no explanation for how this violated Plaintiffs' privacy. SAC ¶¶ 67-69. Even if BlueChew chose to store such information on a Google server, that is not enough to plausibly indicate that Google made independent use of it, or even became aware it existed. *Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *19 (holding that the intrusion was not highly offensive where "Kaiser simply hired a third party to do work for Kaiser's own benefit"); *see supra* at 18-20 (Google is merely a third-party vendor). It is this distinction that animated, for example, the court's decision in *Doe* dismissing all claims. *See Doe I*, 741 F. Supp. 3d at 844 ("plaintiffs fail to plausibly allege Google is intentionally reading or learning the contents of the plaintiffs' private health communications," "even if some private health information is inadvertently sent to Google").

Because Plaintiff M.D. cannot plead facts showing that Google committed an "egregious breach of the social norms," his invasion of privacy claim must be dismissed.

## VI. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss the Second Amended Complaint with prejudice.

Dated: December 8, 2025

By: */s/ Benedict Y. Hur*

**COOLEY LLP**
Benedict Y. Hur
Simona A. Agnolucci
Eduardo E. Santacana
Joshua Anderson
Isabella McKinley Corbo

Attorneys for Defendant
GOOGLE LLC