LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| M.D. and O.F., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC and META PLATFORMS, INC.,<br><br>Defendants. | Case No. 3:24-cv-06369-AMO<br><br>**DEFENDANT META PLATFORMS, INC.'S REQUEST FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE IN SUPPORT OF ITS MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing: April 30, 2026<br>Time: 2:00 p.m.<br>Location: Courtroom 10—19th Floor<br>Judge: Hon. Araceli Martínez-Olguín |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 30, 2026 at 2:00 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, Courtroom 10, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Meta Platforms, Inc., through its undersigned counsel, will, and hereby does, respectfully request that in connection with its motion to dismiss the Second Amended Class Action Complaint, the Court consider the documents attached as Exhibits 1-32 to the accompanying Declaration of Melanie M. Blunschi in Support of Meta's Motion to Dismiss Second Amended Class Action Complaint, filed concurrently herewith. The documents are properly considered by the Court on Meta's motion because they are subject to judicial notice under Federal Rule of Evidence 201 and/or incorporated by reference into the complaint.

Dated: December 8, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Melanie M. Blunschi*

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**MEMORANDUM OF POINTS & AUTHORITIES**

Defendant Meta Platforms, Inc. ("Meta") respectfully requests that the Court consider certain documents submitted in connection with Meta's motion to dismiss the Second Amended Class Action Complaint ("SAC"), as described below and attached to the concurrently filed Declaration of Melanie M. Blunschi ("Blunschi Declaration"). The documents include several items that Meta submitted in connection with its motion to dismiss Plaintiffs' First Amended Complaint ("FAC") and that the Court previously judicially noticed: four informational webpages from Meta's website regarding the Meta Pixel (Exhibits 1–4); BlueChew's account registration page during Plaintiffs' alleged use of BlueChew and in February 2025 (Exhibits 5–9); BlueChew's Terms & Conditions and Privacy Policy during Plaintiffs' alleged use of BlueChew (Exhibits 10–19); and Meta's Business Tools Terms during Plaintiffs' alleged use of BlueChew and in February 2025 (Exhibits 20–21). The documents also include several items that are newly relevant to Plaintiffs' SAC and which Meta submits for the first time: Facebook's sign-up page (Exhibit 22) and three sets of Meta terms and policies (Exhibits 23–32). All of these documents are properly considered because they are incorporated by reference into and integral to the complaint, and/or subject to judicial notice under Federal Rule of Evidence 201.

## I. LEGAL STANDARD

In deciding a motion to dismiss, a court may consider "materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

The doctrine of incorporation by reference "treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). When a document is incorporated by reference, the Court may consider the contents of the document, and unlike judicial notice, a court "may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citation omitted). A document is incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citation omitted). The purpose of the doctrine is to "prevent[] plaintiffs from selecting only

portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* For that reason, the doctrine may apply even where a complaint does not explicitly mention a document by name or references only a portion of it. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that incorporation by reference may apply even where the plaintiff "does not explicitly allege the contents of th[e] document in the complaint" (citation omitted)); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (incorporating employee health plan where claims were premised upon plaintiff's coverage under the plan), *superseded by statute on other grounds*. The doctrine "applies with equal force to internet pages as it does to printed material." *Knievel*, 393 F.3d at 1076.

Additionally, courts may take judicial notice of matters that are "not subject to reasonable dispute" because they are either (1) "generally known within the trial court's territorial jurisdiction" or (2) "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

## II. ARGUMENT

### A. This Court Should Again Judicially Notice Exhibits 1-21 And Consider Them Incorporated By Reference

In connection with its Motion to Dismiss Plaintiffs' FAC, Meta requested that this Court consider Exhibits 1-21 because those documents were incorporated by reference into Plaintiffs' FAC and properly subject to judicial notice. *See* Dkt. 39. This Court "grant[ed] the request for judicial notice of the existence of the various terms and policies at issue," and "consider[ed] the materials incorporated by reference" in evaluating Meta's motion to dismiss the FAC. Dkt. 57 at 5. The Court noted that Plaintiffs had "relied on the materials in support of their arguments," and stated that Plaintiffs "made clear at the hearing that they did not object to the Court considering the materials submitted for judicial notice in its assessment of the motions to dismiss." *Id.* at 4.

