**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

M.D., O.F., and J.P., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC and META PLATFORMS, INC.,

Defendants.

Case No. 3:24-cv-06369-AMO

**PLAINTIFFS' OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

Hearing: April 30, 2026
Time: 2:00 p.m.
Location: Courtroom 10—19th Floor
Judge: Hon. Araceli Martínez-Olguín

## TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. ARGUMENT ..... 4

A. Plaintiffs Have Standing To Assert Their Claims ..... 4

B. Plaintiffs' Claims Are Timely ..... 6

1. Plaintiffs Adequately Allege That Google Intercepted Their Data from the BlueChew Website Prior to 2024 ..... 6

2. Plaintiffs' Claims Are Not Time-Barred ..... 8

C. Plaintiffs Plausibly State Their Claims Under CIPA and WESCA ..... 10

1. Plaintiffs Did Not Consent to Google's Collection of Their Private Health Information ..... 10

2. Plaintiffs Adequately Allege Intent ..... 14

3. Plaintiffs Adequately Allege That Google Intercepted The "Contents" of Their Communication with BlueChew ..... 18

4. Google Was an Eavesdropper to Plaintiffs' Communications ..... 20

5. Plaintiffs' Communications Were Confidential ..... 21

D. Plaintiff M.D. States a Claim for Invasion of Privacy Under the California Constitution ..... 22

1. Plaintiff M.D. Has a Reasonable Expectation of Privacy ..... 22

2. Defendant's Interception Is Highly Offensive ..... 24

IV. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ........ 15

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ passim

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 18

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ........ 18

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 2, 11, 13, 15

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 11, 13, 19

*Camplisson v. Adidas America, Inc.*,
2025 WL 3228949 (S.D. Cal. Nov. 18, 2025) ........ 6

*Deek Inv., L.P. v. Murray*,
157 A.3d 491 (Pa. 2017) ........ 8

*Delong v. PHE, Inc.*,
2025 WL 2447787 (E.D. Pa. Aug. 25, 2025) ........ 5

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 17

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........ 10

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) ........ passim

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 21

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........ 17, 25

*Doe v. Microsoft Corp.*,
2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ........ 9

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ........ 13, 22

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) ........ 20

*Est. of Gorg v. Great Am. Ins. Co. of Cincinnati Ohio*,
2012 WL 3011728 (M.D. Pa. May 25, 2012) ........ 8

*Fan v. NBA Properties Inc.*,
2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ........ 11

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of California*,
2015 WL 13273308 (C.D. Cal. July 29, 2015) ........ 13, 22

*Fine v. Checcio*,
582 Pa. 253 (2005) ........ 10

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........ 8

*Franklin v. Ocwen Loan Servicing, LLC*,
2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) ........ 9

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ........ 5

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........ 4, 5, 6

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ........ 17, 25

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ........ 14, 15, 16

*Gleason v. Borough of Moosic*,
609 Pa. 353 (2011) ........ 8

*Hudson v. Superior Ct.*,
7 Cal. App. 5th 1165 (2017) ........ 15

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 18, 23, 24

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*,
2019 WL 6998668 (C.D. Cal. Sept. 5, 2019) ........ 10

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 15, 16

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........ 11, 13

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ........ 24

*In re Google RTB Consumer Priv. Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) ........ 10

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ passim

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ........ 16, 17

*In re O.E.M./Erie, Inc.*,
405 B.R. 779 (Bankr. W.D. Pa. 2009) ........ 10

*Ingrao v. AddShoppers, Inc.*,
2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ........ 14

*Jones v. Bloomingdales.com, LLC*,
124 F.4th 535 (8th Cir. 2024) ........ 5, 6

*Josten v. Rite Aid Corp.*,
2019 WL 3718739 (S.D. Cal. Aug. 7, 2019) ........ 9

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ........ 11, 20

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011) ........ 21

*Kwai Fun Wong v. Beebe*,
732 F.3d 1030 (9th Cir. 2013) ........ 8

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003) ........ 21

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ........ 14, 24

*Maier v. Bucks Cnty.*,
2019 WL 689206 (E.D. Pa. Feb. 19, 2019) ........ 8

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ........ 6, 7

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 24

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 11

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) .......... 13, 22

*Ovando v. Cty. of Los Angeles*,
159 Cal. App. 4th 42 (2008) .......... 8

*Perez v. Romantix Online, Inc.*,
2025 WL 3085786 (N.D. Cal. Oct. 27, 2025) .......... 14

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) .......... 14

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 4, 5

*R.C. v. Sussex Publishers, LLC*,
2025 WL 1735994 (N.D. Cal. June 23, 2025) .......... 19

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 25

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 18, 19

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) .......... 14

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... passim

*SpiriTrust Lutheran v. Wagman Constr., Inc.*,
314 A.3d 894 (Penn. 2024) .......... 8

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 23, 25

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......... 13, 22

*United States v. Fumo*,
628 F. Supp. 2d 573 (E.D. Pa. 2007) .......... 15

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F.Supp.3d 969 (C.D. Cal. 2023) .......... 21

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) ........ 8

*Weatherly v. Universal Music Publ'g Grp.*,
125 Cal. App. 4th 913 (2004) ........ 9

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 20

**STATUTES**

18 Pa. Cons. Stat. § 5701 ........ 1

Cal. Civ. Code § 1798.140 ........ 13

Cal. Penal Code § 631 ........ 18, 20

## I. INTRODUCTION

The free advertising tools Defendant Google LLC ("Defendant" or "Google") offers to website operators come with a troubling cost for consumers. Instead of charging website operators like Dermacare LLC d/b/a BlueChew ("BlueChew") for the use of its tools, Google demands something more valuable: protected health data. BlueChew operates a website where consumers can complete a questionnaire to determine whether they qualify for prescription erectile dysfunction medication. When companies like BlueChew install Google's tracking technologies onto their websites, Google knows that it will thereby collect protected health data from consumers. That is by design. At its core, Google is an advertising company, one of the most profitable in the world. While certain Google tools, like Google Analytics, do provide analytical services for Google's customers, Google Analytics is a foundational part of Google's advertising services. That is because all data collected through Google Analytics, including data that is legally protected, is fed into Google's advertising machinery. Google knows it collects data that is inherently unlawful for it to possess but instead chooses to feign ignorance. Plaintiffs bring this action to stop Google's unlawful practices.

Plaintiffs hereby oppose Defendant's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (ECF No. 61) ("MTD"). Plaintiff M.D. plausibly states a claim under the California Invasion of Privacy Act ("CIPA") § 631(a) and § 632 and for invasion of privacy because Defendant intentionally, and without consent, intercepted sensitive and confidential health communications between Plaintiffs (and class members) and third party BlueChew, via the BlueChew website, www.bluechew.com (the "Website"). Plaintiff O.F. states a claim under the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA") based on the same conduct.

BlueChew is an online health platform wherein registered users connect with health care providers for the diagnosis and treatment of erectile dysfunction. Through the Website, users, such as Plaintiffs and class members, fill out a medical questionnaire and, if they qualify, can purchase erectile dysfunction medication. While Plaintiffs and class members reasonably believed and expected that their communications with BlueChew regarding these sensitive health issues would be kept confidential, they were not. That is because Defendant's software, Google Analytics, was

embedded on the Website, which captured Plaintiffs' and class members' interactions with the Website—including their personal information and information regarding the erectile dysfunction medications they purchased—and transmitted said health information to Defendant. Defendant then used this information for its own benefit by incorporating it into its advertising machinery, which functioned to place Plaintiffs and class members into targeted audiences for advertisers of similar medications. Indeed, Plaintiffs in this case were retargeted and subject to advertising for erectile dysfunction medications because of Defendant's use of their confidential health information. Defendant makes its tracking technologies free for website owners to use so that it can receive information from website interactions and then generate highly specific audience segments, which it then uses to sell advertising. However, where, as here, PHI is surreptitiously transmitted to Defendant without the consent of Plaintiffs and class members, it is unlawful.

