**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

M.D., O.F., and J.P., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOOGLE LLC and META PLATFORMS, INC.,

Defendants.

Case No. 3:24-cv-06369-AMO

**PLAINTIFFS' OPPOSITION TO DEFENDANT META PLATFORMS, INC.'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

Hearing: April 30, 2026
Time: 2:00 p.m.
Location: Courtroom 10—19th Floor
Judge: Hon. Araceli Martínez-Olguín

## TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

III. ARGUMENT .......... 3

A. Plaintiffs Did Not Consent to Meta's Interception of Their Health Data .......... 3

B. Plaintiffs' CIPA and WESCA Claims Are Not Time-Barred .......... 10

C. Meta Eavesdropped on Plaintiffs' Communications with BlueChew .......... 13

D. Plaintiffs Adequately Allege Intent .......... 16

E. Plaintiffs' California and Pennsylvania Claims Are Adequately Pleaded .......... 20

IV. CONCLUSION .......... 25

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**


*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014)........ 16

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025)........ 23

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)........ 12, 13, 23

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021)........ 7

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024)........ 10

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)........ 7

*D'Angelo v. Penny OpCo, LLC*,
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)........ 14

*Deek Inv., L.P. v. Murray*,
157 A.3d 491 (Pa. 2017)........ 11

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)........ 19

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025)........ passim

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023)........ passim

*Doe v. Microsoft Corp.*,
2023 WL 8780879 n.6 (W.D. Wash. Dec. 19, 2023)........ 12

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023)........ 23

*Est. of Gorg v. Great Am. Ins. Co. of Cincinnati Ohio*,
2012 WL 3011728 (M.D. Pa. May 25, 2012)........ 10

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of California*,
2015 WL 13273308 (C.D. Cal. July 29, 2015)........ 23

*Fine v. Checcio*,
582 Pa. 253 (2005) ........ 13

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 22

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........ 11

*Franklin v. Ocwen Loan Servicing, LLC*,
2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) ........ 12

*Frio v. Superior Ct.*,
203 Cal. App. 3d 1480 (1988) ........ 22

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ........ 2, 15, 19

*Gladstone v. Amazon Web Servs., Inc.*,
739 F. Supp. 3d 846 (W.D. Wash. 2024) ........ passim

*Gleason v. Borough of Moosic*,
609 Pa. 353 (2011) ........ 11

*Hudson v. Superior Ct.*,
7 Cal. App. 5th 1165 (2017) ........ 17

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 20

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 15, 24, 25

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*,
2019 WL 6998668 (C.D. Cal. Sept. 5, 2019) ........ 12

*In re Glumetza Antitrust Litig.*,
611 F. Supp. 3d 848 (N.D. Cal. 2020) ........ 13

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 16, 17

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ........ 7

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) ........ 24

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 8, 23, 25

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ... 16, 18, 19

*In re O.E.M./Erie, Inc.*,
405 B.R. 779 (Bankr. W.D. Pa. 2009) ... 13

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ... 6

*Ingrao v. AddShoppers, Inc.*,
2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ... 16

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ... 20, 21

*Josten v. Rite Aid Corp.*,
2019 WL 3718739 (S.D. Cal. Aug. 7, 2019) ... 12

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ... 24

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011) ... 22

*Kwai Fun Wong v. Beebe*,
732 F.3d 1030 (9th Cir. 2013) ... 11

*Libman v. Apple, Inc.*,
2024 WL 4314791 (N.D. Cal. Sept. 26, 2024) ... 20

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003) ... 22

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) ... 9

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ... 20

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ... 16, 25

*Maier v. Bucks Cnty.*,
2019 WL 689206 (E.D. Pa. Feb. 19, 2019) ... 11

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir. 2008) ... 4, 6

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ... 24

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 22, 24

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .......... 22

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) .......... 23

*Ovando v. Cty. of Los Angeles*,
159 Cal. App. 4th 42 (2008) .......... 11

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) .......... 23

*Popa v. Harriet Carter Gifts, Inc.*,
52 F.4th 121 (3d Cir. 2022) .......... 16

*Popa v. Harriet Carter Gifts, Inc.*,
426 F. Supp. 3d 108 (W.D. Pa. 2019) .......... 8, 21

*R.C. v. Sussex Publishers, LLC*,
2025 WL 1735994 (N.D. Cal. June 23, 2025) .......... 14

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 21

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 15

*Rickwalder v. Meta Platforms, Inc.*,
2022 WL 22462351 (Cal. Super. Ct. Sep. 15, 2022) .......... 2

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .......... 14

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 21

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) .......... 16

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 9, 10

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 7, 16

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .......... 7

*SpiriTrust Lutheran v. Wagman Constr., Inc.*,
314 A.3d 894 (Penn. 2024) ........ 11

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 2

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) ........ 22

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 14

*United States v. Fumo*,
628 F. Supp. 2d 573 (E.D. Pa. 2007) ........ 17

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019) ........ 20

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) ........ 10

*Vonbergen v. Liberty Mut. Ins. Co.*,
705 F. Supp. 3d 440 (E.D. Pa. 2023) ........ 21

*Weatherly v. Universal Music Publ'g Grp.*,
125 Cal. App. 4th 913 (2004) ........ 12

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ........ 20

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) ........ 2

**STATUTES**

18 Pa. Cons. Stat. § 5701 ........ 1

18 Pa. Cons. Stat.. § 5702 ........ 20

18 U.S.C. § 2510 ........ 16

Cal. Penal Code § 631 ........ 14, 17

## I. INTRODUCTION

Plaintiffs M.D. and O.F. ("Plaintiffs") hereby oppose Defendant Meta Platforms, Inc.'s ("Defendant" or "Meta") Motion to Dismiss Second Amended Class Action Complaint (ECF No. 63) ("MTD"). Plaintiff M.D. plausibly states a claim under the California Invasion of Privacy Act ("CIPA") § 631(a) and § 632 and for invasion of privacy because Defendant intentionally, and without the consent of Plaintiffs and class members, intercepted sensitive and confidential health communications between Plaintiffs (and class members) and third party Dermacare, LLC d/b/a BlueChew ("BlueChew"), via the BlueChew website, www.bluechew.com (the "Website"). Plaintiff O.F. states a claim under the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701, *et seq.* ("WESCA") based on the same conduct.

BlueChew is an online health platform wherein registered users connect with health care providers for the diagnosis and treatment of erectile dysfunction. While Plaintiffs and class members reasonably believed and expected that their communications with BlueChew regarding these sensitive health issues would be kept confidential, they were not. Defendant's software, the Facebook Tracking Pixel, which was embedded on the BlueChew Website, captured users' interactions with the Website—including their personal information and information regarding the erectile dysfunction medications they purchased—and transmitted the information to Defendant. Defendant then used this information for its own benefit by incorporating it into its advertising machinery, placing Plaintiffs and class members into targeted audiences for advertisers of similar medications. Indeed, Plaintiffs in this case were retargeted and subject to advertising for erectile dysfunction medications because of Defendant's use of their confidential health information. Defendant makes the Facebook Tracking Pixel free for website owners to use for exactly that reason, so that it can receive valuable information from website interactions and then generate highly specific audience segments which it then uses to sell advertising. However, where, as here, protected health information is surreptitiously transmitted to Defendant without the consent of Plaintiffs and class members, it is unlawful.

Due to Defendant's unlawful conduct, Plaintiff M.D. brings this action on behalf of himself and "all natural persons in California who, during the class period, purchased medication on

www.bluechew.com." *See* Second Amended Class Action Complaint (ECF No. 58) ("SAC"), ¶ 84. Plaintiff O.F. brings claims on behalf of himself and an identical class in Pennsylvania. *Id.* ¶ 85.

