LATHAM & WATKINS LLP
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| M.D. and O.F., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC and META PLATFORMS, INC.,<br><br>Defendants. | Case No. 3:24-cv-06369-AMO<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing: June 11, 2026<br>Time: 2:00 p.m.<br>Location: Courtroom 10—19th Floor<br>Judge: Hon. Araceli Martínez-Olguín |

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of Their Data ..... 2

1. Plaintiffs Fail To Adequately Allege That The Data Sharing Occurred Prior To BlueChew's 2024 Privacy Policy ..... 2

2. Plaintiffs Consented By Agreeing To Meta's Policies ..... 3

B. Plaintiffs' Claims Are Time Barred ..... 6

C. Plaintiffs' CIPA And WESCA Claims Fail Because Allegations That Meta Received Information Do Not Show That Meta Violated The Statutes ..... 7

D. Plaintiffs' Claims Fail Because Plaintiffs Do Not Allege That Meta Intended To Obtain Sensitive Data ..... 9

E. Plaintiffs' CIPA And WESCA Claims Fail For Additional Reasons ..... 11

1. Pixel Code Is Not A "Device" ..... 11

2. The Section 632 Claim Fails Because Plaintiffs Do Not Allege A Confidential Communication ..... 12

3. The Section 631 Clause One Claim Fails Because Plaintiffs Do Not Allege Any Telephonic Communications ..... 13

F. Under Plaintiffs' Erroneous Interpretations Of CIPA And WESCA, Those Statutes Are So Capacious They Fail To Provide Fair Notice ..... 14

G. Plaintiff M.D. Cannot Save His Invasion Of Privacy Claim ..... 15

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## CASES

*Anaya v. Marin Cnty. Sheriff*,
2014 WL 6660415 (N.D. Cal. Nov. 24, 2014) .......... 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3, 9

*Bailey v. United States*,
516 U.S. 137 (1995) .......... 8

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) .......... 13

*Briskin v. Shopify Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .......... 2, 3

*Brown v. Bureau of Pro. and Occupational Affairs*,
18 A.3d 1256 (Pa. Commw. 2011) .......... 10

*Butcher v. Knudsen*,
38 F.4th 1163 (9th Cir. 2022) .......... 14

*Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*,
556 F.3d 1021 (9th Cir. 2009) .......... 14

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .......... 13, 14

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 9, 10

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 10, 14

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 10

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 11

*Eisenberg v. Citibank, NA*,
787 F. App'x 929 (9th Cir. 2019) .......... 6

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) .......... 14

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 13

*Franklin v. Ocwen Loan Servicing*,
2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) .......... 6

*Fraser v. Nationwide Mut. Ins. Co.*,
352 F.3d 107 (3d Cir. 2003) .......... 9

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 5

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 8

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 15

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 11

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 12

*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 3d 788 (N.D. Cal. 2022) .......... 15

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025) .......... 5

*Lau v. Gen Digital Inc.*,
2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) .......... 6, 7

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) .......... 5

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) .......... 9, 10

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) .......... 11

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .......... 15

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) .......... 12

*People v. Hyatt*,
109 Cal. App. 5th 735 (2025) .......... 12

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) .......... 13

*People v. Superior Ct. of Los Angeles County*,
70 Cal. 2d 123 (1969) .......... 10

*Plumlee v. Pfizer, Inc.*,
2014 WL 695024 (N.D. Cal. Feb. 21, 2014) .......... 6

*Pope v. Superior Ct.*,
136 Cal. App. 4th 871 (2006), *as modified* (Feb. 9, 2006) .......... 12

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025) .......... 7

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) .......... 4

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 12

*Rice v. Diocese of Altoona-Johnstown*,
255 A.3d 237 (Pa. 2021) .......... 6

*Rodriguez v. Google, LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 12

*Rojas v. HSBC Card Servs. Inc.*,
93 Cal. App. 5th 860 (2023) .......... 4

*Ryan v. Microsoft Corp.*,
147 F. Supp. 3d 868 (N.D. Cal. 2015) .......... 7

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 5

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 5, 6

*Tsering v. Meta Platforms, Inc.*,
2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 15

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 9, 10

## STATUTES

Cal. Penal Code § 631 ..... 2, 7, 13

Cal. Penal Code § 631(a) ..... 7, 8, 13, 14

Cal. Penal Code § 632(a) ..... 2, 7, 8, 14

Cal. Penal Code § 632(c) ..... 12

Pa. Cons. Stat. § 5702 ..... 2, 7, 9

Pa. Cons. Stat. § 5703 ..... 2, 14

## RULES

Fed. R. Civ. P. 8(a)(2) ..... 3

Fed. R. Civ. P. 9(b) ..... 7

## I. INTRODUCTION

Plaintiffs' opposition confirms that they have not stated, and cannot state, any claim against Meta. In dismissing the prior complaint, this Court provided clear instructions on what factual allegations were missing. Dkt. 57 at 10. Instead of supplying those allegations, Plaintiffs make bare assertions devoid of factual substance, seek to lower the pleading bar, and try to shoehorn allegations about Meta's purported *receipt* and *use* of information into criminal statutes that require entirely different conduct—namely, that a defendant acted affirmatively and intentionally to *acquire* certain data in certain ways. The complaint should be dismissed with prejudice.

