COOLEY LLP
BEN HUR (224018)
(bhur@cooley.com)
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO SANTACANA (281668)
(esantacana@cooley.com)
JOSHUA ANDERSON (312836)
(joshua.anderson@cooley.com)
ISABELLA M. CORBO (346226)
(icorbo@cooley.com)
3 Embarcadero Center
20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| M.D., O.F., and J.P., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC and META PLATFORMS,<br><br>Defendants. | Case No. 3:24-cv-06369-AMO<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMEND COMPLAINT**<br><br>Date: June 11, 2026<br>Time: 2:00 PM<br>Dept: 10, 19th Floor<br>Judge: Hon. Araceli Martínez-Olguín<br><br>Trial Date: Not Set<br>Date Action Filed: September 10, 2024 |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs do not have Article III standing ..... 1

B. Plaintiffs claims are untimely ..... 3

1. Plaintiffs did not cure the deficiencies in their First Amended Complaint ..... 3

2. Plaintiffs' claims are barred by the statutes of limitations ..... 4

C. Plaintiffs fail to state claims under CIPA and WESCA ..... 6

1. Bluechew's pre-August 2024 privacy policies established consent ..... 6

2. Plaintiffs do not adequately allege intent ..... 7

3. Plaintiffs' CIPA claim fails because there is no allegation that the data transmitted to Google constitute the "content" of a communication that was read contemporaneously ..... 8

a. Plaintiffs do not adequately allege that Google did not act as a mere vendor ..... 10

4. Plaintiffs' communications were not confidential within the meaning of CIPA section 632 and WESCA ..... 11

5. Plaintiff M.D. fails to state a claim for invasion of privacy under the California Constitution ..... 12

D. Dismissal with prejudice is warranted ..... 15

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Cases**

*Arndt v. Gov't Emps. Ins. Co.*,
750 F. Supp. 3d 518 (D. Md. 2024) .......... 12

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024), *on reconsideration in part,* 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) .......... 14

*Briskin v. Shopify Inc.*,
2026 WL 161441 (N.D. Cal. Jan. 21, 2026) .......... 4, 6, 7, 8

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .......... 9

*Carrico v. City & Cnty. of S.F.*,
656 F.3d 1002 (9th Cir. 2011) .......... 15

*Commonwealth v. Byr*d,
661 Pa. 85 (2020) .......... 6

*Commonwealth v. Kurtz*,
348 A.3d 133 (Pa. 2025) .......... 12

*Counterman v. Colorado*,
600 U.S. 66 (2023) .......... 8

*Delong v. PHE, Inc.*,
2025 WL 2447787 (E.D. Pa. Aug. 25, 2025) .......... 2

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 1, 7, 12

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 10

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... *passim*

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 10, 14

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 14, 15

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 6, 12

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .................................................................................................... 5

*Franklin v. Ocwen Loan Servicing, LLC*,
2018 WL 5923450 (N.D Cal. Nov. 13, 2018)..................................................................... 5

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ....................................................................................... 2

*Gabrielli v. Haleon US Inc.*,
2025 WL 2494368 (N.D. Cal. Aug. 29, 2025).................................................................... 2

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023)................................................................... 14

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018), *on reconsideration*, 2018 WL 3068248
(N.D. Cal. June 21, 2018) .................................................................................................. 9

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................................................. 10

*Gutierrez v. Converse Inc.*,
2025 WL 1895315 (9th Cir. July 9, 2025)........................................................................ 10

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ..................................................................................................... 13

*Hightower v. Celestron Acquisition, LLC*,
2021 WL 2224148 (N.D. Cal. June 2, 2021) ...................................................................... 6

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................................... 14

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024)............................................................................... 9

*Kight v. CashCall, Inc.*,
200 Cal. App. 4th 1377 (2011)........................................................................................... 12

*Lieberman v. KCOP Television, Inc.*,
110 Cal. App. 4th 156 (2003)............................................................................................. 12

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) .................................................................... 10

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................................... 13, 14

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022)........................................ 7, 8

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ........................................ 14

*People v. Hawkins*,
98 Cal. App. 4th 1428 (2002), *as modified on denial of reh'g* (July 2, 2002) ........................ 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025)........................................ 1, 2

*R.C. v. Sussex Publishers, LLC*,
2025 WL 1735994 (N.D. Cal. June 23, 2025) ........................................ 9

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)........................................ 10

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)........................................ 14

*St. Aubin v. Carbonn Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)........................................ 14