The Court should again consider those same sources incorporated by reference and take judicial notice of them.[1] Plaintiffs' SAC, like the FAC, relies heavily on various Meta webpages

[1] For the Court's convenience, Meta resubmits its prior Exhibits 1-21 as Exhibits 1-21 here.

and screenshots from BlueChew's website to allege that BlueChew sends certain information about its users to Meta, purportedly without consent. *E.g.,* Dkt. 58 ¶¶ 25-37 (citing Meta help pages); *id.* ¶¶ 19-23 (screenshots from BlueChew's website). Like the FAC, the SAC omits critical context from those documents and others cited or linked within them. The incorporation-by-reference doctrine exists precisely to prevent such "artful pleading" and ensure courts can assess claims at the motion-to-dismiss stage based on a full and fair understanding of the documents that undergird a plaintiff's claims. *Khoja*, 899 F.3d at 1003; *see also* Dkt. 39. Because the Meta help pages (Exs. 1–4) and BlueChew website (Exs. 5–9) are "the source of many of Plaintiffs' allegations" which "underpin[] Plaintiffs' theory," those web pages should be deemed incorporated by reference into Plaintiffs' SAC. *Bounthon v. Proctor & Gamble Co.*, 2024 WL 4495501, at *6 (N.D. Cal. Oct. 15, 2024) (Martínez-Olguín, J.). And Meta's help pages (Exs. 1–4) and Business Tools Terms (Exs. 20–21) provide critical context for Plaintiffs' claims about Meta's purported representations to "business customers." *See* SAC ¶ 33; *see also id.* ¶¶ 27, 29-30. The Court should have the benefit of this context when considering Plaintiffs' allegations.

Moreover, because Plaintiffs "must plausibly allege that the complained-of interception occurred without consent" to state their CIPA and WESCA claims, Dkt. 57 at 6, BlueChew's disclosures in its terms and policies (Exs. 10-19) "form[] the basis" of Plaintiffs' claims. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see A.S. v. SelectQuote Ins. Servs.*, 2024 WL 3881850, at *4 (S.D. Cal. Aug. 19, 2024) (incorporating by reference "a website's privacy policy when [other portions of] the website [were] referenced in the complaint" in assessing CIPA claim). The Court may thus consider the terms that contain these disclosures in assessing Plaintiffs' claims. *See Gershfield v. TeamViewer US, Inc.*, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023) (explaining that where a plaintiff's claims are "dependent upon the extent and sufficiency of [certain] disclosures," the "disclosures form the basis of the claims themselves").

Alternatively, the Court should again take judicial notice of these documents that are "not subject to reasonable dispute" and whose contents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "In general, websites and their contents may be judicially noticed," and "[c]ourts routinely take judicial notice

of terms of service," as this Court did in connection with Meta's motion to dismiss the FAC. *Hirlinger v. WP Co. LLC*, 2024 WL 2941630, at *2 (N.D. Cal. June 10, 2024) (Martínez-Olguín, J.) (alteration in original) (citations omitted); *see* Dkt. 57 at 4-5.

**B. Exhibits 22-32 Are Also Incorporated By Reference Into The Complaint And Subject To Judicial Notice**

For similar reasons, this Court should also consider the Facebook sign-up page and Meta's Terms of Service, Privacy Policy, and Cookies Policy incorporated by reference into the SAC. Meta submits these documents in connection with its motion to dismiss the SAC because Plaintiffs now allege, for the first time in this case, that they are Facebook users. SAC ¶ 11.

As to the Facebook sign-up page (Exhibit 22), Plaintiffs now rely on their status as Facebook users to state their claims, but omit critical information regarding the sign-up page they cite. Specifically, Plaintiffs allege that they had active Facebook accounts when they made their purchases from BlueChew, SAC ¶ 11, and cite the Facebook sign-up page in their complaint in alleging that Facebook collects names, birthday, and gender from users. *Id.* ¶ 25 n.5.[2] Plaintiffs then allege that BlueChew sent Facebook users' Facebook IDs to Meta using code from the Meta Pixel and cookies, such that Meta was allegedly able to match event data with user accounts and "identify users." *Id.* ¶¶ 44-47. Plaintiffs' "identification" allegations are critical to their claim that BlueChew disclosed "sensitive" information about them to Meta. *Id.* ¶ 76. Yet directly below the requested fields Plaintiffs cite on the sign-up page is language stating that Facebook users (like Plaintiffs) agree to Meta's "Terms, Privacy Policy, and Cookies Policy" "[b]y clicking Sign Up." Ex. 22 (linking to the Terms, Privacy Policy, and Cookies Policy). Despite admitting they have Facebook accounts and citing the page where this language appears, Plaintiffs selectively omit that signing up expressly requires agreement to Meta's Terms of Service, Privacy Policy, and Cookies Policy. And, as Meta explains in its motion, those governing terms and policies disclose the precise

[2] Plaintiffs cite a link to Facebook's "log in or sign up" page in their complaint, *see* https://www.facebook.com/, but the fields to provide birthday and gender that Plaintiffs reference appear on the screen the user sees after they click "Create new account." Accordingly, that screen, available at https://www.facebook.com/r.php, is included as Exhibit 22, as that is the webpage on which Plaintiffs' allegations rely.

conduct that forms the basis of Plaintiffs' claims. Plaintiffs cannot "select[] only portions of documents" that allegedly "support their claims," while omitting other contents that undercut their claims. *Khoja*, 899 F.3d at 1002.