Due to Defendant's unlawful conduct, Plaintiff M.D. brings this action on behalf of himself and "all natural persons in California who, during the class period, purchased medication on www.bluechew.com." *See* Second Amended Class Action Complaint (ECF No. 58) ("SAC"), ¶ 84. Plaintiff O.F. brings claims on behalf of himself and an identical class in Pennsylvania. *Id.* ¶ 85.

Defendant now moves to dismiss Plaintiffs' claims; however, courts have rejected similar motions to dismiss in other cases involving similar tracking technologies, including in *Smith v. Google, LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024); *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021); *Doe, et al. v. GoodRx Holdings, Inc., et al.*, Case No. 3:23-cv-00501-AMO (N.D. Cal.). For the reasons set forth herein, the Court should deny Defendant's motion.

## II. STATEMENT OF FACTS

BlueChew's Website allows registered users to connect with health care providers for the diagnosis and treatment of erectile dysfunction. SAC ¶ 2; ¶¶ 19-20, Figure 1. The Website offers patients discrete access to prescription erectile dysfunction medications. *Id.* In using the Website, Plaintiffs and class members provided PHI to BlueChew for the purpose of obtaining medical treatment, including providing responses to a "medical profile" questionnaire to determine whether they qualify for erectile dysfunction medication. *Id.* ¶¶ 20-24, Figures 1-4. Plaintiffs and class

members purchased erectile dysfunction medications. *Id.*

Despite being protected by federal and state law, and unbeknownst to Plaintiffs and Class Members, Defendant intercepted their sensitive health information conveyed through the Website using its Google Analytics tool, and other similar software. The data intercepted and collected included de-anonymized prescribed medications purchased by Plaintiffs and class members on the Website. *Id.* ¶¶ 59-77. Plaintiffs' PHI that Defendant intercepted was personally identifiable and Defendant used Plaintiffs' and class members' intercepted health information for its own benefit, namely for the purpose of targeted advertising. *Id.* ¶¶ 5, 72-74. Examples of Defendant's interceptions from the Website clearly show that Defendant intercepted PII such as name, state of residence, email address, and various forms of PHI. Indeed, Defendant intercepted information showing that the BlueChew user registered on the Website, added a medication to their cart, and ultimately purchased the medication. *Id.* ¶¶ 67-70, Figures 8 and 9. Regardless of whether Plaintiffs and class members hold accounts with Google, Defendant can match their prescription information to their identity using the PII they conveyed to BlueChew that was intercepted by Defendant. *Id.*

At no point during the checkout process on the Website were users alerted that information related to their prescription medications was being intercepted by Defendant. *Id.* ¶ 24. At all relevant times, Plaintiffs and class members had a reasonable expectation of privacy as to the PHI they transmitted to BlueChew because they reasonably believed the communications were between them and BlueChew, and they did not consent to Defendant's interception of their PHI. *Id.* ¶ 6; *see also id.* ¶ 12; *id.* ¶¶ 58, 98.

Plaintiff M.D. is a California citizen who, on December 6, 2022, and January 4, 2023, was prescribed and ordered Sildenafil erectile dysfunction medication through the Website. *Id.* ¶ 7. Unbeknownst to Plaintiff M.D., Defendant intercepted his PHI related to his prescription medication using Google tracking technologies. *Id.* In addition to information related to his prescription medication, Defendant also intercepted Plaintiff M.D.'s PII, including his first and last name, email address, and date of birth. *Id.* ¶ 8. Plaintiff O.F., a Pennsylvania citizen, makes identical allegations to those of Plaintiff M.D. *Id.* ¶¶ 9-10. Plaintiffs did not discover Defendant's surreptitious interception of their PHI until September 2024. *Id.* ¶¶ 7, 9. For its part, Defendant knew that the

incorporation of its software onto the Website would result in its interception of PHI and PII of Plaintiffs and class members. *Id.* ¶ 13. As demonstrated by the continued incorporation of the Google tracking technologies on the Website, Defendant intends to intercept this protected and sensitive health data due to the value it holds for targeted advertising. *Id.* ¶¶ 99-103.

## III. ARGUMENT

### A. Plaintiffs Have Standing To Assert Their Claims

Google argues that "Plaintiffs do not have Article III standing to bring this case" because "[t]heir bare allegations include only that Google collected their PII and information about what they purchased on the Google [sic] website." MTD at 7-8. This is premised on a faulty analogy: that Plaintiffs' health-related communications are equivalent to communications about everyday commercial goods. Because of the sensitivity of Plaintiffs' communications related to the diagnosis and treatment of erectile dysfunction and the fact that PII was shared along with those communications, Google's argument that "nothing in the SAC [] demonstrates any injury beyond the collection of routine web-browsing information" fails. MTD at 9.

First, Google's interception was a highly offensive intrusion. Plaintiffs' intercepted communications were about the diagnosis and treatment of erectile dysfunction—information to which consumers have an expectation to privacy because it is "related to their sexual health" and is "legally protected." SAC ¶¶ 78-79. "Plaintiffs are entitled to privacy in their [PHI] and confidential communications. Defendant deprived Plaintiffs of their privacy rights when they . . . surreptitiously tracked, recorded, and disclosed Plaintiffs' and other online patients' confidential communications," *id.* ¶ 83, that were made to BlueChew, "a technology platform which enables registered users to connect with physicians and other health care providers for the diagnosis and treatment of erectile dysfunction." *Id.* ¶ 2. Google's attempt to undermine the sensitivity of Plaintiffs' communications by likening it to basic "collection of web-browsing activity," MTD at 8, should not be permitted.

Instead, Plaintiffs' communications are more akin to the user input data at issue in *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368, at *5 (N.D. Cal. Aug. 29, 2025). There, the court noted that the websites at issue "involve[d] healthcare." *Id.*, at *7. When distinguishing the facts of the case from those in *Popa v. Microsoft Corp.*, 153 F.4th 784, 788 (9th Cir. 2025), the *Gabrielli* court

considered that *Popa* involved a "pet food supply" website while the Haleon websites were health related, thus, "[w]hatever information users' input into Haleon's website [were] likely more sensitive than what the plaintiffs in *Popa* inputted into those websites." *Id.* The same distinction applies here. *See id.* Communications about Plaintiffs' search for erectile dysfunction diagnosis and treatment are far more sensitive than the pet food related data in *Popa*, 153 F.4th at 791. *See id.*; SAC ¶¶ 3, 7, 9, 67-77, 78-83. Further, if the communications at issue in *Gabrielli* (regarding health-related products like vitamins, antacids, and toothpaste) passed muster, Plaintiffs' communications here must too. *See Gabrielli*, 2025 WL 2494368, at *6-7.