Defendant now moves to dismiss Plaintiffs' claims. However, courts have rejected similar motions to dismiss in other cases involving the Facebook Tracking Pixel. *See Rickwalder v. Meta Platforms, Inc.*, 2022 WL 22462351 (Cal. Super. Ct. Sep. 15, 2022); *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041 (N.D. Cal. Dec. 30, 2024); *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *1 (N.D. Cal. Aug. 22, 2023); *see also St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *3 (N.D. Cal. Oct. 1, 2024) (rejecting similar arguments where the Facebook Tracking Pixel was used to intercept health information). The Court should deny Defendant's motion to dismiss.

## II. STATEMENT OF FACTS

BlueChew's Website allows registered users to connect with health care providers for the diagnosis and treatment of erectile dysfunction. SAC ¶ 2; ¶¶ 19-20, Figure 1. The Website offers patients discrete access to prescription erectile dysfunction medications. *Id.* In using the Website, Plaintiffs and class members provided protected health information to BlueChew for the purpose of obtaining medical treatment, including providing responses to a "medical profile" questionnaire to determine whether they qualify for erectile dysfunction medication. *Id.* ¶¶ 20-24, Figures 1-4. Plaintiffs and class members purchased erectile dysfunction medications. *Id.*

Despite being protected by federal and state law, and unbeknownst to Plaintiffs and Class Members, Defendant intercepted their sensitive health information conveyed through the Website using its Facebook Tracking Pixel, and other similar software. The data intercepted and collected included de-anonymized, prescription erectile dysfunction medications purchased by Plaintiffs and class members on the Website. *Id.* ¶¶ 3-4, 35, 39 (illustrating how the Facebook Tracking Pixel functions to intercept private health information from the Website). Plaintiffs' protected health information that Defendant intercepted was personally identifiable and Defendant used Plaintiffs' and class members' intercepted health information for its own benefit, namely for the purpose of targeted advertising. *Id.* ¶¶ 5, 35, 56. Examples of Defendant's interceptions from the Website clearly show that Defendant intercepted personally identifying information such as name, state of residence, email address, and various forms of protected health information. For example, Defendant

intercepted information showing that the BlueChew user registered on the Website, added a medication to their cart, and ultimately purchased the medication. *Id.* ¶ 39, Figures 5 and 6; *see also id.* ¶ 40 ("Through the Facebook Tracking Pixel, Defendant Facebook intercepted and recorded "AddToCart" and "CompleteRegistration" events, which detail information about which prescription the patient was purchasing on the Website."); *id.* ¶¶ 41-43. Regardless of whether Plaintiffs and class members are Facebook users, Defendant matches their prescription information to their identity using the PII and PHI they conveyed to BlueChew that was intercepted by Defendant. *Id.* ¶ 55.

At no point during the checkout process were users alerted that information related to their prescription medications was being intercepted by Defendant. *Id.* ¶ 24. At all relevant times, Plaintiffs and class members had a reasonable expectation of privacy as to the protected health information they transmitted to BlueChew because they reasonably believed the communications were between them and BlueChew, and they did not consent to Defendant's interception of their private health information. *Id.* ¶ 6; *see also id.* ¶ 12 (Defendant "committed the interceptions at issue without Plaintiffs' knowledge, consent, or express written authorization."); *id.* ¶¶ 58, 98.

Plaintiff M.D. is a California citizen who was prescribed and ordered Sildenafil erectile dysfunction medication through the Website. *Id.* ¶ 7. Unbeknownst to Plaintiff M.D., Defendant intercepted his PHI related to his prescription medication using the Facebook Tracking Pixel. *Id.* In addition to information related to his prescription medication, Defendant also intercepted Plaintiff M.D.'s PII, including his first and last name, email address, and date of birth. *Id.* ¶ 8. Plaintiff O.F., a Pennsylvania citizen, makes nearly identical allegations. *Id.* ¶¶ 9-10. Plaintiffs did not discover Defendant's surreptitious interception of their personal health information until September 2024. *Id.* ¶¶ 7, 9. Defendant knew that the incorporation of its software onto the Website would result in its interception of PHI and PII of Plaintiffs and class members. *Id.* ¶ 14. The continued incorporation of the Facebook Tracking Pixel on the Website evidences Defendant's intent to intercept this protected and sensitive health data due to the value it holds for targeted advertising. *Id.* ¶¶ 99-103.

## III. ARGUMENT

### A. Plaintiffs Did Not Consent to Meta's Interception of Their Health Data

In its first MTD Order, this Court explicitly found that BlueChew's pre-June 2024 privacy

policies failed to establish consent. MTD Order at 8. Nevertheless, Meta raises two new consent arguments, both of which are meritless. *First*, Meta argues that Plaintiffs fail to adequately allege that Meta intercepted the sensitive data Plaintiffs entered onto the Website prior to BlueChew publishing its 2024 privacy policy. MTD at 9-11. Meta's argument is belied by Plaintiffs' factual allegations in the SAC, as set forth below. *Second*, Meta argues that Plaintiffs consented to Meta intercepting their private health information because they allegedly agreed to Meta's various policies. *Id.* at 11-14. That argument fails because the generalized disclosures contained in Meta's policies fall short of explicitly notifying Plaintiffs that Meta would intercept their private health information.

### 1. Plaintiffs Adequately Allege That Meta Intercepted Their Data from the BlueChew Website Prior to August 2024

Plaintiffs purchased prescription medications on the Website well before BlueChew allegedly published its updated privacy policy in June 2024. *See* SAC ¶ 7 (Plaintiff M.D. ordered erectile dysfunction medication through the Website on December 6, 2022 and January 4, 2023); *id.* ¶ 9 (Plaintiff O.F. ordered erectile dysfunction medication through the Website in January 2022). At the time of Plaintiff M.D.'s purchases in December 2022 and January 2023, Meta "intercepted [PHI] related to his prescription medication through [Meta's] proprietary software codes," to wit the Meta Pixel, in addition to his PII, and Meta used his personally identifiable PHI for "targeted advertising purposes." *Id.* ¶¶ 7-8; *see also id.* (stating that Meta's "interceptions occurred at the time of his December 6, 2022 and January 4, 2023 purchases"). Plaintiff O.F makes nearly identical allegations regarding his January 2022 purchase. *See id.* ¶¶ 9-10. Meta's interception of Plaintiffs' personally identifiable PHI in connection with their purchases occurred "without [their] knowledge, consent, or express written authorization." *Id.* ¶ 12.[1] These are well-pleaded facts entitled to the presumption of truth at the pleading stage. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (When evaluating a motion to dismiss, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party.").

While the above-referenced allegations establish an actionable interception prior to

[1] Because this Court found that the pre-2024 BlueChew privacy policies failed to establish consent (MTD Order at 8), Meta's interception of Plaintiffs' personally identifiable PHI prior to BlueChew publishing its 2024 privacy policy necessarily lacked consent.

publication of BlueChew's June 2024 privacy policy, the rest of the SAC bolsters these allegations. For example, Plaintiffs allege: (i) "[a]t relevant times [*i.e.*, at the time of Plaintiffs' purchases], two sets of code were [] automatically run as part of the browser's attempt to load and read BlueChew's Website—BlueChew's own code and Facebook's embedded code" which functioned to find people who have visited a specific page on the Website or took "a desired action on [the Website]" (SAC ¶¶ 31-32); (ii) the "tracked information includes private data revealing prescribed medications purchased by patients on the BlueChew Website" (*id.* ¶ 34); and (iii) the Meta Pixel "code enables Facebook not only to help BlueChew with advertising to its own patients outside the Website, but also includes individual patients among groups targeted by ***other*** Facebook advertisers relating to the conditions about which patients communicated on BlueChew's Website" (*id.* ¶ 35).