*First*, Plaintiffs' claims still fail on consent grounds. Despite this Court's express instruction to "proffer *factual* allegations" showing "the challenged data sharing" occurred before BlueChew adopted its August 2024 Privacy Policy securing consent, Dkt. 57 at 9-10 (emphasis added), Plaintiffs fail to do so. Beyond parroting the Court's order, their opposition simply points to the same facts this Court already found insufficient. *Id*. at 9. The complaint should therefore be dismissed on the same grounds as before. And Plaintiffs' claims independently fail because as Facebook users, Plaintiffs agreed to Meta's policies, which clearly disclosed that Meta could receive information about "purchases and transactions you make" on other sites. Dkt. 64-28 at 5. Plaintiffs urge the Court to disregard Meta's policies, but they provide no factual basis to suggest they did not agree to those policies (as all Facebook users do); nor do they dispute the authenticity of the policies or oppose Meta's request for judicial notice. On the substance, Plaintiffs claim Meta's disclosures were not sufficiently specific to cover their purchases of medication, but Plaintiffs provide no basis to read Meta's statement that it would receive "purchase[]" information from other websites as excluding such purchases. This dooms all of Plaintiffs' claims.

*Second*, even if Plaintiffs had sufficiently alleged the challenged data sharing occurred when they made their purchases in 2022 and 2023, their CIPA and WESCA claims are facially time barred, and they allege no facts to support tolling.

*Finally*, Plaintiffs' claims also fail because Plaintiffs' opposition makes clear that Plaintiffs seek to impose liability for conduct that fundamentally does not fit the criminal statutes or tort doctrines they invoke. Plaintiffs must show, for example, that Meta willfully "read" or "learn[ed]"

contents of communications while "in transit," Cal. Penal Code § 631, or "intercept[ed]" them, Pa. Cons. Stat. § 5703; intentionally "use[d]" a "device" to record, *see* Cal. Penal Code § 632(a); Pa. Cons. Stat. § 5702; and intentionally invaded their privacy. But Plaintiffs admit that they allege only that Meta *received* data when "*BlueChew* … use[d] the Meta Pixel to transmit" information. Opp. 9 (emphasis added). Under Plaintiffs' sweeping interpretations, these statutes would not afford Meta fair notice of the conduct they prohibit and would therefore be unconstitutionally vague as applied here. Because CIPA and WESCA do not apply by their plain terms, and because Plaintiffs allege no highly offensive conduct, the complaint should be dismissed with prejudice.

## II. ARGUMENT

### A. Plaintiffs' Claims Fail Because Plaintiffs Consented To Meta's Receipt Of Their Data

Plaintiffs' claims fail because Plaintiffs do not adequately allege that BlueChew shared any data about them with Meta before BlueChew adopted its 2024 Privacy Policy, which this Court already held secured consent to such data sharing. Dkt. 57 at 9. And their claims also fail because, by agreeing to Meta's policies, Plaintiffs separately consented to Meta's receipt of information from websites that use Pixel code. Mot. 11-14. Plaintiffs' arguments to the contrary lack merit.

#### 1. Plaintiffs Fail To Adequately Allege That The Data Sharing Occurred Prior To BlueChew's 2024 Privacy Policy

Plaintiffs' opposition confirms that they failed to cure the defect this Court identified in dismissing the FAC, because they have not alleged any facts showing that BlueChew shared data about them before August 2024. Dkt. 57 at 9-10; *see also Briskin v. Shopify Inc.*, 2026 WL 161441, at *3-4 (N.D. Cal. Jan. 21, 2026) (dismissing on similar basis). The only allegations Plaintiffs added—that BlueChew shared data "at the time of" Plaintiffs' 2022 and 2023 purchases, and that the alleged "practices were in place on the Website before and during when Plaintiffs made their purchases," Opp. 4-5 (quoting SAC ¶¶ 7, 9, 57)—do not comport with this Court's instructions or satisfy *Iqbal* and *Twombly*'s pleading standards. The Court instructed Plaintiffs "to proffer *factual allegations* that support their claims of privacy violations for the period preceding the adoption of the August 2024 Privacy Policy." Dkt. 57 at 10 (emphasis added). Plaintiffs cannot satisfy that

instruction simply by restating the pleading requirement the Court identified, without a single factual allegation allowing a reasonable inference that the conduct occurred prior to August 2024.[1] *See* Mot. 10-11 (citing cases); *Briskin*, 2026 WL 161441, at *3-4 ("infer[ence]" that defendant "must have been engaging in the same conduct" years ago was insufficient); *cf. Anaya v. Marin Cnty. Sheriff*, 2014 WL 6660415, at *7 (N.D. Cal. Nov. 24, 2014) (allegation that a police practice "is customary" insufficient to allege that department "has a policy or custom").