*Svenson v. Google Inc.*,
65 F. Supp. 3d 717 (N.D. Cal. 2014) ........................................ 9

*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.*,
4 Cal. 5th 1082 (2018) ........................................ 11

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015)........................................ 7

*Weatherly v. Universal Music Publ'g Grp.*,
125 Cal. App. 4th 913 (2004)........................................ 5

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........................................ 10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)........................................ 9

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)........................................ 9

**Statutes**

Cal. Code Regs. tit. 11, § 7050 ........................................ 11

Cal. Penal Code § 502 (CDAFA)........................................ 7, 8

Cal. Penal Code § 631 (CIPA) ........ 6, 7, 8, 10

Cal. Penal Code § 632 (CIPA ) ........ 6, 7, 11

Cal. Penal Code § 632(c) ........ 12

Civ. Code § 1798.104 (CCPA) ........ 10, 11, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Even after getting a *third* bite at the apple, Plaintiffs' Second Amended Complaint is fatally flawed and must be dismissed. Plaintiffs' Opposition to Google's Motion to Dismiss ("Opp.", Dkt. 66) fails to rehabilitate the flaws in their Second Amended Class Action Complaint ("SAC", Dkt. 58).

The Opposition fails to establish that Plaintiffs have Article III standing, that Plaintiffs' claims in the SAC cure the deficiencies identified by the Court in its Order dismissing the First Amended Complaint, or that they meet the requirements of the discovery rule. The Opposition also fails to rebut Google's argument that judicially noticeable materials negate the element of Google's intent, which is common to all of Plaintiffs' claims. On this element, the Opposition ignores binding authority and fails to distinguish *Doe I v. Google*, which dismissed substantially similar claims. Plaintiffs do not adequately rebut the SAC's failure to allege that Google intercepted the "contents" of any communication, which dooms their CIPA and WESCA claims. Nor do they establish that Google acted as anything more than a mere vendor, that their communications were confidential, or that Google's alleged conduct was an egregious breach of social norms. For these reasons, and all the additional ones detailed herein, the Court should dismiss the SAC with prejudice.

## II. ARGUMENT

### A. Plaintiffs do not have Article III standing

Plaintiffs argue that they have standing due to the sensitivity of the data alleged to be at issue. But the most sensitive information they allege was passed to Google was a code with no established meaning to Google. This is insufficient under *Popa*, which held that standing analysis benchmarks a plaintiff's circumstances against a particular tort, such as the "highly offensive" intrusions actionable at common law. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025).

While Plaintiffs *argue* that Google collects sensitive diagnosis and treatment information, their *allegations* say nothing of the sort. Instead, they claim that Google collected their names and email addresses, as well as routine, pseudonymized purchase identifiers that do not substantively differ from the "common business information" collected in Google's cited caselaw. *See* SAC ¶¶

68–70, 83; *Delong v. PHE, Inc.*, 2025 WL 2447787, at *6 (E.D. Pa. Aug. 25, 2025). Simply intoning that the website itself concerned "sensitive" information is inadequate to support standing, as demonstrated by *Delong*, 2025 WL 2447787, at *6 (finding alleged collection of browsing data on sex-related website insufficient for standing to pursue WESCA claim). And Plaintiffs do not rebut the host of other post-*Popa* cases that found lack of standing in cases with allegations just like these. *See* Google's Motion to Dismiss ("Mot.", Dkt. 61, at 8–9).

Plaintiff seeks to analogize this case to *Gabrielli v. Haleon US Inc.*, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025), which found the collection of healthcare information sufficient to support standing under *Popa*. But *Gabrielli* is inapposite. First, the court supposed that the information the plaintiff input into the defendants' websites was "likely more sensitive" than what was at issue in *Popa*. *Id.* at *7. Here, Plaintiffs do not identify any "embarrassing, invasive, or otherwise private information" Google collected. *Popa*, 154 F. 4th at 791. Second, key to *Gabrielli*'s analysis was that the plaintiff had affirmatively rejected cookies and yet had his information collected anyway. *Gabrielli*, 2025 WL 2494368, at *6. The court found that this deprivation of control supported standing. *Id.* Here, on the other hand, Plaintiffs have not alleged that Google contravened a similar affirmative refusal to share data. Request for Judicial Notice ("RJN", Dkt. 62), Exs 5A–5E; 7A–7D.[1]

Plaintiffs also cite *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025), for the proposition that "whether the intercepted communications were personally identifiable is irrelevant to whether Plaintiffs have suffered an injury-in-fact for Article III standing." Opp. at 5 n.1. But Google's argument turns on the nature of the data collected, not whether it is identifiable. *Frasco*—decided months before *Popa*—involved the collection of sensitive health information in contravention of representations made to users. 349 F.R.D. at 569. And to the extent *Frasco* relied on a generalized right to control personal information, it is no longer good law. As *Popa* held, "there existed no free-roaming privacy right at common law but rather four discrete torts that protected specific kinds of privacy-related harms," 153 F.4th at 792–93, and Plaintiffs here get nowhere near establishing a historically actionable intrusion.