For the same reason, the content of Meta's Terms of Service, Privacy Policy, and Cookies Policy (Exhibits 23–32) is also incorporated by reference into the complaint.[3] Plaintiffs extensively reference certain Meta webpages regarding the Meta Pixel, *supra* at 2-3, but conspicuously omit mention of the terms and policies disclosing that third parties may use Meta Pixel code and that Meta may receive data from those third parties. Plaintiffs' attempt to avoid these core documents implicates the "policy concern underlying the" incorporation-by-reference doctrine—that Plaintiffs may improperly "surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino*, 146 F.3d at 706; *see also In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 2020 WL 7664461, at *4 (N.D. Cal. Dec. 24, 2020) (finding website incorporated by reference).

Here, Meta's Terms of Service (Exs. 23–25), Privacy Policy (Exs. 26–29), and Cookies Policy (Exs. 30–32) are clearly linked, and incorporated into, the sign-up page that Plaintiffs cite. SAC ¶ 25 n.5; *cf. In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 791 (N.D. Cal. 2019) (holding that policy linked in terms was "incorporate[d] . . . into the contractual agreement"). These Terms and policies govern individuals' use of Meta products, such as Facebook, and describe how Meta handles user data, including data received through code from the Meta Pixel. As Meta explains in its motion to dismiss, the Terms and policies expressly disclose that businesses can choose to use Meta Pixel code on their websites, and that when they do so, Meta may receive information about users' interactions with those websites. For example, the Privacy Policy explains that Meta "collect[s] or receive[s] information" from third parties about "[w]ebsites you visit and cookie data, [including] through . . . the Meta Pixel," and about

---

[3] Meta attaches publicly available versions of these terms and policies in effect when Plaintiffs allege they used BlueChew. *See* SAC ¶¶ 7-9 (alleging that Plaintiffs used BlueChew between January 2022 and January 2023); *id.* ¶ 11 (alleging that each Plaintiff "maintained [an] active" Facebook account "at all relevant times"); Terms of Service, Ex. 25 at 8 (explaining that "[o]nce any updated Terms are in effect, you will be bound by them if you continue to use [Meta] Products").

"[p]urchases and transactions you make." Ex. 28 at 5-6. These policies, therefore, form the basis of Plaintiffs' claims because they relate directly to the issue of consent. *Supra* at 3.

Indeed, Plaintiffs affirmatively "relied on" Meta's Cookies Policy in their FAC, and continue to do so here. *See* Dkt. 57 at 4. Plaintiffs use Meta's Cookies Policy to describe how cookies allegedly "transmitted" information to Meta, and to allege that Meta used cookies to "identify users." SAC ¶¶ 47 n.28, 52 n.34; *see also id.* ¶¶ 47-55. Those allegations are integral to their claims that BlueChew disclosed personal health information to Meta without their consent. *See id.* ¶ 58. But Plaintiffs omit the fact that the Cookies Policy clearly discloses that Meta "use[s] cookies" to "receive identifiers" when users visit websites that incorporate Meta Pixel code; that businesses use code from "the Meta Pixel" to share information about "your interactions with them"; and that both Meta and "business partners" may use cookies to "deliver ads to people who have previously visited a business's website" or "purchased its products." Ex. 32 at 1, 7, 21. The Court should consider Meta's policies "as part and parcel of the web-based . . . service that is central to the complaint." *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1258 (D.N.M. 2020). Meta's Terms of Service, Privacy Policy, and Cookies Policy should therefore be considered part of the complaint under the incorporation-by-reference doctrine.

Alternatively, the Facebook sign-in page and Meta's Terms of Service, Privacy Policy, and Cookies Policy are also subject to judicial notice, because they are publicly available websites. *Supra* 3-4. Courts routinely take judicial notice of such websites, and the Court should do so here.

## III. CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court consider the exhibits attached to the Blunschi Declaration submitted in connection with Meta's motion to dismiss the SAC.

Dated: December 8, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By */s/ Melanie M. Blunschi*

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant Meta Platforms, Inc.*