Google points to *Delong v. PHE, Inc.*, 2025 WL 2447787, at *5-6 (E.D. Pa. Aug. 25, 2025) and *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 539 (8th Cir. 2024), two out-of-circuit cases, for its assertion that "the mere fact that the Plaintiffs' BlueChew purchases were personal in nature and might have been embarrassing is not enough to make the disclosure of those purchases a concrete harm." MTD at 8-9. But *Delong* and *Jones* are distinguishable. While the court in *Delong* stated the sensitive nature of the products did not "make a difference" to the analysis, it also emphasized that the key to having a concrete harm is that the "information is private[,]" such as, also capturing a person's "name, contact information, address, or billing information." *Delong*, 2025 WL 2447787, at *6 (cleaned up). But here, Plaintiffs allege the intercepted communications were traceable to them.[1] Plaintiffs allege "Google received . . . the name of the prescription medication and the medication quantity and dosage . . . [and also] additional PII, including first and last name, email address, and date of birth, ***that uniquely identify the patient***." SAC ¶ 75 (emphasis added). To support this allegation, Plaintiffs include detailed information on how Google's code works on

[1] *But see*, *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) where the defendant argued that there was no injury-in-fact because the plaintiff's intercepted data was anonymous. *Frasco*, 349 F.R.D. 557, 579. The Court disagreed, explaining, "[i]ndividuals have a time-honored right to control access to their private information and affairs" and "common law secures to each individual the right of determining, ordinarily, to what extent his thoughts, sentiments, and emotions shall be communicated to others." *Id.* (cleaned up). The harm, as alleged by the plaintiff in *Frasco*, and by Plaintiffs here, "occurs when the personal information is obtained in the first instance. The fact that misappropriated data may be anonymized by stripping it from its owner and blending it with other data does not cure or wash away the original violation." *Id.* In other words, whether the intercepted communications were personally identifiable is irrelevant to whether Plaintiffs have suffered an injury-in-fact for Article III standing. *See id.* Instead, based on cases within the Ninth Circuit, cited throughout this opposition, the sensitive nature of Plaintiffs' communications suffices as concrete harm.

websites, including BlueChew's website. *Id.* ¶¶ 67-77.

*Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 540 (8th Cir. 2024) is also unhelpful. The plaintiff in *Jones* failed to demonstrate an invasion of privacy "when [her] allegations d[idn't] suggest that she provided information that would identify her." *Jones*, 124 F.4th at 540. The data at issue there captured "how a store's online customers react to digital displays, to the extent 'clicks' and 'hovers' might reveal those reactions," on the Bloomingdales and Papa John's websites—websites that offer everyday commercial goods, not websites that host sensitive communications about medical concerns like those at issue here. *See* SAC ¶¶ 3, 7, 9, 67-77, 78-83. *Popa* similarly does not save Google's argument because the information intercepted in *Popa* "concerned how the plaintiff interacted with the site rather than her personal, private information" and "the information gathered was only alleged to be used by the owner of that website." *Camplisson v. Adidas America, Inc.*, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025); *Gabrielli*, 2025 WL 2494368, at *7. But here, the data intercepted was Plaintiffs' communications on BlueChew's website, which was then "linked with Google Ads, allowing the data intercepted by Google Analytics to be utilized for [Google's own] targeted advertising purposes." SAC ¶ 74.

### B. Plaintiffs' Claims Are Timely

#### 1. Plaintiffs Adequately Allege That Google Intercepted Their Data from the BlueChew Website Prior to 2024

Plaintiffs purchased prescription medications on the Website well before BlueChew allegedly published its updated privacy policy in June 2024. *See* SAC ¶ 7 (Plaintiff M.D. ordered erectile dysfunction medication through the Website on December 6, 2022 and January 4, 2023); *id.* ¶ 9 (Plaintiff O.F. ordered erectile dysfunction medication through the Website in January 2022). At the time of Plaintiff M.D.'s purchases, Google "intercepted [PHI] related to his prescription medication through [Google's] proprietary software codes," to wit Google Analytics, in addition to his PII, and Google used his personally identifiable PHI for "targeted advertising purposes." *Id.* ¶¶ 7-8; *see also id.* (stating that Google's "interceptions occurred at the time of his . . . purchases"). Plaintiff O.F. makes nearly identical allegations regarding his purchase. *See id.* ¶¶ 9-10. These are well-pleaded facts entitled to the presumption of truth at the pleading stage. *Manzarek v. St. Paul Fire & Marine*

*Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

While the above-referenced allegations establish an actionable interception prior to publication of BlueChew's June 2024 privacy policy, the rest of the SAC bolsters these allegations. For example, Plaintiffs allege: (i) "For example, on the Website, including during the time of Plaintiffs' purchases, Google Analytics was linked with Google Ads, allowing the data intercepted by Google Analytics to be utilized for targeted advertising purposes." (SAC ¶ 74); (ii) "Google received at least 'Custom Events' and URLs that disclosed the name of the prescription medication and the medication quantity and dosage. Google also received additional PII, including first and last name, email address, and date of birth, that uniquely identify the patient." (*id.* ¶ 75); and (iii) "These exact practices were in place on the Website before and during when Plaintiffs made their purchases." (*id.* ¶ 77). Plaintiffs therefore *did* include allegations "supporting the theory that the data practices in question were occurring before they were explicitly disclosed in the August 2024 BlueChew Privacy Policy." MTD at 10. Further, screenshots of the transmissions to Google as they would have occurred at the time of Plaintiffs' purchases in 2022 and 2023 show that BlueChew transmitted personally identifiable PHI to Google through the tracking technology. *Id.* ¶ 67, Figures 8 and 9. Taken together, these allegations plausibly allege that Google intercepted Plaintiffs' personally identifiable PII at the time Plaintiffs purchased their respective medications from BlueChew.

Despite these allegations, Google claims Plaintiffs' factual allegations are "conclusory." MTD at 10. But Plaintiffs' allegations that Google's technology was embedded on the Website at the time of purchase, set forth above, are allegations of fact entitled to the presumption of truth; that is, they are factual statements, not legal conclusions. *Manzarek*, 519 F.3d at 1031. What Google is really asking for is an evidentiary standard at the pleading stage requiring Plaintiffs to prove, with evidence, the existence of its tracking technology on the Website, which, as this Court recognized in *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *7 (N.D. Cal. July 22, 2025), is inappropriate. *See id.* (collecting cases and concluding that "[r]equiring the level of specificity the [defendants] demand imposes a standard far beyond what Plaintiffs must satisfy at the pleading stage."). Here, Plaintiffs' legal claim of unlawful wiretapping is premised on allegations that Google's technology was on the Website when they made their purchases and intercepted their personally identifiable

PHI. Google can contest these facts and move for summary judgment later, but it cannot impose an evidentiary standard at the pleading stage.

**2. Plaintiffs' Claims Are Not Time-Barred**

The statute of limitations is an affirmative defense by which a claim may only be dismissed as time-barred if it "appears beyond doubt that the plaintiff can prove no set of facts that would establish . . . timeliness." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *accord Est. of Gorg v. Great Am. Ins. Co. of Cincinnati Ohio*, 2012 WL 3011728, at *1 (M.D. Pa. May 25, 2012), *report and recommendation adopted sub nom. Est. of Late Gorg v. Great Am. Ins. Co. of Cincinnati Ohio*, 2012 WL 3011726 (M.D. Pa. July 23, 2012).

Defendant's argument that Plaintiffs' claims are time-barred fails because of the discovery rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005); *Maier v. Bucks Cnty.*, 2019 WL 689206, at *3 (E.D. Pa. Feb. 19, 2019); *Gleason v. Borough of Moosic*, 609 Pa. 353, 362-63 (2011). Whether the discovery rule applies is generally a "question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. Cty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008); *accord Gleason*, 609 Pa. at 362-63. To trigger the discovery rule, a plaintiff need only plead "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808; *accord SpiriTrust Lutheran v. Wagman Constr., Inc.*, 314 A.3d 894, 906 (Penn. 2024).