Further, the SAC details how the Meta Pixel worked "at relevant times" on the Website:

> Take an individual who, at relevant times, navigated to BlueChew's Website and clicked on a link to purchase prescription medication. When that link was clicked, the individual's browser sent a GET request to BlueChew's server requesting the server to load the particular webpage. Then, the [Meta] Pixel, Facebook's embedded code, written in JavaScript, sent secret instructions back to the individual's browser, without alerting the individual that this was happening. Facebook caused the browser to secretly duplicate the communication with BlueChew, transmitting it to Facebook's servers, alongside additional information that transcribed the communication's content and the individual's identity.

*Id.* ¶ 38. Screenshots of the transmissions to Meta as they would have occurred at the time of Plaintiffs' purchases in 2022 and 2023 show that BlueChew transmitted personally identifiable PHI to Meta through the Meta Pixel. *Id.* ¶ 39, Figures 5 and 6; *see also id.* ¶¶ 41-43. In short, at the time of Plaintiffs' purchases in 2022 and 2023, Meta "intercepted and recorded 'AddToCart' and 'CompleteRegistration' events, which detail information about which prescription the patient was purchasing on the Website." *Id.* ¶ 40; *see also id.* ¶ 57 ("These exact practices were in place on the Website before and during when Plaintiffs made their purchases."). Taken together, these allegations plausibly allege that Meta intercepted Plaintiffs' personally identifiable PII without consent at the time Plaintiffs purchased their respective medications from BlueChew.

Meta nonetheless argues Plaintiffs' factual allegations are "conclusory." MTD at 10. But Plaintiffs' allegations that the Meta Pixel was embedded on the Website at the time of purchase, set

forth above, are allegations of fact entitled to the presumption of truth; that is, they are factual statements, not legal conclusions. *Manzarek*, 519 F.3d at 1031. What Meta is really asking for is an evidentiary standard at the pleading stage requiring Plaintiffs to prove with evidence the existence of its tracking technology on the Website, which is inappropriate, as this Court recognized in *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *7 (N.D. Cal. July 22, 2025). *See id.* (collecting cases and concluding that "[r]equiring the level of specificity the [defendants] demand imposes a standard far beyond what Plaintiffs must satisfy at the pleading stage. The [defendants] are free to challenge whether a specific web page incorporated the tracking technologies that Plaintiffs allege facilitated the unlawful interception of their data at summary judgment or trial, but they cannot demand that Plaintiffs allege the details about these tools, which only Defendants would possess, to survive a motion to dismiss"). Here, Plaintiffs' legal claim of unlawful wiretapping is premised on allegations that the Meta Pixel was on the Website when they made their purchases and intercepted their personally identifiable PHI. Meta can contest these facts and move for summary judgment later, but it cannot impose an evidentiary standard at the pleading stage.

Meta's cited cases (MTD at 10-11) do not help its argument because none of them stand for the proposition that factual allegations can be disregarded or that a plaintiff must prove facts alleged in the complaint with evidence. In *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017), the court acknowledged that the plaintiffs "need not prove their theory of interception on a motion to dismiss, Plaintiffs must provide fair notice to Defendants of when they believe Vizio intercepts their communications." Here, Plaintiffs have done so. They allege that, at the time they made their purchases: 1) the Meta Pixel was embedded on the Website; 2) the Meta Pixel functioned to intercept users' personally identifiable PHI from the Website; and therefore 3) Plaintiffs were unlawfully wiretapped. Meta argues: "Plaintiffs have done nothing to *show* that BlueChew used Pixel code and transmitted their data when they made their purchases in 2022 and 2023." MTD at 11 (emphasis in original). "Show" is a question of evidence, which is not an appropriate inquiry at this stage, where no discovery has taken place.

**2. Meta's Various Policies Do Not Establish Consent for Its Conduct**

It is Meta's burden to establish consent. MTD Order at 6. Meta argues that "Plaintiffs

independently consented to Meta's receipt of information about their activity on third-party websites by agreeing to [its] policies." MTD at 11. That is wrong.

*First*, Meta has provided no evidence as to whether or when Plaintiffs agreed to any purported policies published by Meta, despite ostensibly being in possession of such information. While Meta points to what appears to be Facebook's current sign-up screen (Blunschi Dec., Ex. 22, ECF No. 64-22), it provides no indication if the screen was the same when Plaintiffs signed up for a Facebook account. As such, Meta has provided no evidence of mutual assent to any of its purported policies. The case law in this District is clear that the mere existence of a privacy policy does not establish consent to said policy. *Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1196 (N.D. Cal. 2024) ("Although these documents suggest that plaintiffs *could* have consented to Google's alleged data collection, plaintiffs specifically allege that they did not. The mere existence of various terms of service and privacy policies cannot establish at this stage, where the Court must draw all reasonable inferences in plaintiffs' favor, that any of the plaintiffs *did* in fact consent. Google's consent arguments do not provide a basis to dismiss the Section 631 claim.").

*Second*, even if Meta could show that Plaintiffs consented to its policies, none "explicitly notify[]" Plaintiffs of the conduct at issue, as required for sensitive health information. MTD Order at 8; *see also Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) ("[F]or consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."); *In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) ("Google points to its [policies], to which all Gmail and Google Apps users agreed, to contend that these users explicitly consented to the interceptions at issue. The Court finds, however, that those policies did not explicitly notify Plaintiffs that Google would intercept users' emails for the purposes of creating user profiles or providing targeted advertising."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014). Meta's policies do not state that a Facebook user's personally identifiable PHI input onto a third-party website would be intercepted by Meta and used by Meta to improve its targeted advertising products. *See* Blunschi Dec. Exs. 23-32 (ECF Nos. 64-23-64-32); *see also Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *2 (N.D. Cal. Apr. 4, 2025) (denying MTD on consent grounds where "the privacy policy does not disclose that the collected data may be used for the third parties'

own commercial purposes”).

In fact, the only mention of sensitive health data in any of Meta’s terms is in its Business Tools Terms, which state that Meta will *not* collect said data. Blunschi Dec. Exs. 20-21, Section 1.h. (ECF Nos. 64-21 and 64-21). No reasonable user reading Meta’s policies would believe that their sensitive health data would be intercepted from third party websites. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793–94 (N.D. Cal. 2022) (“I am skeptical that a reasonable user who viewed Meta’s policies would have understood that Meta was collecting protected health information.”). Meta argues that Plaintiffs consented to unlawful collection of their personally identifiable PHI based on user-facing terms that make no reference to sensitive PHI and business facing terms that state Meta will not collect health information. Blunschi Dec. Exs. 20-21 (ECF Nos. 64-21 and 64-21), 23-32 (ECF Nos. 64-23-64-32); *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 118 (W.D. Pa. 2019) (“Even if a privacy statement discloses some kinds of tracking, a defendant can still be liable for other kinds of tracking that the privacy statement does not disclose.”).

As to Meta’s Terms of Service, Defendant relies on the ambiguous, undefined term “personal data” (MTD at 4) which does not make clear that personal data means PHI. Further, reading the Terms in their totality, the document suggests that personal data does *not* mean private health information. For example, under Section 2, titled “How our services are funded,” Facebook elaborates on what it means by “personal data”:

> Instead of paying to use Facebook and the other products and services we offer, by using the Facebook Products covered by these Terms, you agree that we can show you ads that businesses and organizations pay us to promote on and off the Facebook Company Products. We use your personal data, **<u>such as information about your activity and interests</u>**, to show you ads that are more relevant to you.