Because their new allegations are entirely devoid of substance, Plaintiffs try to "bolster[]" them by pointing to allegations that are *identical* to those this Court already found insufficient. *See* Opp. 4-5. Plaintiffs point to their alleged dates of purchase, Opp. 4, which they previously alleged in their FAC, Dkt. 34 ¶¶ 7, 9, and again contend that Meta "intercepted" information about those purchases through code, Opp. 4-5. Those are the same factual allegations this Court already considered and found deficient. *See* Dkt. 34 ¶¶ 7, 9, 32, 41-43. Plaintiffs also now contend that the screenshots in the SAC—which are the *same* as those in the original complaint and the FAC, *see* Dkts. 1, 34—show "transmissions to Meta as they would have occurred at the time of Plaintiffs' purchases in 2022 and 2023." Opp. 5. But the SAC contains no allegations about when the screenshots were taken or any facts plausibly suggesting they represent 2022 or 2023 functionality. To the contrary, Plaintiffs have consistently alleged these screenshots "illustrate[]" how the Pixel "works" (present tense) in 2024 and 2025. Dkt. 1 ¶¶ 35-36; Dkt. 34 ¶¶ 39-40; SAC ¶¶ 38-39.

Plaintiffs' suggestion that Meta is imposing "an evidentiary standard at the pleading stage" is wrong. Opp. 6. Meta is simply holding Plaintiffs to their burden to allege "well-pleaded facts," which requires "the complaint" to not just "allege[]" but "*show*[] . . . that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added) (quoting Fed. R. Civ. P. 8(a)(2)). Because they have not done so, the SAC should be dismissed.

**2. Plaintiffs Consented By Agreeing To Meta's Policies**

Plaintiffs' claims also fail because Plaintiffs consented to Meta's receipt of information

---

[1] In fact, Plaintiffs now allege that data was used for targeted advertising "[u]nbeknownst" to them, SAC ¶¶ 8, 10, suggesting they themselves did *not* see ads—which only further undercuts the inference that their data was shared before August 2024. *Compare* Dkt. 34 ¶¶ 8, 10 (previously alleging Plaintiffs "ha[d] received targeted advertisements").

from third-party websites that use Pixel code by agreeing to Meta's policies. Mot. 11-14. Plaintiffs respond with scattershot arguments urging this Court to disregard those policies. None holds water.

*First*, Plaintiffs claim that *Meta* must show consent. Opp. 6. But "lack of consent is a required element" of the CIPA claims, and Plaintiffs thus bear the burden. *Rojas v. HSBC Card Servs. Inc.*, 93 Cal. App. 5th 860, 889 (2023) (analyzing whether *plaintiff* carried her burden to show consent); *see also Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019). Likewise, as this Court explained, Plaintiffs must "plausibly allege a lack of consent" for the WESCA claim, and "cannot have a reasonable expectation of privacy," as required for an invasion of privacy claim, "if they consented to the intrusion." Dkt. 57 at 6.

*Second*, Plaintiffs baldly assert (but never allege in the complaint) that even though they are Facebook users, SAC ¶ 11, they somehow did not agree to Meta's Terms of Service, Privacy Policy, or Cookies Policy. Opp. 7. Plaintiffs point to no facts to support that implausible assertion. While Plaintiffs fault Meta for submitting "Facebook's current sign-up screen," Opp. 7, Plaintiffs' SAC itself cites this sign-up page, SAC ¶ 25 n.5, which states that users "agree to our Terms, Privacy Policy, and Cookies policy" (all hyperlinked) "[b]y clicking Sign Up," Dkt. 64-22 at 2; *see also* Mot. 11-12 (citing cases recognizing that all users agree to Meta's Terms of Service and incorporated policies). Plaintiffs themselves thus cite a source suggesting that users agree to Meta's policies, and fail to allege any facts suggesting they somehow did *not* agree. Moreover, Plaintiffs allege that they "maintained active accounts with" Facebook "at all relevant times," SAC ¶ 11, and Meta's Terms make clear that continued use constitutes agreement to any policy updates. Dkt. 64-23 at 7 ("Once any updated Terms are in effect, you will be bound by them if you continue to use our Products."). Plaintiffs' argument regarding "the mere existence of a privacy policy," Opp. 7, thus misses the mark and mischaracterizes Meta's position.

*Third*, as to the actual content of Meta's policies, Plaintiffs object that Meta did not "'explicitly notify' [them] of the conduct at issue." Opp. 7 (citation omitted). But Meta's policies did just that—they explained that Meta could receive information about "[p]urchases and transactions you make" on other websites, as well as identifying information including "cookies," and use that information for targeted advertising. Dkt. 64-28 at 5. Plaintiffs argue that the Terms

suggest Facebook only gathers information from users' "activity on Facebook," Opp. 8, but the Terms explicitly state that Meta "use[s] data" about "what you share and do on *and off* our Products" to provide a personalized experience. Dkt. 64-25 at 2 (emphasis added). And the Terms incorporate Meta's Privacy Policy, *see id.* at 1, which includes an entire section on how Meta receives and uses "[i]nformation from [p]artners, vendors and third parties." Dkt. 64-28 at 5.