---

[1] Plaintiffs did not oppose Google's RJN.

**B. Plaintiffs claims are untimely**

**1. Plaintiffs did not cure the deficiencies in their First Amended Complaint**

Plaintiffs suggest that having used the website to order erectile dysfunction medication prior to the publication of BlueChew's updated Privacy Policy in August 2024 is enough to allege that Google intercepted their data before this time. *See* Opp. at 6. It is not. Plaintiffs pleaded the exact same allegations in the First Amended Complaint ("FAC", Dkt. 34), and the Court found that they were insufficient. *See* FAC ¶¶ 7, 9; Order, Dkt. 57, at 9–10. Plaintiffs have not cured this deficiency.

For one, Plaintiffs allege only that Google Analytics *existed* on the BlueChew website at the time of their purchases, "allowing the data . . . to be utilized for targeted advertising purposes." SAC ¶¶ 74, 77; Opp. at 7. They do not allege that Google Analytics *actually collected* any of that data. Indeed, Plaintiffs *removed* their previous allegations that "as a result of [Google's] conduct, Plaintiff[s] [M.D. / O.F.] ha[ve] received targeted advertisements relating to erectile dysfunction medications." *See* FAC at ¶¶ 8, 10. Not only did Plaintiffs, when given the opportunity to cure their complaint, fail to adduce any allegations linking Google's conduct to their alleged harm, but they actually retracted allegations that would have helped their point. The mere existence of Google Analytics on a website does not establish that sensitive data was transmitted; by Plaintiffs' own admission, the developer of the host website controls what data is collected. RJN Ex. 1; *see* SAC ¶ 71. If the presence of Google Analytics alone were enough, Plaintiffs would not have also bothered to offer screenshots in their complaint, much less make them a focal point of their argument. *See* SAC ¶ 67, Figures 8 and 9.

Moreover, Plaintiffs point to these screenshots of purported data transmissions to Google and claim that these images—which seem to have been made for litigation—appear "as they would have occurred at the time of Plaintiffs' purchases in 2022 and 2023." Opp at 7. But this claim is not alleged anywhere in the SAC. *See* SAC ¶¶ 67–69. It is pure speculation presented in attorney argument.

The only additional allegation on this point is that "interceptions occurred at the time of" each Plaintiff's purchases. SAC ¶¶ 7, 9. This is a far cry from the allegations in *Doe v. GoodRx*

*Holdings, Inc.*, 2025 WL 2052302, at *2 (N.D. Cal. July 22, 2025), which came after an FTC action premised upon allegations that Google collected "details about [users'] medications and sensitive health conditions" that led to an admission from GoodRx that it "shared identifiable information about its users, including details about drug and health conditions people searched and their prescription medications" with third parties. *Id.* at *3 (internal quotations omitted). Here, Plaintiffs fail to adduce *any* facts supporting the transmission of at-issue data to Google via Google Analytics besides a cursory statement that it "occurred." SAC ¶¶ 7, 9. And as discussed in Google's Motion, Plaintiffs cannot both disclaim knowledge of any alleged interceptions for the purposes of their timeliness arguments and also claim—without any support—that Google was collecting their data during that time.

Plaintiffs' allegations are far more akin to those recently rejected in *Briskin v. Shopify Inc.*, 2026 WL 161441, at *3 (N.D. Cal. Jan. 21, 2026). Based on counsel's investigation into a website's data collection in 2021, the *Briskin* plaintiff averred that the same data was collected from him more than two years prior. The court held this allegation was insufficient, holding that the plaintiff had not offered a "non-speculative basis for [their] allegations" of past data collection. *Id.* at *4. The pleadings here are on all fours with *Briskin*.

Having failed to cure the deficiency identified by the Court, their claims should be dismissed with prejudice.

**2. Plaintiffs' claims are barred by the statutes of limitations**

Plaintiffs next argue that their claims are timely due to the discovery rule. But Plaintiffs still fail to identify facts showing (1) the time and manner of discovery and (2) the inability to have made earlier discovery, as they are required to do.