Plaintiffs' claims are also tolled via equitable tolling. *See Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (applying equitable tolling where delay is due to no "fault of lack of diligence" on behalf of Plaintiff); *accord Deek Inv., L.P. v. Murray*, 157 A.3d 491, 497 (Pa. 2017).

Here, Plaintiffs allege they could not (and did not) discover Defendants' violations despite their due diligence because Defendants had exclusive knowledge of their misconduct, which occurred using proprietary technology that they did not disclose and actively concealed. SAC ¶ 7 ("Due to the surreptitious nature of the interceptions at issue, Plaintiff M.D. did not realize confidential information related to his medical prescription was intercepted by Defendants until September 2024 after contacting undersigned counsel."), *id.* ¶ 9 (same for Plaintiff O.F.).

Accordingly, Plaintiffs allege the earliest they could have discovered Defendant's violations was in September 2024. *Id.* As Defendant concedes, M.D. filed the initial Complaint in this matter on September 10, 2024, right after Plaintiff M.D. discovered that the unlawful conduct occurred. MTD at 11; Complaint, ECF No. 1. Plaintiff O.F. joined the action by virtue of the FAC on January 6, 2025 (ECF No. 34), well within the applicable statutes of limitations triggered upon discovery in September 2024. *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *5 n.6 (W.D. Wash. Dec. 19, 2023) (finding the delayed discovery rule tolled the statute of limitations under similar circumstances).

Defendant argues that Plaintiffs failed to meet their "burden to offer non-conclusory allegations as to why they could not have discovered the challenged practices within the limitations period with reasonable diligence." MTD at 10. That is wrong. BlueChew consistently misrepresented its data sharing practices and even the latest version of its privacy policy does not disclose the widespread, surreptitious health data sharing operation Defendant engaged in. Thus, Plaintiffs could not conduct additional diligence (and it would have been futile) because an ordinary user could not uncover the misconduct Defendant was actively concealing by reading BlueChew's alleged Privacy Policy. *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018) (applying discovery rule where plaintiff had no "reason to suspect wrongdoing" because "the recordings were done surreptitiously."); *Weatherly v. Universal Music Publ'g Grp.*, 125 Cal. App. 4th 913, 919 (2004).

In short, suggesting that Plaintiffs were required to compare and contrast (1) the misrepresentations and concealment of the Google tracking technology described in the SAC, to (2) vague statements scattered throughout various versions of BlueChew's purported privacy policies (which do not disclose Defendants' conduct), and then (3) perform complex testing to inspect for tracking pixels, would create a heightened and unheard of standard that no court has endorsed. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1071 (N.D. Cal. 2021) (accepting allegations plaintiffs were diligent and finding, in any event, that they "were not obligated to investigate their claims until Plaintiffs had reason to suspect the[ir] existence"); *see also Josten v. Rite Aid Corp.*, 2019 WL 3718739, at *4 (S.D. Cal. Aug. 7, 2019) (explaining a reasonably diligent person would have a "hard time piecing [the misconduct] together" without "having the sophisticated knowledge" of the

relevant areas); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*, 2019 WL 6998668, at *3 (C.D. Cal. Sept. 5, 2019) (explaining "[r]easonable diligence does not require a person to scour the internet in search of any and all information").

The statute of limitations is also tolled by Defendant's fraudulent concealment of its misconduct. This doctrine applies when: "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown*, 525 F. Supp. 3d at 1070; *accord Fine v. Checcio*, 582 Pa. 253, 270 (2005) ("In addition to the discovery rule, the doctrine of fraudulent concealment serves to toll the running of the statute of limitations."); *In re O.E.M./Erie, Inc.*, 405 B.R. 779, 786 (Bankr. W.D. Pa. 2009). Here, Defendant affirmatively acted to mislead Plaintiffs by surreptitiously intercepting Plaintiffs' PHI while failing to disclose that it collected sensitive health data from third-party web pages. *See* SAC ¶ 24 ("At no point during the checkout process are patients alerted that information related to their prescription medication is being intercepted by third parties."); *id.* ¶ 13 (Defendant "committed the interceptions at issue without Plaintiffs' knowledge, consent, or express written authorization."); *id.* ¶ 111.

For the foregoing reasons, Plaintiffs' claims are timely.

### C. Plaintiffs Plausibly State Their Claims Under CIPA and WESCA

#### 1. Plaintiffs Did Not Consent to Google's Collection of Their Private Health Information

As this Court previously noted, Google bears the burden of establishing consent on a motion to dismiss. MTD Order at 6; *see also Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1253 (N.D. Cal. 2024); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("Google bears the burden of proof on consent."). Also, as this Court previously found, BlueChew's pre-2024 privacy policies did not "explicitly notify" Plaintiffs and class members of the conduct at issue, namely Google intercepting Plaintiffs' and class members personally identifiable PHI. MTD Order at 8. Google nonetheless persists in raising four consent-related arguments surrounding the

BlueChew privacy policies, each of which lack merit.[2]

***First***, while Google purports not to challenge the Court's MTD Order (MTD at 11), it in fact does so, arguing that BlueChew's privacy policies "disclosed that others would be making connections, so to speak, with the means of communication between users and BlueChew." MTD at 12. That is wrong. This Court has already found that BlueChew's pre-2024 privacy policies do not establish consent because they did not "explicitly notify" Plaintiffs of the practice at issue. MTD Order at 8; *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."); *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("However . . . any consent with respect to the processing and sending of messages itself does not necessarily constitute consent to the specific practice alleged in this case—that is, the scanning of message content for use in targeted advertising.").

The pre-2024 BlueChew privacy policies expressly state that a user's health information would not be disclosed: "We do not share your personal information with these third parties [*i.e.*, Google]." Corbo Dec., Ex. 5-A (ECF No. 62-7), Ex. 5-B (ECF No. 62-8), Ex. 5-C (ECF No. 62-9), Ex. 5-D (ECF No. 62-10), Ex. 5-E (ECF No. 62-10). Nor do BlueChew's privacy policies disclose that a user's PII would be shared with Google for its targeted advertising products. *Id.* Plaintiffs had no reason to believe that Google Analytics would be operating on webpages where they shared PII, or that Google would be "making connections" with such webpages. This is true even if the privacy policies disclosed that tracking technology would be used on more general webpages on the Website, as tracking technology is web page specific.[3] Defendant fails to demonstrate that

[2] As a threshold matter, this Court should not reach the substance of the pre-2024 BlueChew privacy policies because Plaintiffs do not reference the BlueChew Privacy Policy in the SAC and specifically allege that at "no point during the checkout process are patients alerted that information related to their prescription medication is being intercepted by third parties." SAC ¶ 24. As such, Defendant's argument, which improperly relies on documents extraneous to the pleadings, is belied by Plaintiffs' allegations. *See Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1196 (N.D. Cal. 2024). Further, what a reasonable consumer would believe if they were on notice of the privacy statements at issue cannot be determined at this stage. *See*, *e.g.*, *Fan v. NBA Properties Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021).

[3] Clause 1 of Section 631(a) does not contain an element of lack of consent. Google argues that clause 1 of Section 631(a) is not applicable to the internet. MTD at 12. However, courts have found that clause 1 of Section 631(a) applies to internet communications. *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *8 (S.D. Cal. Jan. 12, 2024).

BlueChew's pre-2024 privacy policies establish consent for Google's conduct.