Blunschi Dec. Ex. 23 (ECF No. 64-23) (emphasis added). This paragraph merely conveys that Facebook is free because businesses pay Facebook to show them ads, and that Facebook uses the information gathered from the user’s activity on Facebook and interests expressed thereon, to show the user ads. These Terms of Service by no means convey—let alone obtain consent—for a third-party telehealth provider (BlueChew) to permit Facebook to intercept users’ PHI from the Website.

Meta’s Data Policy (MTD at 12-13) also fails to explicitly notify users that Meta will

intercept health information as it makes no mention of, and does not elicit consent for, Meta intercepting users' PHI. Blunschi Dec. Ex. 27 (ECF No. 64-27). It does not state that Plaintiffs will be wiretapped when entering sensitive health information on the website of a telehealth provider such as BlueChew. None of Meta's Privacy Policies (MTD at 4) make any reference to PHI or put a user on notice that personally identifiable PHI would be intercepted by Meta. This is underscored by BlueChew's own pre-2024 policies, which stated that user's health information would not be shared with third parties. Blunschi Dec. Exs. 15-18 (ECF Nos. 64-15-64-18). In short, Meta's Privacy Policy does not, especially when read in conjunction with BlueChew's pre-2024 policies and its own Business Tools Terms, put a reasonable user on notice that Meta would intercept private health information from the Website.

Lacking a specific disclosure, Meta seeks to repackage PHI into mere "purchase information." MTD at 12. Personally identifiable health information is not mere "purchase information," it is highly sensitive information protected by law. SAC ¶¶ 78-83. It is one thing for a game developer to use the Meta Pixel to report the purchase of a video game from its website (the example provided by Meta in its Data Policy), it is another thing altogether for BlueChew, *a telehealth provider*, to use the Meta Pixel to transmit *private health information* to Meta.[2]

Meta's reference to *Lloyd v. Facebook, Inc.*, 2024 WL 3325389 (9th Cir. July 8, 2024), *cert. denied*, 145 S. Ct. 462, 220 L. Ed. 2d 200 (2024) is unavailing because that case involved a generalized allegation that Meta had been "impermissibly tracking [the plaintiff's] online activity even when she is not logged into the Facebook platform." *Id.* at *2. This case, by contrast, involves sensitive health information, not garden-variety activity on the internet.

*Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018) does not change the analysis. There, the Ninth Circuit made clear that while the data collected was couched as private health information, the data showed "only that Plaintiffs searched and viewed publicly available health information that

[2] The same is true regarding Meta's Cookies Policy, which makes no reference to personally identifiable health information as the type of data that may have been shared to Meta using cookies. Plaintiffs reasonably expected that their communications transmitting personally identifiable PHI to BlueChew would be private, and that expectation was reasonable because Meta made no specific disclosure in its Cookies Policy regarding health information and expressly stated in its Business Tools Terms that it would not collect health information.

cannot, in and of itself, reveal details of an individual's health status or medical history." *Id.* at 9. By contrast, Meta collected highly specific data from BlueChew, including medications prescribed and purchased for erectile dysfunction, tied to users' identities. SAC ¶¶ 38-44. The information intercepted here was far more specific than in *Smith*. This Court has previously distinguished both *Lloyd* and *Smith* on similar grounds. *GoodRx Holdings, Inc.*, 2025 WL 2052302, at *9 n.13.

Meta argues that BlueChew's privacy policies, which explicitly state that private health information would not be shared with third parties like Meta (Blunschi Dec. Exs. 15-18, ECF Nos. 64-15-64-18), do not "change the import of *Meta's* policies." MTD at 13 (emphasis in original). This Court reached the opposite conclusion in *GoodRx*, finding that GoodRx's express representation that user data would not be shared trumped Meta's generalized disclosures because a reasonable user, taking the materials together, would not believe they were consenting to the sharing of their medical information. 2025 WL 2052302, at *9. The same result should follow here on near identical facts.[3]

**B. Plaintiffs' CIPA and WESCA Claims Are Not Time-Barred**

The statute of limitations is an affirmative defense by which a claim may only be dismissed as time-barred if it "appears beyond doubt that the plaintiff can prove no set of facts that would establish . . . timeliness." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010); *accord Est. of Gorg v. Great Am. Ins. Co. of Cincinnati Ohio*, No. 4:12-CV-0531, 2012 WL 3011728, at *1 (M.D. Pa. May 25, 2012), *report and recommendation adopted sub nom. Est. of Late Gorg v. Great Am. Ins. Co. of Cincinnati Ohio*, 2012 WL 3011726 (M.D. Pa. July 23, 2012) ("The statute of limitations is an affirmative defense and the burden of establishing its applicability rests with the defendant.").

Defendant's argument that Plaintiffs' claims are time-barred fails because of the discovery

[3] Meta asks the Court to reconsider its decision in *GoodRx* by attacking the Court's reading of *Calhoun v. Google, LLC*, 113 F.4th 1141, 1150 (9th Cir. 2024). *See* MTD at 13. This Court should decline that invitation, as the key inquiry is what a reasonable person would understand based on the totality of the materials presented to them. *See Smith*, 745 F. App'x at 8 ("In determining consent, courts consider whether the circumstances, considered as a whole, demonstrate that a reasonable person understood that an action would be carried out so that their acquiescence demonstrates knowing authorization."). Here, faced with a specific disclosure from BlueChew that medical information would not be shared, in conjunction with Meta's Business Tools terms stating the same, a reasonable person would understand those specific references to protected health information as a carve out to the generalized disclosures referenced in Meta's terms.

rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005); *Maier v. Bucks Cnty.*, 2019 WL 689206, at *3 (E.D. Pa. Feb. 19, 2019) ("Pennsylvania law allows for the application of the discovery rule to toll the statute of limitations."); *Gleason v. Borough of Moosic*, 609 Pa. 353, 362-63 (2011) ("The discovery rule applies to toll the statute of limitations in any case in which a party is reasonably unaware of his or her injury at the time his or her cause of action accrued."). Whether the discovery rule applies is generally a "question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. Cty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008); *accord Gleason*, 609 Pa. at 362-63. To trigger the discovery rule, a plaintiff need only plead "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808; *accord SpiriTrust Lutheran v. Wagman Constr., Inc.*, 314 A.3d 894, 906 (Penn. 2024) (to trigger the discovery rule, "the plaintiff must allege facts showing plaintiff's lack of prior knowledge regarding the nature of the alleged injury, and why plaintiff could not have learned of it at an earlier point").

Plaintiffs' claims are also tolled via equitable tolling. *See Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (applying equitable tolling where delay is due to no "fault of lack of diligence" on behalf of Plaintiff); *accord Deek Inv., L.P. v. Murray*, 157 A.3d 491, 497 (Pa. 2017).

Here, Plaintiffs allege they could not (and did not) discover Defendants' violations despite their due diligence because Defendants had exclusive knowledge of their misconduct, which occurred using proprietary technology that they did not disclose and actively concealed. SAC ¶ 7 ("Due to the surreptitious nature of the interceptions at issue, Plaintiff M.D. did not realize confidential information related to his medical prescription was intercepted by Defendants until September 2024 after contacting undersigned counsel."); *id.* ¶ 9 (same for Plaintiff O.F.). Accordingly, Plaintiffs allege the earliest they could have discovered Defendant's violations was in September 2024. *Id.* As Defendant concedes, Plaintiff M.D. filed the initial Complaint on September 10, 2024, right after Plaintiff M.D. discovered that the unlawful conduct occurred. MTD at 14; Complaint, ECF No. 1. Plaintiff O.F. joined the action by virtue of the FAC on January 6, 2025 (ECF No. 34), well within the applicable statutes of limitations triggered upon discovery in

September 2024. *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *5 n.6 (W.D. Wash. Dec. 19, 2023) (finding the delayed discovery rule tolled the statute of limitations under similar circumstances).