Plaintiffs' argument that the Terms of Service are "ambiguous" because they use the "undefined" term "personal data" also fails. Opp. 8. The Privacy Policy elaborates on those disclosures by specifically informing users that Meta can receive information about "[p]urchases and transactions you make" on other websites. Dkt. 64-28 at 5. That is precisely the type of information Plaintiffs allege was sent to Meta here. SAC ¶ 40. No "more granular disclosure" was required. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1056 (N.D. Cal. 2025), *appeal docketed*, No. 25-2857 (9th Cir. May 2, 2025); *see also Hammerling v. Google, LLC*, 2024 WL 937247, at *1-2 (9th Cir. Mar. 5, 2024) (declining to narrowly construe broad disclosures in Google privacy policy); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017) ("[A] contractual term is not ambiguous just because it is broad." (citation omitted)).

Meta's disclosures do not somehow become less explicit merely because Plaintiffs' purchases were related to medication, as they claim throughout their brief. *E.g.*, Opp. 7, 9. As Plaintiffs ultimately acknowledge, the relevant question for consent is whether "a reasonable user who viewed Meta's policies would have understood that Meta was collecting" the information at issue. Opp. 8 (citation omitted). As the Ninth Circuit has twice concluded, the answer to that question is yes: Meta's policies clearly disclose that Meta will "collect[] its users' data from third party sites and [] later us[e] the data for advertising purposes." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8-9 (9th Cir. 2018) (addressing health-related browsing data); *see also Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024). The analysis is especially straightforward here, because Meta specifically disclosed that it would receive purchase information from other websites—the very type of information at issue.[2] The Privacy Policy makes no distinction between

---

[2] Plaintiffs point to this Court's decision in *GoodRx*, but there, the Court did not analyze Meta's specific disclosure regarding purchase information.

purportedly "sensitive" and non-sensitive purchases, and Plaintiffs cannot alter its terms by reading in such a limitation. Nor do the Business Tools Terms, which are an agreement between Meta and *developers* (and contain no promises to users), alter Meta's separate agreements *with users*. Opp. 8; *see* Mot. 13 n.7. And, as the Ninth Circuit has held, BlueChew's privacy policies also cannot displace Meta's clear disclosures. *Smith*, 745 F. App'x at 9; *see* Mot. 13.

### B. Plaintiffs' Claims Are Time Barred

Plaintiffs do not sufficiently allege that the challenged data sharing occurred when they made their purchases on BlueChew in 2022 and 2023, but if they had, their CIPA and WESCA claims would be "facially time-barred." *Lau v. Gen Digital Inc.*, 2023 WL 10553772, at *2 (N.D. Cal. Sept. 13, 2023); Mot. 14. Plaintiffs vaguely suggest that *Meta* bears the burden on this issue. Opp. 10. But "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of [a tolling rule] must specifically plead facts" to show he is entitled to tolling. *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) (citation omitted). And Plaintiffs concede they must "plead" "the time and manner of discovery" and facts showing due diligence and an inability to discover their claims. Opp. 11. They have not. *See* Mot. 15.

Plaintiffs suggest they could not have discovered their claims earlier because Meta used "proprietary technology" and the conduct at issue was "surreptitious." Opp. 11-12. But a plaintiff need not know exactly what technology or conduct injured them to trigger the limitations clock; they must know only of "at least some form of [alleged] harm and of a factual cause linked to another's conduct." *Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 247 (Pa. 2021); *see also Eisenberg v. Citibank, NA*, 787 F. App'x 929, 930-31 (9th Cir. 2019). Here, Plaintiffs would have been put on notice in 2022 or 2023 that BlueChew might share their information. BlueChew's 2022 and 2023 privacy policies disclosed that BlueChew collected information about users' use of its website, and that it could share that information (including personally identifiable information and health information) with its service providers. Mot. 15. Even if those policies were insufficient to establish actual consent, they provided inquiry notice of the possibility of data sharing. *Id.* So this case is distinct from *Franklin v. Ocwen Loan Servicing*, Opp. 12, where plaintiff "received no recording disclosure at all" for some calls. 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018).

Plaintiffs also argue tolling due to fraudulent concealment. Opp. 13. But "a plaintiff 'must plead allegations of fraudulent concealment with particularity'" under Rule 9(b), *Lau*, 2023 WL 10553772, at *3, and this theory appears nowhere in the SAC. Plaintiffs allege only that Meta "surreptitiously" collected information, which is not an "affirmative[] act[] *to mislead*," as Plaintiffs concede is required. Opp. 13 (emphasis added); *see Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 885 (N.D. Cal. 2015). Plaintiffs also assert that Meta "published misleading Business Tools terms, which suggested that [Meta] would not use its technology to intercept sensitive health information." Opp. 13. But Meta's Business Tools Terms (to which Plaintiffs are not parties) define *developers'* obligations to *Meta*—they do not constitute affirmative promises to users of developers' websites. They thus cannot support any fraudulent concealment theory.