Plaintiffs now claim that they "allege they could not (and did not) discover Defendants' violations despite their due diligence because Defendants had exclusive knowledge of their misconduct, which occurred using proprietary technology that they did not disclose and actively concealed." Opp. at 8. But they cannot—and do not—cite any supporting allegations in the complaint. *See id.* Instead, they point only to the conclusory and inadequate allegation that Plaintiffs

did not realize their information was being intercepted "[d]ue to the surreptitious nature of the interceptions at issue." *Id.*

And Plaintiffs cite no authority excusing their failure to allege *why* they could not have discovered the alleged interception earlier. *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450 (N.D Cal. Nov. 13, 2018) concerned recorded phone calls that the "defendant [did not] contend that plaintiff could have known" were being recorded," *id.* at *3, and *Weatherly v. Universal Music Publ'g Grp.*, 125 Cal. App. 4th 913 (2004) involved specifically pled misrepresentations (false entries on royalty statements) that hindered plaintiff's discovery. *Id.* at 919. None of those things apply here. To the contrary, Plaintiffs had ample reason and means to know their data was being collected. They allege their data was used to serve them targeted ads based on their purchases of BlueChew medication, which would have given them reason to suspect BlueChew had disclosed their data. SAC ¶¶ 5, 10, 103, 115. This allegation also belies their contention that Defendants had "exclusive knowledge" of the alleged conduct. Opp. at 8.

Plaintiffs attempt to paint their allegations as non-conclusory by arguing that "BlueChew consistently misrepresented its data sharing practices" and that "[p]laintiffs could not conduct additional diligence (and it would have been futile) because an ordinary user could not uncover the misconduct Defendant was actively concealing by reading BlueChew's alleged Privacy Policy." Opp. at 9. Again, no allegations support this argument. What's more, Plaintiffs run into their Rule 8 problem. They offer no plausible facts whatsoever to establish what BlueChew's data sharing practices were when they made their purchase. There is therefore no basis for a claim that "BlueChew consistently misrepresented its data sharing practices." *Id.* Even if they had offered such allegations, their argument still fails. Plaintiffs' claimed injury is that they received targeted ads based on their activity on the BlueChew website, which would at a minimum would have put them on inquiry notice of the alleged data sharing. *See Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808, 813 (2005) (plaintiffs are presumptively aware of a wrongful cause of an injury, even if they have no reason to suspect the defendant's identity).

Moreover, Google did not fraudulently conceal the alleged activity. To the contrary, Google requires all GA customers to disclose their use of Google Analytics and, again, prohibits them from

collecting PHI. RJN Exs. 2A–2B. Fraudulent concealment requires "affirmative acts to mislead," and Plaintiffs point to none by Google. *Hightower v. Celestron Acquisition, LLC*, 2021 WL 2224148, at *6 (N.D. Cal. June 2, 2021). They do not argue that Google did anything with the intent to hide its alleged data collection and usage from Plaintiffs. *See id.* at *7 (analyzing people's states of mind to determine whether their actions constituted fraudulent concealment). They argue only that "*Bluechew* consistently misrepresented its data sharing practices" and that the *BlueChew* Privacy Policy does not contain the information required to disclose the conduct at issue. Opp. at 9. But they haven't sued BlueChew, they sued Google. And what BlueChew does or does not do has zero bearing on Google's intent. *See Briskin*, 2026 WL 161441, at *5 ("Shopify's state of mind is the same, regardless of what merchants like IABMFG ultimately do with their privacy policy. In other words, if we compare two hypothetical scenarios—one where IABMFG obtains proper consent, and one where it doesn't—technically, Shopify's 'intent' is the same in both scenarios.").

### C. Plaintiffs fail to state claims under CIPA and WESCA

#### 1. Bluechew's pre-August 2024 privacy policies established consent

Google respectfully reiterates that the Court's prior order did not specifically address whether the pre-August 2024 BlueChew privacy policies disclosed the particular conduct prohibited by CIPA. At least as to CIPA section 632, BlueChew's disclosures were adequate.[2]