***Second***, Google argues that "while the privacy policy does not explicitly state that third parties would 'read' the 'contents' of Plaintiffs' communications while they were in transit to BlueChew, that neither occurred, nor does Plaintiff allege it occurred." MTD at 12. This is not a consent argument, it is substantive attack on Plaintiffs' CIPA and WESCA claims, and is more fully addressed below. Even so, Plaintiffs do allege that Google, through use of Google Analytics, intercepted their PHI in real time and read or attempted to read the same while in transit. *See* SAC ¶¶ 67-69. Google's interception of Plaintiffs' personally identifiable health information was without consent. *Id.* ¶¶ 6, 12, 76, 101-02, 114, 130; *see also* MTD Order at 8.

***Third***, Google argues that the pre-2024 BlueChew privacy policies disclose the use of advertising cookies. MTD at 12. But as this Court found, there is no explicit notification by BlueChew that it would share health information with Google. In fact, the very same privacy policy cited by Google explicitly warrants the opposite. Corbo Dec., Ex. 5-A (ECF No. 62-7), Ex. 5-B (ECF No. 62-8), Ex. 5-C (ECF No. 62-9), Ex. 5-D (ECF No. 62-10), Ex. 5-E (ECF No. 62-10) ("We do not share your personal information with these third parties [*i.e.* Google]."). As such, Defendant fails to demonstrate that any Plaintiff consented to the conduct at issue here prior to BlueChew publishing its August 2024 privacy policy.

As to clause 3 of Section 631, Google argues that "what must be 'used' under CIPA [regarding clause 3] is data acquired by violations of the first two clauses of section 631. Such violations are absent here, rendering consent irrelevant for purposes of clause 3." MTD at 12. As set forth herein, Plaintiffs adequately plead a claim under each clause of CIPA, so Google's argument under clause 3 necessarily fails. Plaintiffs plausibly allege that Google used the unlawfully intercepted information for use in its targeted advertising products, thereby violating the third clause of CIPA. SAC ¶¶ 5, 8, 10, 13, 74, 115.

***Finally***, Google argues that "the data uses disclosed in the privacy policy could not have been accomplished without creating a record of the communications." MTD at 13. Once again, this is a substantive attack on Plaintiffs' CIPA § 632 claim, which fails because, as this Court has held, improper disclosure of private health information input onto a webpage violates CIPA § 632.

*GoodRx*, 2025 WL 2052302, at *14. Courts consistently recognize that individuals have a reasonable expectation of privacy in the type of medical data Defendants intercepted here. *See Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023); *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of California*, 2015 WL 13273308, at *12 (C.D. Cal. July 29, 2015); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 926 (S.D. Cal. 2020) (recognizing reasonable expectation of privacy in health data"); *Brown*, 525 F. Supp. 3d at 1074 (recognizing confidential nature of "private browsing session[s]"); *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022).

Defendant argues that the pre-2024 BlueChew privacy policies "disclosed the sharing of information with third parties, which necessarily implicates a record of communications." MTD at 13. That argument fails for the same reason as Defendant's CIPA § 631 arguments because Plaintiffs had no reason to believe that pages in which they were inserting personally identifiable PHI would be transmitting their information to Google. This is especially true given that BlueChew specifically represented in its pre-2024 privacy policies that it would not share health information with third parties such as Google. Corbo Dec., Ex. 5-A (ECF No. 62-7), Ex. 5-B (ECF No. 62-8), Ex. 5-C (ECF No. 62-9), Ex. 5-D (ECF No. 62-10), Ex. 5-E (ECF No. 62-10). In short, as this Court already found, BlueChew's pre-2024 privacy policies failed to explicitly notify Plaintiffs of the conduct at issue, and Google has failed to carry its burden to establish consent. MTD Order at 8.

Google continues that another statute, the California Consumer Privacy Act, Cal. Civ. Code § 1798.140, *et seq*. ("CCPA"), allows "websites like BlueChew to make categorical disclosure of the *types* of data to be collected and the *types* of third parties with whom data may be shared." MTD at 13 (emphasis in original). But case law regarding the consent required for sensitive information under CIPA is clear—it requires, as this Court has recognized, an explicit notification of the conduct at issue, which BlueChew failed to provide. MTD Order at 8; *see also Calhoun*, 526 F. Supp. 3d at 620; *In re Google Inc.*, 2013 WL 5423918, at *13; *Campbell*, 77 F. Supp. 3d at 848. Even if this Court were to construe CIPA and the CCPA together, BlueChew explicitly stated it would not

transmit sensitive information, such as health information, to Googe, and therefore failed to identify the disclosed information even by category. Corbo Dec., Ex. 5-A (ECF No. 62-7), Ex. 5-B (ECF No. 62-8), Ex. 5-C (ECF No. 62-9), Ex. 5-D (ECF No. 62-10), Ex. 5-E (ECF No. 62-10).

Lastly, Google argues, without pointing to any evidence, that "Plaintiffs unequivocally consented to [BlueChew's] earlier privacy policies." MTD at 14. At minimum, that is a question of fact. Google has not presented evidence of mutual assent between Plaintiffs and BlueChew regarding any version of BlueChew's privacy policies, and the law is clear that the mere existence of a privacy policy does not establish mutual assent. *Smith*, 735 F. Supp. 3d at 1196.[4] Even if Google were to establish that Plaintiffs assented to the pre-2024 BlueChew privacy policies, this Court has already concluded that said policies fail to establish consent under CIPA. MTD Order at 8.

**2. Plaintiffs Adequately Allege Intent**

Defendant argues that Plaintiffs "cannot plausibly allege that Google *intended* to receive PII or PHI," warranting CIPA and WESCA claim dismissal. MTD at 15 (emphasis in original). Not so.

Analyzing intent under the CIPA involves a similar analysis to the federal Wiretap Act. *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024) (Martínez-Olguín, J.) ("The analysis for a violation of CIPA is the same analysis for a violation of the federal Wiretap Act."). For CIPA § 632(a), the statute punishes "a person who intends to make a recording of a confidential communication." *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018) (cleaned up). Similarly, "WESCA is Pennsylvania's state law equivalent to the Federal Wiretap Act." *Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *12 (E.D. Pa. Nov. 25, 2024); *see also Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125-26 (3d Cir. 2022). Therefore, the intent analysis under CIPA and WESCA is the same.

As a threshold matter, "[w]hether a person possesses the requisite intent under CIPA is generally a question of fact." *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024); *see also Smith*, 735 F. Supp. 3d at 1198 ("While Google argues that judicially

[4] Google relies on *Perez v. Romantix Online, Inc.*, 2025 WL 3085786, at *2 (N.D. Cal. Oct. 27, 2025), but there, the plaintiffs affirmatively relied on "the fact that Romantix.com has a Privacy Policy, and Plaintiffs quote that policy as part of their complaint." Here, Plaintiffs' SAC does not rely on, nor does it refer to, BlueChew's privacy policies.

noticeable policy documents suggest that Google did not actually want to receive personally identifiable information and expressly prohibited developers from transmitting such data, this presents a question of fact that the Court cannot resolve at this stage."); *Hudson v. Superior Ct.*, 7 Cal. App. 5th 1165, 1171 (2017). Pennsylvania courts have reached the same conclusion. *United States v. Fumo*, 628 F. Supp. 2d 573, 592 (E.D. Pa. 2007) ("Intent is a question of fact, to be determined by a jury."). Additionally, "interceptions may be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020); *see also Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1044 (N.D. Cal. 2014) (collecting cases).