Defendant argues that Plaintiffs "ignore that the BlueChew Privacy Policy, to which they were required to agree before making their purchases, specifically informed them that BlueChew could disclose data about their use of its website to third parties." MTD at 15. That is wrong. Even assuming that Plaintiffs were placed on notice of the BlueChew Privacy Policy, which, for the reasons set forth in Section III.A., *supra*, is a question of fact, BlueChew consistently misrepresented its data sharing practices and even the latest version of its privacy policy does not disclose the widespread, surreptitious health data sharing operation Defendant engaged in. *See* Section III.A., *supra*. Thus, Plaintiffs could not conduct additional diligence (and it would have been futile) because an ordinary user could not uncover the misconduct Defendant was actively concealing by reading BlueChew's alleged Privacy Policy. *Franklin v. Ocwen Loan Servicing, LLC*, No. 18-CV-03333-SI, 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018) (applying discovery rule where plaintiff had no "reason to suspect wrongdoing" because "the recordings were done surreptitiously."); *Weatherly v. Universal Music Publ'g Grp.*, 125 Cal. App. 4th 913, 919 (2004) ("a defendant cannot hinder the plaintiff's discovery through misrepresentations and then fault the plaintiff for failing to investigate").

In short, suggesting that Plaintiffs were required to compare and contrast (1) the misrepresentations and concealment of the Facebook Tracking Pixel described in the SAC, to (2) vague statements scattered throughout various versions of BlueChew's purported privacy policies (which do not disclose Defendants' conduct (*see* Section III.A.)), and then (3) perform complex testing to inspect for tracking pixels, would create a heightened and unheard of standard that no court has endorsed. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1071 (N.D. Cal. 2021) (accepting allegations plaintiffs were diligent and finding, in any event, that they "were not obligated to investigate their claims until Plaintiffs had reason to suspect the[ir] existence"); *see also Josten v. Rite Aid Corp.*, 2019 WL 3718739, at *4 (S.D. Cal. Aug. 7, 2019) (explaining a reasonably diligent person would have a "hard time piecing [the misconduct] together" without "having the sophisticated knowledge" of the relevant areas); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*, 2019 WL 6998668, at *3 (C.D. Cal. Sept. 5, 2019) (explaining "[r]easonable diligence does not

require a person to scour the internet in search of any and all information").

The statute of limitations is also tolled by Defendant's fraudulent concealment of its misconduct. This doctrine applies when: "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown*, 525 F. Supp. 3d at 1070; *accord Fine v. Checcio*, 582 Pa. 253, 270 (2005) ("In addition to the discovery rule, the doctrine of fraudulent concealment serves to toll the running of the statute of limitations."); *In re O.E.M./Erie, Inc.*, 405 B.R. 779, 786 (Bankr. W.D. Pa. 2009) (In Pennsylvania, fraudulent concealment "serves to toll the statute of limitations where the wrongdoer has taken some step to deceive, either intentionally or unintentionally, so that the plaintiff is not aware of the injury until after the statute of limitations has lapsed").

Here, Defendant affirmatively acted to mislead Plaintiffs by surreptitiously intercepting Plaintiffs' protected health information while failing to disclose that it collected sensitive health data from third-party web pages. *See* SAC ¶ 24 ("At no point during the checkout process are patients alerted that information related to their prescription medication is being intercepted by third parties."); *id.* ¶ 13 (Defendant "committed the interceptions at issue without Plaintiffs' knowledge, consent, or express written authorization."); *id.* ¶ 111. Defendant also published misleading Business Tools terms, which suggested that Defendant would not use its technology to intercept sensitive health information, when in fact it does. *See In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 863 (N.D. Cal. 2020) (applying doctrine of fraudulent concealment where defendant made "[H]alf-truths" that omitted information "necessary to prevent misleading others."); *Brown*, 525 F. Supp. 3d at 1070 (holding that defendant's "misleading partial disclosure[s]" were "affirmative acts to mislead Plaintiffs"). As a result, Plaintiffs could not and did not have knowledge of Defendant's conduct despite their diligence to uncover it. *See*, *e.g.*, SAC ¶¶ 12, 24.

For the foregoing reasons, Plaintiffs' claims are timely.

### C. Meta Eavesdropped on Plaintiffs' Communications with BlueChew

Meta argues that Plaintiffs' claims for wiretapping fail because "Plaintiffs allege only that Meta *received* data as a result of *BlueChew's* use of Pixel code—not that Meta itself read,

eavesdropped upon, or intercepted any user communications while those communications were being sent to BlueChew." MTD at 16 (emphasis in original). That is wrong.

Plaintiffs allege that Meta's "Business Tools are bits of code that advertisers can integrate into their websites, mobile applications, and servers, thereby enabling Facebook to intercept and collect user activity on those platforms." SAC ¶ 29. Plaintiffs allege that Meta's interception of their PHI occurred in real time while in transit. *See* SAC ¶ 31; *see also id.* ¶¶ 38-42. These allegations provide a plausible factual basis that Meta "read or attempted to read, or learn the contents or meaning of Plaintiff M.D.'s and California Class Members' communications to BlueChew while the communications are in transit or passing over any wire, line or able, or were being received at any place within California when it intercepted Plaintiff M.D.'s and California Class Members' communications and data with BlueChew." SAC ¶ 102. Meta's real time interception of Plaintiffs' communications with BlueChew are actionable violations of CIPA § 631 and § 632, and WESCA.

***CIPA Section 631.*** Meta argues that it "did not *read* or *learn*—*i.e.*, substantively understand—the data while it was *in transit*[,]" relying on *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *6 (N.D. Cal. Apr. 17, 2025). MTD at 17. As an initial matter, "whether communications are 'read' in transit or only after storage is a fact-intensive question that depends on how the challenged technology and processes actually work—a question *Torres* decided only after a full evidentiary record at summary judgment." *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025). Like in *Riganian*, Plaintiffs' SAC "contains specific factual allegations that, if taken as true, plausibly allege real-time interception and contemporaneous reading within the meaning of § 631(a)." *Id.* Plaintiffs allege that Meta concurrently intercepted Plaintiffs' substantive communications with BlueChew thereby reading or attempting to read or learn the contents of Plaintiffs' communications with the Website. *See* SAC ¶ 31, ¶¶ 38-42; Cal. Penal Code § 631(a). "[C]ourts have regularly held use of software to eavesdrop into communications is a basis for § 631 claims." *R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994, at *5 (N.D. Cal. June 23, 2025) (collecting cases); *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8–9 (S.D. Cal. Oct. 24, 2023) (in-transit interception alleged where chat provider "receives the chat messages either

before or simultaneously with" the website). Indeed, "[p]ermitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020).

***CIPA Section 632.*** Meta uses BlueChew as a straw man, arguing that it did not "use" its own Meta Pixel code because BlueChew incorporated the code on its Website. MTD at 17. Numerous courts have rejected similar attempts by Meta to distance itself from liability for its tracking tools by pointing to third-party developers. *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023), *cert. denied*, 2024 WL 4375776 (N.D. Cal. Oct. 2, 2024); *Gershzon*, 2023 WL 5420234, at *11.