### C. Plaintiffs' CIPA And WESCA Claims Fail Because Allegations That Meta Received Information Do Not Show That Meta Violated The Statutes

Plaintiffs' CIPA and WESCA claims also fail because Plaintiffs do not allege that Meta engaged in any conduct actually proscribed by those criminal wiretapping and eavesdropping laws. Plaintiffs' opposition confirms they are complaining that Meta *received* and *used* information that a third party, BlueChew, chose to send. But those allegations simply do not fit these statutes, which penalize "intentionally" "us[ing]" a "device" to "eavesdrop," Cal. Penal Code § 632(a), or "willfully" "read[ing]" or "learn[ing]" the contents of communications "in transit," *id.* § 631(a); *see also* Pa. Cons. Stat. § 5702 (proscribing "intercept[ion]" through "use" of a "device"). To the extent there is any ambiguity, the rule of lenity and constitutional avoidance principles compel a narrow construction. *See infra* at 14.

***CIPA Section 631.*** Plaintiffs' CIPA Section 631 claim requires them to allege that Meta "read" or "learn[ed]" the contents of their communications "while the same [were] in transit." Cal. Penal Code § 631(a); *see also* Mot. 16-17. Plaintiffs argue that this is a factual question that cannot be decided on a motion to dismiss. Opp. 14. Courts, however, dismiss Section 631 claims where the complaint lacks factual allegations that the communications were read "while" "in transit." *See R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025). And Plaintiffs' complaint lacks such allegations; instead, Plaintiffs "merely restate the statutory language, which

is insufficient under the plausibility standard." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024); *see* Opp. 14.

The specific factual allegations Plaintiffs do make show that Meta did not "read" or "learn" the content of Plaintiffs' communications with BlueChew while those communications were "in transit." Mot. 17. Plaintiffs allege that Meta "processed, analyzed, and assimilated" the data it received from BlueChew "*[a]fter* collecting and intercepting" it. SAC ¶ 56 (emphasis added). Such allegations do not satisfy Section 631's in-transit requirement. *See R.C.*, 2025 WL 948060, at *7 (allegations that information is viewed after it is received "do not support a plausible inference" Meta "reads the information 'while the same is in transit.'").

***CIPA Section 632.*** Plaintiffs fail to allege any facts plausibly suggesting that *Meta* "use[d]" Pixel code to "record," as the statute requires. Indeed, Plaintiffs all but concede Meta did not *actually* "use" the alleged device; in Plaintiffs' own words, Meta "makes [Pixel code] free for *website owners* to use." Opp. 1 (emphasis added); *see id.* at 9 (BlueChew "use[d] the Meta Pixel to transmit" data). That Meta "designed" Pixel code, "provide[d]" it to developers, and "benefitted" from *developers'* use of it, Opp. 15, plainly is not the same as Meta itself "us[ing]" a device to record. Plaintiffs' chosen dictionary definition confirms as much. Plaintiffs argue that the statute covers merely "benefit[ting] from the use of" a device, citing the third definition listed, which offers as an example the sentence, "Can you *use* this lamp? I don't want it anymore." Opp. 15 & n.4 (citing https://www.merriam-webster.com/dictionary/use). But, tellingly, that example contemplates benefitting from one's *own use* (of the lamp). It does not remotely show that the legislature sought to penalize people for *another's* "use" of a device. The term "use," particularly in the context of a statute that carries criminal and punitive civil penalties, must require some active employment of the object. *See Bailey v. United States*, 516 U.S. 137, 143 (1995) (statute punishing "use" of a firearm requires "active employment of the firearm by the defendant").

Nor does the fact that Meta allegedly used or benefitted from the *information* sent by BlueChew, Opp. 15, show Meta "use[d]" a "device." *Compare* Cal. Penal Code § 632(a), *with* Cal. Penal Code § 631(a) (penalizing "use[]" of improperly obtained data). Interpreting the "use" requirement so broadly would effectively abandon the statutory text, penalize passive conduct, and

punish Meta for third parties' behavior—raising serious constitutional concerns. *Infra* at 14.

***WESCA.*** Like CIPA, WESCA only proscribes "intercept[ion]" through "use" of a "device," Pa. Cons. Stat. § 5702, and "only … contemporaneously with transmission." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 & n.6 (3d Cir. 2003). As such, the WESCA claim fails for the same reasons as the CIPA claims.

### D. Plaintiffs' Claims Fail Because Plaintiffs Do Not Allege That Meta Intended To Obtain Sensitive Data

Plaintiffs' claims also fail because Plaintiffs do not (and cannot) allege that Meta intended to obtain the allegedly sensitive data at issue. Mot. 18. While Plaintiffs argue that intent is a question of fact, Opp. 16-17, Plaintiffs still must *allege* facts that plausibly show Meta's intent. *See Iqbal*, 556 U.S. at 686-87 ("conclusory" allegations of intent insufficient); Mot. 8.