Plaintiffs cannot dispute that all versions of the BlueChew Privacy Policy disclosed that Google would obtain information when Plaintiffs used the website. Plaintiffs argue, however, that the privacy policies are deficient because they do not disclose that "health information" will be transmitted to Google. That is not dispositive here, because consent under section 632 concerns the communication as a whole, not the particular contents. *See, e.g., Flanagan v. Flanagan,* 27 Cal. 4th 766, 776 (2002) (interpreting CIPA to protect nonconsensual recording of conversations regardless of the content of the conversation); *see also Commonwealth v. Byrd*, 661 Pa. 85, 98 (2020) (citation and internal quotations omitted) ("[P]rior consent can be demonstrated when the person being recorded knew or should have known, that the conversation was being recorded."). This is evident

[2] The first clause of CIPA section 631(a) does not apply to internet communications, and Plaintiffs do not allege Google "read" the "contents" of their communication while in transit as required to make out a claim under the second clause of section 631(a).

in the statutory text: 631(a) discusses both "contents" and "communications," whereas section 632 concerns only "communications" and defines confidentiality by reference to the circumstances surrounding the communication rather than what is being discussed. *See* Cal. Penal Code §§ 631(a) (referring to "contents of a communication"). Each privacy policy disclosed Google would overhear the "communication." That is enough under section 632.

### 2. Plaintiffs do not adequately allege intent

Plaintiffs fail to establish that Google intended to obtain their data without consent. As Plaintiffs concede, the "intent analysis" is the same under CIPA, WESCA, and the Federal Wiretap Act. Opp. at 14. Under this latter statute, the Ninth Circuit has held that intent requires the defendant to have acted "purposefully and deliberately and not as a result of accident or mistake" in receiving the confidential communication. *See United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015). California's appellate courts have held that CIPA requires a specific "intent to record a confidential communication," such that a defendant is not liable if it merely "understood it was deploying recording devices that might *happen* to record a confidential communication." *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 728 (2022) (emphasis added).

That standard is unsatisfied here. Google's Terms of Service require websites to obtain consent to the use of GA and squarely forbid any website running GA from transmitting any data "that Google could use or recognize as personally identifiable information." RJN Exs. 2-A, 2-B. This belies any claims of intentional conduct to access data without consent on Google's part. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024) (finding allegations of intent inadequate in light of Google's requirements to obtain consent). BlueChew's alleged failure to comply with that mandate is irrelevant: "[Google]'s state of mind is the same, regardless of what merchants like [BlueChew] ultimately do." *Briskin*, 2026 WL 161441, at *5 (dismissing CIPA claim for lack of intent). Indeed, a California court analyzing another California penal statute, the Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, reasoned that even the lesser "knowing" mens rea requirement requires "awareness of the facts which bring the proscribed act within the terms of the statute." *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438 (2002), *as modified on denial of reh'g* (July 2, 2002). Applying these principles, Google must know, if not intend, that it has

obtained information without consent. *See Briskin*, 2026 WL 161441, at *6 (holding that CDAFA requires an intent to access data without consent). Because intent "is the most culpable level in the standard mental-state hierarchy, and the hardest to prove," it therefore stands to reason that this Court should not apply a more stringent analytical standard here. *Counterman v. Colorado*, 600 U.S. 66, 78–79 (2023). Plaintiffs have not, and cannot, establish intentional conduct.

While Plaintiffs cite contravening authorities, their allegations here fall far short of what was alleged in those cases. In *GoodRx*, for example, this Court reasoned that if Google "make[s] no effort to prevent the uploading of [allegedly sensitive] information into their data repositories, take[s] no steps to filter it out once the data is uploaded to [its] servers, or simply proceed[s] to monetize that information knowing developers were sending sensitive health information in violation of instructions against it, a jury may find such acts indicative of intent." 2025 WL 2052302, at *8. Plaintiffs do not plausibly plead that any of these conditions are present. Although Plaintiffs assert that "Google knew that the incorporation of [Google Analytics] on [BlueChew.com] would result in its interception of PHI and other sensitive data," SAC ¶ 13, they offer no facts to establish that the mere use of GA on the BlueChew website would *per se* violate the law. The mere possibility that BlueChew may pass Google information in contravention of Google's rules is insufficient. *Lozano*, 73 Cal. App. 5th at 728.

**3. Plaintiffs' CIPA claim fails because there is no allegation that the data transmitted to Google constitute the "content" of a communication that was read contemporaneously**

As explained in Google's Motion, the complaint's failure to allege that Google intercepted the "contents" of any communication dooms M.D.'s claim under CIPA section 631 and O.F.'s claim under WESCA. Nothing in Plaintiffs' Opposition saves these claims.