Here, Plaintiffs adequately allege knowledge and intent under each applicable cause of action. *See* SAC ¶¶ 5, 13, 99, 101-02, 120, 130-31. Plaintiffs allege that Google Analytics is designed for the purpose of recording and analyzing communications between Defendant's customers (like BlueChew) and consumers (like Plaintiffs and class members). *Id.* ¶¶ 59-77; *see also Gladstone*, 739 F. Supp. 3d at 860 (finding intent element under CIPA § 631(a) and § 632(a) satisfied where "[t]he SAC alleges that Amazon Connect is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities"). Defendant also knew that Google Analytics may intercept sensitive data as evidenced by its own internal policies, which specifically acknowledge that Google Analytics could be configured to share health information with Google. *See* Corbo Dec., Ex. 3 (ECF No. 62-5). Defendant's knowledge is also gleaned from its involvement in other litigations in which its tracking technologies have been used to intercept and transmit to Defendant sensitive information. *See Brown*, 525 F. Supp. 3d 1049; *Smith*, 735 F. Supp. 3d 1188; *Calhoun*, 526 F. Supp. 3d 605; *GoodRx*, 2025 WL 2052302.

Defendant is aware that the information it intercepts on health websites, like the Website here, contains legally protected information, as Google knows what information it receives from Google Analytics and from which application it received the information. Despite the repeated instances of intercepting legally protected information without authorization or consent, Defendant has failed to take remedial action to prevent sensitive health information from being transmitted to

it via its tracking technologies, including in this case. Defendant has also failed to destroy the protected health information it received from Plaintiffs (SAC ¶ 117), evidencing intent. *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 827–28 ("Defendants' failure to rectify the defect . . . or destroy the recordings . . . could plausibly be considered 'intentional' rather than 'a result of accident or mistake.'"). On the contrary, Defendant has affirmatively *used* the PHI it intercepted via Google Analytics to improve its targeted advertising products. SAC ¶¶ 5, 8, 10, 73-74. In short, Defendant's interception of Plaintiffs' and class members' confidential health information was no accident. It was intended by Defendant. Otherwise, Defendant would not have used the intercepted confidential information to improve its targeted advertising products. *Id.* ¶¶ 5, 73-74.

As this Court found in *GoodRx*, where, as here, Plaintiffs allege Google "knew the incorporation of [its Google Analytics] on websites and mobile apps resulted in the interception of sensitive health information, that [it] did not take any steps to prevent the interception of this data, that [its] conduct was intentional despite knowing about the resulting privacy violations to Plaintiffs, and that [Google] proceeded to generate billions in advertising revenue based on the information intercepted by its tracking technologies . . . are sufficient to plausibly plead intent." 2025 WL 2052302, at *8. Plaintiffs plead such facts here. SAC ¶ 13.

Defendant further argues that its Terms of Service exonerate it from liability. MTD at 15-16. But this argument was squarely rejected by this Court in *GoodRx*: "while Meta . . . may instruct developers not to send [PHI], if, once received, Meta . . . make[s] no effort to prevent the uploading of that information into their data repositories, take[s] no steps to filter it out once the data is uploaded to their servers, or simply proceed[s] to monetize that information knowing developers were sending sensitive health information in violation of instructions against it, a jury may find such acts indicative of intent." 2025 WL 2052302, at *8 (collecting cases).

The same analysis applies here. The point is not that Google's terms exist. The point is that Defendant acts contrary to its stated position by collecting sensitive data through the means set forth above. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1003 (N.D. Cal. 2024). Defendant's intent is, at best, a question of fact. *Id.*; *Gladstone*, 739 F. Supp. 3d at 860 ("The Court is not convinced that [Defendant's] inclusion of a catch-all provision requiring its customers to

comply with the law generally is enough to satisfy its legal obligations under CIPA.") (cleaned up).

Defendant further argues that it was BlueChew, "not Google, who must incorporate the code and configure [Google Analytics] to collect the data the website operator wants." MTD at 15. But as stated above, Defendant obtained and used the intercepted health information for its own benefit, which strongly evidences intent. SAC ¶¶ 5, 8, 10, 73-74.

Defendant cites *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 836 (N.D. Cal. 2024) ("*Google*") (MTD at 18-19), where the court granted a motion to dismiss because the plaintiffs' allegations were "too vague to support an inference that the providers have, contrary to [Google's] admonition [not to use the pixel to transmit health information], caused Google to receive the plaintiffs' personal health information" and because the plaintiffs did not "adequately allege that Google intends to receive this information, or that Google intends to feed the information into its own advertising machinery." *Id.* at 836. But numerous other cases in this District have correctly departed from the reasoning in *Google*, including this Court in *GoodRx*. 2025 WL 2052302, at *8; *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1003; *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *11 (N.D. Cal. Aug. 22, 2023) (finding intent met and rejecting many of the same arguments raised by Defendant here).

The weight of authority favors this Court's analysis in *GoodRx* and Judge Orrick's analysis in *Meta*, which this Court should apply here. Even if this Court were inclined to follow the decision in *Google*, it is distinguishable. In *Google*, there was no allegation that "Google intends to feed the information into its own advertising machinery." 741 F. Supp. 3d at 836. Here, Plaintiffs allege that Defendant knowingly receives the confidential health information from BlueChew and integrates it into its proprietary advertising products for its own gain. SAC ¶¶ 5, 8, 10, 73-74.[5]

[5] Contrary to Google's assertions (MTD at 16 n.6), CIPA and WESCA claims are subject to Rule 8 pleading standards, not Rule 9(b). *Smith*, 735 F. Supp. at 1198 ("Because plaintiffs are directly challenging Google's alleged data collection rather than challenging any potentially fraudulent or misleading representations about this collection, their claims do not sound in fraud and are not subject to Rule 9(b)."). Even under the heightened strictures of Rule 9(b) (which do not apply here as Plaintiffs' claims are governed by Rule 8), "intent, knowledge, and other conditions of a person's mind may be alleged generally."

### 3. Plaintiffs Adequately Allege That Google Intercepted The "Contents" of Their Communication with BlueChew

Google concedes, Plaintiff M.D. explicitly alleges that "Defendants, willfully and without the consent of Plaintiff M.D. and California Class Members, read or attempted to read, or learn the contents or meaning of Plaintiff M.D.'s and California Class Members' communications to BlueChew while the communications are in transit or passing over any wire, line or able, or were being received at any place within California when it intercepted Plaintiff M.D.'s and California Class Members' communications and data with BlueChew." SAC ¶ 102; *see also id.* ¶¶ 130-31 (similar allegations related to Plaintiff O.F.'s WESCA claim).

CIPA § 631(a) prohibits the unauthorized disclosure of the contents of communications. Cal. Penal Code § 631(a). As used in § 631(a), "content" refers to the "intended message conveyed by the communication." *In re Meta Pixel*, 647 F. Supp. 3d at 795. The term "'contents' is defined as 'any information concerning the substance, purport, or meaning of [a] communication.'" *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (internal citations omitted). "[C]ontent" includes "the names of buttons clicked," *see In re Meta Pixel*, 647 F. Supp. 3d at 795, along with "search queries" and "the particular document" requested. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 937-39 (N.D. Cal. 2023); *see also Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("Revitch requested information from Moosejaw by clicking on items of interest; Moosejaw responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication."). "Content" may also include "full-string, detailed URLs" that include "'the particular document within a website that a person views[.]'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605 (9th Cir. 2020); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015).