Further, CIPA § 632 does not define "uses," and the dictionary defines "use" as "to put into action or service" or "to benefit from the use of."[4] Here, Plaintiffs allege that Meta used the Meta Pixel, an electronic recording device, to eavesdrop on their confidential communications with BlueChew. SAC ¶¶ 31, 38-42. While BlueChew implemented the software, Meta designed the Meta Pixel for the purpose of capturing user data to incorporate into its targeted advertising products (SAC ¶ 115) and freely provides the software to developers to incorporate onto third-party web properties. In short, Meta designed the Meta Pixel, put it into action and service by making it available to website developers, and benefitted from its use by collecting data useful to its targeted advertising products.

Meta, misunderstanding Plaintiffs' allegations, argues that it received the protected health information from BlueChew "secondhand." MTD at 17-18. That is wrong. Plaintiffs allege a simultaneous dissemination of their personally identifiable PHI to Meta. SAC ¶ 31. In this case, Meta acted as an unauthorized listener behind a door, secretly eavesdropping on Plaintiffs' communication with BlueChew; it was not a secondhand recipient of the information from BlueChew. Meta's "secret monitoring denies the speaker an important aspect of privacy of communication —the right to control the nature and extent of the first hand dissemination of his statements." *Ribas v. Clark*, 38 Cal. 3d 355, 361 (1985).

[4] *See* https://www.merriam-webster.com/dictionary/use.

***WESCA.*** Defendant's arguments under WESCA mirror its CIPA § 632 arguments and fail for the same reasons set forth above. Plaintiffs specifically allege contemporaneous transmission to Meta (SAC ¶ 31), and that Meta "used" the Meta Pixel, a device, to obtain Plaintiffs' private health information for use in targeted advertising. SAC ¶ 115.

**D. Plaintiffs Adequately Allege Intent**

Meta argues that Plaintiffs "fail to allege Meta acted with the requisite mens rea." MTD at 18. That is wrong. Interceptions are deemed to be intentional if the defendant is aware that the information it is intercepting may be confidential. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1002–03 (N.D. Cal. 2024); *Smith*, 735 F.Supp.3d at 1198. "[I]nterceptions may [also] be considered intentional where a defendant is aware of the defect causing interception and takes no remedial action." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020)[5]; *see also Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1044 (N.D. Cal. 2014) (collecting cases). For CIPA § 632(a), the statute punishes "a person who intends to make a recording of a confidential communication." *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 435 (2018) (internal quotation marks and citation omitted). Like CIPA, "WESCA is Pennsylvania's state law equivalent to the Federal Wiretap Act." *Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514, at *12 (E.D. Pa. Nov. 25, 2024); *see also Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125-26 (3d Cir. 2022) (WESCA "operates in conjunction with and as a supplement to the Federal Wiretap Act, 18 U.S.C. § 2510 *et seq.*, which provides uniform minimum protections for wire, electronic, or oral communications."). Therefore, the intent analysis under CIPA and WESCA is the same.

*First*, "[w]hether a person possesses the requisite intent under CIPA is generally a question of fact." *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 859 (W.D. Wash. 2024); *see also Smith*, 735 F. Supp. 3d at 1198 ("While Google argues that judicially noticeable policy documents suggest that Google did not actually want to receive personally identifiable information and expressly prohibited developers from transmitting such data, this presents a question of fact that

[5] While *In re Google Assistant Priv. Litig.* involved a claim under the federal Wiretap Act, CIPA applies the same standard. *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024) (Martínez-Olguín, J.) ("The analysis for a violation of CIPA is the same analysis for a violation of the federal Wiretap Act.").

the Court cannot resolve at this stage."); *Hudson v. Superior Ct.*, 7 Cal. App. 5th 1165, 1171 (2017) ("[A] person's intent is a question of fact to be determined from all the circumstances of the case, and usually must be proven circumstantially." (internal citations omitted)). Pennsylvania courts have reached the same conclusion. *United States v. Fumo*, 628 F. Supp. 2d 573, 592 (E.D. Pa. 2007) ("Intent is a question of fact, to be determined by a jury.").

*Second*, Plaintiffs adequately allege knowledge and intent under each applicable cause of action. SAC ¶¶ 5, 14, 99, 101-02, 120, 130-31. Plaintiffs allege the Meta Pixel is designed for the purpose of recording and analyzing communications between Defendant's customers (like BlueChew) and consumers (like Plaintiffs and class members). *Id.* ¶¶ 25-58; *see also Gladstone*, 739 F. Supp. 3d at 860 (finding intent element under CIPA § 631(a) and § 632(a) satisfied where "[t]he SAC alleges that Amazon Connect is designed for the purpose of recording and analyzing communications between its customers (like Capital One) and consumers or other entities"). Defendant also knew the Meta Pixel may intercept "sensitive" data as evidenced by Meta's Business Tools Terms, which specifically acknowledges that the Facebook Tracking Pixel could be configured to share "health" information with Facebook. Blunschi Dec. Exs. 20-21, Section 1.h. (ECF Nos. 64-21 and 64-21). Defendant's knowledge is further gleaned from its role as a defendant in other litigations where the Business Tools, including the Facebook Tracking Pixel, have been used to intercept and transmit information. *Rickwalder, et al. v. Meta Platforms, Inc.*, Case No. 21-cv-383231 (Ca. Super. Ct., Santa Clara Cnty. Mar. 9, 2022); *In Re Meta Pixel Healthcare Litigation*, Docket No. 3:22-cv-03580 (N.D. Cal. June 17, 2022); *Forrest v. Meta Platforms, Inc.*, Docket No. 5:22-cv-03699 (N.D. Cal. June 23, 2022); *Doe v. Meta Platforms, Inc.*, Docket No. 3:22-cv-04680 (N.D. Cal. Aug. 15, 2022); *Doe v. Meta Platforms, Inc.*, Docket No. 3:22-cv-04963 (N.D. Cal. Aug. 30, 2022); *In Re Meta Pixel Tax Filing Cases*, Docket No. 5:22-cv-07557 (N.D. Cal. Dec. 1, 2022).

Despite being aware that the Meta Pixel routinely intercepts health information, Defendant has failed to take remedial action to prevent such interceptions, including in this case. That is intentional. Defendant is fully aware of the value such protected information holds and intends to intercept it to feed it into its advertising machinery. SAC ¶¶ 5, 14. Defendant has also failed to destroy the protected health information it received from Plaintiffs, evidencing intent. *In re Google*

*Assistant Priv. Litig.*, 457 F. Supp. 3d at 827–28 ("[T]he Court finds that Defendants' failure to rectify the defect causing 'false accepts' or destroy the recordings produced under such circumstances could plausibly be considered 'intentional' rather than 'a result of accident or mistake.'"). On the contrary, Defendant has affirmatively *used* the protected health information it intercepted via the Meta Pixel to improve its advertising machinery and generate revenue. SAC ¶¶ 5, 8, 10, 14, 35, 56. In short, Defendant's interception of Plaintiffs' and class members' confidential health information was intended by Defendant. Otherwise, Defendant would not have used the intercepted health information for its own benefit. *Id.*; *see also GoodRx*, 2025 WL 2052302, at *8 (Allegations that Meta "knew the incorporation of [its Meta Pixel] on websites and mobile apps resulted in the interception of sensitive health information, that [it] did not take any steps to prevent the interception of this data, that [its] conduct was intentional despite knowing about the resulting privacy violations to Plaintiffs, and that [Meta] proceeded to generate billions in advertising revenue based on the information intercepted by its tracking technologies . . . are sufficient to plausibly plead intent."). Plaintiffs plead such facts here. SAC ¶¶ 5, 8, 10, 35, 56.