Plaintiffs must allege that Meta acquired the data at issue "purposefully and deliberately." *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015); Mot. 18-19. Plaintiffs do not even try to meet this standard. Instead, they attempt to lower the bar, arguing that Meta acted "intentional[ly]" if Meta was merely "aware that the information it is intercepting *may* be confidential." Opp. 16 (emphasis added). Plaintiffs' "awareness" standard is untethered from the language of CIPA and WESCA. Indeed, the California Court of Appeal rejected an "awareness" standard in the CIPA Section 632 context, holding that a party did not act with intent to record where it was merely "aware that equipping police cars with recording devices *could* record 'sensitive personal communications between employees.'" *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 727-28 (2022) (emphasis added).

Plaintiffs try to support their lower standard by pointing to cases resting on the notion that intent may be inferred at the motion-to-dismiss stage where a defendant is aware of, and fails to remedy, a *defect* in its own product over which it has sole control. Opp. 16; *see id.* at 17-18 (arguing that Meta has "failed to take remedial action" against BlueChew). Those cases are wrong, as *Doe I v. Google LLC* explains. 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) ("*Google Pixel I*").[3] And in

[3] Plaintiffs purport to distinguish *Google Pixel I* by claiming that the plaintiffs there did not allege Google intended to use the information for profit. Opp. 19-20. But the complaint included an entire

any event, they are inapposite when, as here, a *third party misuses* the defendant's product. Opp. 9. Meta requires developers to agree to policies prohibiting them from sending sensitive information, provides guidance on how not to send information, and requires developers to obtain consent from their users. Mot. 20. The mere possibility that a developer *could* use a tool improperly notwithstanding these precautions does not equate to "conscious[] and deliberate[]" action by Meta. *Christensen*, 828 F.3d at 791.[4]

California cases reinforce this point. *People v. Superior Court of Los Angeles County* held that intent could be shown where a defendant acts "with the knowledge to a substantial certainty that *his* use of the equipment" will record a confidential communication. 70 Cal. 2d 123, 134 (1969) ("*Smith*") (emphasis added). When a *third party* uses the "equipment," however, there is no clear basis to infer the *defendant's* intent to receive information, much less its intent to *read or learn in transit*, *intercept*, or *record* a communication. In fact, *Lozano* affirmed a finding that recordings did not violate Section 632 where plaintiffs "presented no evidence to establish who activated the system," and thus could not establish that the defendant "intentionally" recorded a confidential communication. 73 Cal. App. 5th at 728.

While this Court held in a different case that plaintiffs adequately alleged intent despite Meta's Business Tools Terms (based on more extensive allegations, *see* Mot. 21), *see Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *8 (N.D. Cal. July 22, 2025), it looked to defect cases that are inconsistent with *Christensen* and California law, and, if nothing else, should not be extended to third-party misuse cases like this one. *See* Mot. 20-21. Further, to the extent CIPA and WESCA are ambiguous, courts must "resolve [those] ambiguities in favor of the narrower interpretation" under the rule of lenity. *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *1, *3 (N.D. Cal. Oct. 17, 2025) (applying rule of lenity to CIPA); *see Brown v. Bureau of Pro. and Occupational Affairs*, 18 A.3d 1256, 1259 (Pa. Commw. 2011). Failing to do so would

---

section on how Google monetized information in its "advertising systems." Am. Compl. ¶¶ 123-54, Dkt. 86, *Doe I v. Google LLC*, No. 3:23-cv-02431-VC. Even so, those allegations failed to "plausibly allege" Google intentionally *intercepted* the communications. *Google Pixel I*, 741 F. Supp. 3d at 837-38, 844.

[4] For that reason, Plaintiffs' contention that Meta's prohibition on sharing "health" information shows Pixel code "could" be used to share such information is irrelevant. Opp. 17.

impermissibly expand the scope of these criminal eavesdropping statutes to cover even inadvertent receipt of expressly unwanted information, which raises constitutional concerns about fair notice. Mot. 21; *infra* at 14. Indeed, short of discontinuing the availability of Pixel code altogether, it is difficult to see how Meta could avoid liability on Plaintiffs' unbounded view of "intent."

Because Plaintiffs cannot show that Meta intended to obtain any confidential communication or to intrude on their privacy, Plaintiffs' claims should be dismissed.

### E. Plaintiffs' CIPA And WESCA Claims Fail For Additional Reasons

#### 1. Pixel Code Is Not A "Device"

Plaintiffs' CIPA Section 632 and WESCA claims fail because those statutes apply only to "device[s]," and Pixel code is not a "device" within the meaning of either statute. Mot. 21-23.