Plaintiffs quote cases stating that a communication's "content" may include information such as "the names of buttons clicked," along with "search queries" made and "the particular document" requested, by a website's user. Opp. at 18 (quoting *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937–39 (N.D. Cal. 2023)). They similarly quote cases stating that a communication's content may include "full-string, detailed URLs" showing "the particular document within a website that a person views," Opp. at 18 (quoting *In re Facebook, Inc. Internet Tracking Litig.*,

956, F.3d 589, 605 (9th Cir. 2020); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015)). All of this is irrelevant, however, because Plaintiffs do not allege that Google intercepted such information. The closest Plaintiffs come is with their allegation that "Defendants intended to learn some meaning of the content in the URLs and the content the visitors requested," SAC ¶ 99, but this conclusory statement is unsupported by any specific allegation of fact, much less any fact establishing that the purported URLs were of the detailed nature at issue in their authorities. *See* SAC, Figures 8 & 9 (reproducing short, generic URLs).

Next, Plaintiffs repeat their allegations that Google intercepted Plaintiffs' prescription information, as well as their "first and last name, email address, and date of birth." SAC ¶¶ 67–69; *see* Opp. at 19. This too is irrelevant because Plaintiffs' allegations do not establish that such information was the intended communication rather than mere "record information" generally not found to constitute the "content" of a communication. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014) ("record" data like "identification" and "address" are not content under Federal Wiretap Act); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1037–38 (S.D. Cal. 2024) (finding entire chat transcript record information); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1084–85 (N.D. Cal. 2018), *on reconsideration*, 2018 WL 3068248 (N.D. Cal. June 21, 2018); *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 728–29 (N.D. Cal. 2014) (finding information entered into a form record information).

Even if such information were "contents," Plaintiffs still fail to make the required showing that such contents were read "while in transit." Rather, the SAC plainly alleges that GA collects data, stores it, and *then* generates reports. *See id.* In other words, the SAC itself contemplates that any "reading" occurs only after Google has allegedly obtained the data. Nothing in the SAC alleges that Google reads any data *before* these reports are generated, a key distinction between the SAC's allegations and those in the cases Plaintiffs cite. *E.g.*, *R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994, at *2–3 (N.D. Cal. June 23, 2025) (quoting, *inter alia*, allegations that "Google, *concurrently and in real time*, did and does intercept, read, and analyze user communications"); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (finding "in transit"

requirement pled by allegations that "Facebook's messaging function allows users to send messages to non-Facebook email addresses, which shows that the messages cannot be entirely contained within Facebook's network") (internal quotations omitted). On the other hand, *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) and *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *5 (N.D. Cal. Oct. 17, 2025)—cases cited in Google's Motion and which Plaintiffs do not address—rejected nearly identical allegations as insufficient.

**a. Plaintiffs do not adequately allege that Google did not act as a mere vendor**

Plaintiffs' first contention—that whether Google is a vendor or eavesdropper is not suitable for determination on a motion to dismiss—is belied by the ample case law cited in Google's Motion demonstrating otherwise. *See* Mot. at 18 (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022); *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024)).

Next, Plaintiffs argue that the SAC contains allegations that Google uses its collected information for its own benefit, suggesting that Google is not merely a vendor. But none of the allegations they cite actually claim this, beyond broad statements that the data is "used for targeted advertising" and the like. *See* Opp. at 20; SAC ¶ 10. In fact, Plaintiffs' own pleadings establish Google's vendor status, as they show that BlueChew controlled Google Analytics' configuration. SAC ¶¶ 13, 66–67, 71–74. As shown in Google's Motion, under *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *17 (N.D. Cal. Apr. 11, 2024), a third-party vendor operating at a website's direction is merely an extension of the website, not an eavesdropper under CIPA § 631. *See also Noom*, 533 F. Supp. 3d at 832; *Williams*, 2022 WL 17869275, at *3; *Love*, 2024 WL 2104497, at *1 ("The plaintiffs have only alleged that FullStory provides a tool that allows Ladder to record, track, and analyze the interactions that users have with its own site.").

This analysis is further corroborated by the California Consumer Privacy Act (CCPA), which was specifically crafted to govern online data collection. *See Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *2–3 (9th Cir. July 9, 2025) (Bybee J., concurring) (noting that the CCPA should govern and CIPA Section 631(a) "does not apply to the internet") (unpublished opinion).