Google argues that Plaintiff M.D.'s "allegations that Google received his contact and purchase information amount to no more than allegations that Google received record information—rather than the contents of any communication—from his time on the BlueChew website." MTD at 17. But Plaintiffs do not allege that Google intercepted mere "purchase information"; rather, Plaintiffs allege that Google intercepted their PII in conjunction with their PHI, and that their PHI

(*i.e.* the prescription medications viewed and purchased and associated medical conditions) constituted the contents of the communication. SAC ¶¶ 18-24, 67-69. For example, when consumers, including Plaintiffs, purchased prescription medication for erectile dysfunction through BlueChew's Website, Google intercepted the contents of those communications. SAC ¶¶ 67-70. Under California law, such information is the "content" of the communication, as opposed to mere record information, because it is the "intended message of the communication." *In re Meta Pixel*, 647 F. Supp. 3d at 795; *see also Revitch*, 2019 WL 5485330, at *1. Each of these interceptions related to Plaintiffs' and class members' erectile dysfunction treatment is tethered to their PII, including their first and last name, email address, and date of birth, which Google uses for identification purposes to direct its targeted advertising. SAC ¶¶ 5, 8, 10, 13, 74. Defendant's argument that such information is merely "record" information lacks merit.

Next, Google specifically challenges Plaintiff M.D.'s CIPA claim, arguing that "the SAC does not allege that Google 'read' Plaintiff M.D.'s communications *while they were in transit*[.]" MTD at 17 (emphasis in original). Plaintiffs allege that "Google Analytics is incorporated into third-party websites and apps, including the Website, by adding a small piece of JavaScript measurement code to each page on the site. This code immediately intercepts a user's interaction with the webpage every time the user visits it, including what pages they visit and what they click on." SAC ¶ 67. Google Analytics reads or attempts to read the communications while in transit by operation of Google Analytics. SAC ¶¶ 71-72, 102 (demonstrating how Google Analytics code reads or attempts to read the contents of user's communications with the Website while in transit). Courts have found similar allegations to those in the SAC to be sufficient to find that Google Analytics intercepts, reads, or attempts to read user inputs while in transit. *R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994, at *2–5 (N.D. Cal. June 23, 2025); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014).

To the extent Defendant seeks to make similar arguments regarding WESCA, there is no similar requirement under WESCA that the contents of the communication must be read or attempted to be read in transit. WESCA is violated where Defendant "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or

oral communication." 18 Pa. Stat. § 5703(1). WESCA defines "intercept" as the "[a]ural or other ***acquisition*** of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device." 18 Pa. Stat. § 5702 (emphasis added). The SAC clearly alleges that Google, via Google Analytics, intercepted (*i.e.* acquired) Plaintiffs' and class members' communications with the Website in a contemporaneous manner and "intended to learn the meaning of the content the patient requested while on the Website." SAC ¶¶ 71-72, 130-31. Plaintiff O.F. therefore adequately states a WESCA claim.

**4. Google Was an Eavesdropper to Plaintiffs' Communications**

According to Defendant, Plaintiff's CIPA Section 631 claim fails because Plaintiff only alleges that Defendant acted as a mere "vendor" to BlueChew, and therefore "cannot be liable under Section 631." MTD at 18-19. That is wrong.

*First*, the question of whether Defendant is a "vendor" or a third-party eavesdropper is a question of fact not suitable for determination at this stage. *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *7 (S.D. Cal. Jan. 12, 2024); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 942 (S.D. Cal. 2024).

*Second*, Google wrongly argues that its "only action" is to collect information for BlueChew's benefit and "not for Google's own benefit." MTD at 19. Google's argument is belied by the allegations in the SAC (¶¶ 5, 8, 10, 13, 74). Specifically, Plaintiffs allege that "[a]fter the data has been processed and stored in the database, Google uses this data to generate reports to help analyze the data from the webpages." *Id.* ¶ 72. "In addition to using the data collected through Google Analytics to provide marketing and analytics services, Google also uses the data collected through Google Analytics to improve its ad targeting capabilities and data points on users." *Id.* ¶ 73. "As a result, Google intercepted patients' interactions on the Website, including their PII and PHI. Google received at least 'Custom Events' and URLs that disclosed the name of the prescription medication and the medication quantity and dosage. Google also received additional PII, including first and last name, email address, and date of birth, that uniquely identify the patient, as shown below in Figures 8 and 9." *Id.* ¶ 75. Thus, "[w]hether or not a third-party service incapable of using the data it collects might avoid liability under Section 631, the complaint alleges that Google *does*

read and use Google Analytics data." *Smith*, 735 F. Supp. 3d at 1197 (emphasis in original). Defendant is not a mere agent for BlueChew; Defendant uses the intercepted data for its own benefit.

Defendant's reliance on *Noom* and *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *17 (N.D. Cal. Apr. 11, 2024) is unavailing because, unlike in those cases, Plaintiff indeed alleges Google uses the collected information for its own purposes and benefit, notwithstanding its "policies and procedures." SAC ¶¶ 5, 8, 10, 13, 74; *Smith*, 735 F. Supp. 3d at 1198 ("Plaintiffs' allegations, which must be taken as true, suggest that Google is not simply a vendor of a tool that websites can use to 'record' their own users' interactions on their websites[.]"); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F.Supp.3d 969, 980 (C.D. Cal. 2023).

**5. Plaintiffs' Communications Were Confidential**

Google argues that "Plaintiffs cannot plausibly plead that any of the at-issue communications were confidential because Plaintiffs knew their communications with BlueChew would be 'overheard.'" MTD at 20. That is wrong. As a threshold matter, "[t]he issue whether there exists a reasonable expectation that no one is secretly recording or listening to a phone conversation is generally a question of fact." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1396 (2011); *see also Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 169 (2003).

Because California courts have made clear that whether a reasonable expectation of privacy exists is a question of fact, it is inappropriate for the court to decide such a motion to dismiss absent a clearly deficient pleading. Here, "Plaintiff M.D.'s and California Class Members' communications to BlueChew, including their sensitive personal and health information, such as information related to their prescription medications, were confidential communications for purposes of § 632, because Plaintiff M.D. and California Class Members had an objectively reasonable expectation of privacy in this data." SAC ¶ 110. Further, "Plaintiff M.D. and California Class Members expected their communications to BlueChew to be confined to BlueChew due to the confidential nature of those communications. Plaintiff M.D. and California Class Members did not expect third parties, specifically Facebook or Google, to secretly eavesdrop upon or record this information and their communications." *Id.* ¶ 111.

As this Court recognized in *GoodRx*, where, as here, Plaintiffs interacted with an online

platform on which they sought treatment for specific conditions, and disclosed symptoms, such communications are confidential communication under CIPA § 632. 2025 WL 2052302, at *14 ("Despite the Moving Defendants' contention to the contrary, Plaintiffs' interactions with the GoodRx platform – by seeking discounts on specific prescriptions, seeking treatment for specific conditions, and disclosing symptoms – constitute confidential communications."). Courts consistently recognize that individuals have a reasonable expectation of privacy in the type of medical data Defendants intercepted here. *See Doe v. Regents of Univ. of Cal.*, 672 F. Supp. 3d 813; *Federated Univ. Police Officers' Ass'n*, 2015 WL 13273308, at *12; *Stasi*, 501 F. Supp. 3d at 926; *Brown*, 525 F. Supp. 3d at 1074; *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022).