Defendant argues that its Business Tools Terms exonerate it from liability. MTD at 20. But this Court has squarely rejected Meta's argument in *GoodRx*: "while Meta . . . may instruct developers not to send protected health information, if, once received, Meta . . . make[s] no effort to prevent the uploading of that information into their data repositories, take[s] no steps to filter it out once the data is uploaded to their servers, or simply proceed[s] to monetize that information knowing developers were sending sensitive health information in violation of instructions against it, a jury may find such acts indicative of intent." 2025 WL 2052302, at *8 (collecting cases). Other courts agree. For example, in *Meta*, 690 F. Supp. 3d 1064, the court found:

> While plaintiffs acknowledge that Meta may tell third parties and Facebook users that it intends to prevent receipt of sensitive health information, plaintiffs contend that is not what Meta really intends. . . What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record. . . At this stage, intent has been adequately alleged.

*Id*. at 1076; *see also In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1003 (same).

The same analysis applies here. Defendant acts contrary to its Business Tools terms by collecting sensitive data by the means set forth above. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1003 ("Meta argues that it could not have intended to receive the information . . . because its Business Tools Terms forbid developers from sending sensitive information to Meta and require that developers have all necessary . . . permissions to lawfully share whatever information they send. . . [T]he Court cannot conclude from their mere existence that Meta and developers intended to or did comply with the terms rather than deviating from them to their mutual benefit."). At minimum, Defendant's intent is a question of fact. *Id.*; *Gladstone*, 739 F. Supp. 3d at 860.

Defendant next argues "it was *BlueChew*, not Meta, that chose to incorporate [Meta] Pixel on its website and configured the code to transmit particular data." MTD at 19. But as stated above, Defendant obtained and used the intercepted health information for its own benefit, which strongly evidences intent. SAC ¶¶ 5, 8, 10, 35, 56.[6]

Defendant cites to *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 836 (N.D. Cal. 2024) (MTD at 18-19), where the court granted a motion to dismiss because the plaintiffs' allegations were "too vague to support an inference that the providers have, contrary to [Google's] admonition [not to use the pixel to transmit health information], caused Google to receive the plaintiffs' personal health information" and that the plaintiffs did not "adequately allege that Google intends to receive this information, or that Google intends to feed the information into its own advertising machinery." *Id.* at 836. But this Court and others in this District have correctly departed from the reasoning in *Google* regarding the Meta Pixel. *See GoodRx*, 2025 WL 2052302, at *8; *Meta*, 690 F. Supp. 3d at 1076; *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1003; *Gershzon*, 2023 WL 5420234, at *11. The weight of authority favors this Court's analysis in *GoodRx*, also applicable here.

Even if this Court were to decline to follow the factually analogous cases involving the same technology (*Meta*, *In re Meta Pixel Tax Filing Cases*, and *Gershzon*), and instead follow the decision in *Google*, it is distinguishable. In *Google*, there was no allegation that "Google intends to feed the information into its own advertising machinery." 741 F. Supp. 3d at 836. Here, Plaintiffs allege that

---

[6] As to Plaintiffs' claim for invasion of privacy, contrary to Defendant's assertion (MTD at 10) intent is met for the same reasons discussed herein.

Defendant knowingly receives the confidential health information from BlueChew and integrates it into its proprietary advertising products (such as Core and Custom Audiences) to make them more compelling for advertisers (and thereby to derive a profit). SAC ¶¶ 5, 14, 35, 56.

### E. Plaintiffs' California and Pennsylvania Claims Are Adequately Pleaded

#### 1. The Meta Pixel is a "Device" Under Both CIPA and WESCA

Defendant argues that the Meta Pixel "is not a 'device' within the meaning of" CIPA and WESCA. MTD at 22. That is wrong. Numerous courts in this District have determined that software, including the Meta Pixel, is a "device" under CIPA § 632(a), and Defendant has provided no reason for this Court to deviate from those decisions. *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) ("Plaintiffs have plausibly alleged that the Apple Apps at issue in this case constitute a 'device' under Section 632."); *Meta*, 690 F. Supp. 3d at 1080 ("I agree that the Pixel software is a device under section 632(a)."); *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024) ("The Court agrees with those Ninth Circuit district court decisions that have found that software qualifies as a device under Section 632."); *Gladstone*, 739 F. Supp. 3d at 856 ("[T]he Court finds that 'device,' as used in Section 632, can include software.").[7]

Courts interpreting the definition of "device" under WESCA have held the same. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 957-58 (N.D. Cal. 2023) (denying motion to dismiss WESCA claim where the defendant argued software was not a "device"). WESCA defines "device" as: **"**Any device or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication[.]" 18 Pa. C.S.A. § 5702. The term "electronic communication" is defined as "any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system . . . ." *Id.* Clearly, the Meta Pixel is a "device or apparatus . . . that can be used to intercept a[n] . . . electronic . . . communication." Plaintiff O.F. alleges several pieces of software that constitute a "device" under

[7] While CIPA does not define "device," courts routinely look to the Federal Wiretap Act for guidance. *Gladstone*, 739 F. Supp. 3d at 856. "The majority of courts to consider this issue" under the Federal Wiretap Act "have entertained the notion that software may be considered a device for the purpose of the Wiretap Act." *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015); *Luis v. Zang*, 833 F.3d 619, 634 (6th Cir. 2016).

WESCA. SAC ¶ 129. Nothing else is required. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) ("At the pleading stage, the Court must assume the truth of Revitch's allegation that NaviStone's code is a device … primarily or exclusively designed or intended for eavesdropping upon the communication of another.").

*Popa* is instructive. There, the plaintiff alleged that "Navistone intercepted her Personal Identifiable Information ("PII")—her name, her residential address, and her email address—as she browsed HCG's website for pet products," and "that Navistone recorded and relayed her every keystroke and mouse click back to its server." 426 F. Supp. 3d at 112. The court found that (1) whether software code is a "device" is a factual question that "warrants deeper factual exploration than was available at the motion to dismiss stage"; and (2) "[e]xceptions to WESCA's definition of 'devices' must be construed narrowly and none of them seemingly apply" where a defendant is intercepting communications through software code. *Id.* at 117. Those same findings apply here to the Meta Pixel. *See Vonbergen v. Liberty Mut. Ins. Co.*, 705 F. Supp. 3d 440, 455 (E.D. Pa. 2023) ("Notwithstanding this apparent inclusivity [of the definitions of "device" under WESCA], Liberty Mutual invites the Court to find that software, including session replay software, cannot constitute a 'device' under [WESCA] as a matter of law. The Court declines the invitation."); *see also id.* at 456 (collecting cases and noting that "many courts to have considered the issue agree that software can constitute a 'device' under the Pennsylvania Wiretap Act and similar anti-wiretapping statutes").

Defendant seeks to impose a limitation that a "device" is limited to "tangible objects." MTD at 22. The court in *Vonbergen* rejected the same WESCA argument: "the Court declines to find a 'tangibility' requirement for devices under [WESCA]." *Vonbergen*, 705 F. Supp. 3d at 455.

Courts interpreting CIPA have rejected similar tangibility arguments. *See*, *e.g.*, *James*, 701 F. Supp. 3d at 958 ("It is artificial to claim that software must be viewed in isolation from the computing device on which it runs and with which it is inseparable in regard to the challenged conduct."); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1115 (S.D. Cal. 2024) ("It is not apparent to this Court why the statutory language would 'undeniably' apply to a computer but not the software that a computer entails."). In other words, accepting Defendant's argument would mean divorcing the Meta Pixel software from the physical, tangible computer the software is running on.

Such an interpretation flies in the face of the California Supreme Court's directive to apply CIPA "to new technologies where such a reading would not conflict with the statutory scheme." *Matera v. Google Inc.*, 2016 WL 8200619, at *20 (N.D. Cal. Aug. 12, 2016).

Defendant relies on *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) (MTD at 22), but that case concerned CIPA § 637.7. As courts have recognized, "Section 632 contains materially different language than Section 637.7, and it does not contain similar context that would narrow the meaning of 'device' here." *Gladstone*, 739 F. Supp. 3d at 857; *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 957-58 (E.D. Cal. 2025). Specifically, CIPA § 637.7(d) defines a device as something "attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." By contrast, CIPA § 632 was enacted "to be more expansive," and "the Ninth Circuit has observed the California Supreme Court's instruction that all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." *Gladstone*, 739 F. Supp. 3d at 856 (cleaned up); *see also Matera*, 2016 WL 8200619, at *19 ("[W]hen faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection."). Decisions citing to CIPA § 637.7—a narrower subsection of CIPA—should not dictate the Court's interpretation of the broader CIPA § 632 language.

**2. Plaintiff M.D.'s Communications Were Confidential**

Interpreting the language of § 632(c), which defines "confidential communication," the California Supreme Court concluded "that a conversation is confidential under section 632 if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002); *see also Frio v. Superior Ct.*, 203 Cal. App. 3d 1480, 1488 (1988), modified (Sept. 22, 1988) ("[C]ommunication[s] must be protected if either party reasonably expects the communication to be confined to the parties."). Importantly, "[t]he issue whether there exists a reasonable expectation that no one is secretly recording or listening to a phone conversation is generally a question of fact." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1396 (2011); *see also Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 169 (2003). Whether a reasonable expectation of privacy exists is a question

of fact; this Court should decline to consider the issue on a motion to dismiss.

Regardless, Plaintiff M.D. adequately pleads an objectively reasonable expectation that his communications with the Website were confidential. Plaintiff M.D. "expected [his] communications to BlueChew to be confined to BlueChew due to the confidential nature of those communications [*i.e.*, sensitive personal and health information, such as information related to his prescription medications]. SAC ¶ 111. Plaintiff M.D. "did not expect third parties, specifically Facebook . . ., to secretly eavesdrop upon or record this information and [his] communications." SAC ¶¶ 110-11.

As this Court held in *GoodRx*, where, as here, Plaintiffs interacted with an online platform to seek treatment for specific conditions and disclosed symptoms, such communications are confidential communication under CIPA § 632. 2025 WL 2052302, at *14 ("Plaintiffs' interactions with the GoodRx platform – by seeking discounts on specific prescriptions, seeking treatment for specific conditions, and disclosing symptoms – constitute confidential communications."). Courts consistently recognize that individuals have a reasonable expectation of privacy in the type of medical data Meta intercepted here. *See Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023); *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of California*, 2015 WL 13273308, at *12 (C.D. Cal. July 29, 2015); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1074 (N.D. Cal. 2021); *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022).

Meta argues that "[b]ecause the statutory definition of 'confidential' turns on reasonable expectations of whether a communication would be *recorded* (by anyone), Plaintiffs cannot state a Section 632 claim based on their internet purchases, which were necessarily recorded by BlueChew." MTD at 24 (emphasis in original). Not so. Meta relies on *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025), a case involving text message communications which can be shared by the recipient, not confidential information provided to a medical provider that is protected by law. Meta also relies on *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010), which involved messages sent in an internet chat room, and did not involve protected information sent to a telehealth provider. Thus, Plaintiffs, customers of a telehealth platform (BlueChew) for purposes of

purchasing prescription medications, unlike the senders of ordinary internet communications, do not reasonably expect their communications would be overheard or recorded. Indeed, Meta's interpretation would eliminate all internet communications from the purview of CIPA § 632, which is an extreme result in contravention of this Court's prior analysis in *GoodRx*.

**3. Clause One of CIPA § 631(a) Applies to Defendant's Online Wiretaps**

Defendant contends that Plaintiff cannot bring a claim under the first clause of CIPA § 631(a) because "Plaintiff M.D. alleges interception of communications made over the internet only." MTD at 24. That is wrong. In *Matera*, the court noted that the "California Supreme Court . . . regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." 2016 WL 8200619, at *20. In *Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363, at *8 (S.D. Cal. Jan. 12, 2024), the court applied *Matera* and reasoned that "[r]eading the first clause of Section 631 to apply only to communications through a wire ignores the fact that a statute may be read to apply to new technologies . . ." *See also id.* ("[t]hough written in terms of wiretapping, § 631(a) applies to internet communications") (citation omitted). Plaintiff alleges that "Defendants, through their SDKs and other software code, intentionally tapped or made unauthorized connections with the lines of internet communications between Plaintiff M.D. and California Class Members and the Website without the consent of all parties to the communication." SAC ¶ 101. Plaintiffs therefore adequately plead a violation of the First Clause of CIPA.

**4. Plaintiff M.D. States a Claim for Invasion of Privacy**

Meta argues that Plaintiff M.D.'s California invasion of privacy claim also fails because he fails to show Meta "committed any highly offensive intrusion." *See* MTD at 24. That is wrong.

As a threshold matter, "questions of whether conduct is 'egregious,' 'offensive,' or violates 'social norms' tend by their very nature to be subjective . . . [and] these questions are typically more appropriately resolved by a jury." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1139 (E.D. Cal. 2021); *see also In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1157 (N.D. Cal. 2021) ("Whether [defendant's] collection and storage of location data when Location History was set to off was highly offensive to a reasonable person is a question of fact.") (citing *In re Facebook, Inc.*

*Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020)). Indeed, the Ninth Circuit held that this determination "requires a holistic consideration of factors" and raises "an issue that cannot be resolved at the pleading stage." *Facebook Internet Tracking*, 956 F.3d at 606.

Here, Plaintiff M.D. has identified sufficient facts to survive a motion to dismiss because he pleads that Defendant surreptitiously collected his private health information in unexpected ways. Indeed, under similar circumstances, the court in *In re Meta Pixel Healthcare Litig.* found:

> There is support for plaintiffs' position that Meta has behaved egregiously. By enacting criminal and civil statutes forbidding the disclosure of protected health information without proper authorization, Congress has made policy decisions regarding the importance of safekeeping this information. … Courts have also found that taking personal contact information without consent could be deemed highly offensive. … Meta's policies forbid the transmission of health-related information, which the Ninth Circuit has found to be relevant in the "highly offensive" inquiry. … These arguments have merit.

647 F. Supp. 3d at 800-01 (citations omitted); *see also M.G.*, 2024 WL 4219992, at *6 (Martínez-Olguín, J.) (egregious similar conduct raises "a factual dispute and Headway has not met its burden to show that the information disclosed here – M.G.'s provider preference, appointment details, and search concerning mental health conditions – cannot allege a serious invasion of privacy").

The same analysis applies here. Plaintiff M.D. disclosed private health information when interacting with the BlueChew Website, including the purchase of erectile dysfunction medication, which is entitled to stringent protections under federal law. Further, Defendant purports to forbid the transmission of health-related information using the Meta Pixel through its Business Tools Terms (although, in practice, it does not), which reveals that Defendant's own officials recognize that collection of such data is a problematic privacy issue.

Meta repeats its prior arguments seeking to distance itself from BlueChew, but for the reasons set forth above, those arguments fail because Meta was not a mere passive recipient, it actively used the intercepted data for its own gain. SAC ¶¶ 5, 8, 10, 14, 35, 56.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss. If the Court concludes that any portion of Plaintiffs' SAC is deficient, Plaintiffs respectfully request leave to cure any such deficiencies.

Dated: January 22, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *<u>/s/ L. Timothy Fisher</u>*
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com

*Counsel for Plaintiffs*