Rather than engage with the text and structure of the statutes, Plaintiffs cite other cases purportedly holding that software can be a "device." Opp. 20 & n.7. But these cases are not persuasive. Some do not squarely consider the question whether software is a "device" at all. *See, e.g.*, *Luis v. Zang*, 833 F.3d 619, 634 (6th Cir. 2016) (no analysis of meaning of term "device"). Others rest on a misreading of an earlier case, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015), which analyzed an entirely different question. In *In re Carrier IQ*, the defendant argued that its software was not a "device" under the federal Wiretap Act only based on a specific exception for a "telephone or telegraph instrument, equipment or facility, or any component thereof." 78 F. Supp. 3d at 1084. The court rejected the argument that the software was a "component" (which has nothing to do with Meta's argument here) because the exception applied only in particular circumstances. *Id.* Based on *that* analysis, the court concluded that "Plaintiffs have sufficiently alleged that the Carrier IQ software is a 'device' for purposes of the Wiretap Act." *Id. Doe v. Meta Platforms, Inc.* and the other cases Plaintiffs cite mistakenly seize on that single, inapposite sentence to hold that software is a "device," contrary to the plain meaning of the term. *See* 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023).

Plaintiffs' other arguments against construing "device" according to its plain meaning fare no better. *First*, Plaintiffs point to cases suggesting software must be a "device" because it cannot operate without hardware. Opp. 21-22. But concluding that software must *run on* a device to

function simply confirms that software code is not itself a "device."

*Second*, Plaintiffs attempt to dismiss *Moreno* and *In re Google Location History*, Opp. 22, which concluded that software was not a device, because those cases involved CIPA Section 637.7, which requires that the device be "attached to a vehicle or other movable thing." But both cases looked to the "plain meaning" of the term "device" to conclude the term refers to physical equipment. *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *4-5 (N.D. Cal. Dec. 14, 2017); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193-94 (N.D. Cal. 2019). That plain meaning applies equally here. Mot. 22. Further, contrary to Plaintiffs' assertions, Opp. 22, the statutory context of both CIPA 632 and WESCA, like CIPA Section 637.7, confirms that "device[s]" are limited to tangible objects, not code. Mot. 22-23.

*Finally*, Plaintiffs invoke the privacy-protective purpose of CIPA, Opp. 22, but a general purpose cannot override the statutory text. California courts "first look to" text to discern the meaning of statutes. *Pope v. Superior Ct.*, 136 Cal. App. 4th 871, 875 (2006), *as modified* (Feb. 9, 2006). And, as the California Supreme Court has acknowledged, different provisions of CIPA are directed to different "aspect[s] of the privacy problem," and must be analyzed based on their "operative language." *Ribas v. Clark*, 38 Cal. 3d 355, 359-60 (1985). CIPA Section 632's particular "device" requirement thus cannot be ignored in the name of achieving the statute's general aims. Moreover, CIPA and WESCA are *criminal* statutes; any ambiguity must therefore be decided in Meta's favor. *Supra* at 10; *e.g.*, *People v. Hyatt*, 109 Cal. App. 5th 735, 747 (2025).

**2. The Section 632 Claim Fails Because Plaintiffs Do Not Allege A Confidential Communication**

As Meta explained, Section 632 specifically defines a "confidential communication" to "exclude[] a communication made" in circumstances "in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." Cal. Penal Code § 632(c). Because Plaintiff M.D. necessarily must have known his purchase information would be recorded to fulfill his order, those communications were not "confidential" under Section 632. *See Rodriguez v. Google, LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021); Mot. 23.

Plaintiffs do not contest that they knew information related to their purchases would, at

minimum, be recorded by BlueChew. Opp. 23. Instead, they ignore the statutory definition, arguing that they had a general expectation of privacy in their medication purchases and that Meta's cited cases do not "involv[e] … information provided to a medical provider." *Id*. 22-24. But Section 632 does not focus on the *content* of communications. It focuses on the *circumstances* of the communication and whether the plaintiff had a reasonable expectation of *recording*, by anyone. *E.g., Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) (text messages, which "are by nature recorded"); *People v. Nakai*, 183 Cal. App. 4th 499 (2010) (internet chat messages). Indeed, the California Supreme Court has explicitly rejected a test that relies solely on content to determine when a communication is confidential, explaining that such a rule could *lessen* privacy protections by prohibiting recording only of conversations on certain topics. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002).

By the same token, the statute does *not* apply where circumstances indicate that a conversation will be recorded, no matter how "sensitive." For example, someone texting a pharmacy to refill a prescription should expect that text message to be recorded, since text messages are by nature recorded. *Boulton*, 2025 WL 314813, at *2. The same is true here. When Plaintiffs made their online purchases, they reasonably expected the information to be recorded for the order to be fulfilled. Such communications are not "confidential" under Section 632.

Plaintiffs suggest that a plain reading of the statute "would eliminate all internet communications from the purview of CIPA § 632." Opp. 24. But this Court need only consider the communications at issue here: online purchase information, which unquestionably must be recorded. In any event, perceived gaps in the statute are no reason to ignore the clear import of its text, particularly where the legislature has amended the statute as it deems necessary. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024) (Martínez-Olguín, J.) (adhering to plain language and emphasizing that legislature has amended some, but not all, sections of CIPA).

**3. The Section 631 Clause One Claim Fails Because Plaintiffs Do Not Allege Any Telephonic Communications**

Plaintiff M.D.'s Section 631 claim should be dismissed to the extent it rests on the first clause of Section 631(a), because he does not allege that he communicated with BlueChew via

telephone or telegraph wire. *See* Mot. 24. Plaintiffs argue that this Court should read clause one to apply to "new technologies," even though the language is explicitly limited to telephone and telegraph wires. Opp. 24. But this Court already rejected that argument in *Cody*, reasoning that "the Legislature has not updated clause one" despite "multiple amendments" to CIPA. 718 F. Supp. 3d at 999. "The plain terms" thus control and foreclose any claim based on clause one. *Id.*

**F. Under Plaintiffs' Erroneous Interpretations Of CIPA And WESCA, Those Statutes Are So Capacious They Fail To Provide Fair Notice**

As detailed above, Plaintiffs advance drastically overbroad interpretations of the criminal wiretapping and eavesdropping statutes they invoke—across nearly every element. If CIPA and WESCA in fact covered Meta's alleged conduct here of *receiving* information through a third party's use of code that Meta created and made generally available, they would be unconstitutional, as they do not give "fair notice" of such a broad sweep. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also Butcher v. Knudsen*, 38 F.4th 1163, 1178 (9th Cir. 2022) (law unconstitutionally vague where it gave individuals no "reasonable opportunity to know" their activities were covered (citation omitted)). Meta could not have known that such receipt of information, sent by someone else using commonplace technology, could constitute *Meta* "intentionally" "us[ing]" a "device" to "eavesdrop," Cal. Penal Code § 632(a), "willfully" "read[ing]" or "learn[ing]" the contents of communications "in transit," *id.* § 631(a), or "intentionally intercept[ing]" a communication, Pa. Cons. Stat. § 5703. *See Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1029 (9th Cir. 2009) (law unconstitutionally vague where liability turned on factors beyond the party's control).

As one court has observed, "it's [now] often borderline impossible to determine whether a defendant's online conduct fits within the language of [CIPA]." *Eating Recovery Ctr.*, 2025 WL 2971090, at *1. Plaintiffs' broad interpretations would make any company that develops analytics technology vulnerable. This Court should not countenance such a breathtaking expansion of criminal statutes. Plaintiffs' interpretations are wrong on the text. *Supra* at 7-14. And to the extent there is ambiguity, this Court should read the statutes narrowly under principles of lenity and constitutional avoidance.

### G. Plaintiff M.D. Cannot Save His Invasion Of Privacy Claim

Finally, Plaintiff M.D.'s invasion of privacy claim fails because he does not allege any intentional intrusion or reasonable expectation of privacy given his consent. *Supra* at 2-6, 9-11.

Nor does he allege any egregious, highly offensive intrusion. Contrary to Plaintiffs' suggestion, Opp. 24-25, courts "do in fact[] decide the 'highly offensive' issue … at the pleading stage when appropriate." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024); *see Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *7 (N.D. Cal. Jan. 12, 2026) (dismissing for failure to allege Meta engaged in highly offensive conduct). This is such a case. Plaintiffs allege only that Meta *received* data from BlueChew, as a result of *BlueChew*'s choice to integrate Pixel code into its website. That is not an egregious intrusion by Meta.

Nor do Plaintiffs' cases support them. Plaintiffs compare this case to *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *6 (N.D. Cal. Sept. 16, 2024) (Martínez-Olguín, J.), Opp. 25, but as Meta explained, plaintiffs there sued a mental health platform, which had itself decided to embed tracking technology on its *own* website and which did not contest that it failed to disclose that tracking. Mot. 25. Nor does *In re Meta Pixel Healthcare Litigation* change the analysis. There, the court incorrectly relied on laws forbidding *disclosure* of health information to conclude that Meta's *receipt* of information was highly offensive—but that simply does not follow. 647 F. Supp. 3d 788, 800-01 (N.D. Cal. 2022). Plaintiffs' reference to "protections under federal law" for health data, Opp. 25, is unavailing for the same reason. The *Meta Pixel* court also suggested that Meta's policies *forbidding* transmission of health-related information showed that Meta's receipt of such information could be highly offensive. 647 F. Supp. 3d at 801. But the case on which the court relied involved *internal* documents recognizing an alleged privacy issue. By contrast, here, Meta contractually "forbid[s] the transmission of health-related information" or any information without consent in its terms with developers. Opp. 25. And there is certainly no basis to conclude that Meta *knew* it was receiving Plaintiffs' data without consent. *Tsering*, 2026 WL 89320, at *7. This confirms Meta's conduct was not egregious.

## III. CONCLUSION

Meta respectfully requests dismissal of the SAC with prejudice.

Dated: February 20, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ Melanie M. Blunschi

Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Kristin Sheffield-Whitehead (Bar No. 304635)
*kristin.whitehead@lw.com*
Catherine A. Rizzoni (Bar No. 322267)
*cat.rizzoni@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

Margaret A. Upshaw (*pro hac vice*)
*maggie.upshaw@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant*
*Meta Platforms, Inc.*