Under the CCPA, a service provider acting within contractual limits is not a "third party." *See* Cal. Civ. Code §§ 1798.140(j)(1), (ag), (ai). Even independent use of collected data for certain purposes not specified in a written contract—such as fraud detection and prevention—are explicitly permitted by the CCPA's implementing regulations. Cal. Code Regs. tit. 11, § 7050(a)(4). Thus, reading CIPA to categorize vendors as "eavesdroppers" based solely on "capacity" to independently use the data would directly conflict with the CCPA, offending the canon that "statutes relating to the same class of things, and sharing the same purpose or object, should be harmonized and construed similarly." *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.*, 4 Cal. 5th 1082, 1090 (2018). And under a harmonized interpretation of these statutes, the mere fact that Google may have independently processed or used the data it collected from BlueChew does not preclude vendor status.

**4. Plaintiffs' communications were not confidential within the meaning of CIPA section 632 and WESCA**

Instead of demonstrating that their communications were "confidential" within the meaning of the statutes, Plaintiffs distract from their lack of allegations by arguing "it is inappropriate for the court to decide such a motion to dismiss absent a clearly deficient pleading." Opp. at 21. But because the SAC is clearly deficient, their misdirection fails.

A communication is not "confidential" if the circumstances are such that "the parties to the communication may reasonably expect that the communication may be overheard or recorded." Mot. at 21; Cal. Penal Code § 632(c). Here, none of the communications at issue were "confidential" because Plaintiffs were informed by each iteration of the privacy policy that various third parties may be receiving or recording their communications with the website. RJN Exs. 5-A–5-E. This forecloses Plaintiffs' contention that they "expected their communications . . . to be confined to BlueChew" and "did not expect third parties . . . to secretly eavesdrop upon or record this information and their communications." Opp. at 21; SAC ¶ 111.

Defendants rely on *GoodRx* to argue that their communications were confidential because they concerned healthcare. But the inquiry is an objective one that considers the circumstances surrounding the communication as a whole, not the specific contents of the communication. *See*

Cal. Penal Code § 632(c). Indeed, the California Supreme Court in *Flanagan* rejected a line of authority that evaluated confidentiality by reference to whether the plaintiff would anticipate the particular content to be disclosed. 27 Cal. 4th at 774–75 (holding "confined to the parties" refers to "the actual conversation, not its content"). Here, the circumstances of the "conversation" were that Plaintiffs were browsing on a website that disclosed that the communications would be recorded—at least by BlueChew—and that a slew of others would overhear as well. *See Commonwealth v. Kurtz*, 348 A.3d 133, 150 (Pa. 2025) ("there is no privacy in the terms [of the] information that the user voluntarily enters into a search engine").

Even if the contents of Plaintiffs' communications were relevant, Plaintiffs' allegations here do not rise to the level of those in *GoodRx*, which involved Plaintiffs "seeking discounts on specific prescriptions, seeking treatment for specific conditions, and disclosing symptoms" 2025 WL 2052302, at *14. General information like "name," "birthdate," and "email" are not "sufficiently intimate or personal to justify a legitimate expectation of privacy." *Arndt v. Gov't Emps. Ins. Co.*, 750 F. Supp. 3d 518, 528 (D. Md. 2024) (internal quotations omitted). Plaintiffs also have not identified a privacy interest in the BlueChew-assigned product code that concealed what medication they had purchased.

The rest of Plaintiffs' cited case law is also inapposite. The first case Plaintiffs cite is a summary judgment opinion that found factual issues to preclude summary judgment, which is wholly inapplicable to the instant case. *See Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1396 (2011). The second found that a jury question existed regarding "issues of credibility in connection with a SLAPP motion." *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 169 (2003). There is no such credibility issue here, as Plaintiffs have not opposed Google's request for judicial notice and do not deny that they were informed and agreed that BlueChew could use Google Analytics.

#### 5. Plaintiff M.D. fails to state a claim for invasion of privacy under the California Constitution

"The California Constitution and the common law set a high bar for an invasion of privacy claim." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) (citing *Low v. LinkedIn*

*Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012)). "[I]f the allegations 'show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law.'" *Low*, 900 F. Supp. 2d at 1025 (citation omitted). Plaintiff M.D. fails to plausibly plead either of these elements.

***First***, while a Plaintiff may have a privacy interest in medical information, M.D. does not adequately allege that any such personal health information was transmitted to Google. The SAC does not allege that "the name of the prescription medication and the medication quantity and dosage" was transmitted to Google. Opp. at 23. It alleges only that the pseudonymous identifier "1" was transmitted to Google, without any apparent way to understand or decode that alias. SAC ¶ 70. And although the SAC does suggest that "personal information" may be protected under the California Consumer Privacy Act ("CCPA"), the SAC does not specifically plead that this "information" includes the other types of information allegedly transmitted to Google, nor does Plaintiff M.D. cite a single case supporting this argument. SAC ¶¶ 78–83; *see also* Opp. at 23 (Google intercepts "first and last name, date of birth, and email address") (quoting SAC ¶ 68).

***Second***, even if M.D. establishes that he has a legally protected privacy interest at stake (which he does not), he must also plead that the alleged breach constitutes an "egregious breach of the social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287 (2009). He cannot do this either. Plaintiff claims that the alleged conduct is "highly offensive" because M.D. alleges that Google "surreptitiously intercept[ed] [his] private health information." Opp. at 24. But this *attorney argument* finds no support in the SAC's *allegations*. Rather, the SAC alleges that "each of BlueChew's medications are provided their own unique product ID," and that "[t]hese unique IDs will indicate not only the type of medication being purchased by patients, but also the quantity and dosage." SAC ¶ 70. While the SAC does not specify who assigns these IDs, the context indicates that it is BlueChew. *See id*. There is no allegation that these IDs are assigned by Google, let alone that Google knows—or has the ability to know—what these pseudonymous IDs represent.

A pseudonymous ID, without more, cannot constitute private medical information. Therefore, "[b]ecause Plaintiffs fail to plead that any medical information was disclosed, Plaintiffs claims do not rise to the level of an 'egregious breach of the social norms'" and should be dismissed.

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1067 (C.D. Cal. 2024), *on reconsideration in part,* 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) (dismissing invasion of privacy claim). While the egregiousness inquiry *can* be fact-dependent, dismissal is nonetheless appropriate where, as here, the allegations as pleaded do not establish an egregious breach. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (dismissing claim for invasion of privacy where "disclosure does not constitute an egregious breach of social norms"); *Low*, 900 F. Supp. 2d at 1025 (same, and noting that "Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim."); *B.K.*, 721 F. Supp. 3d at 1067 (same).

Plaintiff's cited cases are all inapposite, as the information at issue in those cases is described as intelligible medical information that constitutes more than just a pseudonymous identifier. *See* Opp. at 24–25 (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 785 (N.D. Cal. 2022) ("information about doctors, medical conditions, and appointments associated with a patient's session"); *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *1 (N.D. Cal. Sept. 16, 2024) ("the mental health conditions [Plaintiff] searched, the treatment he was seeking, provider preferences, and appointment details"); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 885 (C.D. Cal. 2024) ("search terms entered into free text boxes," among other information); *St. Aubin v. Carbonn Health Techs., Inc.*, 2024 WL 4369675, at *1 (N.D. Cal. Oct. 1, 2024) (among other information, that "about the type of appointment the patient is booking along with the name of the clinic where the patient will have their appointment")).

***Finally*,** Google reiterates that even if BlueChew chose to store this information on a Google server, that is not enough to plausibly indicate that Google made independent use of it, or even became aware it existed, which counsels in favor of dismissal. *Kaiser*, 2024 WL 1589982, at *19 ("Kaiser simply hired a third party to do work for Kaiser's own benefit"). The two cases that M.D. cites were decided before *Kaiser* and should therefore be disregarded. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023); *Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *11 (N.D. Cal. Aug. 22, 2023). Further, M.D. disregards that the court in *Doe v. Meta Platforms* actually *dismissed* the invasion of privacy claim due to a failure to "describe the types or

categories of sensitive health information" that were allegedly transmitted, just as M.D. has here. *Meta Platforms*, 690 F. Supp. 3d at 1081.

**D. Dismissal with prejudice is warranted**

Dismissal without leave to amend is appropriate when "amendment would be futile." *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011). This is Plaintiffs' *third* attempt to plead viable claims. Each iteration of their complaint has suffered from the same fundamental deficiencies. They have received a specific opportunity to cure the defects identified by Google and the Court, but instead of supplying missing factual allegations, have chosen to defend their absence. Plaintiffs cannot demonstrate that a *fourth* bite at the apple can justify the cost to the Court's and the parties' resources. Dismissal with prejudice is warranted.

## III. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court dismiss Plaintiffs' Second Amended Complaint with prejudice.

Dated: February 20, 2026

COOLEY LLP

By: */s/ Ben Hur*
Ben Hur
Simona Agnolucci
Eduardo Santacana
Joshua Anderson
Isabella M. Corbo

Attorneys for Defendant
GOOGLE LLC