Google argues that "Plaintiffs didn't just have reason to expect their communications *may* be overheard or recorded, they knew with certainty that it would occur, because each iteration of the privacy policy notified Plaintiffs of a host of third parties that may receive or record the communication." MTD at 21 (emphasis in original). Google's argument boils down to where Google Analytics is run on *any* page of a website, that confidentiality cannot be alleged over any information input on said website. Not only is Google's argument at odds with this Court's decision in *GoodRx*, but it would practically eliminate any website communication from being confidential. It is perfectly reasonable for a patient of a telehealth platform to expect that even if general pages have tracking technology, those pages in which the user must submit confidential health information will be kept private. This expectation is consistent with BlueChew's pre-2024 privacy policies that explicitly state health information would not be shared with third parties. Corbo Dec., Ex. 5-A (ECF No. 62-7), Ex. 5-B (ECF No. 62-8), Ex. 5-C (ECF No. 62-9), Ex. 5-D (ECF No. 62-10), Ex. 5-E (ECF No. 62-10). Therefore, consistent with this Court's decision in *GoodRx*, Plaintiffs had a reasonable expectation that the personally identifiable PII they shared would be kept confidential.

### D. Plaintiff M.D. States a Claim for Invasion of Privacy Under the California Constitution

#### 1. Plaintiff M.D. Has a Reasonable Expectation of Privacy

To state a claim for invasion of privacy under the California Constitution, Plaintiff "must

show that (1) [he] possess[es] a legally protected privacy interest, (2) [he] maintain[s] a reasonable expectation of privacy, and (3) the intrusion is 'so serious ... as to constitute an egregious breach of the social norms' such that the breach is 'highly offensive.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation omitted).

Defendant first argues that "Plaintiff M.D. lacked a legally protected privacy interest" in the seeking and purchase of erectile dysfunction medication because while "M.D. alleges that BlueChew users may be 'asked a range of health-related questions' while using the website . . . there is no allegation that any answers that a user might provide to such questions constitute the data transmitted to Google." MTD at 22. But Defendant notably overlooks Plaintiff's plethora of allegations regarding the sensitive data transmitted to Google. *See*, *e.g.*, SAC ¶¶ 67-77; *id.* ¶ 68 ("Google is intercepting patients' PII, including first and last name, date of birth, and email address when they are completing the BlueChew medical profile."); *id.* ¶ 69 ("As shown in Figure 9, Google is intercepting information related to patients' prescription medications."); *id.* ¶ 75 ("Google received at least 'Custom Events' and URLs that disclosed the name of the prescription medication and the medication quantity and dosage."); *id.* ¶ 76 ("Plaintiffs and Class Members provided their PII, PHI, and other sensitive data to BlueChew to obtain medical prescriptions."). Further, Plaintiffs explicitly detail how such information is legally protected. *See* SAC ¶¶ 78-83 (citing various laws entitling Plaintiffs "to privacy in their [PHI] and confidential communications").

Next, Defendant claims that Plaintiff M.D. "does not have a protected privacy interest" in the "pseudonymous identifier created by BlueChew to denote a particular medication and dosage . . . [because it] is unintelligible, is not alleged to have any meaning to Google, and it is not fairly characterized as protected medical information." MTD at 22. This is nothing but a self-serving attempt to mischaracterize Plaintiffs' allegations. Plaintiffs allege that "[t]hese unique IDs will indicate not only the type of medication being purchased by patients, but also the quantity and dosage." SAC ¶ 70. The indications described refer to the process by which Google intercepts, obtains, and understands the data. Plaintiffs further allege that "Google received at least 'Custom Events' and URLs that disclosed the name of the prescription medication and the medication quantity and dosage." *Id.* ¶ 75. That is sufficient. *In re Meta Pixel*, 647 F. Supp. 3d at 801; *St. Aubin v.*

*Carbon Health Techs., Inc.*, 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024).

**2. Defendant's Interception Is Highly Offensive**

Defendant claims Plaintiff M.D. cannot establish its intrusion was an egregious breach of social norms because, "Plaintiff alleges that Google collected his name, birthday, and email address." MTD at 23. Here too, this ignores the allegation that Defendant intercepts information pertaining to Plaintiff's purchase of erectile dysfunction medication, including "the type of medication being purchased by patients" in addition to "the quantity and dosage." SAC ¶¶ 69-70.

Defendant's conduct was highly offensive. As a threshold matter, "questions of whether conduct is 'egregious,' 'offensive,' or violates 'social norms' tend by their very nature to be subjective . . . [and] these questions are typically more appropriately resolved by a jury." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139 (E.D. Cal. 2021); *see also In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021). Indeed, the Ninth Circuit held that this determination "requires a holistic consideration of factors" and raises "an issue that cannot be resolved at the pleading stage." *Facebook Internet Tracking*, 956 F.3d at 606.

Here, Plaintiff M.D. has identified sufficient facts to survive a motion to dismiss because he pleads that Defendant surreptitiously collected his private health information in unexpected ways. Indeed, under similar circumstances, the court in *In re Meta Pixel Healthcare Litig.* found:

> There is support for plaintiffs' position that Meta has behaved egregiously. By enacting criminal and civil statutes forbidding the disclosure of protected health information without proper authorization, Congress has made policy decisions regarding the importance of safekeeping this information. … Courts have also found that taking personal contact information without consent could be deemed highly offensive. … Meta's policies forbid the transmission of health-related information, which the Ninth Circuit has found to be relevant in the "highly offensive" inquiry. … These arguments have merit.

647 F. Supp. 3d at 800-01 (citations omitted); *see also M.G.*, 2024 WL 4219992, at *6 (Martínez-Olguín, J.) (egregious similar conduct raises "a factual dispute and Headway has not met its burden to show that the information disclosed here – M.G.'s provider preference, appointment details, and search concerning mental health conditions – cannot allege a serious invasion of privacy").

The same analysis applies here. Defendant's conduct in surreptitiously intercepting Plaintiff M.D.'s private health information—pertaining to the purchase of erectile dysfunction medication—

to use for its own advertising purposes, is highly offensive. At minimum, a reasonable jury could conclude that it is highly offensive. Therefore, Defendant's motion to dismiss Plaintiff M.D.'s claim of invasion of privacy under California's Constitution should be denied. *See R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 893 (C.D. Cal. 2024); *St. Aubin*, 2024 WL 4369675, at *13 ("This Court agrees with other courts that have refused to dismiss invasion of privacy claims at the motion to dismiss stage where, as here, a data breach involved medical information, because the disclosure of such information is more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive.'") (citation omitted).

Last, Defendant argues "[e]ven if BlueChew chose to store such information on a Google server, that is not enough to plausibly indicate that Google made independent use of it, or even became aware it existed." MTD at 23. Numerous courts have rejected similar attempts by similar defendants to distance themselves from liability for their tracking tools by pointing to third-party developers. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023); *Gershzon*, 2023 WL 5420234, at *11.

Further, CIPA § 632 does not define "uses," and the dictionary defines "use" as "to put into action or service" or "to benefit from the use of."[6] Here, Plaintiffs allege that Google used Google's software code to eavesdrop on their confidential communications with BlueChew. SAC ¶¶ 67-76. While BlueChew implemented the software, Google designed its software for the purpose of capturing user data to incorporate into its targeted advertising products (SAC ¶¶ 13, 103, 111, 115) and freely provides the software to developers to incorporate onto third-party web properties. In short, Google designed this technology, put it into action by making it available to website developers, and benefitted from its use by collecting data useful to its targeted advertising products.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss. If the Court concludes that any portion of Plaintiffs' SAC is deficient, Plaintiffs respectfully request leave to cure any such deficiencies.

---

[6] *See* https://www.merriam-webster.com/dictionary/use.

Dated: January 22, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *<u>/s/ L. Timothy Fisher</u>*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiffs*